UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |
| v. | ) Case No. 1:21-cr-175 ) |
| ETHAN NORDEAN, et al., | ) **Judge Timothy J. Kelly** ) |
| Defendants. | ) ) ) |

**DEFENDANT NORDEAN'S SUR-REPLY IN RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER**

Defendant Ethan Nordean, through his counsel, files this brief sur-reply in response to legal arguments raised for the first time in the government's reply in support of its third motion to detain Nordean pretrial. ECF No. 45.

**A.  Pretrial detention is barred unless the government establishes a felony offense listed in 18 U.S.C. § 3142(f)**

Section 3142(f) sets out a list of five categories of offenses that may justify a pretrial detention hearing. 18 U.S.C. § 3142(f)(1). All are felony offenses. *Id.* And not all felony offenses appear there: most of the federal criminal code is not included. Separately, § 3142(f) provides that a pretrial detention hearing may also be held in a case that involves "(A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). "Absent one of these circumstances [in § 3142(f)], detention is not an option." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999). *See also United States v. Salerno*, 481 U.S. 739, 747 (1987) (Congress limited pretrial detention

1

of presumptively innocent persons to defendants charged with crimes that are "the most serious" compared to other federal offenses).

The government's third detention motion rests almost exclusively on Telegram messages—from individuals other than Nordean—that it says constitute a conspiracy. Gov't Reply, pp. 2-6. However, the government does not argue that its conspiracy charge, or the two criminal objects of the alleged conspiracy—obstruction of an official proceeding, 18 U.S.C. § 1512(c)(2), and interference with law enforcement during a civil disorder, 18 U.S.C. § 231(a)(3)—constitute detainable offenses listed in § 3142(f)(1). Instead, the government's exclusive basis for detention under § 3142(f) is the superseding indictment's charge that Nordean and others destroyed federal property, an offense under 18 U.S.C. § 1361, which the government asserts is a detainable "crime of violence" under § 3142(f)(1)(A). ECF No. 30, p. 3.

In his opposition to the government's third detention motion, Nordean showed that the superseding indictment does not allege a single instance of the destruction of federal property on the part of Nordean. Instead, it alleges that Nordean and Defendant Biggs "shook a barricade" and that they and "others in the crowd were able to knock it down." First Superseding Indictment, ¶ 58. An offense under § 1361 constitutes a felony, punishable by up to 10 years in prison, only if the "damage to such property exceeds the sum of $1,000 . . ." 18 U.S.C. § 1361. The superseding indictment does not allege $1,000 in damage from Nordean's alleged barricade shaking. First Superseding Indictment, ¶ 58. The government has not proffered such evidence. Section 3142(f) provides that the Court may detain a person pretrial, "in a case that involves— (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(A). Nordean showed that because the government has failed to allege

property destruction, much less damage exceeding $1,000, attributable to him, there is no basis for Bail Reform Act detention in this case—even before one reaches the question of conditions of release, for which the government similarly articulates no cognizable legal argument. ECF No. 32, pp. 12-13, 21.

The government's reply fails to dispute the $1,000 point. ECF No. 45.[1] The argument is therefore forfeited. *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (party's failure to respond to a conspicuous, nonfrivolous argument in opponent's brief ordinarily constitutes an argument forfeiture). However, the government inserts a new legal argument into its reply: that the Court may simply detain Nordean under the "dangerousness" standard of 18 U.S.C. § 3142(g)(4), without regard to whether § 3142(f) is satisfied. Gov't Reply, pp. 9-11 ("The Court Is Not Limited to Consideration of Destruction of Federal Property When Evaluating The Bail Reform Act Factors").

The government writes, "Section 3142(g)'s language articulates no link between the rationale for a detention hearing under either §§ 3142(e) or 3142(f) and the factors a court considers under § 3142(g)." Gov't Reply, p. 10. That misses the point. As the D.C. Circuit held in *Singleton*, "[a]bsent one of th[e] [§ 3142(f) factors], *detention is not an option*." 182 F.3d at 9 (emphasis added).[2]

---

[1] The same pleading and proof failure concerning over $1,000 in damage defeats the government's contention that a rebuttable presumption of detention exists under 18 U.S.C. § 3142(e), which also requires "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, *for which a maximum term of imprisonment of 10 year or more is prescribed*." 18 U.S.C. § 3142(e)(3)(C) (emphasis added).

[2] The cases cited by the government stand for the distinct point that *if* the government has satisfied § 3142(f)(1) or (f)(2), then the Court's consideration of release factors under § 3142(g) need not directly correspond to the distinct detention predicates under (f)(1) (list of serious felony offenses) or (f)(2) (risk of flight or obstruction). Gov't Reply, p. 10 (citing cases). Even here, however, the government does not cite any precedent in support of its point from this

3

Detention is appropriate under 3142(f)(1), "in a case that involves—

(A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

(B) an offense for which the maximum sentence is life imprisonment or death;

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

(D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code . . .

18 U.S.C. § 3142(f)(1).

The Court will notice that all of the offenses listed in § 3142(f)(1) are felony offenses. That is in keeping with the Supreme Court's holding in *Salerno* that Congress intended that the Bail Reform Act limit detention of presumptively innocent persons to "the most serious" of federal offenses. 481 U.S. at 747. The Court will also notice that conspiracy, 18 U.S.C. § 371; obstruction of official proceedings, 18 U.S.C. § 1512(c)(2)[3]; and interference with law enforcement during a civil disorder, 18 U.S.C. § 231(a)(3), do not satisfy § 3142(f)(1).

---

Circuit. Although the government cites *Singleton*, the D.C. Circuit in that case explicitly held, "The § 3142(g) factors are not at issue in this appeal." 182 F.3d at 10.

[3] Nordean conspicuously argued in opposition that the superseding indictment does not plead an offense under § 1512(c)(2). ECF No. 32, pp. 17-18. The government did not contest the point in reply. ECF No. 45. Accordingly, the argument is forfeited. *Alvarez*, 828 F.3d at 295.

Similarly, because the offenses listed in that subsection are felonies, if depredation of federal property, 18 U.S.C. § 1361, is to satisfy § 3142(f)(1) it must be an offense "for which a maximum term of imprisonment of 10 years or more is prescribed." § 3142(f)(1)(A). *See, e.g., United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 965-66 (E.D. Wisc. 2008) (§ 3142(f)(1)(A) satisfied where "crime of violence" offense carries "maximum term of imprisonment of 10 years or more"); *United States v. Hefner*, 2019 U.S. Dist. LEXIS 23432, *6 (E.D. Tenn. Feb. 13, 2019) (same).

The superseding indictment does not plead a felony offense under § 1361 because it does not identify destruction of federal property exceeding $1,000. Nor has the government proffered such evidence, even though in other Capitol intrusion cases, the government's indictments plainly plead that fact, and adduce evidence to support it, where it exists. *See, e.g., United States v. Mostofsky*, 21-cr-138, ECF No. 5 (D.D.C. 2021) (Capitol defendant charged with theft of property exceeding $1,000 in value, pleading exact alleged value of property, supported by quote from federal contractor (obtained the day before defendant's arrest)). So, the government's new argument that the Court may detain Nordean under Section 3142(g) alone is wrong.

**B.    The superseding indictment does not allege Nordean's *Pinkerton* vicarious liability for a non-defendant's § 1361 offense**

Indirectly acknowledging its § 1361 failure, the government newly argues that it has still satisfied § 3142(f)(1)(A) because a non-defendant to this case, Dominic Pezzola, smashed a window of Congress on January 6 and that individual is alleged to be a member of the Proud Boys, like Nordean. Gov't Reply, pp. 6-7. This bootstrapping fails for several reasons.

First, vicarious liability under the *Pinkerton* standard attaches to a defendant from his *co-conspirators*' crimes. And it is black letter law that it is "essential to determine what kind of agreement or understanding existed *as to each defendant*." *United States v. Tabron*, 437 F.3d 63,

5

66 (D.C. Cir. 2006) (emphasis added) (citing *United States v. Borelli*, 336 F.2d 376, 385 (2d Cir. 1964) (Friendly, J.)). Here, the superseding indictment does not allege that Pezzola was a party to the conspiracy alleged in this case. It simply contends he was a member of the Proud Boys and that he smashed a window. First Superseding Indictment, ¶ 62. The government does not allege a conspiracy to commit a specific federal offense between individuals simply by contending they are members of the same political or fraternal organization. The perverse implications of such a theory of criminal liability need no elaboration. *See, e.g., Yates v. United States*, 354 U.S. 298, 324-25 (1957) (abstract principles of political organization to which defendant belonged do not knit together Smith Act conspiracy to overthrow the government).

Second, the government premises its argument on the assumption that Pezzola *is* a Proud Boys member. But it offers no evidence in support of that contention and it is factually disputed. Gov't Reply, pp. 6-7; First Superseding Indictment, ¶ 62.

Third, even if the government had properly alleged Nordean's *Pinkerton* vicarious liability for non-defendant Pezzola's actions, it still has not alleged or proffered over $1,000 in property destruction from Pezzola's crime. Gov't Reply, pp. 6-7; First Superseding Indictment, ¶ 62.

Fourth, the government separately contends that it satisfies § 3142(f)(1)(A) because it alleges that Nordean aided and abetted Pezzola's window-smashing. Gov't Reply, p. 7. Here, the government is repeating the exact same argument it presented to the Chief Judge in its second attempt to detain Nordean pretrial. In response, the Chief Judge found:

> There is no allegation that [Nordean] caused injury to any person or that he even personally caused damage to any particular property. . . He was a leader of a march down to the Capitol. Once they got there it's not clear what leadership role [Nordean] took at all to the people inside the Capitol or – **even the evidence about [Nordean] directing people to break windows to get into the Capitol is weak, to say the least**. . .

6

> [T]he weight of the evidence against [Nordean] for aiding and abetting the injury and depredation of Government property, under 18 U.S.C. section 1361, in an amount exceeding $1,000 when he personally didn't do anything – and **there is no evidence of *specific directions* by [Nordean] to tell his fellow Proud Boys [to] carve some vulgar thing on a door or to – any other specific information about him giving those kinds of *precise orders*** is not as strong and overwhelming to say that the weight of the evidence favors pretrial detention . . .

3/3/21 Hr'g Trans., pp. 79-80 (emboldening and italics added).

The Chief Judge's finding, which is the law of the case, was consistent with the Supreme Court's last word on abetting and abetting liability. *Rosemond v. United States*, 572 U.S. 65, 76 (2014) ("[A] person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate *that* offense's commission . . . An intent to advance some different or lesser offense is not, or at least not usually, sufficient. Instead, the intent must go to *the specific and entire crime charged*.") (emphasis added).

### C. The government does not satisfy the *Munchel* dangerousness standard by saying that Nordean "remains committed to his [political] cause"

As the Court knows, the D.C. Circuit recently reversed a district court's decision to detain pretrial the "zip-tie Capitol defendant." *United States v. Munchel*, 2021 U.S. App. LEXIS 8810 (D.C. Cir. Mar. 26, 2021). The court of appeals stressed that, assuming the government has already satisfied § 3142(f), it also "must prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community," under the § 3142(g) factors. *Id.*, *13 (internal quotation marks omitted).

Munchel was seen carrying zip-ties and a taser in the Capitol Building. *Id.*, *2. Walking into the seat of Congress, he announced, "we're not playing fucking nice no god damn more" and that he was "fucking ready to fuck shit up." *Id.*, *4. The district court had based its dangerousness determination under § 3142(g)(4) on the finding that "Munchel's alleged conduct indicates that he is willing to use force to promote his political ends." *Id.*, *22. The court of

7

appeals found this finding "clearly erroneous" because, among other things, the record was absent "evidence that either Munchel or [the co-defendant] committed any violence on January 6[;] [t]hat Munchel or [the co-defendant] assaulted [a person] on January 6 . . . If, in light of the lack of evidence that Munchel or [the co-defendant] committed violence on January 6, the District Court finds that they do not in fact pose a threat of committing violence in the future, the District Court should consider this finding in making its dangerousness determination." *Id.*, *22.

Judge Katsas, in partial dissent, would have "reverse[d] outright," not "remanded for a do-over." *Id.*, *26. Specifically, the Judge addressed the exact argument the government makes for Nordean's pretrial detention: that "rhetorical bravado . . . invoking the American Revolution" and "would-be martyr[dom]" somehow satisfy the dangerousness standard of § 3142(g). *Id.*, *32. Judge Katsas found this argument misplaced for two reasons: "During the chaos of the Capitol riot, Munchel and [the co-defendant] had ample opportunity to fight, yet neither of them did. Munchel lawfully possessed several firearms in his home, but he took none to the Capitol." *Id.*, *33-34. Second, the government's contention that Munchel had a desire to "stop or delay the peaceful transfer of power" is not an "identified and articulable threat to any individual or the community" because:

> [T]he transition has come and gone, and that threat has long passed. In the district court, the government warned of an upcoming protest scheduled for March 4. But that protest never materialized, and the government produced no evidence that Munchel . . . had been involved in its planning before [his] arrest.

*Id.*, *34.

In reply, the government falls short of proffering clear and convincing evidence of dangerousness—even on a par with that in *Munchel*. Unlike Munchel, Nordean did not carry zip-ties or tasers in the Capitol. He did not have any weapon at all, though, as in *Munchel*, he could have brought one. He did not commit any violence. The government's argument is simply

8

that Nordean is "committed to his cause," was a leader of a political group, claimed to "represent the spirit of 1776," and that cherry-picked messages from random members of a 60-person Telegram chat thread unknown to Nordean made reference to the videogame "Minecraft" which the government claims, without evidence, is an esoteric allusion to crimes generally. Gov't Reply, pp 7-8. But, as Judge Katsas concluded, "the transition has come and gone, and that threat has long passed" and "rhetorical bravado" about patriotism is not sufficient. *Munchel*, 2021 U.S. App. LEXIS 8810, *34.

A recent detention decision in another Capitol case underscores *Munchel*. The government sought pretrial detention of a Capitol defendant who made the following inflammatory public remarks, before and after January 6:

- "The only good Democrat is a dead Democrat";

- "You want to say that was a mob? You want to say that was violence? No sir. No Ma'am. No, we could have a 2nd Amendment rally on those same steps that we had that rally yesterday. You know, and if we do, then it's gonna be a sad day, because there's gonna be blood runnin' out of that building. But at the end of the day, you mark my word, we will plant our flag on the desk of Nancy Pelosi and Chuck Schumer and Donald J. Trump if it boils down to it";

- Explaining his plans for President Biden's inauguration, the defendant said: "I am going to leave either tonight or tomorrow. I've got a .357 Henry Big Boy rifle . . . that I got in the trunk of my car, and I've got a .357 single action revolver . . . that I will have underneath the front seat on my right side. And I will embrace my Second Amendment, I will keep my right to bear arms, my vehicle is an extension of my home in regard to the constitutional law, and I have a right to have those firearms in my car."

*United States v. Couy Griffin*, 21-cr-92 (D.D.C. 2021).

Plainly, these are statements potentially indicative of dangerousness far beyond anything the government has proffered with respect to Nordean. Yet the Chief Judge rejected the government's detention argument. The Chief Judge found that "the defendant's statements are highly inflammatory, deeply disconcerting . . .—particularly . . . suggesting that the blood of

9

elected officials will be spilled because he is unhappy with the outcome of a presidential election, and also that he would subsequently return to Washington, D.C., with firearms. . ." 2/5/21 Hr'g Trans., pp. 41-42, Exh. 2.  Nevertheless, the Court determined that these comments had been selectively presented by the government and that the defendant's law-abiding history and behavior outweighed them.  *Id.*  The Court was right.  Griffin has complied with his standard conditions of release flawlessly for months.

So has Nordean, as his Probation Officer reports.  The government's inability to articulate how Nordean poses a threat to the community when he has successfully complied for over a month with home confinement with GPS location monitoring and is not permitted to leave the Western District of Washington, does not come close to "clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Munchel*, 2021 U.S. App. LEXIS 8810, *13.

Dated: April 5, 2021

Respectfully submitted.
DAVID B. SMITH, PLLC

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

**Certificate of Service**

10

I hereby certify that on the 5th day of April, 2021, I filed the foregoing brief with the Clerk of Court using the CM/ECF system and the Case Administrator Brittany Bryant, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Jim Nelson
>Assistant United States Attorney
>555 4th Street, N.W., Room 4408
>Washington, D.C. 20530
>(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>/s/ David B. Smith
>David B. Smith, D.C. Bar No. 403068
>David B. Smith, PLLC
>108 North Alfred Street, 1st FL
>Alexandria, Virginia 22314
>(703) 548-8911 / Fax (703) 548-8935
>dbs@davidbsmithpllc.com
>*Counsel to Ethan Nordean*

11