IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 1:21-CR-175-4 |
| v. | ) | |
| | ) | |
| CHARLES DONOHOE, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR REVOCATION OF DETENTION ORDER**

Defendant, Charles Donohoe, respectfully requests that the Court revoke the detention order entered by United States Magistrate Judge Harvey on April 22, 2021 and place him on pretrial release pursuant to the recommendations of the Pretrial Services Report: release to a third-party custodian, home incarceration and location monitoring. In support of his motion, Mr. Donohoe submits the following:

A. Procedural History.

On March 10, 2021, a grand jury in the District of Columbia issued a six-count superseding indictment, charging defendant Charles Donohoe with Conspiracy, in violation of 18 U.S.C. § 371; Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2); Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. § 231(a)(3); Destruction of Government Property and Aiding and Abetting, in violation of 18 U.S.C. § 1361; Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); and Disorderly Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2).

Donohoe was taken into custody at his place of work in Kernersville, North Carolina on March 17, 2021.  He appeared in the United States District Court for the Middle District of North Carolina, where he waived his right to an identity hearing and a detention hearing, electing to have the detention hearing in the District of Columbia.

A detention hearing took place on April 19, 2021, and Mr. Donohoe was ordered detained by Magistrate Judge G. Michael Harvey on April 22, 2021.

B.      Applicable Law

This Court must review the Magistrate Judge's detention order promptly and under a *de novo* standard of review.  *See* 18 U.S.C. § 3145(b).

In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court held that "[i]n our society liberty is the norm, and detention prior to trial is the carefully limited exception." 481 U.S. at 755.  Pretrial release should only be denied for "the strongest of reasons." *Truong Dinh Hung v. United States*, 439, 1326, 1329 (1978).

In this case, the presumption of detention applies pursuant to 18 U.S.C. § 3142(e)(3)(C).  Mr. Donohoe is charged in count four of the indictment with a violation of 18 U.S.C. § 1361, which carries a sentence of up to 10 years imprisonment and is listed in 18 U.S.C. § 2332b(g)95)(B).   At the detention hearing, Magistrate Judge Harvey found that Mr. Donohoe rebutted the presumption with respect to risk of flight. Hr'g Trans., 4/22/21, p. 6:11-14. He also found that Mr. Donohoe rebutted the presumption with respect to dangerousness.  Hr'g Trans., 4/22/21, p. 7:2-3.  After determining that Mr. Donohoe rebutted the presumption, Judge Harvey found that the four factors listed in 18 U.S.C. § 3142(g), supported detention.  Hr'g Trans., 4/22/21, p. 7:8-10.

18 U.S.C. § 3142(g) sets out the factors that the court must consider  in determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

C.  Mr. Donohoe's Personal History and Background

In his filed Response to the Government's Motion for Detention and Motion for Bond Mr. Donohoe provided extensive information about his background, his military service, his ties to the community and his family support.  Mr. Donohoe, an Eagle Scout, served in the Marines for four years and then as a military contractor for six years.  ECF No. 60 pp. 3-5. He has lived in North Carolina for 30 of his 33 years and has strong family ties to the area.

3

He is the father of a five-year-old son and spends three days each week with him.  ECF No.
60 pp. 2-3. Mr. Donohoe's criminal history is minor – a prior conviction for underage
possession of alcohol. ECF No. 60 pp. 14. He does have a pending DUI charge, but there is
no evidence of failures to appear or failures to comply with court orders.  Mr. Donohoe has a
positive employment history and is involved in the care of his young son. ECF No. 60 p. 5.

   After the events of January 6, Mr. Donohoe took no steps to evade the law or to escape
detection.  He returned to his home in Kernersville, North Carolina where he continued his
day-to-day life, going to work and caring for his young son. ECF No. 60 p. 8. In February of
2021, he participated in a community wide search for a missing teenager, appearing on a local
newscast as he and Blitz, his trained search and rescue dog, attempted to locate the young girl.
*Id.*

   Mr. Donohoe was easily located by law enforcement who arrested him at his place of
work in Kernersville, North Carolina, on March 17, 2021.  When he was taken into custody,
no contraband was located by the arresting authorities. *Id.* At their request, Mr. Donohoe
voluntarily gave them a couple of articles of clothing with Proud Boys logo on it. *Id.*

   D.  Argument

    During the events of January 6, there is no evidence that Mr. Donohoe forcibly moved
or destroyed property, nor that he  committed any acts of violence during the events of
January 6.  He never entered the Capitol.  He did not assault or harass any law enforcement
officer or security guard.  He did not instruct, nor did he encourage anyone to act in a violent
or destructive manner, on Telegram or in any other way.

1.      **Nature and Circumstances of the offense**

Magistrate Judge Harvey considered several factors in evaluating the nature and circumstances of the offense:

a.      **Telegram communication**s.  While it is true that Mr. Donohoe assisted in the creation of a new Telegram channel after the chairman of the Proud Boys was arrested, a review of the communications fails to uncover anything suggesting a plan to storm the Capitol or disrupt the scheduled counting of the electoral vote by Congress.  The participants in the chat did plan the trip to Washington D.C., but there is no discussion of orchestrating the type of event that occurred on January 6.  The comments attributable to Mr. Donohoe to the other members, while they show the planning of a trip to Washington D.C. to attend the rally, they do not mention any type of planned violence at the Capitol.

b.      **Proud Boy's "march" to the Capitol**.  Video evidence provided by the Government shows the group of Proud Boys walking together towards the Capitol.  A member (not Mr. Donohoe) yells, "Let's take the fucking Capitol."  He is admonished by another person in the group.  Mr. Donohoe is not seen in this video.  Mr. Donohoe is later seen on video walking with a large group of people past barriers, that had already been knocked down by others.  There is no evidence of him pushing people, directing others to go  forward or even touching barriers.  As to his statement "we are trying" on Telegraph, there is no evidence as to who or which comment he is responding to.

c.      **Dominic Pazzola's shield**.  There is video of Mr. Donohoe walking with Pizzola with his hand on the shield Pizzola took from a security officer.  As stated in Magistrate Judge Harvey's order, there is no evidence that Mr. Donohoe had anything to do

with the taking of the shield or the breaking of the window at the Capitol with the shield. The fact that he says on Telegram "got a shield" is not evidence of any culpability on his part with respect to the shield.

      d.    **The crowd's push up the stairs of the West Terrace of the Capitol**.  The Government's evidence shows Mr. Donohoe in the middle of the group as the crush of people begin to ascend the stairs.  Mr. Donohoe is swept up in the crowd, and as he is pushed forward, a bottle strikes him in the head.  The video does not depict Mr. Donohoe leading the charge or pushing others forward.  When he arrives at the top of the stairs, he goes to the left.  His boastful comments on Telegram later that evening such as "I stood on the front line and pushed it twice" are belied by what is actually depicted in the video.

      e.    **The Telegram statement "regrouping with a second force."**  Despite the message on Telegram from Mr. Donohoe, there is no evidence that he in fact assembled a second force, much less intended to do so.  In fact, he attempted to persuade others on the channel to cease their activities by letting them know of incoming law enforcement.  He sent out the message to leave the Capitol from Vice President Pence.  His further braggadocio on Telegram was just that.  The video and Telegram evidence does not support any plan or the carrying out of any plan by Mr. Donohoe to commit acts of violence at the Capitol or to stop Congress from certifying the election.

      **2.**    **Weight of the evidence.**

      While there is no dispute that the Government has evidence both in the form of videos and Telegram chats, it does not support their theory that Mr. Donohoe was a part of a

conspiracy to commit acts of violence on January 6 and to interfere with Congress' certification of the election.

### 3.     History and characteristics.

The response filed by Mr. Donohoe to the Government's motion for detention sets out in great detail Mr. Donohoe's history and characteristics. ECF No. 60. To summarize, Mr. Donohoe is an honorably discharged Marine, who served his country both during and after his military service.  He has a strong community of friends and family.  He is gainfully employed and a great father to his young son.  He has no history of violence or a criminal history of violent offenses.  He loves his country and has great respect for those who work in law enforcement.   Mr. Donohoe contributes to his community by being involved in charitable projects and volunteering to help others.

In his order, Magistrate Judge Harvey makes two observations that he finds undercut the positive characteristics of Mr. Donohoe:

**a.     Mr. Donohoe should not be required to disclaim his beliefs or renounce his membership in the Proud Boys in order to qualify for pretrial release.**

The fact that Mr. Donohoe has not disclaimed his beliefs or renounced his membership in the Proud Boys should not be utilized in the determination of whether pretrial release is warranted.  Aside from Mr. Donohoe's comments immediately after the events of January 6, there is no evidence of any further comments regarding the incident.  The Government has presented no evidence that before or after January 6, Mr. Donohoe made any comments regarding any plan to commit any acts of violence towards the government.

Mr. Donohoe has a constitutional right to not incriminate himself by making statements regarding the charges he is facing.  In effect, he is being punished for invoking his Fifth Amendment right against self-incrimination.

**b.**     **After January 6, Mr. Donohoe did not "nuke" the Telegram channel or destroy any other evidence.**

The Telegram conversation several days after January 6 regarding the "nuking" of the channel did not result in Mr. Donohoe deleting the channel.  It appears from the evidence provided by the Government that he did not make a serious attempt to do this.

Additionally, there is no evidence that Mr. Donohoe attempted to or destroyed any evidence of any items relating to the January 6 incident.  When he was arrested, no contraband was located by authorities.  He complied with the request to give them a couple of items of clothing with Proud Boy's logo.  There is nothing illegal about owning such clothing, and Mr. Donohoe made no attempt to hide the items.

**4.**     **Nature and seriousness of the danger to any person or the community.**

**a.**     **Mr. Donohoe does not present an identifiable and articulable threat to the safety of the community.**

In discussing this factor, Magistrate Judge Harvey found that Mr. Donohoe served as a "trusted senior lieutenant" who was "responsible for ensuring the group's secure communications." Hr'g Trans., 4/22/21, p. 32:2-5.  The evidence does not support this finding.  Mr. Donohoe did help to set up another Telegraph channel, but that is hardly proof that he had the primary responsibility of setting up, maintaining much less ensuring the

communication of the group.  Further, there is no evidence to support the idea that if released pretrial, Mr. Donohoe would somehow create another secure communication system which would then marshal others to attack the Capitol, or any other government entity.

It is true that Mr. Donohoe arrived at the Capitol on January 6 and that he, along with others, assembled and marched towards the Capitol.  However, there is no evidence of any plan to engage in the violent events that occurred, and certainly no evidence of any desire or plan on Mr. Donohoe's part to recreate those events after January 6.  Mr. Donohoe's braggadocio after the event was brought on by the adrenaline of the moment and should not be regarded as evidence of any intent on his part to commit any future acts of violence.

**b.      There are conditions or combination of conditions that will reasonably assure Mr. Donohoe's presence in court and/or the safety of any other person or the community.**

An additional reason expressed by Magistrate Judge Harvey as support for his detention order was that Mr. Donohoe has not been on pretrial release, therefore has no "track record of compliance on which to rely." Hr'g Trans., 4/22/21, p. 34:23-24.  Mr. Donohoe has no "track record," because he was in fact detained, and has remained detained since he was served with the indictment and taken into custody.  This reason hardly seems fair, given Mr. Donohoe's circumstances.   There are factors which the Court can consider which should outweigh the fact that Mr. Donohoe has no pretrial release history, lack of significant criminal history, record of appearing in court and his military service.  All of these factors point to a person who is responsible, reliable and will follow the Court's requirements to the letter.

The recommendations contained in the pretrial services report are very restrictive.  If accepted by the Court, Mr. Donohoe would be placed in the custody of his grandmother and would live exclusively at his grandparents' home.  Under home incarceration, he would be under a 24-hour lockdown, not allowed to leave for any reason except for medical treatment, court appearances and meeting with his attorney. He would be required to submit to electronic monitoring.  Additionally, he would be restricted from using social media.  If the Court further ordered, Mr. Donohoe would be willing to abstain from the use of any computer, tablet, smart phone, or any device that allowed internet access.

The Government does not contend that Mr. Donohoe is a flight risk, which was also the finding of Magistrate Judge Harvey.  The conditions above reasonably assure the safety of any other person and the community. 18 U.S.C. § 1342(c)(1).

E.  <u>Conclusion</u>

For the foregoing reasons, Mr. Donohoe respectfully requests that he be placed on pretrial release, with the conditions of home incarceration, his grandmother serving as third party custodian, and electronic monitoring.  Mr. Donohoe agrees to abide by those conditions, as well as any others imposed by the Court.

DATED:  <u>May 3, 2021.</u>

BY:

/s/ Lisa S. Costner

_____

LISA S. COSTNER
Lisa S. Costner, P.A.
NC State Bar #14308
952 W. 4th St., Ste 200
Winston Salem, NC 27101

10

(336) 748-1885
lisa@lisacostnerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>May 3, 2021</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jason McCullough
Luke Jones
Assistant United States Attorneys

Respectfully Submitted,

/s/ Lisa S. Costner

_____

LISA S. COSTNER
Lisa S. Costner, P.A.
NC State Bar #14308
952 W. 4th St., Ste 200
Winston Salem, NC 27101
(336) 748-1885
lisa@lisacostnerlaw.com