UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) Case No. 1:21-cr-175 ) |
| ETHAN NORDEAN, et al., | ) **Judge Timothy J. Kelly** ) |
| Defendants. | ) ) ) |

**DEFENDANT NORDEAN'S REPLY REGARDING THE GOVERNMENT'S
VIOLATION OF THE DUE PROCESS PROTECTIONS ACT AND RULE 5.1**

In the April 19 hearing where the Court revoked Ethan Nordean's release order—with whose conditions he had then been complying—the Court focused on the perceived risk that he would engage in dangerous political rallying in the future. The Court found:

> [T]hese defendants can produce events that draw large numbers of people, including Proud Boys, others sympathetic to Proud Boy perspectives . . . Even if the election has passed all of politics has not.

Hr'g Trans., 4/19/21, p. 55.

Nordean had presented an audio recording of himself in a conversation with members of his group in which he rejected political rallying. The recording shows him annoyed with how often he had to "repeat himself" on the point. The clip was recorded in February, shortly before his arrest. It is not "self-serving," as he was communicating with his in-group and through the medium that the government alleges was used "to evade detection."[1] The Court found that the clip "does suggest that, at some point, [Nordean] agreed that the Proud Boys should stop

---

[1] According to the government, Telegram chats are designed to evade law enforcement detection when they sound inculpating and therefore have truth value. However, when they are exculpatory, they are "self-serving" messages designed to confuse law enforcement.

rallying." Hr'g Trans., 4/19/21, p. 55:21.  However, the Court also found that "without any further context there's no indication that that was some kind of permanent decision." *Id.*, p. 55:22.

At the time of the hearing, there was "further context." The government knew it and did not inform the defense or the Court.  Shortly after that hearing, on April 29, the government produced late January chats in which Nordean repeatedly discussed "bans on rallies"; in which Nordean said, "fuck politics, build communities and local economy" (Cf. the Court: "politics has not [passed]"); where Nordean endorses the doubly capital notion "THE PROUD BOYS ARE NOT MARCHING ON CAPITAL BUILDINGS"; and in which Nordean reacts dismissively, in real time, to the conspiracy charge supposedly predicating his detention.  On its own, the government's late production of these chats is unequivocally a violation of the Due Process Protections Act and Local Criminal Rule 5.1.  It is also a violation of Rule 3.8(e) of the D.C. Rules of Professional Conduct for prosecutors.[2]

However, this violation should not be considered in isolation but against the backdrop of a pattern of misleading claims the government has made since the inception of this case in order to detain a presumptively innocent person for what will likely amount to a year or more during unprecedented docket congestion, including: that Nordean "led an invasion of the Capitol Building" on January 6 using "encrypted communications," when it knew his phone was off during the relevant time period[3]; that Nordean used a Baofeng radio on January 6 to "lead the

---

[2] "The prosecutor in a criminal case shall not . . . Intentionally fail to disclose to the defense, upon request and at a time when use by the defense is reasonably feasible, any evidence or information that the prosecutor knows or reasonably should know tends to negate the guilt of the accused or mitigate the offense." Rule 3.8(e) of the D.C. Rules of Professional Conduct.

[3] The government did not inform the defense that Nordean's phone had been off that day. Counsel learned this fact during a 15-minute-only conversation with the defendant before the hearing on the government's second motion to detain him.  Part of the dishonorable advantage to

2

invasion," when he did not receive that radio until after January 6; and that Nordean kept a "fake passport" which was allegedly found "on the dresser near Nordean's side of the bed." The government has never provided any explanation for these "errors." Nor has it faced any consequence for them, except to the extent that its second detention motion was partly denied on the basis of its misleading claims to the Chief Judge. As a result, the misleading claims have continued and will likely continue.

Similarly, the government's response to Nordean's instant notice does not provide any explanation for why chats from the same device, the same app, and the same group chat window as chats the government used to detain Nordean were not produced until after the April 19 hearing. There is no creditable explanation.[4]

The rest of the government's response tries to show that chats produced after the April 19 detention hearing arguably would not have made a difference. ECF No. 84, pp. 3-13. As shown below, the government is wrong and continues to make misleading factual claims. But it also conflates the *Brady* standards pre- and post-trial. Its view of what constitutes evidence "favorable to the accused" under Rule 5.1 does not mean that chats plainly relevant to the Court's detention decision may be withheld until after the hearing because the government can put forward some argument to dismiss them. As this Court advised the government in *United States v. Safavian*,

---

the government in detaining Nordean pretrial is that it becomes much harder to challenge a stream of inaccurate claims filed in court when his right to counsel is curtailed.

[4] The government says, "given that [the] prosecution of the events at the Capitol is one of the largest in American history . . . there can be little doubt that evidence, including some evidence arguably 'favorable' to the defendants, will continue to be produced in the leadup to the trial." ECF No. 84, p. 2. The investigation may be the largest in American history, but the chat window from which the government made a selective production was not. Chats produced post-hearing were a mere two-second scroll down the chat window.

3

> The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight— as affecting the outcome . . . The question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome [] going forward, but whether the evidence is favorable and therefore must be disclosed . . .Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure.

233 F.R.D. 12, 17 (D.D.C. 2005).

Rule 5.1 later clarified that this obligation runs from arraignment and continues "throughout the criminal proceeding," requiring good-faith production of favorable evidence "as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case." LCrR 5.1(a).

That means that even if the Court agrees with government's interpretation of the evidence it withheld until after the April 19 bail hearing, it was still a violation of Rule 5.1 not to produce it in time for Nordean to use it, when the government could easily have done so. However, the Court should not agree with the government's spin on the improperly withheld evidence:

**Dominic Pezzola**. The government has consistently attempted to connect Nordean and other defendants in this case to Pezzola. The explanation is straightforward: Nordean and others have been charged with a series of legally flawed process crimes of novel statutory application,[5] and, as the government likely understands at this point having reviewed thousands of pages of

---

[5] Motions to dismiss, and related motions, are forthcoming on a reasonable timeline, and Nordean would be grateful if the Court would allow them to be filed before resolving somewhat similar motions in other January 6 cases. As the Court knows, when a defendant is detained it creates delay in pretrial practice as it interferes with his ability to receive legal advice and review facts on a regular basis and for longer than 15-minute intervals. In a complex case involving multiple defendants and conspiracy charges, these limitations present hurdles to Nordean's rights to due process and assistance of counsel. U.S. Const. amend. VI.

4

chats, there was no conspiracy among them to enter the Capitol Building on January 6; protest per se outside the Capitol is not illegal— in fact it is constitutionally protected; there is no evidence these defendants destroyed anything or assaulted anyone, because they did not. Whereas Pezzola notoriously smashed a window of Congress on January 6. Although the government withheld Telegram chats in which Proud Boys members made comments indicating Pezzola was not a "co-conspirator," ECF No. 79, pp. 3-4, the government has responded with the following critical representations:

- Dominic Pezzola was a "member in the MOSD [Ministry of Self Defense]";
- "Pezzola is included as a participant in a Telegram message string for the [MOSD]";
- "Members in the Telegram messages . . . recognized Pezzola as a member of the group prior to media reporting."

ECF No. 84, p. 6.

These claims are either false, misleading or both. The government alleges that the MOSD was not just the silly name of a chat group but a unit of the Proud Boys which devised the conspiracy the government charges. ECF No. 84, p. 3. It would therefore be significant if Pezzola, who smashed a window, were a co-conspirator—in the legal sense—in the MOSD-based conspiracy here. However, the government's representation that Pezzola was a "member in the MOSD" is false. The Court will notice the government cites no evidence in support of its Pezzola claims. ECF No. 84, p. 6. Nordean's counsel asked the government to provide the evidence supporting its representations. In response, the government simply ignored Nordean's question as to its representation that Pezzola was a "member of the MOSD." It cited instead a single document produced in discovery where a person in one Telegram chat appears to acknowledge Pezzola. Nordean then advised the government that this single message does not

5

establish that Pezzola was a "member of the MOSD," nor does it show any criminal agreement between Pezzola and the defendants in this case. The government did not respond.

Its response also omits messages from the MOSD Telegram chat which show members indicating Pezzola was not involved in that chat group or MOSD generally. None of the following messages was produced until after Nordean's bail hearings. For example, on January 15, Telegram MOSD chat members have the following exchange. Claims had been made in the media about the Proud Boys having a plan to enter the Capitol on January 6. One MOSD member asks, "We know that's not what we're about. Even [] the Feds have access to our chats. They know that too. So why the [f]uck are they saying this?"



Another member responds by pasting a link to a Newsweek article reporting on Pezzola's case, which reports that he is a Proud Boys member. In response, a MOSD chat member says, "Dominic Pezzola? Claims to be a 2nd."[6]

---

[6] This is a reference to a second-degree member of the organization, a kind of entry-level role. The MOSD chat indicates the chatters do not know him. Why does one member know what Pezzola "claims"? Because Pezzola appeared at one or two rallies prior to January 6 in an attempt to ingratiate himself. He was not, and is not, a member of the organization, much less a co-conspirator here. The government knows all of this.

6

Commenting on the Newsweek article, a MOSD chat member complains that Pezzola is not, in fact, a Proud Boy, but merely someone "[who] is implying it based on his telegram profile":

> now..NOWHERE does it say he said PB said anything.   He says the group he was with.
> This bitch is implying it based on his telegram profile
>
> 1/15/2021 8:38:40 PM(UTC-8)

> This is bullshit and its libel...at some point we have to collectively go after these media fucks legally
>
> 1/15/2021 8:39:10 PM(UTC-8)

Additional evidence of the falsity of the government's claims regarding Pezzola's relationship with the defendants here is being gathered and will be produced to the Court as soon as possible, even though, of course, this is government's burden, not the accused's.

**Nordean's angry reaction to the conspiracy claim.**  After the April 19 hearing, the government produced chats in which Nordean reacted, in real time, to the very charge on which his bail was revoked, i.e., conspiracy to enter the Capitol on January 6.  The government's rationalizations for why this evidence was withheld until after the bail hearings are disgraceful.  In the chat, Nordean effectively said the notion of a conspiracy was a piece of motivated reasoning by security officials under enormous public pressure to indict protestors immediately on the most serious charge possible before conducting a thorough investigation.  Or, as he angrily put it, conspiracy is a "steaming pile of dogshit."[7]

---

[7] Or, as the former acting U.S. Attorney put it with unusual candor, prosecutors were "ordered" to "build" conspiracy charges before they knew whether conspiracies existed. *Inside the prosecution of the Capitol Rioters*, CBS News, Mar. 22, 2021, available at: https://cbsn.ws/3tMd4eg.

The government's response: it had no duty to tell the Court and defense about this statement because it was "self-serving" and because it was actually just a re-post of someone else's comment. ECF No. 84, p. 6. Never mind the irony: the defendants' "law-enforcement-evading" Telegram chats are per se reliable when allegedly inculpating but "self-serving" when exculpatory. There is something self-serving about that but not in the sense meant by the government. Nor is it clear what point the government tries to make about Nordean's "conspiracy charge is dogshit" chat being a re-post. Of course, had Nordean reposted an allegedly inculpatory message, the government would try to hold him accountable for it. Indeed, it tries to hold Nordean accountable for other people's chats he did not repost or even read.

The government then points to another Nordean Telegram message it withheld: "They're making Biggs look like he was leading the crew into the capital. At this point everyone just needs to stop talking about shit." ECF No. 84, p. 6. This, the government suggests, is self-consciousness of guilt. That is wrong. Set aside the contradiction with the government's immediately preceding point that Nordean's chats in this period were designed to cover his tracks. Had there been a plan to enter the Capitol on January 6 (there was not, as the government likely knows, having reviewed thousands of Telegram pages), the media reports on which Nordean was commenting in self-consciousness of guilt would not be "making Biggs *look like* he was leading the crew into the Capit[o]l"; they would be reporting that Biggs *did* lead the crew inside.[8]

---

[8] The government sees significance in Nordean's comment being made "when discussion of 'sedition' and 'seditious conspiracy' had flooded the media." ECF No. 84, p. 7. It omits that "sedition" had "flooded the media" because the leader of the U.S. Attorney's Office made an attempt to try the defendants in the media and without evidence, while simultaneously stating he is a personal eyewitness to the alleged crime in this case and thus a potential trial witness. https://cbsn.ws/3tMd4eg (former U.S. Attorney on January 6: "It was like a carnival environment. People were selling shirts, popcorn, cotton candy. I saw hot dogs").

8

Next, the government falls back on the same 14-line chat snippet—cherry-picked from among thousands of pages of Telegram messages—that it used to detain Nordean. This is the snippet in which three individuals who are neither defendants in this case nor, apparently, in any case, comment about "normies" turning D.C. to "dust." ECF No. 84, p. 7. First, this non sequitur has nothing to do with the government's withholding of other chats. Second, the government has offered no legal basis to hold Nordean accountable for comments by these people—whom it has never identified despite the defense's multiple *Roviaro* requests.[9]

Finally, the government cites a chat in which Nordean curses the former president for "leading us to believe some great justice was upon us . . . and it never happened." ECF No. 84, p. 8. As the Court knows, this message has no bearing on the government's improper decision to withhold relevant evidence from the Court and the defense. Instead, it was cited to generate click bait for, and smear the defendant in, the media.[10] The government was successful in that regard, using the fruit of an illegal search of the defendant's device to stir up public animus against him.

**Messages inconsistent with the conspiracy claim**. Nordean showed that the government withheld multiple Telegram messages inconsistent with the conspiracy claim. The government's non sequitur response: some of these chats were by a defendant called Nicholas

---

[9] Evidence will likely show that at least one of the three was an informant for the FBI prior to January 6. If true, it would be seriously misleading for the government to be relying on his statements in seeking to demonstrate a risk of future violence by defendants.

[10] The government says it cited this long message because in it Nordean says he is "facing jail time." ECF No. 84, p. 8. But Nordean *is* in jail. That fact does not mean he has committed a crime, as shown by, among other things, the fact that two federal judges rejected the government's detention attempts, one of whom called the charge against Nordean "weak to say the least."

Ochs, who, because he was at that time charged with a misdemeanor, could by definition only make "self-serving" statements. ECF No. 84, pp. 8-9. Undoubtedly, the government is allowed its own interpretation of the Telegram chats, however inconsistent and self-serving it may be. What it is not allowed to do, under the Due Process Protections Act and Rule 5.1, is to withhold the evidence until after the conclusion of a hearing in which they would be used by the defendant on a question relevant to whether he will lose his liberty for a year or more.

**Nordean's chats foreswearing politics and rallying**. The government did not inform the Court or the defense of several January chats in which Nordean repeatedly vowed "bans on rallies"; in which he said, "fuck politics, build communities and local economy"; and in which he endorsed the notion "THE PROUD BOYS ARE NOT MARCHING ON CAPITAL BUILDINGS." The government has no response to this violation of Rule 5.1. It simply cites additional withheld chats which it says go in the other direction. As explained above, that is a feint from its violation of the DPPA and Rule 5.1.

But the government is also wrong about the new chats it cites. First, it cites a series of messages without dates, without images of the original chats, and without Bates numbers. ECF No. 84, pp. 9-10. Absent that information, it is impossible to determine whether the alleged chats preceded or followed the withheld chats showing Nordean foreswearing rallying, just as he did two days before his arrest in February. Second, Nordean's alleged comment that "we aren't gunna stop getting involved in the community," ECF No. 84, p. 9, is not inconsistent with an intent to stop rallying. To the contrary, it is consistent with the January 27 chat that the government withheld from the Court, in which Nordean said, "fuck politics, build communities and local economy":

10



The government says it was right to withhold from the Court and the defense Nordean's chat that "PROUD BOYS ARE NOT MARCHING ON CAPITAL BUILDINGS" because that was merely the reposting of a chat and not Nordean's original words. ECF No. 84, p. 12. Again, this is frivolous, as the government knows. Had Nordean reposted an "inculpatory" chat, the government would not decline to use it as a mere "reposting."

Finally, the government relies on one new chat in which Nordean proposes a February 6 Proud Boys meeting in Leavenworth, Washington. ECF No. 84, p. 10. One of the agenda items is "Uniform change (at rall[ies])." He also says, "We are on the brink of absolute war ….uhuru."[11] This chat, the government appears to imply, means it was right to withhold all the other rally-foreswearing chats by Nordean. Again, the government is entitled to make whatever arguments it wishes however frivolous; it is not entitled to withhold relevant, favorable evidence,

---

[11] "Uhuru" is Swahili for "freedom." The defendants' absurd use of Swahili words gives the Court a sense of the plainly dubious sincerity of comments like "This means war, bitch."

11

which could simply have been produced in time for use in a bail hearing. LCrR 5.1(a). In any case:

- the government fails to inform the Court that the January 20 Leavenworth chat *precedes* the withheld chats where Nordean repeatedly foreswears politics (1/27), rallying (1/21), and not marching on capital buildings (1/21). The Leavenworth chat also *precedes* Nordean's audio statement in February foreswearing rallying. Additional evidence will be presented showing that the meeting in Leavenworth also placed a moratorium on future rallying.

- The government improperly assumes the burden is *on the defense* to somehow disprove the *possibility* of any future political activity. There is no basis in law for that baldly unconstitutional assumption. And even if the assumption were not legally backward, the government would not be entitled to withhold relevant evidence from the Court and the defense.

The government concludes its response by saying Nordean's "notice seeks no relief because defendant is entitled to no relief." ECF No. 84, p. 12. The government is mistaken. The notice sought no relief because Nordean is developing further evidence of the government's misconduct in filing a series of misleading claims in this matter and in withholding evidence so that it cannot be timely used. The government has persuaded the Court to jail a person who is actually innocent of the charge on which detention was based. Because his detention could easily last a year or more, it will seriously interfere with his ability to defend himself against a false charge.

Nordean is also developing evidence showing that the premises for revoking his release order are factually mistaken. For example, although Nordean's leadership role in the Proud Boys

was cited to detain him, he is no longer a leader, in any sense of the word, in that organization, nor does he have any decision-making authority, as sworn statements indicate and will further indicate.  *See* Declaration of Daniel Arellano, dated 5/16/21, Exh. 1.

Dated: May 16, 2021

Respectfully submitted.
DAVID B. SMITH, PLLC

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

**Certificate of Service**

I hereby certify that on the 16th day of May, 2021, I filed the foregoing notice with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Jim Nelson
>Assistant United States Attorney
>555 4th Street, N.W., Room 4408
>Washington, D.C. 20530
>(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068

13

David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*

14