UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ETHAN NORDEAN, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 1:21-cr-175<br>)<br>) **Judge Timothy J. Kelly**<br>)<br>)<br>) |

**DEFENDANT NORDEAN'S MOTION TO REMOVE SENSITIVITY DESIGNATION FROM CERTAIN CAPITOL VIDEOS PRODUCED IN DISCOVERY**

Defendant Nordean, through his counsel, files this motion for an order directing the government to remove sensitivity designations placed on certain media produced in this case pursuant to the Protective Order. ECF No. 103.

In select January 6 cases, the government expressly agrees to remove sensitivity designations from CCTV surveillance footage from inside the Capitol Building. In others, like Nordean's case, it refuses. The government cannot satisfy its sensitivity-designation burden under the Protective Order by allowing the public, the jury pool, and the media to see evidence it deems inculpatory and preventing them from seeing the exculpatory variety. Such selective designation satisfies neither the Order's terms nor the defendant's rights to due process, to an impartial jury, and to assist in his own defense.

**I.    Capitol Building CCTV videos designated Highly Sensitive by the government**

On July 7, the government produced two CCTV videos from the Capitol Building, both designated Highly Sensitive pursuant to the Protective Order: (1) "126 USC 01 Upper West Terrace - 2021-01-06 _14h37min00s0000ms.asf" ("First Upper West Terrace

1

Video"); and (2) "0912 USCS 01 Upper West Terrace Door-2021-01-06_14h37min00s000ms.asf" ("First Upper West Terrace Door Video").[1]

**First Upper West Terrace Video**.  This clip is exactly one minute in length, running from 2:37 p.m. Eastern Time on January 6, to 2:38 p.m. Eastern Time.  It depicts Nordean passing through a Capitol Building entryway hall.  Two law enforcement officers stand aside as Nordean and others proceed into the building.

**First Upper West Terrace Door Video**.  This clip is also exactly one minute in length, running from 2:37 p.m. Eastern Time on January 6, to 2:38 p.m. Eastern Time.  However, this video is from a camera facing the door through which Nordean entered the Capitol Building before passing through the hall seen in the First Upper West Terrace Video.  No law enforcement officers can be seen in this one-minute clip.

The government did not produce these videos showing how Nordean entered the Capitol to the defense on its own initiative.  Instead, an FBI memorandum previously produced to the defense cryptically alluded to Capitol video depicting Nordean's entrance.  Nordean then requested that the government produce the video.  That prompted the government to provide the two videos described above.

After reviewing them, Nordean inquired why separate Capitol videos provided in discovery covered long periods of time and were not edited just to show Nordean, whereas the two entrance videos appear to be tightly edited to exclude the moments just before and after Nordean's entrance.  The government did not respond.  Nordean asked for unedited videos from

---

[1] The government represented to the defense that it has no objection to unredacted verbal descriptions of materials designated Highly Sensitive, but only to public release of the graven images themselves.

2

the same cameras, beginning with the first protestor to enter the Capitol on January 6 and ending after the last protestor entered.

On July 28, the government produced two more CCTV videos from the Capitol Building, both designated Highly Sensitive pursuant to the Protective Order: (1) "126 USC 01 Upper West Terrace - 2021-01-06 _14h20min00s0000ms.asf" ("Second Upper West Terrace Video") and (2) "0912 USCS 01 Upper West Terrace Door-2021-01-06_14h37min00s000ms.asf" ("Second Upper West Terrace Door Video").

**Second Upper West Terrace Video.** This clip is 40 minutes in length, running from 2:20 p.m. Eastern Time on January 6 to 3:00 p.m. The video is from the same camera responsible for the First Upper West Terrace Video. Except, unlike in the shorter First Upper West Terrace Video, at 2:33 p.m., just a few minutes before Nordean enters the building, two police officers open the doors leading from the entry hallway into the Capitol Building. One officer holds the door open as the first protestor enters the building through the Upper West Terrace Door at 2:34 p.m. At 2:35 p.m., two minutes before the clip begins in the First Upper West Terrace Video, a police officer holds a conversation with a line of protestors. Then the officer permits them to enter the building.

**Second Upper West Terrace Door Video.** Also 40 minutes long, this clip runs from 2:20 p.m. Eastern Time on January 6 to 3:00 p.m. The video is from the same camera that captured the First Upper West Terrace Door Video. Except, unlike in the shorter First Upper West Terrace Door Video, at 2:36:06 p.m., less than a minute before Nordean enters the door, a police officer props the door open and moves a box out of the way of protestors entering the building. At 2:43 p.m., a time also outside the scope of the First Upper West Terrace Door Video, a group of officers large enough to block the narrow door to the Capitol Building confer

3

with one another, as the line of protestors calmly waiting to enter grows outside. At 2:44:18 p.m., one of the officers appears to hear something in an earpiece. He then places his hand on the shoulder of a second officer who is speaking to the protestors and leans in to say something to him. The group of officers then permit more protestors to enter the building.

Nordean requested that the government remove the Highly Sensitive designation from all four videos. It declined to do so.

## II.     The Protective Order

The Protective Order provides that "the burden of demonstrating the need for a protective order remains with the government at all times." Protective Order, ECF No. 103, p. 4. "Nothing in [the] Order . . . prevent[s] any party from seeking modification of this Order nor prevent[s] the defense from contesting a sensitivity designation." *Id.*

## III.    Argument

Federal Rule of Criminal Procedure 16(d) gives district courts the discretion to enter protective orders, "subject always to the Sixth Amendment's limitations." *United States v. Cordova*, 806 F.3d 1085 (D.C. Cir. 2015).

The Sixth Amendment guarantees a defendant the right to assist meaningfully in his own defense. *See McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984) ("The [Sixth Amendment] . . . implies a right in the defendant to conduct his own defense, with assistance at what, after all, is his, not counsel's trial."). It also guarantees the right to a trial by a fair and impartial jury. U.S. Const. amend. VI. The Supreme Court has found that the right was violated where, in the months preceding a defendant's trial, "a barrage of newspaper headlines, articles, cartoons and pictures was unleashed against him," which were "delivered regularly to approximately 95% of the dwellings" in the jury pool, the collective result of which was that the "continued adverse

publicity caused a sustained excitement and fostered a strong prejudice" in the jury pool. *Irvin v. Dowd*, 366 U.S. 717, 726 (1961). The defendant in *Irvin* established this with 46 negative headlines. *Id.* at 725. In assessing potential impartial-jury prejudice from negative publicity, courts consider the source of that publicity and whether it derives from government action. *See, e.g.*, *United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991).

According to the government, the reason for restricting Capitol surveillance footage is that it might "result in the release of information regarding the vulnerabilities and security weaknesses of the U.S. Capitol which could be used in a future attack." *United States v. John Anderson*, 21-cr-215, ECF No. 25 (D.D.C. 2021), p. 2. Yet, if that is the case, it is curious that the government itself has made footage from inside the Capitol available online in a request for public assistance in identifying suspects. *See, e.g.*, U.S. Capitol Violence, FBI, http://www.fbi.gov/wanted/capitol-violence. It is curious, too, that Capitol surveillance video has been made public multiple times in connection with the January 6 events, most notably in President Trump's second impeachment trial. *See, e.g.*, *See full video of how insurrection at Capitol unfolded*, CNN, http://www.cnn.com/videos/politics/2021/02/10/security-footage-capitol-riot-plaskett-timeline-impeachment-trial-two-vpx.cnn) (Capitol security video shown at 12:30, 17:30, 21:40, 22:50, 33:40, 34:34). Of course, the government has also included images pulled from Capitol CCTV video in briefs in many of its cases—in order to jail people. *See, e.g.*, Anderson, 21-cr-215, ECF No. 1-1 (D.D.C. 2021), at 3-8.

Consider, too, *United States v. Morss*, 21-cr-40-TNM-5, in which the government did not oppose the release of Capitol surveillance footage to the press and public. On July 19, noting that he had "confirmed that neither the government nor the defense objects to the release," Magistrate Judge Harvey ordered the government to make publicly available several video

5

exhibits that the government submitted in connection with Defendant Morss's detention hearing, including four clips of video from Capitol surveillance cameras. Minute Order of June 19, 2021, *United States v. Morss; United States v. Morss*, Dkt. 91 (indicating Exhibits H, J, and N are clips of surveillance video); *see also* Ryan J. Reilly (@ryanjreilly), Twitter (July 20, 2021), https://twitter.com/ryanjreilly/status/1417540426169556993 (publishing the video clip designated as Exhibit L, which likewise appears to be Capitol surveillance footage).

The four Capitol surveillance video clips released in the *Morss* case depict activity in the tunnel leading to the Lower West Terrace doors to the U.S. Capitol. *See* Gov't's Mem. in Supp. of Pretrial Detention at 12-17, *United States v. Morss*, Dkt. 80. Those are the doors immediately below the Upper West Terrace door at issue in Nordean's case.

The government's own public use of Capitol video underscores the reality that the layout of the Capitol is no state secret. Which is why the government has no objection to highly detailed verbal descriptions of the video.

Conversely, even as the government refuses to remove sensitivity designations from the exculpatory videos it has produced to Nordean, it does not object to the media's requests for videos in this case which the government regards as inculpatory. The Court will recall that the press group moved for public release of a video depicting Nordean allegedly "shaking" a fence outside the Capitol. The government was pleased to permit the Court to grant the media's request, though one might assume that the "vulnerability" of the fencing could also be described as a security issue.

Therefore, on the government's side of the protective order equation, the Court will see it taking inconsistent and self-serving positions on the supposed need to deny the public access to highly relevant Capitol CCTV video. On Nordean's side, however, the Protective Order is

infringing on substantive rights. Currently, he cannot even view materials designated Highly Sensitive under the Protective Order. That is because his detention facility does not offer the "cloud-computing" options the Order requires in order for incarcerated defendants to view evidence in their own case "without downloading it." In the government's latest status report, it represents it is "willing to work with" Nordean to satisfy the Order's viewing requirements. ECF No. 126, p. 3. Nordean has asked the government to propose a solution to this problem for weeks. For just as long, the government vaguely responds it is "willing to work with" Nordean—without proposing any means by which he can view the Highly Sensitive Capitol videos at issue. That is infringing on Nordean's right to assist in his own defense. *McKaskle*, 465 U.S. at 174. He is unable to even view the videos to confer with counsel about potentially relevant elements that counsel (not having been at the Capitol that day) may miss.

Secondly, by taking actions to facilitate the media's collection of video clips that the government believes advance its case and to deny the press's access to exculpatory video (even as it removes sensitivity designations on Capitol video in other cases, where it helps the government), the government is actively managing the negative publicity that threatens Nordean's right to an impartial jury. *Irvin*, 366 U.S. at 726. In that way, it is not unlike the former D.C. U.S. Attorney's interview on primetime television, where he previewed various legal theories that January 6 defendants were probably guilty of, based partly on his personal eyewitness experience.

All of these reasons account for why this Court recently ordered the government to remove a Highly Sensitive designation from Capitol CCTV video, over its objection. *United States v. John Anderson*, 21-cr-215, ECF No. 37 (D.D.C. 2021). The video in that case was from a camera on the entrance to the Lower West Terrace of the Capitol Building on January 6. Not

only is that entrance immediately adjacent to the entrance depicted in the four videos at issue here, the clip in *Anderson* took place at the same time, i.e., around 2:45 p.m.

The entrance to the Capitol Building at the Upper West Terrace is not a state secret. The government itself has used Capitol CCTV footage in January 6 cases and in an impeachment trial. Yet it refuses to allow Nordean and the public to view exculpatory Capitol video even as it consents to the release of Capitol video it deems inculpatory. None of that satisfies the government's burden under the Protective Order. Accordingly, the government should be required to remove the sensitivity designations from the First Upper West Terrace Video, the First Upper West Terrace Door Video, the Second Upper West Terrace Video, and the Second Upper West Terrace Door Video.

Dated: July 29, 2021                                Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

**Certificate of Service**

I hereby certify that on the 29th day of July, 2021, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> Jim Nelson
> Assistant United States Attorney
> 555 4th Street, N.W., Room 4408
> Washington, D.C. 20530
> (202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*
