**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number 21-cr-175-1 (TJK)** |
| **ETHAN NORDEAN,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT**
**ETHAN NORDEAN'S MOTION TO REOPEN BAIL HEARING**

On April 19, 2021, after extensive briefing, oral argument, and the Court's detailed findings, the Court ordered Defendant Ethan Nordean detained pending trial under the Bail Reform Act, 18 U.S.C. § 3142, based on the Court's finding of clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. *See* ECF 71 (Transcript of Oral Ruling, Apr. 19, 2021) at 58:5 – 58:10; Doc. 65 (Detention Order). The D.C. Circuit affirmed this Court's decision. ECF 107. Defendant now moves the Court to reopen his detention hearing and asks the Court to order his release. ECF 122.

The Court should deny Defendant's motion because Defendant fails to meet the standard for reopening a detention hearing—that is, he fails to show that "information that was not known to the movant at the time of the hearing *and* that has a material bearing on the issue whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community."  18 U.S.C. § 3142(f) (emphasis added). Nearly all of the information presented in Defendant's motion was known to Defendant at the time of the detention hearing, and the remaining "new" information identified by Defendant is simply not "material" to the detention decision.

Indeed, much of Defendant's motion is devoted to recycled challenges to the sufficiency of the Indictment, which are no basis for the relief sought here. Defendant's reference to other detention rulings in other cases is also misplaced—those decisions are not grounds to reopen the hearing in this case, and, in any event, do not support Defendant's claim that the Court's ruling in this case should be reversed. Moreover, although Defendant has the critical right to review discovery and confer with counsel, his complaints in that regard do not provide a basis to reopen the detention hearing, let alone order his release.

This Court has gone to great lengths in considering whether Defendant—as well as his three co-defendants—should be released pending trial, and the Court has rightly determined that detention is necessary and appropriate. Nothing in Defendant's motion—including the purportedly new "release condition options"—supports his claim that the Court need revisit that determination.

## I.    Relevant Legal Authority

Under the Bail Reform Act, a detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure . . . the safety of the community." 18 U.S.C. § 3142(f). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

Previously available information—even if "material"—is not grounds to reopen a detention hearing. *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision." *United States v. Worrell*, No. 21-cr-292-RCL, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a

2

"material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential").

## II.    Defendant Does Not Offer New Information that has a Material Bearing on the Bail Reform Act Factors Considered by the Court.

Defendant cites several categories of purportedly "new" information in support of his request to reopen the detention hearing. As explained below, much of this information was known to Defendant prior to this Court's detention decision and therefore provides no grounds to reopen the hearing. The remaining information does not have a material bearing on the ultimate issue of detention and thus cannot justify reopening the detention hearing, let alone releasing Defendant.

### A.    Any Change in Defendant's Title Within the Proud Boys Organization Was Known to Defendant at the Time of the Detention Hearing and, in Any Event, is Not Grounds for Reopening the Hearing.

Defendant asserts (at 3) that the declaration of Daniel Arellano, which was filed on May 16, 2021, includes new material uncovered through investigation after the detention hearing, and that the affidavit rebuts any claim that Nordean occupies a current leadership role in the Proud Boys. These assertions do not have a material bearing on detention. But even if they did, the information would have been "known to the movant at the time of the hearing." 18 U.S.C. § 3142. The declarant first states that he replaced Nordean as the president of Proud Boys Seattle Chapter (PBSC) "by vote of the chapter membership *in February 2021*." ECF 85-1 at ¶ 1 (emphasis added). Such information was known to the movant in April 2021. The declarant next states that Proud Boys Pacific Northwest Region (Proud Boys PNW), including PBSC, elected to "disassociate itself from national Proud Boys organization and leadership *as of February 2021*." *Id.* at ¶ 4 (emphasis added). This too would have been known to the movant in April 2021.

The declarant further states that Defendant had not been a "participant in any Proud Boys Internet communications[]$^1$ *since his arrest in February 2021*." *Id.* at ¶ 5 (emphasis added). Such information, if accurate, was certainly known to Defendant in April 2021 and thus not a basis to reopen the detention hearing. Even if this information were "new," however, nothing in the affidavit suggests that Defendant's clout within the Proud Boys organization has waned by virtue of his change in title. Accordingly, the purportedly "new" information is hardly "essential to, or capable of significantly affecting, the detention decision." *Worrell*, 2021 WL 2366934, at *9.

### B. Defendant's Alleged Rejection of Political Rallying Was, At Best, Reluctant and Temporary and Does Not Merit Reopening the Detention Hearing.

Defendant cites (at 4) purportedly new information in the form of audio messages that Defendant claims "show his lack of intent to rally in the future." However, as discussed at length by the Government in earlier filings, the context shows that Nordean reluctantly agreed only to put a three-month pause on rallies. ECF 84 at 9-12. Indeed, this was precisely the concern cited by this Court when it addressed the same issue in its detention order. ECF 71 at 55:19-55:23 ("The audio clip of Nordean does suggest that, at some point, he agreed that the Proud Boys should stop rallying, but *without any further context there's no indication that that was some kind of permanent decision*.") (emphasis added).

Public reports indicate that at least some Proud Boys chapters, including those in the Proud Boys PNW, have resumed public rallying after the three-month hiatus. *See* "Oregon City cancels Proud Boys permit following June 18 riot," Oregon Public Broadcasting, *available* at

---

[1] The Government notes its skepticism that anyone could have the omniscience to make this assertion. First, the chapter's disassociation with all but those chapters in the PNW would seem to limit the declarant's basis of knowledge. Second, even if the chapter president could have visibility into Defendant's communications, the declaration is specifically limited to "Internet communications." Both of these issues underscore the complexity in monitoring Defendant's communications were he to be released, which this Court recognized in ruling that detention was necessary.

https://www.opb.org/article/2021/06/23/oregon-city-proud-boys-permit-cancelled-riot/ (reporting the cancellation of a permit for the use of a public park following a violent clash between a group of Proud Boys and "antifascists"). The Government also notes that—to this day—Defendant Nordean has not expressed regret or remorse about his actions or the conduct of his group on January 6. To the contrary, Defendant made clear in the immediate aftermath that he would "never stop":

> Ok so let's let the government take our lives away and do nothing...stunning and Brave
>
> They're coming for you no matter what you [guys]. Wake the hell up. I'm not gunna be sitting on my ass waiting for the end
>
> I'm gunna press on with some smart level headed non emotional guys and create a game plan for how to approach this year, we aren't gunna stop getting involved in the community, especially with the momentum we have and if your worried about getting arrested and think that doing nothing will remove that threat you're fooling yourselves. I've had this conversation with guys like this for 3 years and every year you all get worked up and wanna hide. We can be smarter, train, plan etc...but we will never stop. Get on board or move aside.

These statements underscore Defendant's dangerousness, which this Court has addressed at length and which Defendant's motion fails to rebut.

**C.  *The Video Cited By Defendant Does Not Show He was "Permitted" to Enter the Capitol, and It is Not Grounds to Reopen the Detention Hearing.***

The Government has submitted the videos described by the Defendant (at 5) to the Court for its consideration. *See* ECF 131. As the Government has previously stated, the Government disputes the Defendant characterization of the video, which depicts outnumbered Capitol Police officers overrun by rioters, including the Defendant, unlawfully entering the Capitol building. As the video depicts, the Defendant is one of scores of rioters who walk past a few outnumbered officers.

Moreover, the time, place, and manner of Defendant's entrance into the building were (i) known to Defendant Nordean at the time of the detention hearing in April, and (ii) not material to the detention decision. Despite Defendant's efforts (at 5) to distort the Government's arguments, the Government's detention arguments and the Court's decision focused predominately (if not exclusively) on Defendant Nordean's leadership and command of others and his and others' conduct outside the Capitol.[2] Defendant's subsequent entry into the Capitol, after it had been overrun by rioters, was in fact not a substantial factor in the Court's detention analysis.

### D. As Previously Established, the Telegram Chats cited by the Defendant Are Inculpatory and Consistent with the Government's Evidence.

The Government has previously addressed Defendant's contention that additional Telegram messages recovered from Defendant Nordean's phone are exculpatory or have material bearing on the detention decision issued by this Court. *See* ECF 84. As with Defendant's assertion about his decision to forego rallying, the Telegram messages, when considered in context, only underscore the danger that Defendant poses to the community. *Id.*

The Government also notes that the Court had been presented with all of the additional Telegram messages and Defendant Nordean's arguments well before the Court heard argument and ordered co-defendant Charles Donohoe detained on June 23, 2021. This underscores the point that these purportedly "new" Telegram messages do not have any material bearing on the Court's analysis of the detention issues.

---

[2] Defendant feigns confusion over the Government's delay in producing the "Highly Sensitive" Capitol surveillance footage. Defendant fails to remind this Court that Defendant was the lone holdout on entering the proposed Protective Order. Indeed, Defendant was the first of the co-defendants to receive a draft of the Protective Order on March 31, 2021, and Defendant received a revised draft, per his request, on April 13, 2021. Defendant did not consent to the entry of an interim Protective Order until June 28, 2021.

### III.    Defendant's Legal Arguments About the Sufficiency of the Indictment are Incorrect and Provide No Basis for Relief.

Defendant asserts that because the Superseding Indictment does not explicitly allege a conspiracy between Pezzola and Nordean, Nordean cannot be held liable for Pezzola's acts under *Pinkerton v. United States*, 328 U.S. 640 (1946). Motion at *11-15. Defendant further suggests that the failure to identify *Pinkerton* liability in the Indictment violates the grand jury clause of the Fifth Amendment. *Id.*

Defendant previously raised these exact arguments in a surreply filed before the nearly two-hour long detention hearing on April 6, 2021. *See* ECF 49-1 at *5-7. While Defendant has added legal research, the arguments are the same. As before, Defendant ignores the plain language of the Indictment. The grand jury returned an Indictment that charges Defendant Nordean and three co-defendants with destruction of government property that "caused damage to the [Capitol] building in an amount more than $1,000." Indictment at ¶ 74 (Count Four). The parties have filed motions and presented arguments as to whether the Indictment triggers the need for a detention hearing, and this Court has specifically ruled on the issue. Oral Ruling at 11:2 – 13:10.

As he attempted to do before, Defendant argues that the Indictment is Constitutionally defective because it fails to present "essential conspiracy and *Pinkerton* elements to the grand jury in violation of Nordean's Fifth Amendment right." Motion at *11. There is no such requirement. Defendant appears to conflate the statutory crime of conspiracy with common law theories of vicarious liability for substantive offenses. Conspiracy is an inchoate offense that, by itself, is punishable under 18 U.S.C. § 371. In contrast, the *"Pinkerton* doctrine is a means of apportioning criminal responsibility for the commission of substantive offenses." *United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010).

Under *Pinkerton*, Defendant and his co-conspirators are criminally responsible for the actions taken by other co-conspirators that were foreseeable and in furtherance of the conspiracy. *See Pinkerton*, 328 U.S. at 647. There are no Due Process or other Constitutional defects when applying a *Pinkerton* theory of liability to prove a substantive offense—even when (unlike here) no conspiracy has been charged in the indictment. *See United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) ("a conspiracy need not be charged in order for *Pinkerton*'s doctrine to apply"); *United States v. Chairez*, 33 F.3d 823, 827 (7th Cir.1994) ("[T]he absence of a conspiracy charge does not preclude the district court from applying a Pinkerton theory ... if the evidence so suggests."). This result is axiomatic—one need only consider that the "function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them." *United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991) (explaining that the inclusion of a murder as an overt act in a drug conspiracy "was enough to alert the defense to the prospect of a *Pinkerton* theory"); *see also Thomas v. United States*, 748 A.2d 931, 934 (D.C. App. 2000) ("Indictments do not recite the government's theory of proof, which is what the *Pinkerton* theory is.").

The *Pinkerton* theory of liability is thus neither an "essential element" of any offense charged in the Indictment, nor a separate offense. For this reason, every circuit to consider the issue has concluded that a court does not "constructively amend an indictment by giving a *Pinkerton* instruction [even] when *Pinkerton* liability has not been charged by the grand jury." *Ashley*, 606 F.3d at 143 (citing *United States v. Zackery*, 494 F.3d 644, 647–49 (8th Cir. 2007); *United States v. Budd*, 496 F.3d 517, 527–28 (6th Cir. 2007); *United States v. Creech*, 408 F.3d 264, 273 (5th Cir. 2005); *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001); *United States v. Macey*, 8 F.3d 462, 468 (7th Cir. 1993); *United States v. Sanchez*, 917 F.2d 607, 612 (1st Cir.

1990); *United States v. Jackson*, 627 F.2d 1198, 1216–17 (D.C. Cir. 1980); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); *United States v. Roselli*, 432 F.2d 879, 895 (9th Cir. 1970)).[3]

Defendant also asserts that the Superseding Indictment fails to present an "element" that "increases the penalty" for the destruction of property crime—here, 18 U.S.C. § 1361. However, as this Court noted during oral argument and in rendering its decision (*see*, *e.g.*, Oral Ruling at 11:2 – 11:20), the Superseding Indictment plainly alleges that the destruction of property charged in 18 U.S.C. § 1361 caused more than $1,000 in damage. Specifically, the Superseding Indictment returned by the grand jury found that the defendants' actions, along with "others known and unknown, aided and abetted others known and unknown to forcibly enter the Capitol and *thereby caused damage to the [Capitol] building in an amount more than $1,000*." Indictment at ¶ 74 (emphasis added). Thus, the essential "elements" for purposes of bringing the destruction of property statute within the ambit of 18 U.S.C. § 3142(e)(1)(C) and 3142(f)(1)(A) plainly appear in the Indictment.

While Defendant has now backed away from the claim that Dominic Pezzola is not a Proud Boys member (USCA Case #21-3022, Doc. 1896980 at n.2), Defendant persists in arguing that the Government has based its conspiracy allegation on the "bare allegation that Pezzola was a 'Proud Boys member.'" ECF 122 at 14. Defendant's repeated attempts to mischaracterize the Government's argument and his refusal to engage with the real facts of the case reveal the

---

[3] For substantially the same reasons, Defendant's arguments concerning the "essential elements of the aiding and abetting offense" also fail. *United States v. Ashley*, 606 F.3d at 143 ("It is settled that vicarious liability predicated on having aided or abetted the crimes of another need not be charged in an indictment.") (citing *United States v. Wills*, 346 F.3d 476, 495 (4th Cir. 2003). In this case, the defendants are charged as principals and also under an aiding and abetting theory. There is no Constitutional defect in the charging instrument.

weakness of his argument. The Court has previously addressed the question of Pezzola's co-conspirator status and rejected Defendant's argument. Oral Ruling at 35:4 – 36:15 (noting, among other things, co-defendant Donohoe's report to the group that they "got a riot shield."). As the Government has most recently summarized:

> Pezzola is included as a participant in a Telegram message string for the Ministry of Self Defense. Also, as described in the government's detention memorandum for co-defendant Donohoe, Donohoe was seen carrying a riot shield with Pezzola around the same time Donohoe reported in the Telegram messages, "Got a riot shield." Members in the Telegram messages, including Donohoe, recognized Pezzola as a member of the group prior to media reporting. Moreover, in the Telegram messages recently produced to Defendant, Person-2 and others shared links to online fundraisers for Pezzola following his arrest.

ECF 84 at 6. Count Four is legally sound, and Defendant and his co-defendants can be held to account for co-conspirator Pezzola's actions under a *Pinkerton* theory of liability.

## IV.    The Bond Decisions of Other Defendants are Not a Basis to Reopen the Detention Hearing or Release Defendant.

In asking this Court to reopen his detention hearing and order his release, Defendant points to other detention decisions in this district and claims that he is being subjected to disparate treatment. As an initial matter, Defendant provides no support for his claim that other detention decisions regarding other defendants can or should provide a basis to reopen this hearing, let alone reverse this Court's well-considered determination.

In any event, Defendant's argument fails on its own terms.  In arguing that he should be released, Defendant (at 17-19) focuses primarily on cases in which other defendants are alleged to have committed violent acts but were nonetheless released pending trial.  But the D.C. Circuit recently rejected another defendant's similar claim "that because he did not commit violence on January 6, he should not be found to pose a danger to the community." *United States v. Hale-Cusanelli*, --- F.4th ---, 2021 WL 2816245 (D.C. Cir. July 7, 2021) (discussing *United States v.*

*Munchel*, 991 F.3d 1273 (D.C. Cir. 2021)).  As the Circuit explained: "We did not hold in *Munchel* that only those persons who participated in violence on January 6 could properly be considered as posing a future danger to the community justifying pretrial detention." *Id. at *5*. Rather, as the Circuit explained, "[t]he point of *Munchel* was that everyone who entered the Capitol on January 6 did not necessarily pose the same risk of danger and the preventive detention statute should apply to the January 6 defendants the same as it applies to everyone else."

As this Court is aware, and as *Munchel* and *Hale-Cusanelli* reinforce, the Bail Reform Act contemplates an individualized assessment. *See* 18 U.S.C. § 3142(g) (factors to be considered in ruling on detention). The Court vigorously engaged in such an assessment here, and recent decisions about the crimes of others do not address any facts or circumstances that are material to this Court's ruling regarding Defendant and certainly do not provide a basis to reopen the detention hearing.

### V. Defendant's Access to Material While Incarcerated is Not a Basis to Release Defendant

Defendant's claims regarding access to discovery and counsel fail to justify the requested relief. At the outset of his brief (at 2), Defendant claims that "[p]retrial detention is degrading his Fifth and Sixth Amendment rights, as [he] is unable to view nearly any evidence in his case or to virtually confer with counsel," and "[t]he amount of complex discovery he must review is enormous." For these reasons, among others, Defendant asserts that "he should be released so that he can adequately prepare for trial against novel claims the government has never before charged." *Id.* To be sure, Defendant is entitled to access the discovery produced in this case and also entitled to the opportunity to confer with counsel. But Defendant cites no authority suggesting that his complaints justify reopening the detention hearing and ordering his release. Indeed, the concerns

raised by Defendant are entirely independent of the factors this Court must analyze in making a detention decision under the Bail Reform Act.[4]

To the extent Defendant is presenting an argument that the length of his detention violates his constitutional right to due process, his argument fails. In *Salerno*, the Supreme Court held that the Bail Reform Act, which permits pretrial detention in certain "carefully limited exception[s]," facially comports with Due Process because it serves a regulatory purpose and is not punitive in nature. *United States v. Salerno*, 481 U.S. at 748, 755 (1987). The Supreme Court, however, has expressed "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747, n.4. Even so, the time that Defendant has spent in pretrial detention does not remotely approach that threshold. *See United States v. Federico Klein*, No. 21-cr-236-JDB, 2021 WL 1377128, at *13 n.11 (D.D.C. Apr. 12, 2021) (citing *Sharps v. United States*, 246 A.3d 1141, 1157-58 n.89 (D.C. 2021) (collecting cases); *see also United States v. Bikundi*, 73 F.Supp.3d 51, 55 (D.D.C. 2014) ("The defendant has presented no new evidence of any changed circumstances, aside from the passage of time, that would warrant revisiting this Court's prior ruling.").

## VI.    Defendant's Proposed Conditions Are Not Sufficient to Protect the Community.

This Court has substantially considered, and rejected, the conditions of release proposed by Defendant. The gilded cage approach proposed by Defendant was certainly known to Defendant

---

[4] As the Government has noted elsewhere, *see* ECF 126, it is the policy of the United States Marshal's Service to detain defendants in the jurisdiction in which they are charged. Although the Government has not communicated with the Marshals Service regarding Defendant's potential transfer, the Government expects that the policy of the Marshals Service will result in his eventual transfer to the District of Columbia. As the Government previously noted, the D.C. Department of Corrections has robust procedures governing access to defense counsel and the review of discovery materials, including provisions that facilitate Defendants' access to voluminous electronic evidence.

prior to the detention hearing. Indeed, the Court allowed Defendant to put his proposal on the record during the Court's ruling. *See* ECF 71 at 61:6 – 67:12 ("What [you, Mr. Smith] are asking me to do is consider [] more information about my ruling . . . when, all along, for [] quite a while now you've had the opportunity to clarify these points [*i.e.*, release conditions] before."). The only substantially new development is Defendant Nordean's apparent influx of $980,000 to offer as a secure bond. Defendant has not offered the Court any information about the source of these funds, and the sudden windfall raises more questions about Defendant's continuing power and clout than it resolves.

<u>**CONCLUSION**</u>

For the reasons set forth herein, Defendant's Motion to Reopen Bail Hearing should be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:  */s/ Jason McCullough*
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
LUKE M. JONES
VA Bar No. 75053
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7233
jason.mccullough2@usdoj.gov