**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:21-cr-175 |
| | ) |
| ETHAN NORDEAN, et al., | ) **Judge Timothy J. Kelly** |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT NORDEAN'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO REOPEN BAIL PROCEEDINGS**

Of the approximately 565 defendants charged in the January 6 cases, 63 or fewer are still being held pretrial, or at most 11%.[1]  Of those detained, most stand accused of assault, violence, or threats, unlike Nordean. The government's opposition to his motion to reopen bail proceedings objectively fails to show that he is similar to any other defendant in that tiny cohort where pretrial detention for a year or longer might be deemed consistent with the Bail Reform Act.  Nordean's ability to adequately prepare for trial while incarcerated amid Covid-19 jail restrictions is nil.  The government has made no showing of articulable dangerousness.  It does not deign to explain to the Court why the inordinately strict conditions of release proposed by Nordean could not even "reasonably" assure public safety.

Over and above the standard reasons for granting Nordean's motion, the Court must consider the misconduct that has marked the government's handling of this issue.  It threatens the integrity of the proceedings. The Court directed the parties to jointly determine whether

---

[1] See Zoe Tillman, BuzzFeed News, (@ZoeTillman), Twitter (August 6, 2021), https://twitter.com/ZoeTillman?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor.

1

Nordean's conditions of confinement would accommodate access to counsel sufficient to adequately prepare for a trial on novel legal charges in a large multi-defendant conspiracy case. The government then cut out the defense, held ex parte communications with the jail, and then misrepresented those one-sided conversations to the Court.   ECF No. 127.  Previously, the government had withheld mitigating detention-related information from the defense until after Nordean's bail was revoked: absent his breach of any release condition.

Regarding Nordean's offer of a secured bond in the amount of $1 million in cash, the government insinuated impropriety: the "sudden windfall raises more questions about Defendant's continuing power and clout than it resolves." ECF No. 134, p. 13.  Notice the shameless "raises questions" formula.  Directly after the government filed the innuendo, many media outlets reported that Nordean had improperly raised funds to support his release from pretrial incarceration.  After all: federal prosecutors, whose power comes with professional responsibilities, said so.  The government was then provided a sworn statement from the Defendant's father, stating that the bail funds actually constitute the father's life savings; that his life savings are not illegal or improper in any way; and that insinuations to the contrary in the government's public brief are false and misleading.  See Decl. of Michael Nordean, Aug. 4, 2021, Exh. A.  Nordean asked the government to correct its misleading insinuation to this Court, its obligation under the D.C. Rules of Professional Conduct.  It refused.  Media reports based on the government's unfounded insinuation continue to multiply in traditional and social media, even as the government is in possession of evidence demonstrating the falsity of its insinuation of improper behavior.  That conduct is beneath the dignity of its office.

Before the government filed its opposition, Nordean repeatedly wrote the government requesting that it confer with him about the heightened and strict conditions of release he has

proposed so he could tailor his proposal to the government's purported concerns about public safety.  The government did not deign to respond.

That is because, to the government, "conditions" are beside the point.  Nordean must remain in jail no matter what the law requires.  The point is to punish a presumptively innocent person, and to squeeze him to confess to charges the government has created for one set of defendants alone and to crimes he did not commit.  He will not do that.  He must be allowed to adequately defend himself.  The government's actions here threaten to disfigure Bail Reform Act law.

**Argument**

**I.      Nordean's case does not "involve" an offense listed in § 3142(f)(1); he is detained without legal warrant; the Court did not previously consider Grand Jury presentment and the government implicitly conceded a presentment error following revocation of Nordean's bail**

Nordean's case does not "involve" an offense listed in § 3142(f)(1) because:

(1) he has a Fifth Amendment right not to be "held to answer" for a felony offense "unless on a presentment or indictment of a Grand Jury," U.S. Const. amend. V;

(2) to satisfy the presentment requirement, an indictment presented to the Grand Jury must allege all essential elements of the felony offense and evidence must be adduced to show probable cause that those elements are satisfied;

(3) "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt," *Alleyne v. United States*, 570 U.S. 99, 103 (2013) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 500 (2000)), and therefore must be alleged in the indictment and presented to the Grand Jury, *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 1783 (2002) ("In federal prosecutions, [*Apprendi*] facts must also be *charged in the indictment*.") (emphasis added);

3

(4) In the status conference on July 15, the government acknowledged for the first time that the over-$1,000-in-property-damage charge constituting the sole basis for Nordean's detention under § 3142(f)(1) rests on Dominic Pezzola's window-smashing alone, i.e., Pezzola's window was the sole evidence putatively presented to the Grand Jury in connection with the FSI for the allegation of *over $1,000* in property damage attributable to Nordean;

(5) However, the FSI does not "*charge[] in the indictment*," *Cotton,* 122 S. Ct. at 1783, that Pezzola was a party in agreement with the § 371 conspiracy alleged in the FSI.  FSI, ¶ 62. "The crime of conspiracy focuses on agreements, not groups." *United States v. Martin*, 618 F.3d 705, 735 (7th Cir. 2010).   Agreement to commit a crime against the United States is an element of the conspiracy offense.  § 371.  Thus, the government did not present such a charge of Nordean's alleged conspiracy liability for Pezzola's window-smashing to the Grand Jury.  To "hold him to answer" for that crime would therefore be in violation of his Fifth Amendment presentment right.  *Cotton,* 122 S. Ct. at 1783.  Accordingly, his case does not "involve" an "offense" or "crime" listed in § 3142(f)(1) as they are all felony offenses, and property destruction is not a felony unless it exceeds $1,000 in damage.  18 U.S.C. § 1361;

(6) Even if the FSI had "charged in the indictment" that Pezzola was a party to the FSI's conspiracy, *Cotton,* 122 S. Ct. at 1783, Section 371 carries a statutory maximum sentence of five years; but if Nordean is held vicariously liable for Pezzola's over-$1,000-window-smashing under the *Pinkerton* doctrine, the statutory maximum would be 10 years.  § 1361.  Thus, the alleged facts establishing Nordean's *Pinkerton* vicariously liability for the broken window are facts that "by law, increase[] the [statutory] penalty for a crime," are therefore an "element" of the crime that "must be submitted to the jury and found beyond a reasonable doubt," *Alleyne*, 570 U.S. at 103, and must also be "charged in the indictment" and presented to the Grand Jury.

*Cotton,* 122 S. Ct. at 1783.  The FSI does not allege any *Pinkerton* facts in the indictment.[2]

Therefore, to "hold him to answer" for that increased penalty would be in violation of his Fifth

Amendment presentment right.  Thus, Nordean's case does not "involve" such an "offense" or

"crime."  § 3142(f)(1).

(7) Finally, the FSI charges Nordean with aiding and abetting property destruction under

§ 1361.  However, as he has explained many times, Section 1361 contains both a misdemeanor

offense, *for which the statutory maximum is one year*, and a felony offense, *for which the*

*maximum is 10 years.*  The offense is a felony only when damage exceeds $1,000.  § 1361.

Thus, whether Nordean aided and abetted an offense causing property destruction *over $1,000* is

a fact that "by law, increase[] the penalty for a crime," is therefore an "element" of the crime that

"must be submitted to the jury and found beyond a reasonable doubt," *Alleyne*, 570 U.S. at 103,

and therefore must also be "charged in the indictment." *Cotton,* 122 S. Ct. at 1783.  Again, the

government conceded, during the July 15 status conference, that the only basis for alleging

Nordean's responsibility for *over $1,000 dollars* in property damage is Pezzola's window-

smashing.  However, the FSI does not allege aiding and abetting facts that would increase

Nordean's statutory maximum penalty under § 1361: that Nordean (1) took an affirmative act in

furtherance of the window-smashing; and (2) with the intent of facilitating that specific offense.

*Rosemond v. United States*, 572 U.S. 65, 71 (2014).  To the contrary, the FSI *does not even*

*reference Nordean in connection with Pezzola's window-smashing.*  FSI, ¶ 62.

---

[2] That is, that (1) while Pezzola and Nordean were members of the conspiracy charged in the
FSI, (2) Pezzola depredated federal property, (3) in furtherance of the conspiratorial objectives in
the FSI, (4) which property offense was reasonably foreseeable to Nordean. *United States v.
Washington*, 106 F.3d 983, 1011 (D.C. Cir. 1997).

Nothing in the government's opposition rebuts any of this.  The cases it cites either predate *Apprendi-Cotton-Alleyne* or else do not even concern Fifth Amendment presentment. ECF No. 134, pp. 7-10.  First, the government does not even contest the point that the FSI fails to allege that Pezzola was a party to *the FSI's § 371 conspiracy*.  That is an argument forfeiture. *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (party's failure to address a clearly briefed argument constitutes a forfeiture of the issue).

Second, the government contends that *Pinkerton* allegations never have to be found beyond a reasonable doubt by a petit jury, and therefore never have to be presented to the Grand Jury in a felony indictment (*Cotton,* 122 S. Ct. at 1783), as *Pinkerton* is merely a "common law theor[y] of vicarious liability for substantive offenses." ECF No. 134, p. 7.  Perhaps the government's research into the issue did not locate the relevant case law because it only ran word searches using the word "Pinkerton" rather than "vicarious liability" and "reasonably foreseeable," i.e., a key element of vicarious liability.  *See*, *e.g.*, *United States v. Ellis*, 868 F.3d 1155, 1181 (10th Cir. 2017) (holding that, following *Alleyne*, "district court committed plain error . . . by failing to obtain the jury's findings on the conspiracy's cocaine amounts reasonably foreseeable to [the defendant]" under *Pinkerton* liability); *United States v. Collins*, 415 F.3d 304, 314 (4th Cir. 2005) (holding that, after *Apprendi*, jury must find *Pinkerton* elements beyond a reasonable doubt when determining the amount of drugs attributable to any one defendant in the conspiracy *because of the statutory maximums and mandatory minimums* of Section 841).

The government does not understand that the issue is whether it alleges facts that *move mandatory minimum and maximum sentences*—and as a result the cases it cites have no bearing on the *Appendi-Cotton-Alleyne* question.  The issue here is not whether a court "constructively amends" an indictment by giving a *Pinkerton* jury instruction when it is not explicitly charged in

the charging instrument.  ECF No. 130, p. 8 (citing *United States v. Ashley*, 606 F. 3d. 135, 143 (4th Cir. 2010)).[3]  That is because Nordean does not claim that *Pinkerton* facts must *always* be charged in an amendment.  The point is that, in a federal prosecution under *Apprendi-Cotton-Alleyne*, *any* facts—including vicarious liability facts—must be proven beyond a reasonable doubt to the petit jury, and must be presented to the Grand Jury for felony charges, *when they either increase the mandatory minimum or statutory maximum sentence for a crime.  Alleyne*, 570 U.S. at 103; *Apprendi*, 530 U.S. at 500.  Consider that *Pinkerton* vicarious liability need not always increase the statutory maximum sentence.  If a conspiracy is charged under § 371, which carries a five-year maximum sentence, and the defendant is held vicariously liable for the substantive crime of a co-conspirator on an offense carrying the same maximum, the *Pinkerton* facts do not increase the statutory maximum sentence on the conspiracy charge.  Thus, they do not implicate *Apprendi-Cotton-Alleyne*.  However, here, the *Pinkerton* liability solely responsible for Nordean's detention *does* increase the statutory maximum sentence from five years (§ 371) to 10 years (§ 1361).  And the aiding and abetting facts responsible for his detention increase the statutory maximum sentence from one year (less than $1,000 damage) to 10 years (over $1,000 in damage).  § 1361.  Thus, the FSI was required to charge these facts and present them to the Grand Jury.  It did not.  The government's case citations have nothing to do with the presentment right under the Fifth Amendment—and all its cases precede the Supreme Court's 2013 decision in *Alleyne*.  ECF No. 130, pp. 8-9.

The government next contends that the Court already decided this issue.  ECF No. 130, p. 9.  That is false.  First, the Court was not briefed on the Fifth Amendment presentment issues

---

[3] The rest of the government's string cite for this proposition is taken from *Ashley*.  ECF No. 130, p. 8.  All the cases predate *Alleyne*. *Ashley* has nothing to do with Fifth Amendment presentment.

when it revoked Nordean's bail.  Second, it was not until after his bail was revoked that the

government conceded that its over-$1,000-in-property-damage claim was based exclusively on

Pezzola's window-smashing, i.e., *that no other evidence was presented to the Grand Jury on this*

*issue*.  And, third, in previously finding that Nordean's case "involved" an offense listed in §

3142(f)(1), the Court relied on *United States v. King*, 482 F.2d 768 (D.C. Cir. 1973), a case that

(1) predated the Bail Reform Act; (2) did not concern pretrial detention; (3) did not concern

presentment or the Fifth Amendment; and (4) predated *Apprendi* and its progeny by decades.

Finally, the government suggests the presentment flaws are cured because Pezzola is

"included as a participant" in a Telegram message string for the "Ministry of Self Defense" and

Defendant Donohoe was "seen carrying a riot shield with Pezzola around the same time

Donohoe reported in the Telegram messages, 'Got a riot shield.'" ECF No. 134, p. 10.[4]  This

contention contains multiple, overlapping mistakes.  A failure to allege and present elements of

an offense to the Grand Jury, as required by *Apprendi-Cotton-Alleyne*, is not cured by a proffer

in a bail hearing.  The government cites no authority in support of that proposition, and there is

none.  Second, the government's representation is factually misleading.  Notice that the

government keeps representing the stilted formula that Pezzola is "included as a participant" in

some Telegram message string—but it never displays images of his alleged participation.  Here

is the explanation.  The defense inquired what the government meant by that claim it has

repeatedly made in Court.  It responded by pointing Nordean to a single message among

---

[4] The government states, "Defendant has now backed away from the claim that Dominic Pezzola is not a Proud Boys member." ECF No. 134, p. 9.  No, Nordean has not backed away from the reality that the government has inaccurately alleged in court for months that Pezzola is a "Proud Boys member."  The problem, rather, is that it is difficult to keep up with the fistful of inaccurate claims the government daily scatters in this case like breadcrumbs in a koi pond, even including a claim that pictures of the Capitol are somehow actually of the Supreme Court.

thousands of pages of Telegram chats *in which Pezzola's name is welcomed*.  There appears to be no evidence Pezzola even communicated in the Telegram message thread, much less evidence showing him entering into an agreement with Nordean or anyone else.  To be clear: the government possesses not a single piece of evidence showing any agreement between Nordean and Pezzola—to do anything.  That Donohoe was seen carrying a riot shield "with Pezzola" does not establish a conspiracy with Nordean or show Nordean's aiding and abetting liability for Pezzola's window-smashing.  In any case, *Donohoe's supposed action is not even alleged in the FSI and was not presented to the Grand Jury*.  FSI, ¶ 62.

The government did not present facts to the Grand Jury, under any charge, that would render Nordean liable for over $1,000 in property damage.  Accordingly, his case does not "involve" an "offense" or "crime" under § 3142(f)(1).

## II.     The Court's own words show that evidence withheld by the government has a material bearing on its decision to revoke Nordean's bail

The government spills pages of ink quibbling over whether certain facts could theoretically have been gathered before the Court revoked Nordean's bail—following unsuccessful attempts to detain him before multiple judges in multiple states.  ECF No. 134, pp. 3-6.  That is not the legal standard. The government ignores, and fails to account for, Nordean's showing that he did not obtain much of the evidence that has a material bearing on the Court's detention decision until after the revocation order because the government was in sole possession of Nordean's mobile phone and decided not to produce the mitigating evidence until after his bail was revoked, even as it relied on his Telegram messages to jail him which were in the immediate vicinity of unproduced, mitigating chats on his phone.

In particular, the Court will notice that the government provides no explanation as to why it had *prepared a memorandum* specifically concerning audio recordings of Nordean abjuring

future political rallying—and failed to provide or describe it to the Court or the defense even though it had been prepared *before the Court revoked Nordean's bail*.  That is inappropriate conduct and if the government is not held accountable, it will continue and grow.  ECF No. 122, p. 4; ECF No. 100-1 (FD-302 dated April 14, 2021, cataloguing post-January 6 statements from Nordean forswearing rallying).

### A.    Rallying and "leadership"

The government quotes the Court's response to *one* rally-forswearing audio recording Nordean managed to obtain—not produced by the government—that "without any further context there's no indication that that was some kind of permanent decision".  ECF No. 134, p. 4 (quoting Hr'g Trans., 4/19/21, p. 55:22).  That is shameless.  The reason there was not "further context" is that the government improperly withheld from Nordean and the Court many Telegram chats and audio recordings which provided further context in the form of Nordean repeatedly stating he did not wish to rally in the future.[5] LCrR 5.1 (beginning at arraignment, government must make good-faith efforts to disclose mitigating information "as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information. . .").  The Court will recall that it is *the government's burden*, not Nordean's, to adduce clear and convincing evidence of an unmitigable risk of danger to the community.  *United States v. Munchel*, 991 F.3d 1273, 1285 (D.C. Cir. 2021).  If the Court does

---

[5] Nordean notes that although the parties' arguments are premised on the notion that it is appropriate to detain a person on account of the potential exercise of their constitutional rights, that is not the law in this Circuit.  *United States v. Lemon*, 723 F.2d 922, 938 (D.C. Cir. 1983) ("Appellate courts have seriously limited the extent to which protected political speech and association may be the basis for revoking or denying bail.") (citing *Williamson v. United States*, 184 F.2d 280 (2d Cir. 1950) (Jackson, J., sitting as Circuit Judge)). The government's burden is to present clear and convincing evidence of an unmitigable risk of danger to the community—not evidence of political expression—which it has not done.

not resist the government's improper attempt to lead it into a debate requiring a presumptively innocent person to prove negatives in order to adequately prepare himself against complex felony charges, the Bail Reform Act will be damaged as will citizens' due process and access-to-counsel rights.

The government does not contest the factual accuracy of a sworn declaration from the actual current president of the Proud Boys in Seattle, who swears that Nordean is no longer a leader in the organization in any sense.  ECF No. 134, p. 3.  It does not contest that the sworn evidence was not available to the Court when it revoked Nordean's bail.  Instead, it quibbles that Nordean could possibly have obtained the declaration before the bail hearing.  *Id*.  Here the government's distortion of the BRA involves inserting requirements that are not found in the statutory text.  Section 3142 states that the bail "hearing may be reopened . . . at any time before trial if the judicial officer finds that information exists that was *not known to the movant* at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." § 3142(f) (emphasis added).  The content of the sworn declaration was not known to the movant at the time the Court revoked Nordean's bail and Nordean made more than diligent efforts to provide all relevant bail information to the Court as soon as he could obtain it, as shown by his continuous updates to the Court before the revocation hearing, in his attempt to carry a burden that the BRA places on the government.  ECF Nos. 32 (Nordean's opposition to revocation), 41 (Nordean's supplemental evidence submission); 49 (Nordean's surreply); 52 (Nordean's submission of additional evidence); 54 (same); 57 (same).[6]

---

[6] The government represents, "Public reports indicate that at least some Proud Boys chapters, including those in the Proud Boys PNW, have resumed public rallying." ECF No. 134, p. 4.  The Court will notice that "reports," plural, is followed by a citation to a single article.  *Id.* (citing

The government does not deny that Nordean's perceived leadership of the Proud Boys organization and potential future rallying were the primary reasons the Court cited for revoking Nordean's bail, as the Court explicitly found that the traditional factors for pretrial detention were absent.  Hr'g Trans., 4/19/21, p. 4 (citing with approval Chief Judge Howell's previous finding in this case that "the proffered evidence of what Nordean actually did on [January 6] did not suggest dangerousness in a way that . . . other defendants' conduct has in other Capitol riot cases.  For example, there was no evidence that Nordean carried a weapon and no evidence that he injured any law enforcement officer").[7]  It does not deny that the D.C. Circuit requires district courts to focus on future risk to the community, not on historical facts as alleged in the charging instrument.  *Munchel*, 991 F.3d at 1285 (question whether the defendant poses an "unmitigable threat to public safety" is "forward-looking" and "does not turn on any generalized, backward-looking assessment of the rioters or the riot").  And it offers *no evidence*, much less clear and convincing evidence, that Nordean is *currently* a "leader" of the Proud Boys organization and that he intends to rally *in the future*.[8]  To the contrary, all of the uncontroverted evidence in the record runs in the opposite direction.

---

*Oregon City cancels Proud Boys permit following June 18 riot*, OPB, available at: https://www.opb.org/article/2021/06/23/oregon-city-proud-boys-permit-cancelled-riot/). The Court will then notice that the article does not describe chapters "*including* those in the Proud Boys PNW," but *only* ones there (and specifically *only* in Oregon).  Nordean is now gathering additional evidence to show that he has no connection to the individuals referenced in that Internet article and that the Seattle chapter of which Nordean was *once* a member had no connection to the places and events described in the single article cited by the government.

[7] To be clear, there is also no allegation that Nordean intended to, or attempted to, or conspired to injure law enforcement officers or commit acts of violence.  The government belatedly produced a Capitol video depicting Nordean *stopping a protestor from shoving a law enforcement officer*.  ECF No. 57.

[8] Even as the government insists on detaining Nordean without evidence of dangerousness, it voluntarily dismisses scores of charges, brought under the same criminal statutes charged against Nordean, relating to riots outside the Portland federal courthouse in 2020, in which rioters threw

Finally, the government asserts that it has shown clear and convincing evidence of Nordean's unmitigable dangerousness because he has not confessed to the government's charges as he waits in jail to exercise his right to a trial.  ECF No. 134, p. 5.  The argument that a presumptively innocent person may be detained on the basis that he disputes the government's allegations is both barred by the Bail Reform Act, § 3142(j), and inimical to the values the government purports to be defending.

Nordean begs the Court to consider that the government, which carries the burden, has not identified a single, specific, articulable threat allegedly posed to the community by a man with no criminal history who is not accused of harming anyone or personally destroying anything.  It has provided no evidence, much less clear and convincing evidence, identifying any *plan* or *intent* to commit any future crime on the part of Nordean.

**B.     Capitol CCTV video depicting law enforcement officers permitting Nordean to enter the Capitol Building**

Although nearly every charge brought against Nordean turns on whether he lawfully entered the Capitol Building on January 6, the government did not produce Capitol CCTV video showing law enforcement officers permitting Nordean to enter that building until months after his bail was revoked.  The government offers little in response to this point.  It appears to suggest that the video is not material to Nordean's months-long detention because it merely shows Nordean "walk[ing] past a few outnumbered officers." ECF No. 134, p. 5.  That is not what the videos show, as Nordean explains in a motion to unseal the footage so that the public can fairly weigh the government's contrary claims to the jury pool.  ECF Nos. 129, 132.

---

Molotov cocktails into a federal courthouse.  *Almost half of federal cases against Portland rioters have been dismissed*, Wall Street Journal, Apr. 15, 2021, available at: https://www.wsj.com/articles/almost-half-of-federal-cases-against-portland-rioters-have-been-dismissed-11618501979.

The government adds that "the time, place, and manner of Defendant's entrance into the building were known to Defendant Nordean at the time of the detention hearing in April." ECF No. 134, p. 6.  That is frivolous.  As explained, the government did not produce the videos until July 28, over three months after the bail hearing.  ECF No. 129, p. 3.  Had Nordean asked the Court in April to "trust him" that law enforcement officers calmly stood aside as he peacefully entered the Capitol, it seems reasonable to question whether the Court would have accepted that representation.  A defendant's representation is not the same as video evidence.  That partly explains why Judge McFadden granted a January 6 defendant's motion to reopen a detention decision in *United States v. McCaughey*, 21-cr-40, ECF Nos. 54, 54-1 (D.D.C. 2021) (releasing defendant after seeing new video footage and after defendant pledged a large cash bond).

Finally, if the CCTV videos merely showed law enforcement officers being "overrun" by protestors—and if the videos actually aid the government's case—it seems curious that the government initially produced to Nordean selectively edited versions of those clips which omitted the sections depicting law enforcement.  ECF No. 129, pp. 2-4.

**C.      Nordean's lack of meaningful access to counsel and the prospect of a distant trial in 2022**

After the Court directed the parties to jointly determine whether Nordean's conditions of confinement would accommodate access to counsel sufficient to adequately prepare for a trial on novel legal charges in a large multi-defendant conspiracy case, the government cut out the defense, held ex parte communications with the jail, and then misrepresented those conversations to the Court.   ECF No. 127.

Contrary to the government's claims to the Court, Nordean will not be able to hold regular video teleconference calls while incarcerated in which he could review electronic evidence with his counsel—either at SeaTac or the D.C. jail.  *Id.*  The government touted to the

14

Court the access inmates at the D.C. jail have to review electronic evidence.  That is misleading: because the laptop inmates use to review electronic evidence is shared, their wait time to see discovery material can take up to a month or more, according to the Office of the Federal Public Defender.  ECF No. 127, p. 5.   As for in-person visits, they are discouraged because any such "contact visit" will result in a CTF inmate being placed in solitary confinement quarantine for two weeks—each time.  *Id.*  Further, Nordean's counsel in Virginia is of advanced age.  In light of the baselessness of the government's detention position and of Nordean's perfect compliance with his previous bail conditions, the government's proposal that his elderly counsel expose himself to the Delta variant of Covid-19 in jail, so the government can maintain its inappropriate squeeze of the defendant, is grotesque.   The government has proposed no method whereby Nordean could comply with the requirements of the Protective Order the government insisted on in this case and also review evidence designated Highly Sensitive in jail—such as the evidence depicting law enforcement permitting him to enter the Capitol Building.  These Covid-19 period conditions of confinement would not allow adequate preparation for trial on any felony offense in federal court, much less the multi-count, multi-defendant conspiracy case based on complex, novel charges that the government has brought as part of its self-described largest investigation in DOJ history.

And consider what the government neglects to inform the Court about: its office has been preparing a general status report for the January 6 cases advising the courts that it will not substantially complete discovery production until 2022.  That is also a new, material development that has occurred following Nordean's bail revocation.  This implies Nordean would likely be detained pretrial for over a year—longer than the sentence of conviction recently

imposed on a January 6 defendant who pled guilty to one of the felony charges filed against Nordean.

The government states that there is "no authority suggesting that [detention conditions] justify reopening the detention hearing and ordering [] release." ECF No. 134, p. 11.  Not only is the government demonstrably wrong, there is a specific provision of the Bail Reform Act that explicitly authorizes release of a defendant in such a case.  Section 3142 provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary *for the preparation of the person's defense* or for another compelling reason.

18 U.S.C. § 3142(i) (emphasis added).

Courts routinely reopen bail proceedings when a defendant's conditions of confinement prevent him from adequately preparing for trial: under § 3142(f) and (i).  *See*, *e.g.*, *United States v. Stephens*, 447 F. Supp. 3d 63, 67 (S.D.N.Y. Mar. 18, 2020) (releasing previously detained defendant under § 3142(i) because "the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under [Section 3142(i)]"); *United States v. Persico*, 1986 U.S. Dist. LEXIS 27586 (S.D.N.Y. Mar. 27, 1986) (collecting cases where releases of defendants were granted prior to trial "in order to facilitate the defendants' expeditious preparation for trial" where "[t]he concern in each case was that, given the admittedly limited access to telephones and attorney conference rooms at the detention facilities" effective preparation for trial would be stymied).

**III.    The government makes no effort to satisfy its burden that the extraordinarily strict conditions of release proposed by Nordean do not even "reasonably" assure public safety**

Nordean has offered new, extraordinarily strict conditions of release: home incarceration; GPS location monitoring; warrantless and random searches of the home with the use of an

electronic storage detection dog; a network of cameras installed around the home offering video coverage of every entrance, which pretrial services officers may view with any computer or mobile device connected to the Internet; $1 million in cash as a secured bond, and a home if necessary, against any material breach of a condition of release.[9]

The government does not even attempt to show these conditions would not "reasonably" assure public safety—against a risk it has not bothered to identify.  § 3142(c)(1)(B) (The "judicial officer *shall order the pretrial release of the person* . . . subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will *reasonably assure* . . . the safety of any other person and the community . . .") (emphasis added). That is because it cannot make such a showing.  Nordean repeatedly wrote to the government to seek its input on his proposed conditions and to offer to modify them according to the government's concerns.  It did not even respond.

Nordean asks the Court to consider whether permitting the government to detain defendants without making any substantive conditions argument, and without even going through the motions of engaging with the relevant factors, is conducive to upholding the Bail Reform Act's protections.

The government says all of these extremely strict conditions were proposed and considered by the parties and Court before.  ECF No. 134, p. 13.  The Court will recall that is not so.  In the first bail hearing on April 6, Nordean's counsel broached the subject of whether the Court would agree to special conditions of release if it were inclined to revoke Nordean's bail.

---

[9] Nordean, who has no wherewithal, and his family have made every effort to satisfy the Court by installing effective but reasonably priced cameras around the home.  The $1 million in cash constitutes his father's life savings from hard work.  The government's "gilded cage" characterization of the father's offer of his life savings is revolting.

The Court responded, "that's where I was about to wind up in this whole thing.  That was . . . something I was going to raise, but continue." Hr'g Trans., Apr. 6, 2021, p. 62:4-6.  But that colloquy finished inconclusively at the end of the April 6 hearing.  None of the specific conditions Nordean proposes in this motion were considered.  *Id.*  The Court then took the government's revocation motion under advisement.  At the outset of the next hearing on April 19, the Court announced its decision to revoke bail.  Hr'g Trans., Apr. 19, 2021, p. 2.

Accordingly, it is not clear what the government means when it says, "the Court has substantially considered, and rejected, the conditions of release proposed by Defendant." ECF No. 134, p. 13.  Nordean cannot be faulted for not knowing, before the first detention hearing, that the Court would decide in that hearing to reserve decision for a second hearing.  Nordean's nonspecific colloquy with the Court about special conditions was not resolved in the first hearing and the second hearing began with the Court's decision.  As the government knows, the parties and the Court did not consider the substance of the conditions Nordean now proposes, and specifically how they would not "reasonably" assure public safety, in any hearing.  It must be stressed that the government does not proffer, and has not proffered, a single factual argument as to why Nordean's proposed extremely strict conditions would not reasonably mitigate any risk to the community.

Finally, regarding Nordean's offer of a secured bond in the amount of $1 million in cash, the government made the following representation:

> The only substantially new development is Defendant Nordean's apparent influx of $980,000 to offer as a secure bond. **Defendant has not offered the Court any information about the source of these funds, and the sudden windfall *raises more questions about Defendant's continuing power and clout than it resolves*.**

ECF No. 134, p. 13 (emboldening and italics added).

Directly after the government filed this innuendo—using the "raises questions" formula—numerous media outlets reported that Nordean had potentially improperly raised funds to support his release from pretrial incarceration.[10]  On August 4, Nordean's counsel provided to the government a sworn declaration from Michael Nordean, the Defendant's father, explaining that the bail funds belong to him—in fact, constitute his life savings; that the funds are not illegal or improper in any way; and that insinuation to the contrary in the government's public brief is false and misleading.  See Decl. of Michael Nordean, Aug. 4, 2021, Exh. A.

Nordean indicated he would provide any banking or other documentation the government believed it needed in order to correct the inaccurate public insinuation.  Nordean asked the government to file a correction.  It refused, choosing instead to allow the misimpression to remain filed with the Court. Media reports based on the government's unfounded insinuation are continuing to spread and multiply in traditional and social media, even as the government is in possession of evidence demonstrating the falsity of its insinuation of improper behavior.  It is degrading the Defendant's right to a trial by a fair and impartial jury.  *See*, *e.g.*, *Irvin v. Dowd*, 366 U.S. 717, 726 (1961).  Ensuring the government's inappropriate actions do not continue is another reason to allow Nordean to properly defend himself against its charges.

## IV.    The D.C. Circuit has not endorsed the government's meritless arguments regarding dangerousness and reasonable assurance of public safety

The government says the Court should ignore that many January 6 defendants who are accused of far more serious, and violent, crimes have been released pretrial.  It says the Court

---

[10] *See*, *e.g.*, *No one knows how this Proud Boy got $1 million for Bail*, Vice Media, Aug. 4, 2021, available at: https://www.vice.com/en/article/y3deym/no-one-knows-how-this-proud-boy-ethan-nordean-got-dollar1-million-for-bail; *Accused Proud Boy suddenly secures $980k cash bail*, MSNBC, Aug. 4., 2021, available at: https://www.msnbc.com/all-in/watch/accused-proud-boy-suddenly-secures-980k-cash-bail-117943365669.

should ignore that many defendants charged with conspiracy have been released, including in the case in which the Oath Keepers are accused of entering the Capitol in military "stack" formation, wearing paramilitary outfits, after stockpiling firearms across the Potomac.  ECF No. 134, p. 11. It says the Court should conclude there is no need for a uniform Bail Reform Act standard—it is equal justice when a man who smashes a police officer over the head with a pole proceeds home to adequately prepare for his trial, even as another who is accused of no violence remains in jail for over a year after the government tars him for his association with a publicly loathed group. The government is wrong.  Nordean is not disputing that the "Bail Reform Act contemplates an individualized assessment." ECF No. 134, p. 11.  Rather, the point is that an "individualized assessment" of a person who assaults multiple law enforcement officers and results in pretrial release is not applying the same standards of "assessment" as one that detains a person who has no criminal history and is accused of no violence, or plans to commit violence, whatsoever.

The Court will notice that the government does not rely on the two-paragraph D.C. Circuit interlocutory order in this case, which the court took approximately two months to return despite deciding not to issue a published decision,[11] but instead cites to the published decision in *United States v. Hale-Cusanelli*, 2021 WL 2816245 (D.C. Cir. July 7, 2021), which took the court half as long to issue, as with the court's other published bail decision in *Munchel*.  The government's reliance is misplaced.  Judge McFadden detained the defendant in *Hale-Cusanelli* in March.  Even that judge does not believe the affirmance of his detention decision by the D.C. Circuit means that January 6 defendants can be detained through 2022.  Following the D.C.

---

[11] The order in Nordean's case also stated, "To the extent that appellants argue that any information obtained after the district court's ruling independently warrants pretrial release, they should present such arguments to the district court in the first instance." *U.S. v. Biggs*, No. 21-3021, Doc. No. 1903887 (D.C. Cir. June 25, 2021) (citing § 3142(f)).  Some, but not all, of the "information" to which the court referred is contained in this motion.

Circuit's decision, the court held a hearing on July 30.  The government then sought another 60-day Speedy Trial Act extension, saying trial in 2021 was impossible.  Judge McFadden said this was unacceptable in light of the defendant's detention.  "The U.S. chose to arrest and charge him six months ago, you do not allege he is violent, but you say months more before a trial."[12] When the AUSA responded that she "comes from a DOJ white collar section," the judge replied, "There, you wouldn't arrest and then investigate. . . The U.S. keeps arresting people and creating new discovery." The colloquy continued:

> GOVERNMENT: For the defendant, access to all this discovery should be important.

> COURT: Freedom is also important.

> GOVERNMENT: But the length of this detention is not extraordinary.

> COURT: I'm not comfortable. . . *Id.*

Judge McFadden is right.  And the case in *Hale-Cusanelli* involves a single defendant, not a complex, multi-defendant conspiracy like in Nordean's case, which will almost certainly take longer to prepare for trial.

For all the foregoing reasons, the Court should order Nordean released on the strict conditions he has proposed, and based on the large secured bond he has pledged, so that he can adequately prepare for trial and because detention is unwarranted.

Dated: August 8, 2021                    Respectfully submitted,


                                          /s/ David B. Smith
                                          David B. Smith, D.C. Bar No. 403068
                                          David B. Smith, PLLC
                                          108 North Alfred Street, 1st FL
                                          Alexandria, Virginia 22314

---

[12] *In Jan. 6 Case of Hale-Cusanelli DOJ Asks Trial Delay Into 2022*, *Inner City Press*, July 30, 2021, available at: http://www.innercitypress.com/ddc58ahaleicp073021.html.

(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
David B. Smith, PLLC
7 East 20th Street, Suite 4R
New York, NY 10003
(917) 722-1096
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

## Certificate of Service

I hereby certify that on the 8th day of August, 2021, I filed the foregoing motion with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class

postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com