UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) <br> ) |
| v. | ) Case No. 1:21-cr-175 <br> ) |
| ETHAN NORDEAN, et al., | ) **Judge Timothy J. Kelly** <br> ) |
| Defendants. | ) <br> ) <br> ) |

**DEFENDANT NORDEAN'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO REMOVE SENSITIVITY DESIGNATIONS FOR CAPITOL CCTV VIDEOS**

The government has represented to the Court and the public that Capitol CCTV videos depict Defendant Nordean illegally entering the Capitol Building on January 6 by "overrunning" law enforcement officers who attempt to stop him. ECF No. 131, p. 1. That claim has been picked up and repeated by the media and circulated to the jury pool in this case. The videos themselves show that is not true. The government's arguments for withholding the footage from the Defendant himself and the public do not withstand scrutiny.

The government contends that the CCTV videos are properly withheld from the public and from the incarcerated Nordean because they contain "information revealing 'entry and exit points, office locations, and the relation of the crucial chambers and offices (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol.'" ECF No. 142, p. 2 (quoting ECF No. 92-1 (Declaration of Thomas DiBiase)). That is not candid. As the government knows (and as the Court now knows, having received the videos), the footage at issue does not depict "office locations, and the relation of crucial chambers and offices . . . to other areas of the Capitol." Instead, it depicts a single, public-facing door to the Capitol and a

1

narrow inner hallway. That upper west terrace "entry point" can be determined by any person using the Internet. Wikipedia, United States Capitol entry, last visited 8/19/21, available at: https://en.wikipedia.org/wiki/United_States_Capitol (displaying Capitol floor plans, including upper west terrace). The government's security claim is nakedly pretextual.

As Nordean pointed out, the government itself has released Capitol CCTV video—when that serves the government's interests, including in other January 6 cases, impeachment proceedings, and on the FBI website. ECF No. 129, pp. 5-8. In response, the government attempts to distinguish those situations by claiming that, here, the "Highly Sensitive" videos "depict the interior—as opposed to the exterior—of the U.S. Capitol and thus reveal information less likely to be obtained through other means." ECF No. 142, p. 2. That distinction has no purchase, as the Chief Judge recently determined.

On August 16, the Chief Judge *sua sponte* ordered the government to account for why it would not remove sensitivity designations from Capitol CCTV video "given . . . that the parties' designation of the exhibits as 'highly sensitive' does not, standing alone, warrant nondisclosure, *see In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, Case No. 21-mc-46 (BAH), 2021 WL 1946378, at *7 (D.D.C. May 14, 2021); and [given] that CCTV footage from the Capitol Building submitted to the Court has been made publicly available in other cases*, see*, *e.g.*, *United States v. Jackson*, Case No. 21-mj-115, Mem. Op. and Order, ECF No. 24 (releasing over defendant's objection, without government objection, video evidence submitted in detention hearing, including CCTV footage from Capitol Building)." *United States v. Bledsoe, et al.*, 21-cr-204, 8/16/21 minute order (D.D.C. 2021). The Capitol CCTV videos Chief Judge Howell rightly wanted publicized were all from *inside* the Capitol Building, depicting two entryway doors near the one at issue here and the Capitol crypt. *Id.*; 21-cr-204, ECF No. 67, p. 2 (Nos. 4,

6, 7, 8, 9). The Chief Judge wants to know: if the government is right that the actions depicted in the Capitol CCTV videos are worthy of extreme condemnation and censure, is that message being successfully conveyed to the public when the government refuses to let it see the conduct at issue with its own eyes?

A similar point is made in a motion to intervene in this case filed by a press coalition. Press Coalition Motion to Intervene, 8/3/21, Exh. 1.[1] The press coalition filed a motion supporting Nordean's motion to remove sensitivity designations from the Capitol CCTV videos at issue. To date, that motion has not been docketed. It was apparently hand-filed with the clerk of the Court on August 3. Exh. 1.

The press coalition first notes that in many January 6 cases, the government "has chosen *not* to contest the release of Capitol Surveillance footage." Exh. 1 (citing Minute Order of July 2, 2021, *In re Application for Access to Certain Sealed Video Exhibits,* 21-mc-74-EGS (ordering release of CCTV video exhibits shown in *United States v. Cua*, 21-cr-107-RDM-1, after the Government indicated that "it and Mr. Cua are in agreement that the video . . . can be released"); Minute Order of June 19, 2021, *United States v. Morss*, 21-cr-40-TNM-5 (ordering release of videos, including four clips of CCTV footage, after "neither the government nor the defense objects to the release"); Minute Order of June 23, 2021, *United States v. Owens*, 21-cr-286-BAH (ordering release of video exhibits, including two CCTV video clips, to the Press Coalition based

---

[1] The proposed intervenors include: Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times, Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post.

on the parties' consent); Minute Order of June 24, 2021, *In re Application of Press Coalition for Certain Sealed Video Exhibits*, 21-mc-85-CRC (ordering release of four video compilations shown to the court in *United States v. Egtvedt*, 21-cr-177, which included CCTV footage, after "both the government and the defendant have indicated their consent to the release"); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at *2 (D.D.C. Mar. 17, 2021) (noting the Government took no position on a Press Coalition member's request for release of Capitol surveillance videos shown at a detention hearing); United States' Second Supp. Resp. to Expedited Mot. for Public Access to Certain Sealed Video Exhibits, *In re Application of Press Coalition for Certain Sealed Video Exhibits*, Case No. 21-mc-34-TFH, Dkt. 8 (withdrawing objection to release of Capitol surveillance videos shown to the court in *United States v. Tanios*, 21-cr-222-TFH-2)).

Second, the press coalition points out that "the government has already released CCTV footage that was captured in the same exact location as the CCTV Videos at issue [in Nordean's case]—i.e., on the Upper West Terrace of the Capitol. *See Video Evidence Shown in the Capitol Insurrection Criminal Cases*, ProPublica (July 27, 2021), https://projects.propublica.org/jn-6-video-evidence/ ('Exhibit 11 - Video Upper Terrace West-1.mp4' and 'Exhibit 12 - Video Upper Terrace West-2.mp4' under 'USA v Tanios')." Exh. 1, p. 7.  In fact, as the press coalition observes, "the government submitted the identical DiBiase Declaration *four months ago* with its subsequently-abandoned opposition to release of CCTV video exhibits in the *United States v. Tanios* riot case.  *See* Decl. of Thomas A. DiBiase ("DiBiase Decl."), *In re Application of Press Coalition for Certain Sealed Video Exhibits*, Case No. 21-mc-34-TFH, Dkt. 4-1; United States' Second Supp. Resp. to Expedited Mot. for Public Access to Certain Sealed Video Exhibits, Dkt. 8 (withdrawing objection to release of Capitol surveillance videos)." Exh. 1, pp. 7-8.

The press group also shows how the government's sensitivity designation insistence conflicts with controlling D.C. Circuit authority. Exh. 1, p. 8. In "*Washington Post v. Robinson*, [] the *Post* sought access to the plea agreement of a district employee who cooperated with an investigation into Mayor Marion Barry. 935 F.2d 282, 283-85 (D.C. Cir. 1991). The government argued that the record should remain sealed because it 'was part of an ongoing criminal investigation that might be compromised or that might embarrass innocent parties if publicized,' because 'release of the agreement may [have made] it difficult to secure the cooperation of other witnesses,' and because 'the safety of [the cooperator] and his family would have been placed at risk.' *Id.* at 291 (citation, internal marks, and alterations omitted). The court rejected these speculative concerns, reasoning that the substantial amount of already-public information about the investigation and the cooperator's involvement, including information reported by the press, meant that unsealing the plea agreement 'could hardly have posed any *additional* threat to the ongoing criminal investigation.' *Id.* at 292 (emphasis added)." Exh. 1, p. 9.

All the more so, here, where the supposedly sensitive entrance to the upper west terrace of the Capitol Building is actually identified on Wikipedia.

Perhaps above all, the government acknowledges that "it is undoubtedly critical that [Nordean be] permitted to review discovery—including discovery designated as 'Highly Sensitive.'" ECF No. 142, p. 4. However, the government hastens to add, just because something is critical to Nordean's liberty does not mean that he may obtain it. "[H]is detention is not a legitimate basis to remove the sensitivity designation as to the videos here." *Id.* So, here are the things that warrant the removal of sensitivity designations from Capitol CCTV footage, according to the government: jailing defendants; helping the FBI locate the 567th Capitol defendant who walked into the Building, took pictures and left; impeachment proceedings; and

to support the government's case of guilt.  However, having insisted that Nordean be detained pretrial on the basis of a security risk it has never identified with particularity, it now says that the reason he cannot view highly probative Capitol CCTV video evidence in his own case is that he happens to be incarcerated in a jail, where such "Highly Sensitive" materials cannot be safely reviewed without counsel physically present.

In other words, since his liberty interest has been infringed, his right to effectively assist in his own defense must necessarily follow.  The government is wrong.  Nordean's right to effectively assist the defense of his case is not trumped by the risk that the location of a door to the Capitol Building might only be discovered through this case and not from the Internet or any other publicly available source.  *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984) ("The [Sixth Amendment] . . . implies a right in the defendant to conduct his own defense, with assistance at what, after all, is his, not counsel's trial.").  That right is denied when he is not allowed to view mitigating material in this matter in order to assist his counsel in developing a defense.

Finally, the government suggests that Nordean is alone in describing the Capitol CCTV videos at issue as mitigating or exculpatory.  ECF No. 142, p. 3.  Since the Court can see the videos for itself, Nordean will only note here that government officials who appear to have viewed the footage at issue do not subscribe to the government's contention that the videos merely depict law enforcement officers being "overrun" by rioters.[2]

Dated: August 19, 2021                          Respectfully submitted,

                                                                  */s/ David B. Smith*
                                                                  David B. Smith (D.C. Bar No. 403068)

---

[2] See Ltr. of Sen. Ron Johnson to Acting Chief of Police, U.S. Capitol Police, June 10, 2021, available at: https://www.ronjohnson.senate.gov/services/files/F8EEEE5C-12AE-4D10-A8E3-4EA857C3119C (describing Capitol CCTV video from the upper west terrace doors).

6

108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

### Certificate of Service

I hereby certify that on the 19th day of August, 2021, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*