IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ETHAN NORDEAN,<br><br>        Defendant.<br><br>CABLE NEWS NETWORK, INC., AMERICAN BROADCASTING COMPANIES, INC. d/b/a ABC NEWS, THE ASSOCIATED PRESS, BUZZFEED, INC. d/b/a BUZZFEED NEWS, CBS BROADCASTING INC. o/b/o CBS NEWS, DOW JONES & COMPANY, INC., publisher of THE WALL STREET JOURNAL, THE E.W. SCRIPPS COMPANY, GANNETT CO., INC., GRAY MEDIA GROUP, INC., LOS ANGELES TIMES COMMUNICATIONS LLC, publisher of THE LOS ANGELES TIMES, NATIONAL PUBLIC RADIO, INC., NBCUNIVERSAL MEDIA, LLC d/b/a NBC NEWS, THE NEW YORK TIMES COMPANY, PRO PUBLICA, INC., TEGNA, INC., AND WP COMPANY LLC, d/b/a THE WASHINGTON POST,<br><br>        Proposed Intervenors. | Case No. 21-cr-175 |

**THE PRESS COALITION'S MOTION TO INTERVENE AND**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

      Pursuant to Local Criminal Rule 47, Proposed Intervenors Cable News Network, Inc.,

American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc.

d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc.,

publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media

Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times,

National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times

Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the "Press Coalition") respectfully move to intervene in this matter for the limited purpose of challenging the Government's designation of four clips of surveillance video from the United States Capitol as "Highly Sensitive," which improperly prevents Defendant Ethan Nordean from providing the clips to the press and public. The Government cannot demonstrate a legitimate need to designate these videos as "Highly Sensitive" because many videos from Capitol surveillance cameras – including at this exact location – have already been made public. The Court should order the Government to remove the challenged designation immediately.

## BACKGROUND

This action is one of many criminal cases pending in this District arising out of the January 6, 2021 riot at the United States Capitol. Defendant Ethan Nordean is charged with "multiple felony offenses, including one Congress has characterized under these circumstances as a federal crime of terrorism, and another that exposes him to a 20 year sentence." *See* Order of Detention Pending Trial at 3, Dkt. 65.

On June 2, 2021, the Government moved for a protective order, stating that it and the Defendant had "not reached an agreement as to the entry of the proposed order at this time" and attaching a declaration executed on March 17, 2021 by Thomas DiBiase, General Counsel for the Capitol Police. United States' Mot. for Protective Order at 1, Dkt. 92. The DiBiase declaration asserts that surveillance footage "in the aggregate" would be "security information" because it would provide "a clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of the crucial chambers and offices (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol." DiBiase Decl. ¶ 16, Dkt. 92-1.

On June 28, 2021, after the Government submitted another motion which it represented Defendant did not oppose, the Court entered an Interim Protective Order Governing Discovery in

this matter (the "Protective Order"). *See* Dkt. 103. The Protective Order "governs materials provided by the United States at any stage of discovery during this case and which the United States has identified as either 'Sensitive' or 'Highly Sensitive,'" and it lists "[s]urveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds" among the "[e]xamples of materials that the United States may designate as 'Sensitive' or 'Highly Sensitive'" under the Protective Order. *See id.* at 1. The Protective Order states that, absent the Government's consent or the Court's authorization, "[n]o Sensitive or Highly Sensitive materials . . . may be disclosed to any persons other than Defendant, the legal defense team, or the persons to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel." *Id.* at 2.

On July 28, 2021, Defendant filed a motion requesting that the Court order the Government to remove the "Highly Sensitive" designation on four videos provided to him in discovery (the "CCTV Videos"). Def. Nordean's Mot. to Remove Sensitivity Designation from Certain Capitol Videos Produced in Discovery ("Def.'s Mot."), Dkt. 129. Defendant argues that "[i]n select January 6 cases, the government expressly agrees to remove sensitivity designations from CCTV surveillance footage from inside the Capitol Building," and the "selective designation satisfies neither the Order's terms nor the defendant's rights to due process, to an impartial jury, and to assist in his own defense." *Id.* at 1.

According to Defendant, the CCTV Videos are "exculpatory," and the Government is "taking inconsistent and self-serving positions on the supposed need to deny the public access to highly relevant Capitol CCTV video." *Id.* at 6-7. Defendant also states that he personally cannot view the CCTV Videos because the Government's "Highly Sensitive" designation prevents him from accessing them in the detention facility where he is being held, which "is infringing on [his]

3

right to assist in his own defense." *Id.* at 6-7.  Defendant states the CCTV Videos are from two cameras located on the Upper West Terrace of the Capitol.  *Id.* at 2-3.

On July 29, 2021, the Government filed a notice in response indicating that it would oppose Defendant's motion but that it "found it necessary to provide an immediate response to Defendant's characterization of rioters' entrance to the Capitol."  United States' Notice of Under Seal Submission of Exhibits at 1, Dkt. 131.  According to the Government, the CCTV Videos are not exculpatory and in fact depict "outnumbered Capitol Police officers being overrun by rioters unlawfully breaching a Capitol entrance."  *Id.*

Defendant responded to the Government that day, asserting that "because the government makes representations to the public in its notice about videos that it claims show his guilt and, at the same time, prevents the public from seeing evidence that contradicts its claims, a response must be made."  Def. Nordean's Response to the Gov't's Notice of Sealed Submission of Evidence at 1, Dkt. 132.  Defendant states the Government's descriptions of what is depicted in the CCTV Videos is "misleading" and asks that the Court review specific portions of the CCTV Videos.  *Id.* at 2-3.

The Press Coalition now respectfully moves to intervene in this matter to assert the public's distinct interest in receiving the CCTV Videos that Defendant would publish but for their designation as "Highly Sensitive."

## ARGUMENT

**I.     The Press May Intervene For The Purpose Of Challenging A Protective Order**

It is well settled that members of the press, like members of the public, have standing to intervene to challenge protective orders and confidentiality designations that restrict access to materials of public concern.  *See League of Women Voters of the United States v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020) ("Every circuit court that has considered the question—including

this one—has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.") (internal marks omitted); *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (embracing a "flexible approach" to intervention given "our longstanding tradition of public access to court records" so that "third parties [can] have their day in court to contest the scope or need for confidentiality," and "hold[ing] that third parties may be allowed to permissively intervene under [the Federal Civil Rules] for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order") (citations and internal marks omitted); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 4 (D.D.C. 2009) (noting that the Court had granted press motion to intervene "for the limited purpose of opposing the government's motion" to designate unclassified material as "protected" under the Protective Order governing Guantanamo Bay prosecutions); *cf. United States v. Hubbard*, 650 F.2d 293, 311 n.67 (D.C. Cir. 1980) (noting that "[f]ederal courts have frequently permitted third parties to assert their interests in *preventing* disclosure of material sought in criminal proceedings") (emphasis added).

In another Capitol riot case where the Press Coalition similarly moved to intervene for the limited purpose of challenging the "Highly Sensitive" designation of CCTV footage that the defendant claimed was exculpatory, the Government conceded that such intervention "appears appropriate" and thus "assume[d] for purposes of th[e] motion that intervention under such circumstances is appropriate." United States' Opp. to the Press Coalition's Mot. to Intervene at 3-4, *United States v. Anderson*, 21-cr-215-RC, Dkt. 28 (emphasis added).

Here, the Press Coalition seeks to intervene for the limited purpose of challenging the Government's use of the Protective Order to prevent Defendant from making the CCTV Videos available to the public. Under the law of this Circuit, the Court should permit such intervention.

5

## II. The Government Fails To Justify Designating The CCTV Videos "Highly Sensitive"

The Protective Order provides that "the burden of demonstrating the need for a protective order remains with the government at all times." *See* Dkt. 103 at 4. The Government has not demonstrated such a need with respect to the CCTV Videos, and it cannot do so on these facts.

### A. The Government's position here contradicts its position in other riot cases.

In sealing the CCTV Videos, the Government contradicts the position it has taken in other pending Capitol riot prosecutions, where it has chosen not to contest the release of Capitol surveillance footage. *See, e.g.*, Minute Order of July 2, 2021, *In re Application for Access to Certain Sealed Video Exhibits,* 21-mc-74-EGS (ordering release of CCTV video exhibits shown in *United States v. Cua*, 21-cr-107-RDM-1, after the Government indicated that "it and Mr. Cua are in agreement that the video . . . can be released"); Minute Order of June 19, 2021, *United States v. Morss*, 21-cr-40-TNM-5 (ordering release of videos, including four clips of CCTV footage, after "neither the government nor the defense objects to the release"); Minute Order of June 23, 2021, *United States v. Owens*, 21-cr-286-BAH (ordering release of video exhibits, including two CCTV video clips, to the Press Coalition based on the parties' consent); Minute Order of June 24, 2021, *In re Application of Press Coalition for Certain Sealed Video Exhibits*, 21-mc-85-CRC (ordering release of four video compilations shown to the court in *United States v. Egtvedt*, 21-cr-177, which included CCTV footage, after "both the government and the defendant have indicated their consent to the release"); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at *2 (D.D.C. Mar. 17, 2021) (noting the Government took no position on a Press Coalition member's request for release of Capitol surveillance videos shown at a detention hearing); United States' Second Supp. Resp. to Expedited Mot. for Public Access to Certain Sealed Video Exhibits, *In re Application of Press Coalition for Certain Sealed Video Exhibits*,

6

Case No. 21-mc-34-TFH, Dkt. 8 (withdrawing objection to release of Capitol surveillance videos shown to the court in *United States v. Tanios*, 21-cr-222-TFH-2).

**B.      The Government's rationale for secrecy no longer withstands scrutiny.**

According to the Government, disclosure of the surveillance footage would expose "the layout, vulnerabilities and security weaknesses of the U.S. Capitol." DiBiase Decl. ¶ 14, Dkt. 92-1. But the Government has already released CCTV footage that was captured in the same exact location as the CCTV Videos at issue here – *i.e.*, on the Upper West Terrace of the Capitol. *See Video Evidence Shown in the Capitol Insurrection Criminal Cases*, ProPublica (July 27, 2021), https://projects.propublica.org/jn-6-video-evidence/ ("Exhibit 11 - Video Upper Terrace West-1.mp4" and "Exhibit 12 - Video Upper Terrace West-2.mp4" under "USA v Tanios").

Presented with an identical situation in the *Anderson* case, where the defendant challenged the "Highly Sensitive" designation of a CCTV video clip and the Government had previously released footage from the same Capitol security camera, Judge Rudolph Contreras recently observed that the DiBiase Declaration is "very, very generalized" and that when the Government has already released footage from the same camera, "the already thin reed snaps." July 28, 2021 Hr'g Tr. at 5:20-6:6, 10:8-21. Judge Contreras thus ordered the Government to remove its "Highly Sensitive" designation in that case so that the defendant could share the CCTV video clip with the press. Order, *United States v. Anderson,* 21-cr-215-RC, Dkt. 37.

Indeed, the Government submitted the identical DiBiase Declaration four months ago with its subsequently-abandoned opposition to release of CCTV video exhibits in the *United States v. Tanios* riot case. *See* Decl. of Thomas A. DiBiase ("DiBiase Decl."), *In re Application of Press Coalition for Certain Sealed Video Exhibits*, Case No. 21-mc-34-TFH, Dkt. 4-1; United States' Second Supp. Resp. to Expedited Mot. for Public Access to Certain Sealed Video

7

Exhibits, Dkt. 8 (withdrawing objection to release of Capitol surveillance videos).  Since then, footage from many different Capitol CCTV cameras has been released to the public.  *See, e.g.*, *News4 Obtains Video of Alleged Baseball Bat Attack at US Capitol Insurrection*, NBC Washington (Mar. 18, 2021) https://www.nbcwashington.com/news/local/news4-obtains-video-of-alleged-baseball-bat-attack-at-us-capitol-insurrection/2611519/ (CCTV footage submitted in *United States v. Jackson* shown at 1:06); *Video Evidence Shown in the Capitol Insurrection Criminal Cases*, ProPublica (July 27, 2021), https://projects.propublica.org/jan-6-video-evidence/ (compiling CCTV video exhibits from the prosecutions of George Tanios, Grady Douglas Owens, Bruno Joseph Cua, Daniel Dean Egtvedt and Robert Morss).

       The Government itself has also disseminated CCTV footage in investigations and proceedings related to the Capitol riot.  *See, e.g.*, U.S. Capitol Violence, FBI, https://www.fbi.gov/wanted/capitol-violence; *See full video of how insurrection at Capitol unfolded*, CNN (Feb. 10, 2021), https://www.cnn.com/videos/politics/2021/02/10/security-footage-capitol-riot-plaskett-timeline-impeachment-trial-two-vpx.cnn (Capitol security video shown at 12:30, 17:30, 21:40, 22:50, 33:40, 34:34 during President Trump's second impeachment trial).  The layout of the Capitol and the locations and capabilities of its surveillance cameras are simply no longer secret.

       The D.C. Circuit addressed an analogous situation in *Washington Post v. Robinson*, where the *Post* sought access to the plea agreement of a district employee who cooperated with an investigation into Mayor Marion Barry.  935 F.2d 282, 283-85 (D.C. Cir. 1991).  The government argued that the record should remain sealed because it "was part of an ongoing criminal investigation that might be compromised or that might embarrass innocent parties if publicized," because "release of the agreement may [have made] it difficult to secure the

8

cooperation of other witnesses," and because "the safety of [the cooperator] and his family would have been placed at risk." *Id.* at 291 (citation, internal marks, and alterations omitted). The court rejected these speculative concerns, reasoning that the substantial amount of already-public information about the investigation and the cooperator's involvement, including information reported by the press, meant that unsealing the plea agreement "could hardly have posed any *additional* threat to the ongoing criminal investigation." *Id.* at 292 (emphasis added).

Because the public already has access to an enormous volume of videos from inside the Capitol, the Government likewise cannot demonstrate that releasing these CCTV Videos would pose any further threat to the security of the Capitol. Especially when weighed against the public's interest in viewing evidence that the Defendant claims is exculpatory, the Government cannot justify maintaining its designation of the CCTV Videos as "Highly Sensitive." The Court should therefore order the Government to remove that designation from the CCTV Videos and to make the CCTV Videos available to the press and the public.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court grant its motion to intervene, order the Government to remove the "Highly Sensitive" designation from the CCTV Videos, and grant such other and further relief as is just and proper.

Dated:  August 3, 2021
         Respectfully submitted,

         BALLARD SPAHR LLP

         /s/ *Charles D. Tobin*
         Charles D. Tobin (#455593)
         Maxwell S. Mishkin (#1031356)
         Lauren Russell (#1697195)
         1909 K Street, NW, 12th Floor
         Washington, DC 20006
         Telephone: (202) 661-2200
         Fax: (202) 661-2299
         tobinc@ballardspahr.com
         mishkinm@ballardspahr.com
         russelll@ballardspahr.com

         *Counsel for the Press Coalition*

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August 2021, I caused true and correct copies of the foregoing to be served via electronic mail and U.S. Mail on the following:

David Benjamin Smith
DAVID B. SMITH, PLLC
108 North Alfred Street
1st Floor
Alexandria, VA 22314
dbs@davidbsmithpllc.com

Nicholas D. Smith
DAVID B. SMITH, PLLC
7 East 20th Street
Suite 4r
New York, NY 10003
nds@davidbsmithpllc.com

*Counsel for Defendant Ethan Nordean*


James B. Nelson
U.S. Attorney's Office for the District of Columbia
555 4th Street NW
Room 4112
Washington, DC 20001
james.nelson@usdoj.gov

Jason Bradley Adam McCullough
U.S. Attorney's Office for the District of Columbia
555 4th Street NW
Washington, DC 20530
jason.mccullough2@usdoj.gov

Luke Matthew Jones
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW
Washington, DC 20530
luke.jones@usdoj.gov

*Counsel for the United States of America*

                                                       /s/ *Charles D. Tobin*
                                                       Charles D. Tobin (#455593)