UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-175 (TJK) |
| | : | |
| ETHAN NORDEAN, | : | |
| JOSEPH BIGGS, | : | |
| ZACHARY REHL, and | : | |
| CHARLES DONOHOE, | : | |
| | : | |
| Defendants. | : | |

## GOVERNMENT'S REPLY REGARDING DEFENDANTS' ABILITY TO CONFER WITH COUNSEL AND PREPARE FOR TRIAL

As the government stated in its initial filing (ECF 257), insofar as any defendant in this case is unsatisfied with his present ability to consult with counsel, review evidence, and participate in the preparation of his defense, there is an obvious solution: transport the defendant to this district. The Court should adopt this solution as to defendants Nordean and Biggs, both of whom are unsatisfied with their current conditions of confinement but nonetheless resist transport.

As an initial matter, transporting the defendants to this district would eliminate the concerns they raise regarding the facilities at which they are detained. *See* ECF 258 (Nordean), 270 (Biggs).[1] Both defendants, however, claim that the conditions at the D.C. Jail are likewise unacceptable, and they seek release pursuant to 18 U.S.C. § 3142(i), under which a judge can

---

[1] Although it is of little relevance here, the government disputes defendant Nordean's contention (ECF 258 at 1) that the government's prior communications with staff at FDC SeaTac were somehow improper and that the government provided "false" information to the Court in prior filings regarding Nordean's detention at that facility. Moreover, defendant Nordean suggests (ECF 258 at 2) that, because the Court ordered the instant briefing regarding defendants' ability to prepare for trial, the government somehow arranged for Nordean to be permitted to make a phone call to his counsel. Counsel for the government have not recently communicated with staff at SeaTac, and defendant Nordean's suggestion is simply wrong.

permit temporary release of a defendant when "necessary for preparation of the person's defense or for another compelling reason."[2]

As the government has explained, and as the Court is aware, the government, the D.C. Department of Corrections ("DOC"), and the Federal Public Defender ("FPD") have taken (and continue to take) extraordinary steps to ensure that defendants detained in D.C. have access to counsel and the ability to review electronic discovery—and, in particular, the voluminous electronic discovery that pertains to the offenses in this and other January 6 cases. *See* ECF 257 at 5-7.  Before this Court considers the drastic measure of temporarily releasing the defendants, the Court should determine whether detention in this district—which is the typical circumstance for defendants charged in this district—would in fact provide these defendants reasonable access to counsel and the ability to review evidence and prepare for trial.  Given these recent developments at the D.C. Jail, there is reason to believe that it would.

For these reasons, the defendants cannot carry their burden of demonstrating that release under section 3142(i) is "necessary," and their requests for release on those grounds should be denied.

## Release under 18 U.S.C. § 3142(i) is Not Warranted

As the government noted (ECF 257 at 4-5), to justify release under section 3142(i), a defendant should "address[] why less 'drastic measures,' such as making additional arrangements to communicate with his client remotely, are not available to allow him to make progress in

---

[2] Defendant Biggs concedes (ECF 270 at 5) that, from his current facility, he is in daily communication with his attorney and that, because similar technology is used at the D.C. Jail, he expects that daily communication (by phone and email) will continue.  However, he claims (at 3) that, given the sheer volume of video and other electronic evidence in this case, he "cannot do even a limited review [of video evidence] from the D.C. Jail," and (at 6-7) that "[t]he review of videos and other electronic evidence in a meaningful way is only available if Biggs can be released to his home in Florida."

2

adequately preparing defendant for trial." *United States v. Keeton*, 457 F. Supp. 3d 855, 861 (E.D. Cal. 2020), *aff'd*, 2020 WL 4805479 (9th Cir. June 17, 2020); *accord*, *United States v. Villegas*, No. 2:19-CR-568-AB, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020).  Furthermore, release that would merely facilitate access to counsel is an insufficient basis for relief under § 3142(i), so long as reasonable access while in custody is available, either in person or by other means.  *United States v. Terrone*, 454 F. Supp. 3d 1009, 1026-27 (D. Nev. 2020) (denying temporary release where the jail "has limited in-person visitation [and] provided for teleconferencing and telephone communication with legal representatives and visitors").  Here, transporting the defendants to this district is an obvious measure that would provide the defendants with improved access to counsel and a far greater ability to review discovery.  The Court should pursue that option before considering release.

Defendant Biggs cites no comparable cases to support his argument for release.  Nordean cites two, but neither support his request here.  In *United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020), the government did not challenge the applicability of section 3142(i), and the court in that case only relied on it as an alternative basis for release.  *Id.* at 64-86.  In that case, the court ordered the defendant's release based on its reconsideration, under 18 U.S.C. § 3142(f), of the initial detention order and its determination that circumstances had changed since that order. *Id.* at 65-66.  That determination was based on the Court's assessment that the government's case was "weaker" than previously believed and "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic."  In this case, by contrast, the Court has denied defendants' motions for reconsideration of detention under 18 U.S.C. § 3142(f).

Identifying an alternative ground for release, the *Stephens* court did find that "the obstacles the current public health crisis pose[d] to the preparation of the Defendant's defense constitute[d]

a compelling reason under 18 U.S.C. § 3142(i)." *Id.* at 67.  Notably, however, that ruling was made at the very start of the pandemic, when prisons and jails were just beginning to confront COVID-19 and before they had established protocols to address it.  The government did not dispute that at that time, the Bureau of Prisons had suspended all legal visits, and the detention facility would not allow telephone calls between Stephens and his attorney.  *Id.* at 67.

The circumstances here are different.  Although the pandemic continues, the D.C. Jail, like other such facilities, has now developed protocols to address it.  To be sure, the D.C. Jail, like similar facilities, has recently imposed restrictions in response to the spike in infections due to the Omicron variant.  But all indications are that the rate of infections will drop significantly in the coming weeks and, fortunately, that Omicron causes serious illness at a lower rate than previous variants, particularly among the vaccinated.  Thus, notwithstanding current restrictions that may impact inmates' ability to confer with counsel and review discovery, those restrictions are temporary.[3]

The other case cited by Nordean, *United States v. Ford*, No. 2:17-CR-00328, 2021 WL 2322633, at *2 (W.D. Pa. June 7, 2021), is likewise distinguishable.  Ford had pled guilty, and therefore lost the presumption of innocence, but the government in that case *consented* to his release pending sentencing.  *Id.* at *1.  Furthermore, although the Court "review[ed]" the motion under 18 U.S.C. § 3142(i)," the court also stated that "it does not appear to the Court that Mr. Ford

---

[3] With respect to the impact of the pandemic, defendant Nordean states (ECF 258 at 4): "If Nordean's elderly counsel is infected due to the government's unreasonable demands, its lawyers will be responsible for the inaccurate representations and extralegal arguments leading to that outcome." Contrary to defendant Nordean's suggestion (at 4), it is not "[t]he government's proposal that Nordean's septuagenarian counsel should expose himself" to COVID-19.  To be sure, in-person visits by counsel who is located in Virginia would be easier if defendant Nordean were detained in D.C. rather than Seattle.  But they would also be easier for his counsel who is based in New York.  And, certainly, travel to meet with Nordean in Seattle would pose many of the same risks of exposure.

poses a danger to the community or a flight risk." *Id.* at *1-2.  In this case, as to dangerousness, the Court has reached the opposite conclusion.  In granting Ford's release, the court did note that much of Ford's detention had been during the pandemic, "resulting in periods of times where he was unable to contact legal counsel," but that was merely one factor in the court's "assessment of the complete context" of the case that resulted in the defendant's release.  *Id.* at *1-2.

### Access to Counsel and Discovery at the D.C. Department of Corrections

The government's initial filing explained that the policies and procedures in place at the D.C. Jail are sufficient to permit defendants to consult with their counsel, to review the evidence against them, and to participate in the preparation of their own defense.  Those policies and procedures include in-person visits, attorney phone calls, and the use of educational tablets that permit inmates to exchange text messages with their attorneys and provide them access to a law library.  Additionally, defense attorneys may request that clients be allowed to review voluminous or electronic evidence on a laptop computer provided by DOC.

In addition to DOC's electronic evidence review program, DOC, in conjunction with the government and FPD, is working to provide Capitol Breach defendants with access to a DOC "instance" (database) of evidence.com on their educational tablets in the near future, giving them access to the voluminous video footage that has been provided in discovery, provided that they have agreed to abide by the protective order.  Moreover, DOC, the government, and FPD are working to establish an e-discovery room at the Correctional Treatment Facility that will provide access to a DOC-specific Relativity workspace where January 6 defendants will be able to review discovery and share notes about discovery materials with their attorneys.[4]

---

[4] As noted above, there is every reason to believe that the recently imposed restrictions in response to the spike in Omicron infections will only be temporary, and that those restrictions will soon be lifted.  In any event, those restrictions do not limit an inmate's ability to have access to a

In light of these developments, it is undeniable that defendant's access to counsel and discovery will be far better in this district. The Court should therefore order defendants Nordean and Biggs to be transported here so that they (and their counsel) can avail themselves of these opportunities.

The defendants have nonetheless resisted transport to this district, complaining that the conditions at the D.C. Jail are inadequate and therefore release is required. The Court should reject this argument, if only because there is no evidence that the conditions at D.C. Jail would be inadequate as to these defendants—indeed, they have not yet been detained at the facility, let alone attempted to consult with counsel or review discovery while detained there.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        DC Bar No. 481052

By:    */s/ Luke M. Jones*
        LUKE M. JONES, VA Bar No. 75053
        ERIK M. KENERSON, OH Bar No. 82960
        JASON B.A. MCCULLOUGH
        D.C. Bar No. 998006; NY Bar No. 4544953
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7066
        Luke.Jones@usdoj.gov

---

laptop to review electronic discovery. Nor will they limit an inmate's access to his or her educational tablet upon which, in the very near future, January 6 inmates will be able to review the DOC instance of evidence.com.