UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:21-cr-00175 (TJK) |
| | : | |
| V. | : | |
| | : | |
| ETHAN NORDEAN, et al. | : | NOVEMBER 21, 2022 |

**JOE BIGGS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO GOVERNMENT'S INTENTION TO OFFER PERCIPIENT "TOOL" EVIDENCE**

At argument on various motions in limine before the Court on November 18, 2022, the Government advanced a novel argument about its intention to offer evidence that other human beings were used as "tools" by the defendants in this case. Counsel for Mr. Biggs orally requested permission to file a brief supplementary opposition, and the Court granted the motion. Herewith the opposition.

The lens through which the Court may choose to regard the Government's argument is best captured in an aphorism: Bad metaphors make horrible law.

The Government asserted at argument that what guns were to the Oath Keepers on January 6, non-party protestors were to the Proud Boys. It further attempted to explain what it meant by this clumsy analogy when it asserted that the Proud Boys "weaponized" third parties. The argument is difficult to understand, and impossible to square with the rules of evidence, absent expert testimony. No expert has been noticed.

Like the Oath Keepers, the Proud Boys have been charged with conspiracy to commit sedition. Whereas the Oath Keepers are alleged to have stored guns in close proximity to the Capitol to effectuate their plans, the Proud Boys used people. Or so the argument goes.

On inspection, the Government's argument disintegrates into casual metaphor.

1

A gun is an inanimate object that can only be used by a person capable of will, intentions or other indicia of agency. Like hammers, guns are tools that can be used for good or ill in the hands of an agent.[1] Guns can be used to commit a crime, and the knowing placement of a gun near a scene of planned violence may yield circumstantial evidence of the planners' intentions. But inanimate tools lack what humans possess: agency, will, intentions, and the capacity to perceive. There is almost never a question of superceding intervening cause when an allegation of the use of a gun to commit a crime is made, unless, of course, a claim of misfiring due to mechanical defect is alleged..

On January 6, 2021, the defendants in the instant case are accused of conspiring to use force to prevent the Government from accomplishing the lawful transfer of power from one president to another. They are alleged to have encouraged others to attend a rally. The rally turned violent. Apparently, the Government either intends to hold the violent acts of third parties against the defendants, or it intends to argue that the defendants planned to use the foreseeable violent acts of third parties to accomplish their conspiratorial aims. In neither case has the Government offered an admissible foundation to support the introduction of such evidence.

As this Court knows, correlation is not causation. To make the leap from the intentions of the co-conspirators to the actions of third parties requires more than the construction of a retrospective narrative. It requires, at a minimum, either some nexus or connection between the parties or some admissible explanation of the mechanism by

---

[1] Mr. Biggs does not join in the argument that agency is necessarily equivalent to culpability. At argument, counsel for another defendant suggested that a third-party must also be culpable to be used to advance a conspiracy. It seems to Mr. Biggs this argument conflated agency and culpability; certainly, a person must possess agency to be culpable, bot not all agents are culpable. The Government, after all, controls charging decisions, and unindicted co-conspirators are a commonplace in the law.

which the defendants manipulated the third-parties.  To permit correlation to substitute for proof of causation would, in this case, work a substantial prejudice by permitting the Government to assert, without proof, that the chaos that ensued on January 6, 2021 was the result of the plans of the defendants. A vast gulf separates the parties' understanding of what took place on January 6, 2021. To the Government, the day's culmination was the result of planning and execution of the plan. To the defendants, the day's events are a spontaneous eruption by folks with a lawful right both to assemble and to petition for redress of grievances. It is the Government which bears the burden of proving its theory.

Perhaps mindful of the difficulties its arguments presented, the Government asserted that the defendants had "weaponized" third parties, either fellow members of the Proud Boys, members of other groups, or so-called "normies" unaffilated with any group, to engage in acts of violence. The Government did not argue just how percipient agents were transformed into little more than zombies, or tools, at the disposal of the defendants.

"Weaponization" is a colloquialism. Merriam-Webster's defines it as a transitive verb meaning "to adapt for use as a weapon of war." https://www.merriam-webster.com/dictionary/weaponize (accessed November 21, 2022). Objects can be weaponized. Just how are people weaponized? The Government doesn't say.

"Weaponizing" an inanimate object is a simple thing. A person can throw a book at another. The book simply sails toward its target; it has become a weapon.

"Weaponizing" a person is altogether different, if the person possesses agency, that is, intentions, a will, and perceptions of their own. Simply asserting that a person acted as a defendant might have wished that they act, or even intended that they act, does not prove causation. It invites speculation. Is it the Government's contention that each of the 900 or so folks thus far arrested in connection with the January 6, 2021 riot

3

was "weaponized" by the defendants? How, exactly, did that take place?

There are theories of how people come to be influenced to do things they otherwise might not have done or even how they might be encouraged to act on impulses they already possess. Thus, the Stockholm Syndrome is used to explain the process by which a person in the captivity of another might come to identify with, adopt, and act upon the goals of her captors. But the process of being indoctrinated can be explained, and, to be admissible, a party seeking to offer such evidence must offer evidence explaining the mechanism by which the syndrome operates. The undersigned is unaware of any case in which a prosecuting authority has been permitted to argue that acts of third parties are the legal responsibility of criminal defendants absent some nexus other than mere proximity and shared political views. On the Government's theory, every assembly would yield a mass prosecution so long as one member of the group possessed criminal intent and others, no matter whether they ever communicated with the loner possessing criminal intent, broke the law at the assembly.

The analogy to "mules" in narcotics cases in unavailing. In the case of passive mules, that is a party unknowingly carrying a prohibited item from one location to another, the mule lacks knowledge and intent to commit a crime. They are used as a transportation device. They are agents acting on purposes all their own but used by others to accomplish unlawful aims The Government is unclear whether it seriously intends to argue that protestors on January 6, 2021, were used without their knowledge, forced, somehow, to carry on as foreign objects the ideas of another. One suspects the Government cannot mean this, otherwise why would they prosecute the nearly 1,000 individuals charged with crimes requiring intent?

Mules who agree to carry are out a criminal act aren't tools. They are agents,

4

perhaps less culpable that organizers or leaders, but agents nonetheless.

Mr. Biggs objects to the introduction of evidence about third-parties as tools somehow transformed into instruments of his will. There is nothing but rank and dangerous speculation supporting this theory. He similarly objects to any late effort to offer an expert to try to make sense of what "weaponization" means in this case. The Court should reject such evidence as little more than an effort to make hindsight do the work of proof. Yes, a violent mob descended on the Capitol. But the Government cannot be permitted to use the proof that such an event occurred to substitute for proof that the event was planned and executed according to plan.

THE DEFENDANT

By: /s/ NORMAN A. PATTIS /s/
NORMAN A. PATTIS
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
T: 203.393.3017
F: 203.393.9745
npattis@pattisandsmith.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the above-captioned date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Norm Pattis /s/*
