**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CASE NO: 1:21-cr-0175-3 (TJK)** |
| | * | |
| | * | |
| **ZACHARY REHL,** | * | |
| **Defendant** | * | |

**\*\*\*\*\*\*\*\***

**ZACHARY REHL'S MOTION TO DISMISS**
**THE OBSTRUCTION COUNTS IN LIGHT OF**
**THE INTERVENING DECISION BY THE**
**DISTRICT OF COLUMBIA CIRCUIT**

Mr. Rehl, through undersigned counsel, respectfully moves to dismiss the charges brought pursuant to 18 U.S.C. § 1512, Counts Two and Three of the Third Superseding Indictment (ECF 380, filed 6/6/22) ("TSI"). Count Two charges a conspiracy to obstruct an official proceeding in violation of 18 U.S.C. § 1512(k). *Id.* at 24. Count Three charges obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). *Id.* at 25. This motion seeks dismissal on the basis of the decision in *United States v. Fischer*, ___F. 4th ___, No. 22-3038, 2023 WL 2817988 (D.C. Cir. Apr. 7, 2023).

**Procedural History**

This Court previously denied a similar motion to dismiss the First Superseding Indictment. *See* Memorandum Opinion (ECF 263, entered 12/28/21). The Court denied a second motion to dismiss (ECF 442) the Third Superseding Indictment that was based on Judge Nichols' later dismissal of § 1512 offenses in *United States v. Miller,* 589 F. Supp. 3d 60 (D. D.C. 2022). *See* Order (ECF 585) and Opinion (ECF 586), filed 12/11/22.

## I.       The *Fischer* Decision Requires Dismissal of the Obstruction Counts

On April 7, 2023, the United States Court of Appeals issued a decision with three separate opinions.  A careful reading of *Fischer* requires dismissal of the obstruction charges brought under § 1512(c)(2) and its conspiracy provision, § 1512(k).

The Court of Appeals decision has no majority opinion.  The "lead" opinion was written by Judge Pan.  Judge Walker's concurring opinion joins Judge Pan's opinion only conditionally but if the condition is not met, he would join the dissent. Judge Walker also posits that his opinion should control.  Because of the unmet condition that Judge Walker places on his concurrence, Judge Katsas' dissenting opinion is the only opinion that in effect *sub silentio* receives two votes.

### A.       Section 1512(c)(2) Covers Only Conduct that Impairs the Integrity or Availability of Evidence

The dissent by Judge Katsas is clear, section 1512(c)(2) covers only conduct "that impairs the integrity or availability of evidence."

> In sum, there is no plausible account of how section 1512(c)(2) could sweep in these defendants yet provide "significant guardrails" through its requirement of acting "corruptly," ante at ——.  Rather than try to extract meaningful limits out of that broad and vague adverb, we should have acknowledged that *Congress limited the actus reus to conduct that impairs the integrity or availability of evidence*.
> . . .
> The conduct alleged here violates many criminal statutes, but section 1512(c) is not among them. Because my colleagues conclude otherwise, I respectfully dissent.

*Fischer*, 2023 WL 2817988, at *44–45 (emphasis added).

In reaching his decision, Judge Katsas rightly took into account the First Amendment interests implicated in the application of § 1512(c)(2) to the protests – peaceful and violent – that took place on January 6:

> [M]y colleagues' approach creates vagueness problems as well as First Amendment ones. Consider 18 U.S.C. § 1505, which imposes criminal penalties on anyone who "corruptly ... influences, obstructs, or impedes" a congressional inquiry. In *Poindexter*, we held this provision unconstitutionally vague as applied to acts of lying to Congress. 951 F.2d at 379. In rejecting the government's argument that the mens rea requirement sufficiently narrowed the statute, we explained that "on its face, the word 'corruptly' is vague," *id.* at 378, as were the string of adjectival synonyms. *See id.* at 379 ("Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.' "). To cure the vagueness, we limited the act component of section 1505. Specifically, we held that it applies only to acts causing a third party to violate some legal duty, thus excluding acts by which the defendant directly attempts to influence the proceeding. But this saving construction is not available here. As explained earlier, one thing section 1512(c) clearly did is break down the distinction between direct and indirect obstruction. So, if subsection (c)(2) covers all obstructive acts, direct and indirect, it has the same breadth that caused the Poindexter court to find unconstitutional vagueness. And as with the First Amendment objection, it is no answer to say that section 1512(c) may be constitutionally applied to the extreme conduct alleged here. That is true, but the government's construction still creates improbable breadth and a host of unconstitutional applications in other cases, even with the requirement of acting "corruptly."

*Id.* at *44.

Judge Walker's opinion *conditionally* joins only part of the lead opinion. *Id.* at 17. However, the condition that Judge Walker requires – a narrow reading of "corruptly" – is not met by Judge Pan's lead opinion.  In those circumstances, Walker joins the dissent.  *Id.* at *27 (N.10).

Under the reading of § 1512(c)(2) set out in Judge Katsas' opinion that § 1512(c)(2) covers only conduct that impairs the integrity or availability of evidence, the obstruction counts in the indictment against Mr. Rehl must be dismissed because the Third Superseding Indictment does not allege that the integrity or availability of any evidence was impaired by Mr. Rehl or any other defendant.

3

**B.    Judge Walker's Concurring Opinion Only Conditionally Joins the Lead Opinion**

In his concurrence, Judge Walker only conditionally joins Judge Pan's opinion. *Id.* at \*17. The condition is a narrow definition of the "corruptly" mental state set out in § 1512(c)(2). However, Judge Pan's lead opinion declines to define "corruptly" narrowly. *Id.* at 7.

> If proven at trial, the Defendants' "efforts to stop Congress from certifying the results of the 2020 presidential election" are the kind of "obstructive conduct" proscribed by (c)(2). Lead Op. 8. I thus concur in the Court's judgment and join the lead opinion's interpretation of (c)(2)'s act element.
>
> I do not join Section I.C.1 of the lead opinion — which declines to decide the scope of (c)(2)'s "corrupt[ ]" mental state — because I believe that we must define that mental state to make sense of (c)(2)'s act element. If (c)(2) has a broad act element and an even broader mental state, then its "breathtaking" scope is a poor fit for its place as a residual clause in a broader obstruction-of-justice statute. *See Van Buren v. United States*, ─── U.S. ───, 141 S. Ct. 1648, 1661, 210 L.Ed.2d 26 (2021) (reasoning that "breathtaking" scope "underscores the implausibility of the Government's interpretation").
>
> . . .
>
> Instead, I would give "corruptly" its long-standing meaning. It requires a defendant to act "with an intent to procure an unlawful benefit either for himself or for some other person." The defendant must "not only kn[ow] he was obtaining an 'unlawful benefit,' " it must also be "his 'objective' or 'purpose.' " Read that way, "corruptly" makes sense of (c)(2)'s place in the statutory scheme and avoids rendering it a vague and far-reaching criminal provision.
>
> When used as a criminal mental state, "corruptly" is a term of art that requires a defendant to act with "an intent to procure an unlawful benefit either for himself or for some other person." That meaning has been recognized in similar contexts by Justice Thomas, Justice Scalia, and Judge Silberman. And in this context, for § 1512(c), the statutory text and structure confirm that "corruptly" has its long-established meaning. Reading it that way reconciles (c)(2) with the statutory scheme, avoids vagueness, and heeds the Supreme Court's warning to

4

> beware of interpretations that impose onto criminal statutes a "breathtaking" scope. *Van Buren v. United States*, —— U.S. ——, 141 S. Ct. 1648, 1661, 210 L.Ed.2d 26 (2021).
>
> Because I read "corruptly" as courts have read it for hundreds of years — **and only because I read it that way** — I concur in the Court's judgment.

*Id.* at \*17, 26–27 (D.C. Cir. Apr. 7, 2023) (Walker, J. concurring in part) (emphasis added; internal citations omitted).

In a footnote, Judge Walker goes on to explain that his decision should control:

> In other words, my reading of "corruptly" *is necessary to my vote to join the lead opinion's proposed holding on "obstructs, influences, or impedes" an "official proceeding*." 18 U.S.C. § 1512(c)(2). *If I did not read "corruptly" narrowly, I would join the dissenting opinion.* That's because giving "corruptly" its narrow, long-established meaning resolves otherwise compelling structural arguments for affirming the district court, as well as the Defendants' vagueness concerns. See supra Sections III & IV.
>
> My reading of "corruptly" may also be controlling, at least if a future panel analyzes this splintered decision under *Marks v. United States* — the test for deciding the holding of a fractured Supreme Court judgment. 430 U.S. 188, 193 (1977); *see also Binderup v. Attorney General*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc) (applying Marks to determine the "law of [the] Circuit").
>
> Where, as here, "no single rationale explaining the result enjoys the assent of [a majority]" — and again, in my view, the rationale in the lead opinion is not enough to uphold the indictments — Marks says the court's holding is the "position taken" by the judge "who concurred in the judgments on the narrowest grounds." The narrowest ground is a "logical subset of other, broader opinions." *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991). It is a "middle ground" that "produce[s] results that" accord with "a subset of the results" intended by each opinion. *United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring in denial of rehearing en banc).
>
> That describes my position here. I read (c)(2) to cover only some of the conceivable defendants the lead opinion might allow a court to

convict. So my opinion is a "logical subset of [an]other, broader opinion[ ]." Id. (cleaned up). In contrast, the lead opinion suggests three plausible readings, including mine. Lead Op. ——– ——. It then says the Defendants' alleged conduct is sufficient "[u]nder all those formulations." Id. (emphasis added). Though the lead opinion says elsewhere that it "takes no position on the exact meaning of 'corruptly,' " it must take some position on it. Lead Op. —— n.5. Without taking a position, the lead opinion could not conclude, as it does, that the indictments should be upheld.

Put differently, if a defendant is guilty under my approach, he will be guilty under the lead opinion's. But some of the defendants guilty under the lead opinion's approach will not be guilty under my approach. Mine is the "position taken" by the panel member "who concurred in the judgment[ ] on the narrowest grounds." *Marks*, 430 U.S. at 193, 97 S.Ct. 990.

That is not to say that a future panel will apply *Marks* to this decision. I express no opinion about whether it should. Cf. Richard M. Re, Beyond the Marks Rule, 132 Harv. L. Rev. 1942, 1944 (2019) ("the Marks rule has generated considerable confusion"). But a future panel will need some rule to decide the holding of today's fractured decision, and the Marks rule would be an unsurprising choice. *Id.* (" 'the Marks rule' ... has been used with increasing regularity").

One last thing. To the extent it matters — and it doesn't matter under *Marks* — the lead opinion and the dissent do not agree about (c)(2)'s mental state. Rather, the dissent expressly rejects the lead opinion's approach to "corruptly," suggesting that it raises "vagueness and overbreadth concerns." See Dissenting Op. ——.

*Id.* at *27 (N.10) (Walker, J.) (emphasis added) (internal citations omitted).

Judge Walker's narrow reading of "corruptly" was a "necessary" condition to his vote "to join the lead opinion's proposed holding on *obstructs, influences, or impedes* an *official proceeding*. *Id.* As that condition was not met, Judge Walker was clear that he would "join the dissenting opinion." *Id.* In effect, the only opinion that garnered two votes is the dissent by Judge Katsas.

6

The obstruction counts should therefore be dismissed because the dissenting opinion reads §1512(c)(2) to reach only conduct that impairs the integrity or availability of evidence.   The Third Superseding Indictment contains no such allegation.

**C.      Judge Pan's Lead Opinion Placing No Limits on § 1512(c)(2) Is Not Joined By The Other Two Judges**

Judge Pan adopted the government's argument placing no limits on the *actus reus* for a §1512(c)(2) offense.  Judge Pan read the word "otherwise" in section (c)(2) as introducing a "catch-all" that covers:

> "otherwise obstructive behavior that might not constitute a more specific offense" involving documents, records, or objects under § 1512(c)(1). Such "catch-all" structures are not uncommon. See, e.g., 18 U.S.C. § 1952(a)(3); 28 U.S.C. § 2466(a)(1)(C). In such statutes, "the use of the introductory word 'otherwise' indicates that the evasion referred to in the [catch-all provision] reaches beyond the[ ] specific examples [in the preceding sections] to myriad means that human ingenuity might devise    "

*Id.* *5. Judge Pan rejected the "narrower reading of the statute" that would require conduct that involves "evidence impairment." *Id*. at *6.

Although Judge Pan acknowledged the novel nature of the government's application of § 1512(c)(2) to protest activities, she dismissed the argument.

> To be sure, outside of the January 6 cases brought in this jurisdiction, there is no precedent for using § 1512(c)(2) to prosecute the type of conduct at issue in this case. But "the whole value of a generally phrased residual clause  is that it serves as a catchall for matters not specifically contemplated ...." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009); *see also Griffin*, 589 F.2d at 206–07 ("The obstruction of justice statute [§ 1503] was drafted with an eye to the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined." (citation and internal quotation marks omitted)). As the Supreme Court has noted: "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth."

*Id.*

With respect to the term "corruptly," Judge Pan explained that "corrupt intent exists at least when an obstructive action is independently unlawful – *i.e.*, an independently unlawful act is necessarily "wrongful" and encompasses a perpetrator's use of "independently corrupt means" or "an unlawful method." *Id.* at *8.

Judge Pan noted that the "concurring opinion embraces the definition of "corruptly" that requires proof that the defendant acted "with an intent to procure an unlawful benefit either for himself or for some other person." *Id.* However, she maintained that because "the meaning of "corruptly" was discussed only peripherally in the parties' briefs and in the district court's opinion, and no party requested the standard that the concurrence adopts" she would leave the exact contours of the term to another day. *Id.*

As Judge Walker, Judge Pan also addressed in a footnote the so-called *Marks* rule for determining which opinion controls:

> The concurrence suggests that its opinion might bind future panels under *Marks v. United States*, 430 U.S. 188 (1977). The *Marks* rule instructs that, "when the [Supreme] Court issues fragmented opinions, the opinion of the Justices concurring in the judgment on the 'narrowest grounds' should be regarded as the Court's holding." *King v. Palmer*, 950 F.2d 771, 780 (D.C. Cir. 1991) (en banc) (quoting *Marks*, 430 U.S. at 193, 97 S.Ct. 990). But this court has never applied *Marks* to its own cases. It seems that only one federal appellate court has done so, see *Binderup v. U.S. Att'y Gen.*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc), and there is good reason not to extend *Marks* any further. The Marks rule is " 'more easily stated than applied ... [it] has so obviously baffled and divided the lower courts that have considered it' that it has created a 'degree of confusion' such that it is not always 'useful to pursue to the utmost logical possibility.' " Moreover, "[b]ecause it applies precisely when there is no majority view of the law, *Marks* creates precedents that are unlikely to be either legally correct or practically desirable."

In any event, the instant case is a poor vehicle for applying *Marks*. First, the concurring opinion's attempt to establish its view as controlling must fail because a majority of the panel has expressly declined to endorse the concurrence's definition of "corruptly." Second, the concurrence's definition is not one with which this opinion "must necessarily agree as a logical consequence of its own, broader position" because this opinion takes no position on the exact meaning of "corruptly." This opinion's holding on "corruptly" is grounded in the mere sufficiency of the allegations in this particular case — it states only that the alleged conduct of the three appellees is sufficient under any understanding of "corrupt" intent. By contrast, the concurring opinion goes further and affirmatively adopts a new test for "corrupt" intent that has not been requested by any party — that is not a "logical subset" of an opinion that expresses no preference for any definition of "corruptly."

*Id.* at *8 (N. 5) (internal citations omitted).

### D.    The Only Holding That Survives the Fractured[1] *Fischer* Decision Is That Congress Limited the Actus Reus of § 1512(c)(2) to Conduct That Impairs the Integrity or Availability of Evidence

The fractured decision leaves Judge Katsas' reading of § 1512(c)(2) that "Congress limited the actus reus to conduct that impairs the integrity or availability of evidence" as the only ruling that garnered two votes. *Id.* at *44. Judge Pan's broad reading of the *actus reus* is rejected by both Judge Walker (unless the mens rea is narrowed, which the Pan opinion does not) and Judge Katsas.

Judge Walker concurs with Judge Pan's broad act element only if the "corrupt" mental state is narrowly defined. "If (c)(2) has a broad act element and an even broader mental state, then its "breathtaking" scope is a poor fit for its place as a residual clause in a broader obstruction-of-justice statute." *Id.* at *17 (Walker concurrence). Without that narrow reading of corruptly, Judge Walker

---

[1] In his concurrence, Judge Walker refers to the Fischer decision as a "fractured decision." *Fischer*, at *27 (N.10).

"join[s] the dissent." *Id.* at *27 (N.8).

In sum, the obstruction counts against Mr. Rehl do not allege that he impaired the integrity or availability of evidence. Accordingly, the counts must be dismissed.

While Mr. Rehl recognizes that the argument that the dissenting opinion is the controlling opinion is an extraordinary argument, there is no other logical way to reconcile the separate opinions. Indeed, Judge Walker creates this extraordinary result by explicitly conditioning his concurrence on a condition that Judge Pan does not agree to and at the same time arguing that his opinion controls:

> Because I read "corruptly" as courts have read it for hundreds of years — and *only* because I read it that way — I concur in the Court's judgment.[10] I also join all but Section I.C.1 and footnote 8 of the lead opinion.

*Fischer* at *27-28 (emphasis original). Footnote 10 then explains that:

> In other words, my reading of "corruptly" is ***necessary*** to my vote to join the lead opinion's proposed holding on "obstructs, influences, or impedes" an "official proceeding." 18 U.S.C. § 1512(c)(2). ***If I did not read "corruptly" narrowly, I would join the dissenting opinion***. That's because giving "corruptly" its narrow, long-established meaning resolves otherwise compelling structural arguments for affirming the district court, as well as the Defendants' vagueness concerns. See *supra* Sections III & IV.

*Id.* at *27 (N.10) (emphasis added). This is

Judge Pan similarly argues that her opinion controls without regard to the conditionality of the concurrence. With respect the judgment, Judge Walker seemingly reads the indictment in *Fischer* as alleging facts describing "acts" that a jury could find constituted corrupt obstruction of Congress under his narrow definition of "corruptly" leading him to then unconditionally join in the judgment.

With all due respect to the Circuit Judges, it is extraordinary that Judge Pan and Judge

Walker each assert that their opinion controls while disagreeing on the essential issues in the case. The result is an extraordinarily confusing decision that creates more vagueness than it resolves.

## II.   In the Alternative, the Fractured Decision Leaves Application of § 1512(c)(2) in a Muddle of Unconstitutional Ambiguity

In the alternative, the fractured Court of Appeals decision, with three inconsistent opinions, exposes what Mr. Rehl argued in his earlier motions – that application of § 1512(c)(2) violates his rights under the Due Process clause to "fair warning" of what conduct is illegal. *United States v. Lanier*, 520 U.S. 259, 266-67 (1997). And it fails to make sure that "the power of punishment is vested in the legislative, not the judicial department." *United States v. Davis,* 139 S. Ct. 2319, 2333 (2019). As applied to Mr. Rehl, § 1512(c)(2) is unconstitutionally vague.

When three appellate judges, after briefing and argument and months of consideration are unable to reach agreement on what conduct with what requisite intent is prohibited by § 1512(c)(2) there can be no doubt that Mr. Rehl, an ordinary person who is not trained in the law, could not have known on January 6 what conduct was made criminal by §1512(c)(2). *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89-90 (1921) ("If learned jurists cannot agree on the statute's meaning and the conduct it prohibits, it follows that the statute "fails to give ordinary people fair notice of the conduct it punishes."). Indeed, in assessing whether a statute is unconstitutionally vague, the Supreme Court has found an important and relevant factor "the conflicting results which have arisen from the painstaking attempts of enlightened judges in seeking to carry out [a] statute in cases brought before them." *Id*.

### A.   Fair Warning Requirement

There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Second, as a sort of "junior version of the

> vagueness doctrine," the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearlycovered. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope, cf. U.S. Const., Art. I, § 9, cl. 3; § 10, cl. 1 (Ex Post Facto Clauses bar legislatures from making substantive criminal offenses retroactive). In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

*United States v. Lanier*, 520 U.S. 259, 266-67 (internal citations omitted).

Moreover, in the First Amendment context which is the backdrop to the political rallies and protests that were taking place on January 6 and in a case where there is no allegation that Mr. Rehl personally engaged in or encouraged or endorsed using violent or assaultive conduct or destruction of property, the due process implications are even more heightened.

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.  Vague laws offend several important values.  First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not providing fair warning.  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.  Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,'it 'operates to inhibit the exercise of (those) freedoms.'  Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked.'

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

**B.     The Vagueness Doctrine and the Rule of Lenity Requires Dismissal of the Obstruction Counts**

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. The prohibition of vagueness in criminal statutes "is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process."

*Johnson v. United States,* 576 U.S. 591, 595 (2015) (internal citations omitted)

In light of the fractured decision in *Fischer,* the Supreme Court's admonition in *Yates v. United States* is particularly apt:

[I]f our recourse to traditional tools of statutory construction leaves any doubt about the meaning of "tangible object," as that term is used in § 1519, we would invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." That interpretative principle is relevant here, where the Government urges a reading of § 1519 that exposes individuals to 20-year prison sentences for tampering with any physical object that might have evidentiary value in any federal investigation into any offense, no matter whether the investigation is pending or merely contemplated, or whether the offense subject to investigation is criminal or civil. ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). In determining the meaning of "tangible object" in § 1519, "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite" (rule of lenity " reinforces" the conclusion that arson of an owner-occupied residence is not subject to federal prosecution under 18 U.S.C. § 844(i) because such a residence does not qualify as property "used in" commerce or commerce-affecting activity).

*Yates v. United States*, 574 U.S. 528, 547-48 (2015) (internal citations omitted).

Vague laws "leav[e] people in the dark about what the law demands and allow[] prosecutors and courts to make it up." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018). The perspective is that of a reasonably intelligent person. If the government is charging hundreds of people with misdemeanors for the same conduct that results in a felony charge punishable by 20 years' imprisonment, it raises the second concern that the vagueness doctrine seeks to prevent. Indeed, as to Mr. Rehl, who did not commit any violence, destroy any property, battle law enforcement, or bring weapons to the Capitol, his charges are exponentially more severe than others who committed similar or even more serious conduct. When crimes are not sufficiently demarcated it makes possible such an exercise of arbitrary enforcement.

As can be seen dramatically in Mr. Rehl's case, in the January 6 prosecutions, the government has provided no notice, much less fair notice, of when or why a defendant moves from a Title 40 misdemeanor offense to one or more felony charges carrying 20-year terms of imprisonment. In the instant matter, two cases provide evidence of the arbitrary authority being exercised by the government because of the vagueness of the statute.

In the case of Mr. Finley, a Proud Boy chapter president, who participated in multiple telegram chat groups, marched with Mr. Rehl for much of January 6, entered the Capitol at the same time that Mr. Rehl did and deleted relevant messages after January 6 (meriting an obstruction enhancement at sentencing), he was only charged with and convicted of misdemeanors and sentenced to 75-days imprisonment. Similarly, Mr. Giddings, who was a member of the Ministry of Self Defense, marched with Mr. Rehl on January 6, entered the Capitol at the same time and remained within the Capitol for the same duration as Mr. Rehl, he has also only been charged with and now pleaded guilty to a single misdemeanor. Neither man has spent a day in pretrial detention while Mr. Rehl has been detained pretrial for more than two years and is facing

14

ten separate felony charges, several of which carry 20-year terms of imprisonment.

Whatever differences the government may seek to rely on to explain why Mr. Rehl and these two men are not similarly situated, no factual basis exists for the arbitrary application of criminal statutes to this extreme extent – ten felony counts versus one misdemeanor. The ambiguities in the statute, which remain unresolved even after an appellate decision, constitute a gross absence of "standards to govern the actions of police officers, prosecutors, juries and judges" with the resulting arbitrary application of the law. *Sessions v. Dimaya*,138 S. Ct. 1204, 1212 (2018). The Due Process clause requires dismissal of the charges under these circumstances.

## III.   The Due Process Clause and the Sixth Amendment Require Dismissal of the Obstruction Charges

When the Court denied the earlier motions, the case was in a pretrial posture and there were no fractured opinions by the United States Court of Appeals for the District of Columbia Circuit. At this moment, Mr. Rehl is nearing the end of the trial, having already presented much of his defense and in the process of deciding whether to take the stand. Unless the Court dismisses the obstruction counts, it does not comport with due process that there is still no definitive answer as to whether the government must prove that he acted with the intent to gain a benefit for himself or another person, as Judge Walker would require. Or whether the *mens rea* the government must prove is one of the ones that Judge Pan references. Namely, "wrongful, immoral, depraved, or evil" conduct, *Fischer*, at *7. Although as Judge Katsas points out, the D.C. Circuit in *Poindexter*, 951 F.2d at 379, "held that this precise adjectival string neither narrows nor clarifies a statutory requirement of acting corruptly." *Id.* at *42. Or whether the *mens rea* is satisfied when a defendant acts "with a corrupt purpose," through "independently corrupt means," *Fischer* at *7, which neither Judge Walker nor Judge Katsas endorse.

15

As Judge Walker's concurrence is conditioned on a narrow definition of corruptly, which Judge Pan does not accept, then Judge Katsas dissent controls and this Court must dismiss the obstruction counts as the actus reus set out in Judge Katsas' opinion are not alleged in the Indictment.

### A. Counsel Cannot Provide Adequate Representation With Such a Vague Definitional Structure

It simply is impossible for undersigned counsel to provide adequate representation when the elements of one of the two most serious offenses, which carry 20-year terms of imprisonment, are in flux while the case is being tried.  And while the Court was free to define the *actus and mens rea* elements of § 1512(c)(2) before the Court of Appeals spoke, it is now bound by a decision in which the lead and the concurring opinion writers argue that their own decision, which are at odds with each other, controls.  Such *Alice in Wonderland* definitional vagaries[1] do not comply with the Due Process clause nor with the Sixth Amendment right to a fair trial and the assistance of counsel.

> Many of the Constitution's other provisions presuppose and depend on the existence of reasonably clear laws. Take the Fourth Amendment's requirement that arrest warrants must be supported by probable cause, and consider what would be left of that requirement if the alleged crime had no meaningful boundaries.  Or take the Sixth Amendment's mandate that a defendant must be informed of the accusations against him and allowed to bring witnesses in his defense, and consider what use those rights would be if the charged crime was so vague the defendant couldn't tell what he's alleged to have done and what sort of witnesses he might need to rebut that charge. Without an assurance that the laws supply fair notice, so much else of the Constitution risks becoming only a "parchment barrie[r]" against arbitrary power. The Federalist No. 48, p. 308 (C. Rossiter ed. 1961) (J. Madison).

---

[1] Lewis Carroll, Alice in Wonderland, " 'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean-neither more nor less.' "). *Majewski v. B'Nai B'Rith Int'l*, 721 F.2d 823, 825 (D.C. Cir. 1983), amended sub nom. *Majewski (Edward), Est. of Elkes (Albert Z.) v. B'Nai B'Rith Int'l* (D.C. Cir. Nov. 23, 1983)

*Sessions v. Dimaya*, 200 L. Ed. 2d 549, 138 S. Ct. 1204, 1227 (2018)

## CONCLUSION

WHEREFORE, for the reasons set forth above, Mr. Rehl respectfully requests that this Honorable Court reconsider its decision and dismiss Counts Two and Three of the Indictment as unconstitutionally vague and in violation of his rights to fair notice and the Sixth Amendment right to counsel.

Respectfully submitted,

/s/
**Carmen D. Hernandez**
Bar No.  MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391

---

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on all counsel of record this 8th day of April, 2023.

/s/ *Carmen D. Hernandez*
**Carmen D.  Hernandez**
