IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      CR Nos. 1:21-cr-00175-TJK-1
                                      1:21-cr-00175-TJK-2

v.                                 1:21-cr-00175-TJK-3
                                      1:21-cr-00175-TJK-5

1-ETHAN NORDEAN              1:21-cr-00175-TJK-6
2-JOSEPH R. BIGGS
3-ZACHARY REHL               Washington, D.C.
5-ENRIQUE TARRIO          Wednesday, March 15, 2023
6-DOMINIC J. PEZZOLA,      9:00 a.m.
               Defendants.

- - - - - - - - - - - - - - - - x

---

TRANSCRIPT OF JURY TRIAL - DAY 48
*** MORNING SESSION ***
HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the United States:    Jason B.A. McCullough, Esq.
                            Erik M. Kenerson, Esq.
                            Nadia Moore, Esq.
                            Conor Mulroe, Esq.
                            U.S. ATTORNEY'S OFFICE
                            555 4th Street, NW
                            Washington, DC 20530
                            (202) 252-7233

For the Defendants:      Nicholas D. Smith, Esq.
                            DAVID B. SMITH, PLLC
                            7 East 20th Street
                            Suite 4r
                            New York, NY 10003
                            (917) 902-3869

                            Norman A. Pattis, Esq.
                            PATTIS & SMITH, LLC
                            383 Orange Street
                            1st Floor
                            New Haven, CT 06511
                            (203) 393-3017

                            John D. Hull, IV, Esq.
                            HULL MCGUIRE PC
                            1420 N Street, NW
                            Washington, DC 20005
                            (202) 429-6520

APPEARANCES CONTINUED:

For the Defendants:        Carmen D. Hernandez, Esq.
                           7166 Mink Hollow Road
                           Highland, MD 20777
                           (240) 472-3391

                           Nayib Hassan, Esq.
                           LAW OFFICES OF NAYIB HASSAN, P.A.
                           6175 NW 153 Street
                           Suite 209
                           Miami Lakes, FL 33014
                           (305) 403-7323

                           Sabino Jauregui, Esq.
                           JAUREGUI LAW, P.A.
                           1014 West 49 Street
                           Hialeah, FL 33012
                           (305) 822-2901

                           Steven A. Metcalf, II, Esq.
                           METCALF & METCALF, P.C.
                           99 Park Avenue
                           6th Floor
                           New York, NY 10016
                           (646) 253-0514

                           Roger I. Roots, Esq.
                           ROGER ROOTS, ATTORNEY AT LAW
                           113 Lake Drive East
                           Livingston, MT 59047
                           (775) 764-9347

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111

Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

# C O N T E N T S

**WITNESS:**                                                    **PAGE:**

NICOLE MILLER
Cross-Examination by Mr. Jauregui................13644
Cross-Examination by Ms. Metcalf................13667

1                    **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  This is Criminal Matter 21-175,

3    United States of America v. Defendant 1, Ethan Nordean;

4    Defendant 2, Joseph R. Biggs; Defendant 3, Zachary Rehl;

5    Defendant 5, Enrique Tarrio; and Defendant 6, Dominic J.

6    Pezzola.

7              Present for the Government are Jason McCullough,

8    Erik Kenerson, Conor Mulroe, and Nadia Moore; present for

9    Defendant 1 is Nicholas Smith; present for Defendant 2 are

10   John Hull and Norman Pattis; present for Defendant 3 is

11   Carmen Hernandez; present for Defendant 5 are Nayib Hassan

12   and Sabino Jauregui; present for Defendant 6 are Steven

13   Metcalf and Roger Roots.  Also present are Defendant 1,

14   Mr. Nordean; Defendant 2, Mr. Biggs; Defendant 3, Mr. Rehl;

15   Defendant 5, Mr. Tarrio; and Defendant 6, Mr. Pezzola.

16             THE COURT:  All right.  Well, good morning to

17   everyone.

18             I -- let me try to suggest a way we can proceed

19   here.  We -- I did receive objections from, I think,

20   Mr. Smith and Ms. Hernandez, and then some Rule 106 issues

21   from, I believe, Mr. Smith, as well.  I think what we should

22   do is go through -- I'll just briefly hear Mr. Smith on his

23   objections and the Rule 106 -- and Mr. -- part of

24   Mr. Smith's objections involve videos that I wasn't able

25   to -- due to some technical problems, wasn't able to pull

1    them all up.  So I think it makes sense for us to go through

2    those matters, including the 106.

3              Then, with regard to Ms. Hernandez's, I picked out

4    a few that I would like to hear more from the Government and

5    Ms. Hernandez on.

6              I think, Ms. Hernandez, a lot of what you objected

7    to, I didn't quite understand it in the sense that you would

8    say, you know -- again, "hearsay," when it was clearly a

9    statement of one of the defendants.  You -- First Amendment

10   is not an objection, number two.  And some other things

11   that, I think, I've already ruled on.  It's not an objection

12   that your client wasn't involved in a particular chat, for

13   example.  So I don't know that I need to hear -- let's put

14   it this way.  I think if we get through the -- Mr. Smith's

15   stuff and the handful of things I've pulled out on yours, if

16   you want to -- I mean, and then we get started rolling with

17   the witness -- with the witness we have to finish up and

18   then perhaps -- and we'll hit another break, or lunch, and

19   if you want to be heard on anything else particular that

20   you've raised, I'm happy to do it, but I don't think it

21   makes sense to grind through each one because, as I said, a

22   lot of them, I think, I've already ruled on or I don't even

23   think they're really cognizable objections.

24             MS. HERNANDEZ:  Well, that's fine, Your Honor.  I

25   understand you've ruled on some of these before, but I feel

```
 1    like I have to make a record that I'm objecting.  And I can
 2    explain what those shorthand statements are --
 3              THE COURT:  Okay.
 4              MS. HERNANDEZ:  -- later.  I'll tell the Court, I
 5    didn't get power -- I did those here, then I went home.  I
 6    didn't get power until midnight last night.  So I have 106
 7    proposals that I wasn't able to do.
 8              THE COURT:  All right.  Well, maybe, we'll hit a
 9    break beforehand and you can take those up with the
10    Government.
11              MS. HERNANDEZ:  And I do have a -- would like to
12    reopen an objection that I had yesterday with respect to
13    this witness, but the Court can -- I don't know what the
14    Court's --
15              THE COURT:  All right.  Well, let's take --
16              MS. HERNANDEZ:  -- timing on this stuff is.
17              THE COURT:  Maybe we'll take that up afterward.
18              So let me -- again, I think Mr. Smith's -- let me
19    just start with the things that Mr. Smith had identified.
20    So --
21              MR. SMITH:  Your Honor, could I -- I think some --
22    Your Honor might point out that some of the objections we
23    made, we already dealt with pretrial.  And so in the
24    interest of saving time, I could just jump right to what I
25    think are just the most -- the newest and most easy ones to
```

```
 1    deal with and then we could --
 2              THE COURT:  Fair enough.
 3              MR. SMITH:  And -- okay.  Your Honor, at -- if
 4    there -- if Your Honor goes to Government Exhibit-516-1.
 5    It's in the PDF that Mr. Mulroe provided called SA Dubrowski
 6    Part 2.
 7              THE COURT:  This is the 106 issue?
 8              MR. SMITH:  This is the 106 issue that we think
 9    should be the most straightforward.  We make a couple more
10    arguments that we agree would be a little more expansive,
11    but this one is pretty tight, and the Government exhibit is
12    516-1.
13              THE COURT:  Yeah, yeah, I -- give me one -- okay.
14    I'm there.
15              MR. SMITH:  Okay.  Does Your Honor see -- so this
16    is the chat from MOSD Leaders - January 9th.  And Your Honor
17    can see that the first chat in this window is one from
18    Mr. Nordean at 2:14:02 p.m.  It says "Everyone needs to shut
19    the fuck up."  Then it says -- he says "There's way too many
20    videos and pictures that are being shared."  And Captain
21    Trump says "Yeah, exactly."  Can Your Honor see that?
22              THE COURT:  I don't have --
23              MR. SMITH:  This is 516-1.
24              THE COURT:  Yeah, I have -- okay.  I don't see the
25    "Yeah, exactly," but I believe you.
```

1          MR. SMITH:  Does --

2          THE COURT:  I have "Everyone needs to shut the eff

3    up.  There's way too many videos."  And then who says "Yeah,

4    exactly"?

5          MR. SMITH:  Captain Trump.

6          THE COURT:  Okay.  Yep.

7          MR. SMITH:  And then, Your Honor, can you see --

8    then it says -- Jeremy Noble Beard says "Yes" at the end of

9    the --

10         THE COURT:  Okay.

11         MR. SMITH:  So Your Honor, there's a message

12   immediately above -- I don't mean several chats above --

13   immediately above Rufio Panman's from Captain Trump.  So

14   this is a -- so Captain Trump starts the conversation; then

15   Rufio Panman responds.  And what they're talking about

16   here -- you can see Rufio Panman's talking about too many

17   videos and pictures being shared.  The chat immediately

18   above is Captain Trump linking to an extremism report from

19   GW University and it says -- Captain Trump says "The FBI

20   affidavit for Biggs, it's, of course, a steaming pile of dog

21   shit that tries to make it seem like the Capitol shit was

22   planned."  And then -- so then Mr. Nordean says in response

23   "What the fuck?  Everyone needs to shut the fuck up.

24   There's way too many videos and pictures and words being

25   shared."

```
1              So Your Honor, that's essential context because if
2     you just look at the Government's exhibit, it says Rufio
3     Panman saying "Everyone needs to shut the fuck up."  Like,
4     you don't know what the antecedent is there that he's
5     referring to, but what he's referring to is a report that
6     Captain Trump posts right above that suggesting -- it's a
7     news -- some kind of -- I mean, a media report -- or
8     academic report saying that the Capitol attack was planned.
9     So if the defense -- defendant's response is "Everyone needs
10    to shut the fuck up," that adds context to what he's
11    referring to.  Now, you could think -- just seeing this in
12    isolation, "Everyone needs to shut the fuck up," you could
13    infer that Mr. Nordean's referring to talking about the
14    Capitol attack, et al., but if you see the comment
15    immediately above, you could interpret this in an entirely
16    different fashion which is the media reporting on this is
17    false, so people need to shut -- they need to shut the fuck
18    up about that reporting.  So -- and this isn't a stretch 106
19    argument.  This is the text right above his comment there.
20             And so, Your Honor, I think the -- what the
21    Government might say is, "Well, that Captain Trump statement
22    above is a self-serving statement," but that's not the
23    point, Your Honor.  It's not being offered to show the truth
24    of whether the Capitol attack was planned or not.  It shows
25    context that the -- it's about the fairness of the
```

1    interpretation of Mr. Nordean's comment right below it, Your

2    Honor.

3            And then, Your Honor, we make a couple more

4    arguments about -- since they're talking about media,

5    Captain Trump later says -- I mean, earlier -- Captain

6    Trump, a couple of days before in the same thread, says

7    "They were trying to make it out like we led the Trump rally

8    to the Capitol which obviously couldn't be further from the

9    truth."  That's on -- that's at January 15th at -- that's on

10   January 15th in the same chat thread; then on January 17th,

11   Captain Trump says "He spoke of invading the GOP.  The media

12   took that and twisted it into saying that we were planning

13   on invading the Capitol."  Now, those -- now, the

14   Government's going to say those two comments are from

15   several days before 516-1, and I agree that's more

16   expansive, but at the very least the text right above

17   Mr. Nordean's in 516-1, we think, should be included in

18   fairness.

19           THE COURT:  Let me ask you about, you know --

20   there is -- he -- your client responds -- it -- well, it's

21   hard to tell.  The -- just going through -- putting aside

22   the two posts that are not on the same day for the moment,

23   Captain Trump posts his post at 10:37 on the 20th and

24   then the "What the eff" post happens at 11:13.  So it's the

25   next post, but there's a little bit of a gap.  And then

13582

1    there's -- and then "Everyone just needs to shut the eff up"

2    is a minute later, essentially -- less than a minute later.

3                MR. SMITH:  Right.

4                THE COURT:  It's -- I mean, I suppose -- all

5    right.  Let me hear from the Government on that -- on this

6    point.

7                MR. MULROE:  Good morning, Your Honor.

8                The first thing to note is that, unless I'm

9    mistaken, this exhibit is actually already in evidence.  We

10   offered this during the testimony of Jeremy Bertino.  I

11   don't think any defendant raised any Rule 106 requests or

12   objections of that type when it was offered.  And, in fact,

13   Mr. Bertino testified -- given that he was a member of this

14   chat group, he testified about this exchange and gave his

15   perspective on it and was open to cross-examination on that

16   perspective.  So I think that, you know -- this is not

17   necessarily a waiver argument, but I do think that the

18   appropriate time to have made this request would have been

19   when the exhibit was actually offered.  I think that is what

20   Rule 106 contemplates.

21               Putting that to the side, though, and going to the

22   actual substance of the communications, I do not think that

23   this is the type of message that, under the rule, fairness

24   requires to be considered alongside the messages that we

25   propose to show during Agent Dubrowski's testimony.  I just

1    don't think that Mr. Smith is correct that this lends any

2    necessary context or even any helpful or probative context

3    to Mr. Nordean's statements that "Everyone needs to shut the

4    eff up because there's way too many videos and pictures and

5    words being shared."  So to try to make that link, Mr. Smith

6    has argued that Mr. Nordean's instruction that everyone

7    needs to shut up pertains specifically to people shutting up

8    about the FBI affidavit or the facts that are described in

9    that affidavit or the media reporting about the content of

10   the affidavit, but I just don't think that the face of the

11   messages bears that out.  I think it's clear from the

12   messages that he wants people to shut the eff up because of

13   general law enforcement scrutiny that the group was

14   receiving at that time.  There were any number of arrests

15   and charges being filed.  And I think that's clear because

16   he says "There's way too many videos and pictures and words

17   being shared."  So this clearly is addressing the totality

18   of discussions and sharing of evidence within the group and

19   not anything that's narrowly focused on whatever may be in

20   this affidavit.

21         So for that reason, I don't think that there's a

22   valid Rule 106 argument for letting that message in, and I

23   do think that there are good reasons to keep it out.  I

24   think that, you know, without the Rule 106 argument, there

25   would be no serious argument to let this in, but I think

```
1   that even if he's trying to frame it as a 106 issue, under
2   Rule 403 we would argue that there is a substantial
3   likelihood of confusing the issues, misleading the jury, and
4   unfairly prejudicing the Government.  This is a nakedly
5   self-serving statement of one of the defendants here in
6   trial saying the Government's theory of the case is a
7   "steaming pile of dog shit," and that is something that is
8   very likely to be taken by the jury for the truth.  I think
9   that it can be especially confusing because the content of
10  the affidavit is not in these exhibits.  And so it's the
11  defendant arguing against a Government affidavit that is not
12  even necessarily the same case that the Government is
13  putting on here, but the jury's not going to understand any
14  of that.  The Government is just -- I mean, the jury's going
15  to just take this as Zachary Rehl saying, "We didn't do what
16  the Government said we did."
17          And so for those reasons -- and I'm happy to
18  answer any questions Your Honor might have -- but I do think
19  that this is not something that needs to be considered, in
20  fairness; there's no missing context without it; and under
21  Rule 403, we think it ought to be excluded.
22          MR. SMITH:  Your Honor, may I have one word in
23  just after that --
24          THE COURT:  Sure.
25          MR. SMITH:  -- just to point out something
```

```
 1    factual?

 2           So Your Honor can see that right below Captain

 3    Trump's blue chat about the "steaming pile of dog shit,"

 4    Mr. Nordean says "What the fuck?"  And that is -- that

 5    comment is not in the Government's exhibit either.  Now,

 6    Mr. Mulroe just said, "Well, it's perfectly clear not just

 7    to the Government, but it's -- no reasonable juror,

 8    effectively, could find that Mr. Nordean was referring to

 9    the specific Biggs affidavit chat that Captain Trump sends."

10    Well, Your Honor, we know that's not true.  At the very

11    least, that -- a reasonable juror could find that because

12    the very first comment Rufio Panman makes is "What the eff."

13    And he's -- "What the eff" is obviously a response to the

14    Biggs affidavit comment.  Then, as Your Honor pointed out,

15    it's less than a minute later that Mr. Nordean says

16    "Everyone needs to shut the eff up."  So at -- so clearly,

17    Mr. Nordean at the -- within moments of saying "Everyone

18    needs to shut the eff up" makes a direct reference to the

19    chat immediately above that.  And Your -- Mr. Mulroe is

20    correct in the sense that the jury can certainly infer

21    Mr. Nordean's talking about law enforcement activities

22    generally, but it could also reasonably infer he's not.  So

23    fairness doesn't require that the proponent of the evidence

24    eliminate all alternative possibilities to the

25    interpretation he's offering.  It's just fairness requires
```

1    that if a reasonable juror couldn't make an inference either

2    way, they'd be allowed to.  And the Government can argue,

3    "Look, that's just a self-serving statement.  That's Zach

4    Rehl just blowing off steam," and that would be a fair

5    inference, but to eliminate the jury's ability to see the

6    evidence I don't think would be appropriate here if the chat

7    is making direct reference to it, Mr. Nordean's, and it is,

8    Your Honor.  So --

9            THE COURT:  All right.

10           MS. HERNANDEZ:  Your Honor, I join Mr. Smith's --

11           THE COURT:  All right.  We don't need -- I mean,

12   I -- all right.  Very well.

13           MS. HERNANDEZ:  I mean, it's my client's comments

14   that are being considered.  And, again, I wasn't able to

15   open that last night.  It's the height of irony that the

16   Government is suggesting that statements made by people

17   generally can only be interpreted in one way and cannot -- I

18   mean, most of their case involves taking statements and

19   interpreting them in the way the Government wants to

20   interpret them and eliminating, you know, other inferences.

21   So --

22           THE COURT:  All right.  Ms. Hernandez, I think --

23   look, I think the "What the eff" message, as Mr. Smith

24   pointed out, the linkage between those two things does --

25   I'm going to -- I will rule this in on 106; not the later

1    two statements, but the earlier two, the "What the eff" and

2    the prior -- and the affidavit.  I think it is -- I think

3    that is admissible under 106.

4         Now, if the Government wants to -- I mean, it is a

5    weird thing that this is already in evidence.  So I don't

6    know how the -- let me put it this way.  I'm not -- I guess

7    I'm not ruling -- I mean, and when the Government already

8    put it in, the defendant -- I mean, there wasn't a Rule 106

9    request.  So I'm not saying we have to go back and add it

10   now.  If the Government chooses not to use this with this

11   witness, then -- I mean, I'll live for -- we could talk

12   about another day whether there's a retroactive 106

13   application, but at least if it's going to be used with this

14   witness, I do think those prior two statements should --

15   under 106, should be considered in fairness with the latter

16   two.

17         MR. SMITH:  And, Your Honor, thank you.  We can

18   just do this on cross, if Your Honor would like, because the

19   Court has permitted that before with other 106 statements

20   or, you know -- we're not demanding that the Government, you

21   know -- it has a special format it uses for chats.  We're

22   not demanding that it look like that.  So it could either be

23   just a presentation of this during direct or cross.

24         THE COURT:  Or the Government may choose not to

25   use it if they -- if --

```
 1              So I'll just say, Mr. Mulroe, if you're going

 2     to -- let me put it this way.  We're going to have probably

 3     a break between when this comes up.  You can discuss with --

 4     internally whether you want to use it with the 106, and if

 5     you do want to do that, whether you want to proceed as

 6     Mr. Smith said and just let them do it on cross, it -- I'm

 7     agnostic about that.  Does that make sense?

 8              MR. MULROE:  Yes, Your Honor.  I think so.  Just

 9     to clarify, if we elect not -- I mean, as you said, this is

10     already in.  If we elect not to show this through Agent

11     Dubrowski's testimony, are you saying it's an open question,

12     then, whether he would be able to use it on his cross or --

13              THE COURT:  No, he wouldn't be able to use it on

14     his cross if you don't use it.

15              MR. SMITH:  Your --

16              THE COURT:  Correct.

17              MR. MULROE:  Understood.

18              MR. SMITH:  Your Honor, this is -- well,

19     Mr. Mulroe pointed out that this is in evidence.

20              THE COURT:  Right, but you didn't make a -- you --

21     it is in evidence, but you didn't -- let me put it this way.

22     It is an -- it is, at least to me, an open --

23              MR. SMITH:  So the jury's already seen it, is

24     what --

25              THE COURT:  I understand --
```

```
 1              MR. SMITH:  Yeah.
 2              THE COURT:  -- but you -- but there was no
 3    motion -- 106 motion at that time.
 4              MR. SMITH:  Your Honor, can I explain why there
 5    wasn't?  Because when we attempted to cross Mr. Dubrowski
 6    about text messages before -- after January 6th, there was
 7    an objection that that was outside the scope.
 8              THE COURT:  Right, and --
 9              MR. SMITH:  So we had planned -- so when we were
10    told it's outside the scope, we planned on crossing
11    Mr. Dubrowski about -- do you -- Your Honor, these are from
12    January 20th.  So we planned on crossing Dubrowski about
13    these messages and we were stopped.  So we -- I think it's
14    reasonable to think that you're allowed to make arguments
15    about text messages after January 6th if it's deemed outside
16    the scope.
17              THE COURT:  But it didn't come in through him.  It
18    came in through Bertino; right?
19              MR. SMITH:  Yes, Your Honor, but -- okay.  So
20    there's two -- I -- because there's two witnesses testifying
21    about -- Dubrowski is, kind of, the Telegram man and he
22    really pores through a lot of the Telegrams.  So we expected
23    to be able to cross him on these messages -- we -- on these
24    messages after January 6th in total.  That's the reason we
25    weren't, sort of, pestering the Court with all kinds of
```

1    demands about chats after January 6th.  We just assumed that

2    was fair.  So -- and, Your Honor, since the jury's already

3    seen this and the Court has agreed that the "What the fuck"

4    remark by Mr. Pan- -- by Mr. Nordean links the comments, it

5    just seems fair to be able to show the jury what he's

6    referring to.

7           THE COURT:  I'm not -- let me put it this way.

8    I'm not going to rule on that issue right now.  I'll think

9    about it.  We're not going to get to Dubrowski's cross for a

10   little bit, but that's where I am on it right now.

11          MR. MULROE:  And, Your Honor, if I could just note

12   on -- it sounds likes he's making a reliance argument, but

13   if the only basis of getting this in was under Rule 106,

14   Mr. Smith had no idea whether or not we were going to even

15   attempt to offer this exhibit through Agent Dubrowski.  So

16   the time to do it was when it was offered.  That's what the

17   rule --

18          THE COURT:  Through --

19          MR. MULROE:  -- says.

20          THE COURT:  Through Bertino.  I agree.  So look,

21   I -- we don't need to discuss it any further right now.

22          Mr. Smith, what's the next point -- what's the

23   next thing you want to make sure I hit this morning?

24          MR. SMITH:  Thank you, Your Honor.

25          The next one is in -- this is similar -- in

13591

```
1    515-6 --
2              THE COURT:  Another 106 issue?
3              MR. SMITH:  Yes, Your Honor.  So in this one --
4    this is the OG Pickleback Crew.
5              THE COURT:  Oh, okay.
6              MR. SMITH:  And there's a chat at 2:39 p.m. from
7    Rufio Panman that says, you know, "Eff Trump.  Eff him more
8    than Biden."  Can Your Honor see that one?
9              THE COURT:  Yep.
10             MR. SMITH:  Okay.  That is sent at -- and I'm
11   going to quote UTC-8 time here, so -- but the minutes are
12   what matter.  So that was sent on January 20th, 2021, at
13   11:39:03 a.m. UTC-8.  And then, Your Honor, just a few
14   minutes before that at January -- on January 20th, 2021,
15   11:17 a.m. UTC-8, Mr. Nordean says "This affidavit for
16   Biggs, it's, of course, a steaming pile of dog shit that
17   tries to make it seem like the Capitol shit was planned."
18   So that's his comment right before he sends the "Eff Trump"
19   one.  So to the extent the Government is offering this --
20   I'm not exactly sure why the Government is offering these
21   "Eff Trump" statements for Mr. Nordean.  I'm not really
22   objecting to them, the text ones, but to the extent
23   they're -- the relevance is showing guilt -- a consciousness
24   of guilt or something, I think, in fairness, Mr. Nordean's
25   statement from a few minutes before that -- the suggestion
```

```
 1    that "the Capitol shit was planned is dog shit" is -- should
 2    be considered at the same time if the "Eff Trump" statement
 3    is being used as consciousness of guilt.  I'm not -- I
 4    haven't heard from the Government -- we haven't heard what
 5    the relevance of the "Eff Trump" stuff is, but to the extent
 6    that's what it's being used for, we would say Mr. Nordean's
 7    immediately prior comment from a few minutes before that
 8    "the Capitol shit" wasn't planned should be considered at
 9    the same time.
10              THE COURT:  Okay.  Government?
11              MR. MULROE:  Your Honor, I would just note that
12    the message Mr. Smith seeks to introduce comes before the
13    messages we have in the exhibit and there were approximately
14    10 intervening messages between them.  I'll just say at the
15    front that I think if the first message is going to come in
16    under Rule 106, then we would put the entire exchange in; we
17    wouldn't just isolate the beginning and the end of it.  And
18    the messages that are in between include messages from AJ
19    Fischer -- who Mr. Smith has argued doesn't know Nordean --
20    essentially complaining about Eddie Block; about how Eddie
21    Block was filming them; calling him an effing C-word and
22    saying -- well, then Paul Rae says "We should have left him
23    stuck in the mud."  Clearly, all consciousness of guilt, but
24    not messages that we are, at this time, seeking to
25    introduce.
```

1           Now, with that said, I think that this is a very
2    different situation than the Rule 106 analysis Your Honor
3    just conducted on the previous exhibit because I don't think
4    there's anything on the face of the messages that suggests a
5    conversational linkage between the messages that Mr. Nordean
6    sends about "Eff Donald Trump" and the one that he had sent
7    earlier about the FBI affidavit being "a pile of dog shit."
8    So I really don't see why these ought to be considered
9    together, in fairness, but if Your Honor has questions, I'll
10   be glad to address them.
11           THE COURT:  All right.  On this one, I'm going to
12   side -- I'm going to go the other way.  I don't think 106
13   requires -- that fairness requires this statement to be
14   here.  I mean, we have intervening messages, we have
15   intervening messages about other topics, and I don't think
16   there's a great linkage.  I mean, yes, maybe, there's a --
17   and if you read the message on 515-6, sort of, like, "He led
18   us to believe some great justice was upon us and it never
19   happened and now I've got good friends facing jail time," I
20   don't think the linkage is nearly as strong in terms of the
21   content of each of them and in terms of the fact that there
22   are intervening messages.  So I will not rule this one in on
23   106 grounds.
24           MR. SMITH:  Okay.  Your Honor, the next one is
25   Government Exhibit-512-19.  This is a Rule 403 and relevance

1     argument, not 106.

2            THE COURT:  Mm-hmm.  What -- can you repeat the

3     exhibit number again.

4            MR. SMITH:  Yes, Your Honor.  It's 512-19.

5            THE COURT:  Ah, I've got it.  Yep.  Yep.

6            MR. SMITH:  Okay.  And so the first chat -- this

7     is Boots on the Ground, January 7th.  The first one's from

8     Jersey Templar.  And if Your Honor looks all the way from

9     Jersey Templar down to someone named J.D. Stockton, that's

10    about 8:00 a.m. to 12:56 p.m.; then Your Honor can see

11    there's a jump from 12:56 p.m. to 2:00 p.m.

12           THE COURT:  Give me one second.

13           MR. SMITH:  Okay.

14           (Brief pause.)

15           THE COURT:  Okay.  I'm with you.

16           MR. SMITH:  Okay.  So Your Honor can see that the

17    first chat's from 8:00 a.m. from Jersey Templar.

18           THE COURT:  Mm-hmm.

19           MR. SMITH:  And then it goes -- if Your Honor just

20    follows that thread all the way down --

21           THE COURT:  Yep.

22           MR. SMITH:  -- to, like, 2 -- or excuse me, 12:56,

23    then there's a jump of an hour to the next one with the

24    turtles at 2:12.

25           THE COURT:  Mm-hmm.

1          MR. SMITH:  Okay.  So Your Honor, all -- between

2     8:44 and 12:56, there are no -- there's no defendants in

3     this case.  I don't know if the Government's calling them

4     tools or what, but there are a lot of just salacious

5     comments that don't -- aren't evidence.  Like, the second

6     entry is "Be smart; we are now domestic terrorists" from

7     someone named Jersey Templar.  We don't know who that is.

8     Some -- that's particularly -- that -- we'd argue that's

9     irrelevant and inflammatory.  Then, Your Honor, we're not

10    objecting to the last three.  The last three begin at 2:12

11    p.m. where someone says "Just in: FBI's digital media team

12    is currently hunting down U.S. Capitol protesters."  And

13    then Captain Trump responds "Great news.  Everyone should

14    have held the Capitol."  We're not arguing that's not

15    relevant.  It's just everything above the -- yeah.

16          THE COURT:  I understand your argument.

17          Government?

18          MR. MULROE:  Two responses to that, Your Honor.

19          First, I believe the Court has already ruled on

20    several occasions that the mental state of tools of the

21    conspiracy is a relevant fact.  And this exhibit is from the

22    Boots on Ground chat group.  There's been testimony and

23    evidence that Boots on Ground chat group was created by the

24    leaders of the conspiracy as the most, kind of, direct

25    gathering place of the tools of the conspiracy who were

1    actually present in Washington, D.C. and who were summoned

2    to the Washington Monument.

3            THE COURT:  I'm sorry.  I just need everyone at

4    counsel table to not be speaking when you're not addressing

5    me.

6            Mr. Mulroe, you may proceed.

7            MR. MULROE:  So the Boots on Ground group is the

8    subordinates who were summoned to the Washington Monument

9    for the purpose of marching them to the Capitol and carrying

10   out the attack.  So the mental state of those people is

11   relevant, and it's particularly relevant at the time at

12   which this conversation occurs starting at 8:44 in the

13   morning the day after January 6th.  These messages from the

14   tools do show consciousness of guilt.  They're saying "Don't

15   post any video here or on social media.  The feds are going

16   to be looking everywhere to identify us."  Note the first

17   person plural there, "us."  "We embarrassed the fuck out of

18   them; be smart," and then suggesting that this is going to

19   be enforced.  "Anyone who does needs to be put in line."  So

20   it's relevant to the mental state of the tools, as is the

21   next message from Jersey Templar, "Be smart; we are now

22   domestic terrorists."  So that's an independent probative

23   value on the first point, but then apart from that another

24   basis of admitting this entire exhibit is that the two

25   messages at the bottom are from Zachary Rehl.  They directly

```
1    follow --
2              THE COURT:  Well, they're not arguing those.  So I
3    mean --
4              MR. MULROE:  Yeah.  So Your Honor, I'm only making
5    the point that the preceding conversation is context to help
6    the jury understand the conversational context in which
7    Zachary Rehl makes those statements.
8              THE COURT:  All right.  I'm going to take -- look,
9    I know we're going to have to get to this quickly, but I'm
10   going to take the -- look, the last three lines of this are
11   in, clearly.  I think this does run up against what I was
12   articulating the other day which is I do think that once
13   we're past January 7th, it's not clear to me that -- in
14   other words, when we're talking about tools or people in
15   these various chats leading up to January 6th, it's not
16   exactly the same analysis, it seems to me, post January 6th.
17   And so I want to look at whether I think the other
18   statements here are admissible and I will let you all know
19   before we get there, but --
20             MR. SMITH:  Your Honor, can I make one comment
21   about the domestic terrorism point?
22             THE COURT:  Yes.
23             MR. SMITH:  Just -- and then I'll leave it there.
24             So as Your Honor knows, there is no designation at
25   law for domestic terrorists.  There's an international one.
```

```
1    So we think that this is, kind of -- this is a
2    jury-confusion argument.  When someone uses the phrase
3    "domestic terrorists," in, you know -- in a regular person's
4    mind, they can think that's referring to some sort of legal
5    characterization, and that's just not true; then domestic --
6    Your Honor, on the tools point, in addition to the one Your
7    Honor just made which is a very good one, we haven't seen
8    the necessary linkage here between these tools and the
9    defendants that the Government's been making throughout the
10   case.  The Government has offered a predicate proof of
11   marching.  We don't even know who Jersey Templar is.  I
12   don't think they've appeared in this case.  We haven't seen
13   images of them.  And so, Your Honor, his -- Jersey Templar's
14   remarks about domestic terrorists wouldn't even satisfy the
15   pre-January 6th --
16            THE COURT:  Well --
17            MR. SMITH:  -- linkage.
18            THE COURT:  -- their point would be -- their
19   counterpoint would be I did admit -- and, again, I guess you
20   could argue -- well, I did admit for intent purposes certain
21   statements, right, on the theory of they were hand-picked by
22   this group and they expressed things that -- and -- they
23   expressed things that indicated an intent, and then no
24   one -- we've been calling it the "no one rebuked them"
25   theory.  This is -- that -- a lot of that reasoning doesn't
```

1    necessarily apply here, although the intent piece of it

2    arguably does.  So I'm just going to just put this one -- I

3    understand your argument.  And I'll just say, I'm not

4    persuaded, sort of -- you're making, kind of, a 403 argument

5    on that.  I don't find that that persuasive, but I may find

6    the other argument persuasive.  So I'll come back to that.

7            MR. SMITH:  Thank you, Your Honor.

8            The next one is 601-41A and 601-41B.

9            THE COURT:  Yeah, let -- I saw how you set this

10   up.

11           What's the Government's --

12           Let me just have them articulate.

13           What's the Government's theory on this -- the 41A,

14   41B -- where is this all headed?

15           MR. MULROE:  Well, Your Honor, there are

16   photographs that are similar to one posted by Ethan Nordean

17   on January 8th to his Parler account.  The photograph that

18   Mr. Nordean posts is an officer spraying --

19           THE COURT:  Right.

20           MR. MULROE:  -- what looks like an older man.

21           THE COURT:  And it looks like it's -- your

22   argument is it's altered in some way --

23           MR. MULROE:  Yeah.

24           THE COURT:  -- to make him look like he's smiling.

25           MR. MULROE:  Right, and he posts a caption saying

1    "The honorable oath-breakers.  If you feel bad for police,

2    you're part of the problem."  We have determined that that

3    photograph he posted is altered.  The original has an

4    officer who is not smiling.  The -- it's altered to make it

5    look like the officer is really enjoying his spraying this

6    older fellow in the photo.  So I think that -- Mr. Smith has

7    voiced the objection that there's no foundation that

8    Mr. Nordean personally --

9              THE COURT:  Right.

10              MR. MULROE:  -- altered the photo.  I think our

11    position would be that it doesn't matter whether he is the

12    one who altered it or not.  What's relevant is that this is

13    an altered photo that he posted.  And I would proffer that I

14    expect the agent will testify that the agent was able to

15    easily find the authentic, original version of this photo,

16    but that the agent couldn't find the altered version

17    anywhere on the public Internet through his reverse Google

18    image search which suggests that this was not something that

19    Mr. Nordean happened across, you know, by accident on a

20    mainstream news story.

21              So I think that the jury can make any reasonable

22    inference from that fact -- from the fact of him posting a

23    doctored photo, but I think even if you put that all to the

24    side, I think that the Government should still be entitled

25    to show that this officer was not grinning while he was

1    doing that.  Even if Mr. Nordean might have thought he was,

2    I think we're entitled to rebut this, you know, fairly

3    prejudicial and inflammatory suggestion that the Capitol

4    Police were just having a ball when they were out there

5    assaulting non-violent protesters.

6            MR. SMITH:  Your Honor, there's no evidence that

7    Mr. Nordean knew that the photograph was altered.  The

8    suggestion that the foundation has been laid because of a

9    Google search that's been conducted -- we don't know how it

10    was conducted; we haven't seen -- the Government hasn't

11    proffered anything showing that that's accurate -- is

12    incredibly inflammatory.  It suggests that Mr. Nordean is

13    doctoring photographs when there's no evidence of that.  We

14    don't -- there's no evidence he knew it had been altered.

15    And the jury confusion here is pretty enormous.  It's, kind

16    of, implying fabrication of things which is -- it's

17    reminiscent of fraud.  So Judge, if the Government is

18    concerned about the jury holding it against the police

19    officer wrongly for smiling, then it doesn't have to use

20    that piece of evidence.  They're suggesting they're being

21    harmed by their own exhibit.  Well, there's an easy solution

22    to that problem.  So Your Honor, it would be different if

23    there was something on Mr. Nordean's devices showing he had

24    any role in this, but there isn't, Your Honor.  So I don't

25    think the Court can just take the Government's word for it

1    that a Google search was run and --

2          THE COURT:  Well, they're not -- in fairness to

3    them, they're not asking me to take their word for it.

4    They're saying that's what the agent would testify to.

5          MR. MULROE:  And, Your Honor --

6          THE COURT:  I -- it's still a weak inference.  I'm

7    just saying.

8          But, Mr. Mulroe?

9          MR. MULROE:  I'll just note that we did produce

10    Jencks material to the defense explaining how that Google

11    search was done.

12          THE COURT:  Where is the exhibit that -- this --

13    as I recall -- or I think I have it here.  Isn't this --

14    it's part of, like, a Parler post; right?

15          MR. MULROE:  It's part of --

16          THE COURT:  What's --

17          MR. MULROE:  -- a Parler --

18          THE COURT:  What's the exhibit number?

19          MR. MULROE:  601-41.

20          MR. SMITH:  Your Honor, I think I might have the

21    solution to this problem.

22          THE COURT:  I know what solution -- I have --

23    suspect I know what solution you're going to ask.

24          MR. SMITH:  If the suggestion is we only need to

25    show these supposedly doctored photographs to avoid the

13603

1     prejudice incurred by the Government --

2              THE COURT:  I know what --

3              MR. SMITH:  -- then there could -- they could put

4     a redaction box over the face of the police officer.  I

5     don't think we heard the Government argue that it positively

6     wants to show Mr. Nordean was manipulating pictures.  It's

7     just to preemptively rebut a suggestion that the police

8     officer was smiling.

9              THE COURT:  Well, the --

10             MR. MULROE:  I think we would -- we would show

11    that Mr. Nordean posted an altered image.  We're not going

12    to say he personally did it, but it's relevant that he

13    posted an altered image.

14             THE COURT:  I mean --

15             MR. SMITH:  But if -- Your Honor, if there's no

16    foundation that he knew it was altered, then that is not

17    showing -- the relevance doesn't -- the preliminary question

18    isn't satisfied.

19             THE COURT:  You know, looking at -- look at -- the

20    reason I wanted to see this in context is it's, sort of,

21    hard -- in other words, the photo and then there's a passage

22    underneath describing what is in the photo:  "The honorable

23    oath-breakers.  If you feel bad for the police," et cetera.

24    The difficulty is that, you know -- so just redacting the

25    photo doesn't -- I mean, you'd still have that text, but it

1    doesn't communicate the same thing as if all the Government

2    had was the text.

3              MR. SMITH:  But, Your Honor, they haven't

4    presented the Court with any evidence that Mr. -- they

5    conducted a search of his home and his devices.  There's

6    no -- they're not presenting you with evidence that there

7    were tools on his computer to manipulate video images in

8    this way.  They're not presenting that the file was -- they

9    had -- there was one file on his computer that was an

10   original; there was another file that was manipulated.

11   There's nothing except the suggestion that a Google search

12   didn't turn up the second image.  That doesn't imply that

13   Mr. Nordean -- that --

14             THE COURT:  Right, but that --

15             MR. SMITH:  -- can't be --

16             THE COURT:  They're saying -- look, it could be

17   that he was duped.  Someone sent him the photo and he

18   forwarded it on.  I take your point.  It doesn't prove that

19   he manipulated it, and they're not even -- they're not going

20   to suggest that he did.

21             MR. SMITH:  But -- no, that is the -- but, Your

22   Honor, this is the innuendo.  When you present evidence

23   without -- and you leave the interstices of the inference to

24   the jury, the jury can only think, "What are you suggesting

25   except that Mr. Nordean manipulated it?"  If he didn't

```
1    manipulate it and didn't know, then it's not relevant.
2              THE COURT:  Well, it -- but the photo is relevant
3    for other reasons.
4              MR. SMITH:  Which -- the photo that he posted.
5              THE COURT:  Right.
6              MR. SMITH:  But why -- but, Your Honor, why is
7    showing that there's a different version of the photo and
8    that it was manipulated relevant to Mr. Nordean's case
9    unless a sufficient predicate has been laid that he did
10   manipulate it or he knew?
11             THE COURT:  Because this is what happened.  I
12   mean, I --
13             MR. SMITH:  But --
14             THE COURT:  -- hear what you're saying, and
15   you're --
16             MR. SMITH:  The jury --
17             THE COURT:  -- free --
18             MR. SMITH:  -- confusion --
19             THE COURT:  You're free to say, "Is there any
20   evidence at all that my client manipulated" --
21             MR. SMITH:  So --
22             THE COURT:  -- "that photo" --
23             MR. SMITH:  So --
24             THE COURT:  -- "or even knew that it was
25   manipulated?"
```

1              MR. SMITH:  Your Honor, I guess this is, kind of,

2    a recurring theme in the case, is, "Well, you can just raise

3    on cross that there might be flaws in the Government's

4    argument," but the problem with that is that -- I think part

5    of the reason 403 exists is because there are certain images

6    and ideas that cannot be removed from someone's mind even

7    through rational argument.  If you show someone an image,

8    they'll remember it and it -- regardless of whether it's

9    rational.  So I think we can't just fall back on, "Well, you

10   can point out that this is innuendo in cross," because the

11   image itself sticks in someone's mind.

12             THE COURT:  But it's not innuendo that your

13   client -- and just to be clear, I agree with you 403 exists

14   for conceptually the reason you're talking about, but of

15   course 403 is a high bar.  Its probative value -- the

16   probative value of the evidence has to be substantially

17   outweighed by unfair prejudice, confusing the issues,

18   misleading the jury, et cetera, blah, blah, blah.

19             MR. SMITH:  So Your Honor, this is -- the only

20   relevance they've articulated for this change is to

21   preemptively rebut a suggestion that the police officer was

22   enjoying himself.  I have not even asked the juror -- the

23   witness a question about whether this is a fair and accurate

24   likeness of the police officer or whether it was fair for

25   Mr. Nordean to post this and suggest police officers were

1    enjoying it.  That has not even been raised yet.  It would

2    be one thing for the Government to come back and say, "Well,

3    Mr. Nordean posted this.  But isn't it true that officer was

4    smiling and enjoying himself?"  That hasn't been done.  So

5    the -- we haven't heard that there's some sort of relevance

6    to the face change separate and apart from that preemptive

7    rebuttal.

8             THE COURT:  But the photo is relevant -- putting

9    aside the face issue, the photo is relevant to provide

10   context for --

11            MR. SMITH:  The photo is, Your Honor.  But why is

12   the face?  We see a police officer clearly on January 6th

13   spraying someone.  The suggestion is, "Look at this police

14   officer spraying someone."  The face is only relevant

15   insofar as it purportedly shows the officer enjoying

16   himself.  But if that isn't -- if we don't go into that in

17   direct, what is the relevance of his face?

18            THE COURT:  I -- so you would suggest we redact

19   his face?

20            MR. SMITH:  Yeah, and -- Your Honor, that's

21   actually not that strange to the jury because identities are

22   redacted all of the time for various reasons.  And, Your

23   Honor, if the Government did not even want to go into this

24   whole issue of the smile, then we wouldn't either and there

25   would be no redaction, but if the Court -- if the Government

```
1    is concerned that the jury could see a smiling face and
2    sympathize with Mr. Nordean's post, then we are happy to
3    concede a redaction of the face and that eliminates the
4    Government's need to preemptively rebut the issue.  There is
5    no relevance apart --
6            THE COURT:  Well --
7            MR. SMITH:  -- from that.
8            THE COURT:  -- so I guess this does raise -- I
9    mean, is the Government's -- the Government isn't shying
10   away, then, from -- let me ask this.  Does the Government
11   want to -- does the Government think that has independent
12   value to your case that Mr. Nordean posted a manipulated
13   photo, regardless of whether we know he knew he -- well, let
14   me put it this way -- that he posted a manipulated photo
15   even if you can't prove that he himself did the
16   manipulating?
17           MR. MULROE:  Yes.  Yes.  I mean, it's not a
18   central allegation of the case, but there has been a lot of
19   chatter in all these Telegram groups that the jury has seen
20   about the power of misinformation and that's a weapon that
21   this group has used in furtherance of their political ends.
22   So the fact that he is posting -- he, one of the top
23   national leaders of this group, is posting the photo that
24   has been altered to make the police on January 6th look bad
25   right after this group carried out January 6th and at a time
```

1    when they have been viciously hostile to the police, I think

2    the jury's entitled to draw that inference.  Whether or not

3    we can demonstrate that he personally did it, I think there

4    is a strong inference that he or one of his fellow Proud Boy

5    leaders created this and created it for a very specific

6    purpose.

7                    MR. SMITH:  Your --

8                    MR. MULROE:  So that -- we do think that has

9    independent relevance.

10                   MR. SMITH:  Your Honor, Mr. Mulroe says that, but

11   there are no facts supporting a bald assertion.  We can

12   raise the inference that one -- that he -- or he said --

13   Your Honor, he said that -- the representation was that we

14   can make an inference that he or one of his colleagues did

15   this.  There is no factual basis whatsoever to indicate that

16   a photo taken off the Internet has not been manipulated by

17   one of billions of people that use the Internet.  We cannot

18   raise that inference.  And if that's sufficient, Your Honor,

19   there's no preliminary question analysis at all.  We can

20   just say because someone picked an image off the Internet,

21   they must have doctored it themselves, but that's just --

22   that can't be.

23                   THE COURT:  I'm going to rule it in.  I'm going to

24   rule it in, allow the Government to do this.  I'm going to

25   allow the --

```
 1              MS. HERNANDEZ:  On --
 2              THE COURT:  -- Government to do it.  They've
 3     convinced me.
 4              MS. HERNANDEZ:  Your Honor, I object on relevance.
 5     What is the issue that that needs to -- what is the -- if
 6     they're manipulating after the fact to make themselves
 7     whatever -- to make themselves better --
 8              THE COURT:  Right.
 9              MS. HERNANDEZ:  -- a better people or a more
10     popular group, that has nothing to do with any of the
11     elements of the offenses --
12              THE COURT:  No --
13              MS. HERNANDEZ:  -- that have been charged.
14              THE COURT:  -- it does --
15              MS. HERNANDEZ:  That has nothing --
16              THE COURT:  If -- it's not a question of making
17     themselves look better.  It's a question of making the
18     police -- the -- look --
19              MS. HERNANDEZ:  That's after the fact.
20              THE COURT:  Look, you all -- I know it's after the
21     fact, but clearly it's not a -- it --
22              MS. HERNANDEZ:  I'm sorry.  I get up --
23              THE COURT:  It's --
24              MS. HERNANDEZ:  -- because I have a very difficult
25     time when the Court talks to me to sit --
```

```
 1              THE COURT:  I understand.  I understand.
 2              Look, you all have -- there's a reason you all
 3     have -- some defendants have suggested at various times that
 4     the police -- well, that the police did not do their jobs
 5     properly in different ways.  So I -- look, I think it
 6     does -- I think it is relevant.  The relevance bar is low.
 7     I'm going to allow it.  I understand your argument.  I'm
 8     rejecting it.  I think it's relevant, and I don't think 403
 9     rules it out.
10              MS. HERNANDEZ:  So on -- from Mr. Rehl, relevance
11     is low -- I haven't made that argument -- and prejudice is
12     high.
13              THE COURT:  All right.  Very well.
14              MR. SMITH:  The next one, Your Honor, is 500-97.
15              (Brief pause.)
16              THE COURT:  Okay.  I'm with you.
17              MR. SMITH:  There's -- again, we just -- so what
18     the Government has done with a few of these Rufio Panman
19     chats is just isolate Mr. Nordean's chats without any of the
20     surrounding chats.  So we have no idea what he's referring
21     to.  We have a chat saying "Fucking disgusting.  I'm pissed
22     right now.  What a load of shit this has all been."  What --
23     "Eff Trump.  Eff that C-word."  What is -- Your Honor, what
24     is the relevance of all of these comments to this case?
25              THE COURT:  All right.  Let me hear from the
```

1    Government on this.  I think I know, but I just want to hear

2    it articulated.

3              MR. MULROE:  Your Honor, the group's reactions

4    after January 6th took several forms.  First, there was

5    celebration.  They were thrilled with what they had done.

6    But then as time went on, there was regret, and there was

7    regret of two types.  First, the group regretted that things

8    did not go far enough on January 6th; and then there was

9    regret that they had been hung out to dry, in a sense, by

10   Donald Trump who -- we presented ample motive evidence that

11   they felt like they were acting on his behalf when they did

12   what they did.  So this exhibit and other exhibits show

13   Mr. Nordean expressing that second form of regret.  In terms

14   of the context of this, I would note that the date and time

15   put this on Inauguration Day, I think, very, very shortly

16   after President Biden took the oath of office.  And in

17   another of the exhibits that we are offering, Mr. Nordean

18   makes reference to Donald Trump's pardon power and suggests

19   that Mr. Trump pardoned a bunch of degenerates -- Nordean's

20   words -- but left the Proud Boys just hanging out there

21   facing jail time -- his words -- for actions that they

22   perceive themselves to have taken on his behalf.  So that's

23   the relevance of it.

24             THE COURT:  All right.  Mr. Smith, do you want to

25   respond?

1    MR. SMITH:  Yes, Your Honor.  I just don't think

2    that any -- I think what I hear is that -- effectively, that

3    any argument -- that -- comment Mr. Nordean makes about the

4    election and being upset is relevant in this case, and I

5    just can't see -- that is just opening the door to any

6    political statement --

7    THE COURT:  I don't think -- I mean, look, these

8    things have been intertwined here, and this is sometimes --

9    I -- let me put it this way.  I don't think any comment he

10    would make would meet this threshold, but what -- the

11    Government did present motive evidence and this is,

12    effectively, motive -- it's a similar type of motive

13    evidence because it reflects the fact that they thought they

14    were doing something for President Trump and were motivated

15    in that way and that this shows that motivation was not --

16    well, it shows how they responded to the fact that they felt

17    they weren't supported reciprocally.  So I think it's

18    relevant for that reason.

19    MR. SMITH:  Okay.  Your Honor, the next one's

20    500-92.  This is, kind of, an iteration on the same theme,

21    but this is even more disconnected from this case and the

22    claim -- the charges.  This one is at 4:53 p.m. in Skull and

23    Bones.  Mr. Nordean begins "Heath is sewing tons of doubt

24    into this club" -- we don't know who Heath is -- "at a time

25    when we need to be strong and smart.  If anyone here thinks

1    doing nothing is going to take us off the radar of our
2    enemies, you're fooling ourselves [sic]."  Mr. Nordean, kind
3    of, makes a lot of these elliptical general statements that
4    it's not even clear -- I don't mean to be insulting, but
5    it's not clear what he's referring to or what he's talking
6    about even.  This is another one of them.  This is just a
7    vague statement about the club.  This has no -- he's not
8    referring to being arrested here.  He's talking about the
9    future of, I guess, the Proud Boys.  The Government has told
10   us this case is not about the Proud Boys.
11            THE COURT:  Well, he does say, you know -- he
12   talks about -- I don't -- to me, this is -- reflects his
13   mental state in a way that's relevant.  He's actually
14   saying, "I don't think we need to gear up and go to war,
15   but," and then he talks about how their lives are being
16   destroyed due to inaction and government control.  I think
17   this -- it's -- obviously, it's after January 6th, but in
18   terms of relevant state of mind, I think it meets the
19   threshold.
20            MR. SMITH:  Well, Your Honor, we would just point
21   out that there is no -- we -- there's no reference in here
22   that would lead us to think he's talking about January 6th.
23   Government -- fears of government control is just a staple
24   of, kind of, far-right thought generally.  And I think Your
25   Honor agrees that just any political statement can't come in

1    the door just by virtue of being politics.

2             THE COURT:  I agree, but he's also talking about,

3    you know, "at a time when we need to be strong and smart" --

4    it's six days after January 6th.  I mean, I think it passes

5    the relevance -- I think it passes relevance.

6             MR. SMITH:  Okay, Your Honor.  So the next one is

7    514 --

8             MS. HERNANDEZ:  I'm sorry.  On behalf of Mr. Rehl,

9    Your Honor, these Skull and Bones post conspiracy where he's

10   not copied and has no ability to discuss are all hearsay as

11   to him.  The -- I mean, if the Government is -- if the Court

12   is finding that these are -- it's still -- that the

13   conspiracy's still ongoing January 12th, January 20th, my

14   objection is to that.  It's not a co-conspirator statement

15   under the case law.  I know the Court has rejected those

16   arguments at times --

17            THE COURT:  Well, I --

18            MS. HERNANDEZ:  -- in other --

19            THE COURT:  -- don't know --

20            MS. HERNANDEZ:  -- when I've objected to -- the

21   previous set of objections.

22            THE COURT:  I don't know that I've -- I guess, I

23   haven't made any determination -- I don't think the

24   Government has even argued that as of January -- this is

25   January 12th --

```
 1                    MS. HERNANDEZ:  12th.
 2                    THE COURT:  -- I think -- that the conspiracy was
 3        ongoing on January 12th, but it would still come in as a
 4        statement as to Mr. Nordean.  So --
 5                    MS. HERNANDEZ:  But it doesn't come in as to
 6        Mr. Rehl, then.
 7                    THE COURT:  Right.  And so I think -- I guess --
 8                    MS. HERNANDEZ:  Just --
 9                    THE COURT:  -- this --
10                    MS. HERNANDEZ:  That's fine.
11                    THE COURT:  -- this --
12                    MS. HERNANDEZ:  Just as long as the Court --
13        that's my objection.
14                    THE COURT:  All right.
15                    MS. HERNANDEZ:  I understand, but then move to
16        sever.
17                    THE COURT:  It, kind of, gets folded into the
18        issue of what an instruction might look like, but I hear
19        what you're saying.
20                    Mr. Smith?
21                    MR. SMITH:  The next one, Your Honor, is 514-61.
22        We're now, you know, basically, the end of the month in
23        January a couple of weeks later after the event.  We just
24        have more, sort of, general statements about the club from
25        Mr. Nordean.  I, you know -- it's, kind of -- I guess you
```

```
 1    might call it more Nordean speech, just, sort of, general,

 2    kind of, comments about what the club should do, what it

 3    shouldn't do.

 4              THE COURT:  I think it's a similar argument to

 5    your prior argument.

 6              MR. SMITH:  Yes, Your Honor.

 7              THE COURT:  All right.

 8              MR. SMITH:  Yeah.

 9              THE COURT:  So I'm going to overrule that, as

10    well.

11              MR. SMITH:  Okay.

12              THE COURT:  Let's -- and then the -- you still

13    had, as I recall, objections to some of the exhibits;

14    correct --

15              MR. SMITH:  Yes, Your Honor.

16              THE COURT:  -- I'm sorry, the video.

17              MR. SMITH:  The videos.  I'll get right to the

18    videos --

19              THE COURT:  And I did not -- and if the

20    Government, while you're talking -- I just want the

21    Government to tee this up because I was not able to see

22    these videos when we were -- I don't mean the Government

23    didn't give me the technical ability to see them.  I mean,

24    there was a technical problem on our end.

25              MR. SMITH:  Your Honor, I can just play the one
```

1    I'm going to object to right now.

2              THE COURT:  Okay.

3              MR. SMITH:  It's Government's Exhibit-407A.  And

4    Your Honor before, pretrial, admitted three drunk videos of

5    Mr. Nordean in -- there were originally five of them that

6    the Government wanted to play and the Court said there are

7    three interrelated ones that are --

8              THE COURT:  Where he talked about --

9              MR. SMITH:  Except that he doesn't in all three.

10             THE COURT:  Okay.

11             MR. SMITH:  So --

12             THE COURT:  The ones I admitted, I thought, but --

13             MR. SMITH:  Yeah, I'll play the one for Your Honor

14    that we're objecting to.  So --

15             THE COURT:  Okay.

16             MR. SMITH:  -- I -- there's two videos.  In one

17    video, Mr. Nordean is extremely intoxicated.  We would move

18    to exclude on 403 grounds.  This is, you know, arguably

19    being used to humiliate the defendant.  But in two of the

20    videos -- in one, he refers to "storming the Capitol."  That

21    was the basis -- that's the second one.  In the third one,

22    he says "1776, bitch."  I guess that was the basis for the

23    third one.  In the first one, Your Honor, there's no

24    reference to the Capitol at all.  It's just an intoxicated

25    speech.

```
 1                THE COURT:  All right.
 2                MR. SMITH:  And I think that the Government would
 3     say, "Well, it's necessary context.  We need to see what
 4     he's talking about in the next two," but that's not true,
 5     Your Honor.  You can see what he's talking about in the
 6     second two.  So let me just play this -- Your Honor, this is
 7     highly inflammatory.  So I'll just play it so you can see
 8     what they want to show the jury.  This is 407A.
 9                THE COURT:  While you're teeing that up, because
10     there will be a moment here, what is the Government's -- is
11     that the Government's argument that Mr. Smith has previewed
12     that this is -- it doesn't -- he doesn't say anything really
13     relevant directly, but this is context?
14                MR. MULROE:  Your Honor, yes.  I mean, our
15     argument is the argument we made last fall when we litigated
16     this.  And Your Honor specifically -- I can pull the
17     transcript.  Your -- we originally submitted eight videos.
18     We then narrowed that to three.  And Your Honor specifically
19     found that the three that we had identified, which include
20     this one, were admissible and you outlined your reasoning
21     about that.  So this has been litigated and settled, Your
22     Honor.  But just to respond, I think that it is primarily
23     for context.  I'll play -- I'll let Mr. Smith play the video
24     and then we can discuss it.
25                THE COURT:  Okay.
```

```
 1              MR. MULROE:  And it will be easier for me to make
 2   reference --
 3              MR. SMITH:  I think the sound --
 4              MR. MULROE:  -- to the specifics --
 5              MR. SMITH:  -- needs to be turned on --
 6              MR. MULROE:  -- after the video is played.
 7              MR. SMITH:  -- on the -- yeah, the box --
 8              MR. MULROE:  But we are reopening an issue that
 9   was litigated pretrial.  I want to be --
10              THE COURT:  Well --
11              MR. MULROE:  -- very clear about --
12              THE COURT:  -- I understand, but I don't --
13   I'll -- just for the record, I don't recall admitting
14   something in which the defendant didn't say anything
15   relevant.
16              MR. SMITH:  Okay, Your Honor.
17              MR. MULROE:  And just -- Your Honor, just an
18   additional piece of context.  These are three separate video
19   files, but they are, kind of, back-to-back videos of the
20   same, sort of, monologue that Mr. Nordean --
21              MR. SMITH:  And Your Honor will see that the
22   context of what Mr. Nordean is saying is perfectly evident
23   in the second and third one.  I'll play the first one, Your
24   Honor.
25              THE COURT:  All right.
```

13621

```
 1                    (Video played.)

 2             MR. SMITH:  Okay.  So there's nothing in -- about

 3    January 6th whatsoever --

 4             MR. MULROE:  And, Your Honor, I'd ask that 407B be

 5    played so --

 6             THE COURT:  Mr. Mulroe, Mr. Smith has the podium.

 7    And --

 8             MR. SMITH:  Thank you.

 9             THE COURT:  -- in fact, he already said he was

10    going to do that.

11             MR. SMITH:  Yeah.  So there's no conversation

12    about January 6th at all.  And then the suggestion that we

13    need that video to show the context in the next one is

14    belied.  I'll play this.  You can see, Your Honor.  This is

15    B.  407B.

16                    (Video played.)

17             MR. SMITH:  That's the second one.  So Your Honor

18    can see the entire context from that one.  Yeah.  We would

19    still move to exclude it because we think this is patently

20    shameless evidence.  Mr. Nordean has said he stormed the

21    Capitol in about eight other pieces of exhibits.  The

22    exhibit is designed to humiliate the defendant in front of

23    the jury and that's the purpose, Your Honor.

24             Then the third one -- here's the third one.

25                    (Video played.)
```

1          MR. SMITH:  So I think on that one, Your Honor, we

2     would argue relevance and 403.  Saying "1776" and then

3     saying "bitch," you know, a derogatory word about a woman,

4     yeah, is unnecessary.

5          THE COURT:  I don't want to relitigate what we

6     litigated before, but I -- for the life of me, I don't see

7     how that first video is -- this is, like, a reverse Rule 106

8     request.  I don't see how that first -- I mean, he even

9     talks a little bit about "I was talking to somebody."  I

10    mean, Mr. Mulroe, what does he say in the first video that

11    has anything to do with the second video?

12         MR. MULROE:  Well, respect Your Honor's view of

13    it, of course.  I just -- two things about the first one

14    that I think provide context --

15         THE COURT:  Just tell me.

16         MR. MULROE:  -- and will help the jury understand

17    the others.  The first is Mr. Nordean's statement in the

18    first video that what he's talking about with this woman at

19    the bar is what he puts importance on.  The conversation

20    with the woman begins with her confronting him about what he

21    puts importance on.  So I think it's relevant, then, that he

22    goes on to explain that to him, what's important is the fact

23    that he took part in storming the Capitol of the most

24    powerful country on Earth.  And along similar lines, he

25    makes the remark in the first video -- he says "It's so

1    crazy, our reality versus everybody else's."  I think that

2    raises the inference that he had sent these videos to other

3    Proud Boys members or other people that he took part in the

4    event with.  And I think that drawing this distinction as he

5    does between "our reality," the reality of the people who

6    took part in this attempt to effectuate a violent

7    revolution, versus everyone else's reality like this --

8            THE COURT:  I need everyone else to be quiet while

9    Mr. Mulroe is speaking.  I admonished Mr. Mulroe to give

10   Mr. Smith the opportunity to finish what he was saying, and

11   now he needs the same respect from everyone else on this

12   side of the bar.

13           You may proceed.

14           MR. MULROE:  Thank you, Your Honor.

15           So "our reality versus theirs," this drawing a

16   stark distinction between "us" and "them," particularly in

17   the context of other things we've heard in this case about

18   "You have to choose sides" and "You're either with us or

19   against us," I think, does provide relevant context to the

20   other clips, but if Your Honor --

21           THE COURT:  All right.

22           MR. MULROE:  -- doesn't share that view or --

23           THE COURT:  I understand the argument.  It's a

24   stretch, but it's out, that first video.

25           MS. HERNANDEZ:  On behalf of Mr. Rehl, 401, 403,

```
1    post --
2              THE COURT:  I've -- we've already -- I've -- the
3    one video that I don't -- I mean, it may have been
4    technically covered by my prior ruling, but I did not
5    realize the full context.  That's out.  I'm not going to --
6    we're not going to relitigate the other two which I already
7    decided.
8              MR. SMITH:  Okay.  Your Honor, the last one --
9    and -- is one I'm going to put up right now.  It's 407D.
10             THE COURT:  It's video; correct?
11             MR. SMITH:  Yes, 407D is a video, and it's another
12   video of Mr. Nordean -- play it right now.  Can Your Honor
13   see that on the screen?
14             THE COURT:  Yes.
15             MR. SMITH:  Okay.
16             (Video played.)
17             MR. SMITH:  Okay.  He says "We're a nation of
18   laws, blah."  So he appears to be alluding to a statement
19   that the former president made after January 6th.  I think
20   what this is is character evidence, Your Honor.  So if
21   someone is a scofflaw or someone is making fun of law
22   generally, that's -- to suggest that they didn't act in
23   accordance with law on a specific occasion because of an
24   opinion about the law generally is character evidence, Your
25   Honor.  So I don't see the 404(b) exceptions here and I
```

```
 1   don't know what they would be.
 2             THE COURT:  I think you, sort of, answered, you
 3   know -- I think you, sort of, explained why it's admissible
 4   in the first part of what you said which is:  He's
 5   responding to -- again, it links back in with the fact that
 6   they feel abandoned by the former president because he says,
 7   "We're a nation of laws.  We -- I'm -- I condemn what
 8   happened at the Capitol," and he's reacting against that.
 9   So I, you know --
10             MR. SMITH:  But, Your Honor --
11             THE COURT:  It's not a --
12             MR. SMITH:  -- conspiracy --
13             THE COURT:  -- free-floating -- it's not a
14   free-floating --
15             MR. SMITH:  Yeah.
16             THE COURT:  -- you know, "I hate law"; right?  I
17   mean, it's something that is tethered to what the former
18   president said -- at that time, maybe, president; I'm not
19   sure what day it was -- isn't it, in a way that is -- it's
20   not, kind of, free-floating character evidence --
21             MR. SMITH:  Well, Your Honor, I guess I just don't
22   understand how it goes to show any of the charges in the
23   case.  So we've got conspiracy charges, a post-January 6th
24   statement about -- scoffing at a statement about law.  That
25   doesn't prove -- that doesn't even go to conspiracy.  Then I
```

1    guess they could argue for the substantive counts it might

2    shed light retroactively on someone's intent to disrupt an

3    official proceeding, but if he's just talking about laws

4    generally -- making fun of a statement about laws?  Your

5    Honor, you could be -- I'm not saying it's tasteful, but you

6    can be scoffing at someone's statement about laws because

7    you think it's weak or it's not defensive enough or he's

8    not -- which has nothing to do with criminal intent.  It

9    might be bad politics or taste, but it's not -- and so we

10   don't understand what this is about and --

11              THE COURT:  I understand why you're arguing the

12   opposite, but I'm going to admit it because, as I said, I

13   think it links in with the kind of motive evidence and

14   state-of-mind evidence that the Government has offered

15   already.

16              MR. SMITH:  Okay.  Your Honor, I think that's

17   everything for Nordean.

18              THE COURT:  Okay.  So that does knock off all the

19   106 stuff, all the videos.  Mr. Smith, your objections.

20              Let me raise -- as I said, Ms. Hernandez, I picked

21   out some things that you had raised that I wanted to go

22   through because I had questions about them and, as I said,

23   if we get to the point where -- if we get to -- if there's

24   anything you want to be heard on in particular, maybe, we

25   can do it at the next -- my hope is we can do it at the next

1    break.

2              Mr. Hassan, I saw your hand up, so while I'm

3    trying to find what I want to discuss with regard to

4    Ms. Hernandez's objections, I'll hear from you.

5              MR. HASSAN:  Judge, I just want to bring one thing

6    to the attention -- and Hassan on behalf of Tarrio, Judge.

7    On Exhibit 500-35 -- it just came to our attention this

8    morning, Judge; that's why I didn't make the Government

9    aware last night -- but in the exhibits that are provided in

10   Dubrowski, this is an exhibit from November 7th which would

11   predate pretty much all the exhibits that the Government is

12   presenting in their --

13             THE COURT:  This is one of the ones we're about to

14   get to.

15             MR. HASSAN:  I don't know if they're -- I

16   should -- and if Dubrowski gets up on the stand, it's a

17   possibility that he may testify -- this is on -- I mean, if

18   I'm looking at the list here, it's Exhibit No. 42 out of 50.

19   So I don't know if they're going in chronological order or I

20   don't know if they're bouncing around, but yet this is an

21   exhibit that predates pretty much the January 6th issues

22   that arose.  As the Court's well aware, Dubrowski already

23   testified to whatever transpired prior to January 6th.

24   So --

25             THE COURT:  Let me shortcut you on this.  I

1    think -- this is one of the few I picked out, again, that

2    Ms. Hernandez had objected to.  I think I excluded this

3    exhibit already.

4              MR. MULROE:  Yes, Your Honor.  I was going to flag

5    this one.

6              THE COURT:  Okay.  So that's why I'm cutting to

7    the chase, Mr. Hassan.  I think --

8              MR. HASSAN:  Thank you, Judge.

9              MS. HERNANDEZ:  Two bites at the apple?  Is the

10   Government trying to --

11             THE COURT:  Well, that's why I'm raising it.  So

12   tell me why we're here with this -- so let me just -- yeah.

13   We may as well take it up.  Why are -- why is the Government

14   seeking to admit it?  Again, I don't -- I didn't go back and

15   look at what the argument was, but -- other than to think

16   that I had excluded it already.

17             MR. MULROE:  Yes, Your Honor.  So when we sought

18   to offer this during Mr. Dubrowski's -- Agent Dubrowski's

19   first testimony, we were offering it for a specific purpose,

20   I think primarily to show the mental state of Nick Ochs, one

21   of the Proud Boys elders, who we were arguing would be a

22   co-conspirator.  So on that first point, I do think that, at

23   this stage of the trial, having seen the totality of the

24   Telegram evidence and, in particular, having seen Agent

25   Miller's testimony that included video of Mr. Ochs and video

1    of him celebrating in the Rotunda with Mr. Nordean and

2    others, I think we made a stronger showing that Mr. Ochs was

3    a co-conspirator.  But put that to the side for the moment.

4         The reason that this is specifically relevant in

5    the context we are now offering it -- and so this would be

6    the response to any scope objection -- is that it's offered

7    to provide important evidence about Mr. Tarrio's

8    understanding of Nick Ochs and Nick Ochs's role in what

9    transpired on January 6th.  So the messages that precede it

10   include Parler posts by Tarrio sharing a fundraiser,

11   GiveSendGo.com/freeNick, to pay Nick Ochs's legal bills and

12   then, following that, a post on January 9th saying "Our

13   friend Nick is a veteran, a former employee for Fox, and an

14   outstanding journalist.  He was arrested for covering the

15   Stop the Steal rally.  Please help out any way that you can.

16   #FreeNick."

17        So Mr. Tarrio, in seeking to assist what we allege

18   is one of his co-conspirators, but who at least is one of

19   his fellow elders at the top of the Proud Boy hierarchy, is

20   holding Mr. Ochs out as a bona fide journalist who is being

21   unfairly prosecuted for trying to cover the events of

22   January 6th.  I think that we are entitled to rebut that and

23   to show that Mr. Tarrio was being deceptive of his Parler

24   followers by showing that Mr. Tarrio well knew that Mr. Ochs

25   was there to commit crimes, to obstruct the certification of

```
1   the election, not to conduct any kind of legitimate
2   journalism.  And the way that we can show that is by now
3   reaching back to show this exchange from directly following
4   the election in which Ochs is saying that "If" --
5   summarizing -- "If the legal challenges don't work out, it's
6   time for violence."  He says 'The odds are with us" -- now
7   in November -- "because of the Supreme Court.  I'm
8   pro-violence, but don't blow your load too soon.  Not to be
9   an anti-murder buzzkill, but I really think this isn't
10  fucked.  Once it is, let's go wild."
11          The video evidence, through Ms. Miller -- Agent
12  Miller -- has now shown that that is what he did.  He did it
13  along with other Proud Boys and celebrated with other Proud
14  Boys.  Tarrio was part of this exchange.  Tarrio knows Nick
15  Ochs.  Tarrio knows Nick Ochs was not there as a journalist.
16  And so we should be able to show that he knew that.
17          THE COURT:  All right.  Look, I --
18          MR. MULROE:  And this is -- I would just note this
19  is also the same Skull and Bones chat where Tarrio reported
20  back to them "Make no mistake.  We did this.  Are we a
21  militia now?  Yeah."
22          THE COURT:  Look, I'm going to take this under
23  advisement.  The whole thing with Ochs -- your whole theory
24  here is a -- I mean, I haven't given, because I haven't had
25  to, one ounce of thought to whether Nick Ochs is a
```

1    co-conspirator, but -- and so put -- I guess, again, like

2    you said, put that aside for the moment.  The other, kind

3    of -- this is a, kind of, roundabout way -- I mean -- to

4    say, "Well, we need to prove that" -- I mean, you're

5    suggesting that this would come in solely to prove some sort

6    of connection between Mr. Tarrio and Mr. Ochs such that

7    you're setting up this later argument that he knew that Ochs

8    wasn't a legitimate journalist.  I mean, it's a real bank

9    shot for relevance for this.  And you're using it to get in

10   something that's, you know -- this pro-violence statement

11   that's pretty prejudicial.  So I don't want to -- I hear

12   you.  I'll -- I'll consider it, but I'm not going to rule on

13   it right now because this is a little more complicated than

14   I -- I hadn't heard this argument before.

15              MR. MULROE:  And, Your Honor, if I might, I

16   just -- I think it, kind of, boils down to an "effect on the

17   listener" argument.  It's the effect on Tarrio as the

18   listener.  And for that reason, the fact that it's

19   pro-violence, the somewhat inflammatory nature of it, is

20   precisely what makes it relevant.

21              THE COURT:  I understand.  All I'm saying is that

22   the -- it's -- I hear what you are saying, but when you

23   look, you know, effect on the listener, he's not

24   commenting -- and I remember going through this when you

25   offered it the first time.  His -- he was -- the -- what we

 1    have for Mr. Tarrio is "He was declared the winner at one

 2    point."  We don't -- it -- he's not responding to, you know,

 3    this early part about civil war or whatnot.  So I'll take it

 4    under advisement.  I'll take it under advisement.  I hear

 5    you.

 6                The other -- we don't have an objection there.

 7                I think on 510 -- Ms. Hernandez objected to 510-48

 8    which I think I -- it's a series of, I think, things that --

 9    almost all of which I have no quarrel with.  It's statements

10    by Stewart and by Bertino.  There is a, sort of -- the very

11    last statement by Fonticoba is -- I'm -- seems to me to have

12    a double hearsay embedded in it.  I don't really think

13    you -- I'm not sure whether you care about that statement or

14    not, but I do think there may be an issue with the last --

15    him saying "I'm with Enrique and he said that's not a good

16    idea and I agree," I think that double -- you all should

17    think about whether -- I don't know -- do you intend that

18    statement to come in?

19                MR. MULROE:  We do intend, and I can explain the

20    relevance --

21                THE COURT:  Okay.

22                MR. MULROE:  -- if you wish.  So we're not

23    offering it for either of the layers of hearsay that I think

24    that Your Honor has identified.  What is relevant about this

25    message is that it circumstantially shows the position of

1    authority and influence that Mr. Tarrio has in the group, on

2    the one hand, because Gilbert is conveying this message as

3    if it has import and authoritative weight, but then also

4    what this is responding to is Mr. Bertino saying "hey, I'm

5    going to do a podcast.  If any of you guys who are on the

6    ground want to join me, you can hide your faces and your

7    names, but come on to my podcast."  After Gilbert conveys

8    this message that at least purportedly is from Tarrio saying

9    "That's not a good idea," I expect the testimony will be

10    that, in fact, nobody from "on the ground" did, then, appear

11    on Bertino's podcast.  So it shows that the group deferred

12    to Tarrio's wishes on that point.

13              THE COURT:  I don't know whether -- I mean, it may

14    be something that nobody -- I mean, is there -- if that's

15    what it's offered for and, you know, he's not -- this isn't

16    a situation where he's saying, Enrique said it was a good

17    idea to go storm the Capitol -- it may be that it's not

18    something anybody on the defense side, frankly, objects to,

19    if that's what -- I mean, now that I look at the content,

20    I'm not sure anyone would really -- would object to it along

21    those lines.  But you all can -- it -- I mean, all the other

22    statements in the -- in the exhibit, I think, have come --

23    come in under my prior rulings clearly, and there's no issue

24    there.  Does any defendant object to that last statement for

25    any reason?

1          MS. HERNANDEZ:  I object to the whole thing.  I

2   already objected to the whole thing.

3          THE COURT:  Right.  I know.  But -- okay.  So you

4   do object to this --

5          MS. HERNANDEZ:  It -- the whole -- this is

6   Bertino and --

7          THE COURT:  Just focus on --

8          MS. HERNANDEZ:  Yes, Your Honor.  Just on the last

9   statement?

10          THE COURT:  Yes.

11          MS. HERNANDEZ:  I don't -- again, I don't see that

12   it adds -- it's relevant to the issues in the case.  There's

13   no question that Mr. Tarrio is the president, or whatever

14   title he has with the Proud Boys.  There's been overwhelming

15   evidence of that.  This is just a statement.  He doesn't

16   think it's a good idea.  He's not saying do not do it

17   because he's the president.  He's saying it's not a good

18   idea.  I -- again, and the overflow into Mr. Rehl is my

19   concern, primarily; right?  These people are -- none of them

20   were there on January 6th; not a one of these people were

21   there on January 6th.  Bertino, we've already heard from

22   him.  His podcast.  Whatever -- he was taking drugs or --

23          THE COURT:  All right.

24          MS. HERNANDEZ:  -- he was high.  I just don't see

25   how this is relevant.  I think it's highly prejudicial to my

1    client, and it's hearsay upon hearsay.

2         MR. HASSAN:  Judge, to piggy-back what the Court

3    already said -- and Hassan on behalf of Tarrio, Judge --

4    it's a double layer of hearsay, Judge, and we have cause for

5    concern regarding what Tarrio was -- I mean, there's no

6    adoption by Tarrio.  There's nothing whatsoever here in this

7    statement of itself or further on in this chat reflecting

8    any adoption by Tarrio.

9         THE COURT:  All right.  So I'll take that under

10   advisement.  Again, I only think it's that last line on that

11   that is at issue.

12        So that's all I had with regard to, Ms. Hernandez,

13   your objections.  Again, I think at the next break we have,

14   I just suggest that you see if there's anything else you

15   want to be heard on before we go into the next witness.

16   It -- or if you -- I mean, because, again, so many of your

17   objections were just things that I've already ruled on, and

18   I understand you putting them in a document, but --

19        MS. HERNANDEZ:  Right.

20        THE COURT:  -- they're not, you know -- they

21   were -- they're mostly things I've, frankly, ruled on

22   already.

23        MS. HERNANDEZ:  So one of the arguments I also

24   made is a -- there are several of them that are the --

25   repeat messages being introduced which, I believe, that is

1    the definition of overview, a summary evidence.  It's

2    already come in.  They're just trying to bring it in again

3    through this agent to do blah, blah, blah.  So I object on

4    that ground.  Most of the objections are just hearsay -- I

5    understand -- the question is, were these co-conspirator

6    statements?  If they're not -- if they don't fit the

7    co-conspirator statements, then they're all hearsay as to my

8    client.  These other exceptions perhaps come in, but then I

9    want a limiting instruction.  That's generally the

10   objections to --

11             THE COURT:  Okay.

12             MS. HERNANDEZ:  That's the summary of the

13   objections.

14             THE COURT:  All right.  So again, because almost

15   all those statements, I think, come in one way or the other,

16   I don't think it's worth hanging up on now, but, again, when

17   we go to -- for a limiting instruction, we can all talk

18   about whether there's -- something's appropriate.

19             MS. HERNANDEZ:  And I'm not sure -- we've just

20   been talking about the Telegram exhibits, but there's -- to

21   the -- I think the -- the podcast or whatever those videos

22   are both, from Mr. Biggs and Mr. Nordean, again, I object.

23   Hearsay.  They're -- most of them, I believe, are long after

24   the January 6th events.

25             THE COURT:  Right.  They're afterward, but, again,

 1    it can be relevant to their intent and, as long as it fits

 2    within my prior rulings, you know, I'm going to allow it --

 3              MS. HERNANDEZ:  Again --

 4              THE COURT:  -- to be played.

 5              MS. HERNANDEZ:  -- I think the Court indicated

 6    that it comes into the particular person's motive, not -- it

 7    doesn't spill over to co-defendants' motives.

 8              THE COURT:  Well --

 9              MS. HERNANDEZ:  I believe that was the Court's

10    ruling --

11              THE COURT:  But -- no, no, no, it --

12              MS. HERNANDEZ:  -- under Anderson.

13              THE COURT:  No.  Actually, that's incorrect.  What

14    I said under Anderson was that it can be related to a given

15    individual's intent but that -- or state of mind or motive

16    or whatever it is.  And then the jury can, under Anderson,

17    use -- the jury can use the evidence to decide whether a

18    conspiracy existed.  They can.

19              MS. HERNANDEZ:  I don't think that's what Anderson

20    says --

21              THE COURT:  It --

22              MR. HERNANDEZ:  -- but I --

23              THE COURT:  It --

24              MR. HERNANDEZ:  -- understand the Court --

25              THE COURT:  I have --

```
 1                 MS. HERNANDEZ:  The Court is ruling.

 2                 THE COURT:  I've -- I have --

 3                 MS. HERNANDEZ:  But the -- I mean, these --

 4                 THE COURT:  I've -- Ms. Hernandez, I have, like,

 5      literally articulated this straight from Anderson, I don't

 6      know --

 7                 MS. HERNANDEZ:  I don't --

 8                 THE COURT:  -- 10 times --

 9                 MS. HERNANDEZ:  Again --

10                 THE COURT:  -- before in this case.

11                 MS. HERNANDEZ:  I understand, but I don't believe

12      that's what Anderson says.  Anderson is limited on its

13      facts, Your Honor.  Anderson is -- it --

14                 THE COURT:  All right.

15                 MS. HERNANDEZ:  The facts of Anderson do not, in

16      any way, shape, or form, address a podcast weeks -- I mean,

17      and when I -- the reason I emphasize podcast is because we

18      know the nature of podcasts is you're out there -- I don't,

19      you know -- broadcasting either for personal ego or for

20      financial gain.  So it adds a different -- an additional

21      layer of -- when you're -- when you're trying to use a

22      person's podcast to consider whether intent, you know -- I

23      think there's a disconnect.  A lot of the posts that the

24      Court admitted as, you know, motive and stuff, I still

25      object to them, but I think they're closer to this notion of
```

1      somebody expressing their intent.  But once you're out in

2      the media talking -- and I call the podcast the media --

3      once you're out there projecting information weeks or months

4      after the event, I think the motive angle loses some of its

5      logical grounding.

6               THE COURT:  All right.  Look, I -- the benefit of

7      having your chart here is if -- as these come in, if you

8      want to lodge an objection, I at least have something that

9      lays out what it is so I can rule on it as we go.

10              All right.  I think we're ready, then, for -- to

11     resume with the witness.  So let's bring in the jury --

12              MS. HERNANDEZ:  I'm sorry, Your Honor.  One other

13     question as to the Court's ruling.  So my understanding is

14     these things that are coming in for the motive, or whatever,

15     that means they don't come in for the truth of the matter

16     asserted, as I understand the case law --

17              THE COURT:  That is --

18              MS. HERNANDEZ:  -- but yet that's -- if they don't

19     come in for the truth of the matter asserted, then its

20     relevance is very limited.

21              THE COURT:  Well, it is true that if I admitted

22     something for state of mind, intent, motive, it doesn't come

23     in for the truth of the matter asserted.  That's correct.

24              MS. HERNANDEZ:  But I --

25              THE COURT:  I --

```
1          MS. HERNANDEZ:  But my concern -- and I think the

2    Government has done this throughout, particularly with

3    Bertino -- and I think they're going to do it again -- it's

4    coming in for these limited purposes, but that's not how

5    it's being presented or restricted when it's being

6    introduced.  And I will be filing a motion on that, because

7    I do think they've -- and particularly for closing, it's a

8    big problem, because these are all admissions for purposes

9    not for the truth of the matter asserted, but that's not how

10   the Government is using them.

11         THE COURT:  Well, the other pieces, though, if

12   it's a statement of a -- if it comes in, though, as a

13   statement of party opponent, it can be used for the truth of

14   the matter asserted.  Right?  I'm -- I'm trying to make --

15   so look, yes, we're going to have to --

16         MS. HERNANDEZ:  It's complicated.

17         THE COURT:  Listen, this witness is just admitting

18   the statements.  How they can be used, again, as long as

19   they're admitted for a particular purpose, yes, we're going

20   to have to talk about an instruction and to make sure that

21   none of the statements are misused in closing.

22         MS. HERNANDEZ:  But I think -- if I'm -- at least

23   this is how I have seen it with the previous witnesses when

24   the Court has -- is when they elicit the evidence, they are

25   implicitly, if not explicitly, arguing to the jury that it's
```

1    coming -- that it's coming in for the truth of the matter

2    asserted.  And as I've -- as I've told the Court, the whole

3    concept of whether it's truth of the matter asserted or not,

4    I think, is a complicated concept for a jury to consider or

5    to understand.  That's a, you know -- that's a lawyer stuff.

6              THE COURT:  I agree with you it's nuanced.  I

7    don't agree with you that, in eliciting the statements, the

8    Government is arguing something one way or the other.

9              MR. SMITH:  Your Honor, we have an update on one

10   argument we were just making.  The Government represented

11   that it couldn't -- we're talking about the images now --

12   the altered images of the police officer.  It represented

13   that it did a Google search and could not find the altered

14   image anywhere online.  So the inference is that it's

15   Mr. Nordean.  We'd like to make a proffer right now.  We

16   just conducted that search using an application called

17   TinEye.  There are actually other -- there's another version

18   of the smiling police officer which actually is turned into

19   a meme where someone wrote "Any job that makes you happy.

20   Any job that makes you" -- and Your Honor knows what a meme

21   is where, you know, a photograph is placed online next to a

22   statement.  So the person who altered this video created a

23   meme -- this image -- that says "Any job that" -- "Get a job

24   that makes you happy."  You can find it on the TinEye

25   website.  We would ask for at least the opportunity to

1    present this evidence to chambers before the Government

2    makes the suggestion that Mr. Nordean created this because,

3    Your Honor, I think the factual predicate was the

4    representation that they had searched online and could not

5    find another version.  So we would have -- at least ask the

6    opportunity to present the evidence to the Court before

7    the -- its suggestion is made.

8              THE COURT:  I don't know why this isn't just

9    something -- again, I know you don't like to hear this and

10   I've -- as you know, I understand Rule 403 because I've

11   excluded all sorts of things in this trial under Rule 403,

12   but I don't think we're in Rule 403 territory here and

13   there's no reason why you can't --

14             MR. SMITH:  Your Honor, there is, because I can't

15   go to the witness online and say, "Here is a webpage I

16   found."  The Government would stand up and object on

17   foundation, on a preliminary question issue.  "Where did you

18   find this?  We haven't seen this yet."  So if we can't

19   cross-examine the witness with the evidence showing that

20   this is probably a false insinuation --

21             THE COURT:  You don't have a good-faith basis to

22   ask a question?

23             MR. SMITH:  Your Honor, if Your Honor's saying to

24   me right now I can plug my computer in --

25             THE COURT:  No.

```
 1            MR. SMITH:  -- pull up the TinEye's website, and

 2   show the jury that this was created by someone else, then

 3   yes, Your Honor, I will -- I -- then we would have --

 4            THE COURT:  I'm saying you have a good-faith basis

 5   to ask -- if you just did a search, you have a good-faith

 6   basis to ask a question:  "Isn't it true that if you do a

 7   Google search, you can find all sorts of things right now?"

 8            MR. SMITH:  And then, Your Honor, if I can't show

 9   the screen, the jury will just think I'm making that up.

10            THE COURT:  Until you get to your case and you can

11   put on evidence suggesting something else.

12            MR. SMITH:  Your Honor --

13            THE COURT:  Mr. Smith, I'm not going to -- look,

14   I'm not going to burn any more time on this.  I've heard you

15   and the -- I think this is fair game.  Your client

16   forwarded -- posted this photo, and whatever -- the jury

17   will make what of it -- whatever they -- what they will of

18   it, but I -- it's -- I've already ruled and no -- the

19   proffers you're talking about, I think, are appropriate for

20   cross-examination.

21            We have to take -- we're going to take a break for

22   the court reporter so that he can rest before we come back

23   with the jury.

24            Is there anything else we need to address before

25   we bring back the jury with this witness?
```

```
 1              All right.  We'll come back in 10 minutes.
 2              Ms. Harris, if you would bring -- put the jury in
 3    the box when we come back and we'll have the witness here,
 4    as well.
 5              THE DEPUTY CLERK:  All rise.  This Honorable Court
 6    stands in recess for 10 minutes.
 7              (Brief recess taken.)
 8              (Nicole Miller resumed the witness stand.)
 9              (Brief pause.)
10              THE DEPUTY CLERK:  Jury panel.
11              (Jury returned to jury box.)
12              (Brief pause.)
13              THE DEPUTY CLERK:  We are back on the record in
14    Criminal Matter 21-175, United States of America v. Ethan
15    Nordean, et al.
16              THE COURT:  All right.  Counsel, you may proceed.
17              MR. JAUREGUI:  Thank you very much, Your Honor.
18                        CROSS-EXAMINATION
19    BY MR. JAUREGUI:
20    Q.  Good morning, Agent.
21    A.  Good morning.
22    Q.  I'd like to just tie up some loose ends from yesterday,
23    if it's all right with you.
24    A.  Sure.
25    Q.  Thank you.
```

1          MR. JAUREGUI:  If we could please, Ms. Harris, put

2     up what's already in evidence, 509-25.

3     BY MR. JAUREGUI:

4     Q.  Do you see this exhibit, Agent?

5     A.  I do.

6     Q.  Okay.  At 12:01:55, there's a blank message from

7     Enrique; correct?

8     A.  Correct.

9     Q.  Okay.  You don't know what that message was about, do

10    you?

11    A.  So the FBI never recovered this message from any phones.

12    Q.  Understood.  This isn't when he's added to the chat?

13    A.  I don't believe so.

14    Q.  Okay.  And do you know or do you have personal knowledge

15    about whether or not he's actually in this New MOSD chat?

16    A.  What do you mean by "in"?

17    Q.  Is he actually participating, reviewing, or reading

18    these messages that were introduced through you by the

19    Government?

20    A.  So there's an entry here.  Again, what's made it, we

21    don't know --

22    Q.  Okay.

23    A.  -- but there's another one, I think, at, maybe, 8:30,

24    9:30 --

25    Q.  Okay.

1    A.  -- in the morning from Mr. Tarrio, as well.

2    Q.  Okay.

3    A.  I don't -- I can't recall if there was a response in

4    that one or not.

5    Q.  Okay.  Let me go to the next exhibit.  It's 509-26,

6    which is also in evidence.  And I'm just going to zoom in so

7    it's easier to read.  At 7:18:03, YutYut Cowabunga says "Are

8    you here"; is that correct?

9    A.  That's correct.

10   Q.  And he's, I guess, trying to find out if Enrique's

11   really in the chat or not; correct?

12   A.  I'm not sure what he's referring to.

13   Q.  Okay.  And there's multiple other exhibits that you saw

14   where there were blank messages from Enrique; correct?

15            MR. KENERSON:  Can we --

16            THE COURT:  Madam --

17            MR. JAUREGUI:  Oh.

18            THE COURT:  If -- thank you.

19            MR. JAUREGUI:  I got it.  Took care of it.

20   BY MR. JAUREGUI:

21   Q.  There were other exhibits where there were blank

22   messages from Enrique; correct?

23   A.  Yes.

24   Q.  Okay.  And as you sit here today, you have no idea why

25   those messages are blank; correct?

1    A.  They were not recovered from any FBI phone -- or phone

2    extracted by the FBI.  Correct.

3    Q.  Understood.  And what the FBI did is they got the phones

4    of the different co-defendants in this case; correct?

5    A.  Yes.

6    Q.  For example, you got the phone from Enrique, from some

7    of the other gentlemen here in court today; correct?

8    A.  Yes.

9    Q.  And from some other Proud Boys from other states.  Would

10   that be fair?

11   A.  Yes.

12   Q.  Okay.  And one of the phones that you were able to

13   impound was a phone of Nick Ochs.  Would that be fair?

14   A.  I myself didn't do it, but the FBI, yes.

15   Q.  Somebody did?

16   A.  Yes.

17   Q.  He's the Proud Boy from Hawaii?

18   A.  Correct.

19   Q.  And his phone was also very complete; correct?

20   A.  I didn't review Mr. Ochs's phone.

21   Q.  Okay.

22   A.  That was not my role.

23   Q.  Okay.  And do you know who did the extraction for Nick

24   Ochs's phone?

25   A.  I would think it would be somebody out of FBI Miami, but

1    I don't know for certain -- or not Miami, excuse me, Hawaii,

2    but --

3    Q.   Hawaii.

4    A.   -- I don't know for certain.

5    Q.   Okay.  And the reason you were getting all these phones

6    together was so you can piece together these chats.  Would

7    that be fair?

8    A.   So each phone was obtained at a different point of the

9    investigation --

10   Q.   Okay.

11   A.   -- and they were extracted for information.  Correct.

12   Q.   Okay.  And your layman's understanding of Telegram is

13   that each message would have to be deleted in each phone for

14   the message to be unrecoverable; correct?

15   A.   So I don't have an in-depth knowledge of Telegram.

16   Q.   Okay.

17   A.   I know that if the user deletes it, I believe it deletes

18   throughout the other phone, unless the phone has already

19   been in, like, airplane mode.

20   Q.   Okay.  The best person that would testify as to that

21   would be Kate Cain.  Would that be fair?

22   A.   She has more knowledge than I do.  Yes.

23   Q.   Okay.  But as you sit here today, you have no personal

24   knowledge why some messages show up and why some messages do

25   not?

1    A.  Correct.

2    Q.  Thank you.

3         Yesterday, I think you testified that the reason

4    you thought Enrique had some part in either the editing or

5    the creation of that 1776 document was because you saw some

6    kind of Google search for, you know -- that he conducted;

7    correct?

8    A.  It was a variety of things, not just that one thing.

9    Correct.

10   Q.  Okay.  But that was one of the things.  Would --

11   A.  Correct.

12   Q.  -- that be fair?

13        Okay.  And when I asked you yesterday, you weren't

14   sure when he conducted the Google search; right?

15   A.  I believe it was January 1st.

16   Q.  January 1st?  Okay.  Great.

17        And how did you acquire that information that he

18   did that Google search on January 1st?

19   A.  From the extraction of his cell phone.

20   Q.  Okay.  And the extraction of his cell phone -- you don't

21   know who conducted that extraction.  Would that be fair?

22   A.  Correct.

23   Q.  Okay.  You were just handed a document that said, you

24   know, "This is a Cellebrite report of Enrique's phone"?

25   A.  It's not exactly a document.  It's, kind of -- it's

1    provided on -- so once a phone's extracted, it's put into an

2    FBI system where people can access it --

3    Q.  Okay.

4    A.  -- and that's the system that I went into to view.

5    Q.  Okay.  If I showed you a report, would that refresh your

6    recollection -- and you can tell me either way -- is that

7    what you saw or you didn't see?

8    A.  Sure.

9            MR. JAUREGUI:  Okay.  Judge, may I approach --

10   actually, I can do it digitally.  This is just for the

11   witness, Your Honor, just for the purposes of refreshing her

12   recollection.

13   BY MR. JAUREGUI:

14   Q.  Do you see that extraction report?

15   A.  I do.

16   Q.  Is this the report that you saw on the FBI system?

17   A.  So this is not what I looked at, but this -- if you

18   scroll up just a little bit.

19   Q.  Sure.

20   A.  I believe this is the same date and time, though.  I

21   actually looked at it in Cellebrite, so in the actual

22   program.

23   Q.  In the actual program?

24   A.  Correct.

25   Q.  Got it.

```
 1              And the way this Cellebrite works is first the

 2    phone is hooked up to a machine and it's extracted; correct?

 3    A.  So I don't know -- again, I don't know --

 4    Q.  You don't know how --

 5    A.  -- the process of it.  Correct.

 6    Q.  None of that stuff; right?

 7    A.  Correct.

 8    Q.  You just know that you had this report that you looked

 9    at?

10    A.  Not this report, but --

11    Q.  Not this report?

12    A.  -- the Cellebrite extraction.  Correct.

13    Q.  Got it.  And in that report that you looked at, there

14    was one search for "the Winter Palace" on January 1st?

15    A.  That I recall, yes.

16    Q.  Okay.  And would it be fair to say that "Winter Palace,"

17    like "1776," is, like, a call to freedom from a lot of these

18    right-wing groups?  They were chanting "1776" while we're --

19    while they were at the Capitol; correct?

20    A.  They did chant --

21              MR. KENERSON:  Objection.  Compound.

22              THE COURT:  Sustained as to compound.

23    BY MR. JAUREGUI:

24    Q.  Okay.  Were they screaming "1776" while they were at the

25    Capitol?
```

1    A.  They were.

2    Q.  Okay.  And that statement, "1776," is used in other

3    rallies and other protests besides those at the Capitol as a

4    call to freedom.  Would that be fair?

5    A.  I don't know -- I can't speak for other rallies, but I

6    can speak for January 6th.

7    Q.  Okay.

8    A.  And it was used on January 6th.

9    Q.  Okay.  And are you aware that "the Winter Palace" was

10   also a common term that was used leading up to the events of

11   January 6th?

12   A.  I had not seen that term before.

13   Q.  Okay.  And in your investigation after the fact, did you

14   ever discover that there were podcasts; that there were

15   websites that use "the Winter Palace"?

16   A.  Not that I've seen.

17   Q.  Okay.  Yesterday, when I asked you if you used the gun

18   charges on Bertino as leverage to flip him, you said you

19   didn't know; correct?

20   A.  I said people cooperate for different reasons --

21   Q.  Right.

22   A.  -- yes.

23   Q.  And you didn't know specifically why Bertino decided to

24   cooperate?

25   A.  Correct.

1   Q.  Okay.  And you testified that you did not pressure him

2   with the gun charges to get him to cooperate and to flip;

3   correct?

4   A.  No.

5   Q.  Isn't it true, Agent, that before you interviewed

6   Bertino, you had access to Tarrio and Rehl's phone?

7   A.  Rehl, yes.  Tarrio's had just been recently accessed in,

8   I believe, January of 2022.

9   Q.  Okay.  So are you saying that you did not have access to

10  Tarrio's phone before you interviewed Bertino?

11  A.  So -- no -- again, I interviewed Bertino, I believe it

12  was, March of 2022 and Tarrio's phone had been accessed

13  January.  So it was briefly accessed, yes.  Rehl's had been

14  accessed before that.

15  Q.  Understood.  And how many times did you personally meet

16  with Bertino?

17  A.  I'd have to look at my reports to give you a specific

18  number, but, maybe, three or four.

19  Q.  Okay.  And would it be fair to say that the first times

20  you met with him, he did not cooperate with you?

21  A.  Yes.

22  Q.  And actually, you hoped that once you conducted a search

23  warrant of his home, you'd get him to cooperate; correct?

24          MR. KENERSON:  Objection.  Relevance to her

25  subjective hope.

1          THE COURT:  Overruled.

2     BY MR. JAUREGUI:

3     Q.  Did you hope to get him to cooperate once you conducted

4     a search warrant of his home?

5     A.  We hoped he would cooperate, yes, but it had nothing to

6     do with the search.  Just hoped he would cooperate at some

7     point, yes.

8     Q.  Okay.  You weren't using the search warrant as a means

9     of getting him to cooperate?

10    A.  No.

11    Q.  Did you want him real badly?  Bertino.

12          MR. KENERSON:  Objection.  Relevance.

13          THE COURT:  Overruled.

14          THE WITNESS:  Did I want Bertino to cooperate?

15    Yes, as I'd want many people in this investigation to

16    cooperate.  Yes.

17    BY MR. JAUREGUI:

18    Q.  No, but I mean the -- did you ever use the words "I want

19    him badly," exclamation point?

20    A.  Possibly.

21    Q.  "I really want him arrested," exclamation point?

22    A.  Possibly.

23    Q.  Okay.  "Hopefully, we can get there"?  Was that your

24    feelings before the search warrant?

25    A.  Possibly, yes.

13655

1    Q.  Would it be fair to say that when you couldn't get him

2    to cooperate the first time, you thought, "You know what?

3    We didn't push him hard enough"?

4    A.  I don't think that was my thought.  I'm pretty sure he

5    sought out a lawyer after that.  So it would be up to him to

6    reach out at that point.

7    Q.  Did you ever write "We didn't push him hard enough"?

8    A.  Possibly, but I don't know.

9    Q.  Did you ever think, as part of the strategy to get him

10   to flip, "If we get nothing else, we'll get him on those gun

11   charges"?

12   A.  Possibly, yes.

13   Q.  And those gun charges were going to get you another shot

14   at him?

15   A.  It would get him arrested, not necessarily another shot

16   at him.

17   Q.  Did you ever say "We'll use the gun charges to get

18   another shot at him, to flip him to cooperate"?

19   A.  I'm not sure if those were my exact words, but I'm --

20   possibly.

21   Q.  Okay.  Do you want me to read you the exact words?

22   A.  If you want to.

23              MR. KENERSON:  Are we refreshing?  What are we

24   doing?

25              MR. JAUREGUI:  I was going to impeach her, but --

```
 1              THE COURT:  Well, proceed as you will.
 2              MR. JAUREGUI:  Thank you, Your Honor.
 3              (Brief pause.)
 4    BY MR. JAUREGUI:
 5    Q.  Agent, tell me if I'm wrong:  "I was hoping to come
 6    join/participate in the search warrant execution next week,
 7    as well.  Would you guys have a problem with that?  I know
 8    you have spoken to Bertino before and hoping, if he has a
 9    change of mind and decides he wants to talk, you and I can
10    interview him."
11    A.  That's my statement, yes.
12    Q.  Okay.  Did you also say "Great.  Thank you for the
13    heads-up.  Sounds good.  Fingers crossed.  I want to get
14    this guy so badly," exclamation point.  "This has been the
15    longest year and a month of my life with this stuff and I
16    really want him arrested," exclamation point?
17              MR. KENERSON:  Objection as not inconsistent.
18              THE COURT:  Well --
19              MR. JAUREGUI:  Hopefully, we can get there.
20              THE COURT:  Sustained.  Sustained.
21              MR. JAUREGUI:  Okay.
22    BY MR. JAUREGUI:
23    Q.  And was Bertino's phone extremely helpful to you once
24    you were able to recover it at the search warrant?
25    A.  It was.
```

1    Q.  And it was full of the chats and everything else that
2    we've been talking about?
3    A.  So it didn't have the chats necessarily on it, but it
4    had individual SMS messages, yes --
5    Q.  Thank you.
6    A.  -- and photographs.
7    Q.  Okay.  Did you ever say "We weren't pushing too hard
8    last time since he came to us last time, but next time we
9    have so much to show and ask"?  Did you say --
10   A.  Possible.  Yes.
11   Q.  -- that?
12   A.  Possible.  Yes.
13   Q.  "I really hope to move forward with charging Bertino,
14   Wolkind, and Stewart with J6 stuff.  If nothing, let's get
15   him on these gun charges"?
16            MR. KENERSON:  Objection.
17            THE COURT:  Sustained.
18   BY MR. JAUREGUI:
19   Q.  Did -- is that accurate?
20            MR. KENERSON:  Objection.
21            THE COURT:  The question -- the objection is
22   sustained.
23            MR. JAUREGUI:  Understood.
24   BY MR. JAUREGUI:
25   Q.  Did you try and get a third shot at Bertino?

1    A.   What do you mean by "third shot"?  Because --

2    Q.   A third shot of interviewing him.

3    A.   Well, the first time, he didn't want to speak with us;

4    second time, he did; and then third time, he did with his

5    lawyer.

6    Q.   Okay.  And you had even more ammunition to flip him and

7    turn him on that third time; correct?

8    A.   I don't know what I had at that time.  I'm sure I had

9    additional evidence because, as the investigation goes on,

10   we get more evidence.

11   Q.   Okay.  And at that point, you had been pushing the DNA

12   reports for the guns; correct?

13   A.   So I don't know that I had been pushing the DNA for the

14   guns.  As the case was actually ultimately out of Charlotte,

15   we were working with Charlotte on the case.

16   Q.   Okay.  The guns are processed through FBI?

17   A.   So I don't know who she sent them to, the agent who had

18   the Bertino case.  She facilitated all of that.

19   Q.   Okay.  Did you put specifically a priority on the gun

20   analysis?

21             MR. KENERSON:  Your Honor, I'm going to make a

22   scope objection at this point.

23             MR. JAUREGUI:  It's how she flipped Bertino,

24   Judge.

25             THE COURT:  Let me hear you at sidebar.

1          (Bench conference:)

2          MR. KENERSON:  Your Honor, the Court allowed

3    inquiry into her dealings with Mr. Bertino on the theory

4    that it went to her credibility because of the accusation

5    that she provided him with false information.  We're well

6    beyond that at this point.

7          THE COURT:  I think we are, but -- I'll hear you

8    in response, but I think we are.

9          MR. JAUREGUI:  Sure, Your Honor.

10         THE COURT:  And that is exactly why I allowed some

11   of that testimony yesterday.

12         MR. JAUREGUI:  I appreciate that, Your Honor.

13         Judge, in her Lync messages --

14         THE COURT:  Right.

15         MR. JAUREGUI:  -- she says that she put -- she

16   asked the lab to put a priority on the analysis.  They did

17   it and it helped since it was a Capitol case.  Those are her

18   own statements.

19         THE COURT:  Right, but that's not the issue that

20   went to her credibility, and this is beyond the scope now.

21   So I'm going to sustain a beyond-the-scope objection.

22         MR. JAUREGUI:  Understood, Your Honor.

23         THE COURT:  All right.

24         (Return from bench conference.)

25   BY MR. JAUREGUI:

```
1   Q.  Were you able to acquire a video of Bertino shooting a
2   gun?
3   A.  Yes.
4   Q.  That was more ammunition to get him to flip?
5             MR. KENERSON:  Same objection.
6             THE COURT:  Sustained.
7             (Brief pause.)
8   BY MR. JAUREGUI:
9   Q.  Now, are there some voice notes by Enrique that you're
10  aware of on January 6th?
11  A.  Not specifically January 6th that I can think of at this
12  moment.
13  Q.  Okay.  Is there anything in the universe of the
14  Government's evidence that could refresh your recollection?
15  A.  If you have something.
16  Q.  I don't have it, no, unfortunately.
17  A.  Not that I'm aware of.
18  Q.  Okay.  At what time approximately -- I'm not going to
19  hold you to seconds or minutes or anything.  At what time
20  approximately did the defendants in this case enter the
21  Capitol allegedly?
22  A.  I missed half of that.  I'm sorry.
23  Q.  Sure.
24  A.  What's --
25  Q.  What time did they enter the Capitol approximately?
```

```
1              MR. KENERSON:  Objection.  Vague.  Which
2    defendant?
3              MR. JAUREGUI:  Okay.
4              MR. KENERSON:  Or compound.
5              THE COURT:  The --
6              MR. JAUREGUI:  I'll rephrase.
7              THE COURT:  I guess sustained as to compound.
8    BY MR. JAUREGUI:
9    Q.  At what time did the first defendant in this case enter
10   the Capitol, Agent?
11   A.  2:13.
12   Q.  Okay.  And at what time was the last Proud Boy out of
13   the Capitol?
14   A.  I don't know the last Proud Boy out of the Capitol, but
15   I know the last Proud Boy off the Capitol grounds.
16   Q.  Okay.  Let me make it even more specific.  Of the people
17   accused in this case, what's the last time that they were at
18   the Capitol?
19   A.  So the last -- the time they exited -- the last person
20   who exited the building would have been about 3:13.
21   Q.  Okay.  Thank you, Agent.
22              Now, I'd like to ask you just some short questions
23   on Kenny Lizardo that we established yesterday was a CHS;
24   correct?
25   A.  Correct.
```

1    Q.  Now, Kenny Lizardo was part of the MOSD Main chat; is

2    that correct?

3    A.  He was.

4    Q.  Okay.  Kenny Lizardo was also part of the Boots on the

5    Ground chat; correct?

6    A.  I'm unsure on that one, but I know he was MOSD.

7    Q.  Okay.  If I showed you a chart from the Government,

8    would that refresh your recollection?

9    A.  Yes.

10              MR. JAUREGUI:  May I approach, Your Honor?

11              THE COURT:  You may.

12              MR. JAUREGUI:  Thank you, Your Honor.

13   BY MR. JAUREGUI

14   Q.  (Indicating.)

15   A.  Yes, he was.

16   Q.  Okay.  And was Kenny Lizardo also part of the MOSD Ops

17   chat?

18   A.  Yes.

19   Q.  Was he part of the Noble MOSD Vetting chat?

20   A.  Yes.

21   Q.  Was he part of the Operation Street Sweepers chat?

22   A.  Yes.

23   Q.  And actually, Kenny even had direct text messages with

24   Enrique; correct?

25   A.  I'm unsure, but likely.

1   Q.  Okay.  And you met personally with Kenny Lizardo and so
2   did attorneys for the Government; correct?
3   A.  Yes.
4   Q.  And Kenny Lizardo told you what the plan for January 6th
5   was; right?
6             MR. KENERSON:  Objection.
7             THE COURT:  Sustained.
8   BY MR. JAUREGUI:
9   Q.  Okay.  Did you have an understanding what was supposed
10  to happen on January 6th?
11            MR. KENERSON:  Objection to her understanding.
12            THE COURT:  Sustained.
13  BY MR. JAUREGUI:
14  Q.  Now, Kenny Lizardo had been an informant for the FBI
15  before January 6th; is that fair?
16  A.  Yes.
17  Q.  He was in the rally in December?
18  A.  He was.
19  Q.  Was he in the rally in November?
20  A.  He was.
21  Q.  And he was providing information to the FBI; correct?
22  A.  Yes.
23  Q.  And Kenny Lizardo was not able to give you any evidence
24  whatsoever against Enrique, was he?
25            MR. KENERSON:  Objection.

13664

```
 1              THE COURT:  Sustained.
 2    BY MR. JAUREGUI:
 3    Q.  Agent, would it be fair to say that you've just pieced
 4    together Parler and Telegram messages against my client?
 5              MR. KENERSON:  Objection.
 6              THE COURT:  Overruled.
 7              THE WITNESS:  This investigation has been a
 8    two-year-long investigation.  Multiple evidence has been
 9    pulled from tons of search warrant executions for people not
10    only charged here but other people from January 6th and
11    that's how all of our evidence was collected.
12    BY MR. JAUREGUI:
13    Q.  Understood.  You know that Enrique was picked up by a
14    film crew at the jail; correct?
15    A.  I do.
16    Q.  Okay.  And you also know that Kenny Lizardo picked up
17    Enrique from the jail?
18    A.  He did.
19    Q.  And he was driving Enrique all day on January 5th with
20    that film crew recording everything; correct?
21    A.  He was.
22    Q.  And you've reviewed all those videos?  You have;
23    correct?
24    A.  I have.
25    Q.  Okay.  And you've listened to all the interviews, you've
```

1    listened to all the conversations; correct?

2    A.  From -- the videos from the 5th?

3    Q.  Yes.

4    A.  Yes.

5    Q.  Okay.  And you know that he conducted multiple

6    interviews in his hotel room on the 5th that were recorded;

7    correct?

8    A.  I know he conducted --

9             MR. KENERSON:  Objection.  Vague.  Who's "he"?

10            MR. JAUREGUI:  He's right.

11   BY MR. JAUREGUI:

12   Q.  You're aware that Enrique gave multiple interviews to

13   the media -- to the film crew that was with him on the 5th?

14   A.  I know he gave --

15            MR. KENERSON:  Objection to scope.

16            THE COURT:  Sustained.

17   BY MR. JAUREGUI:

18   Q.  Okay.  You also know that Enrique had media with him in

19   his hotel room on the 6th?

20   A.  I do -- I don't know about the 6th.  I don't know for

21   certain.

22   Q.  Okay.

23   A.  But the 5th, yes.

24   Q.  Okay.  Well, you do know that, again, there were

25   recorded interviews in real time of Enrique while the events

1    on January 6th were happening; isn't that right?

2    A.  There possibly could have been, but I don't recall

3    watching those.

4    Q.  Okay.  You haven't seen any videos of him on the 6th?

5    A.  Not that I can think of at this moment.  It's possible,

6    but --

7    Q.  Okay.

8    A.  -- there -- I've watched so much video.

9    Q.  Okay.

10   A.  I can't think of a --

11   Q.  Do you remember the --

12   A.  -- specific one.

13   Q.  -- this guy, Nick --

14          THE COURT REPORTER:  I'm sorry.  What?

15          MR. JAUREGUI:  I'm sorry.

16   BY MR. JAUREGUI:

17   Q.  Do you remember Nicholas Quested and Amy Harris?  The

18   two journalists.

19   A.  I do, who were on the ground on January 6th, yes.

20   Q.  Right.  Okay.  Do you know that they went to his hotel

21   room and interviewed him about his thoughts about what

22   happened on January 6th?

23   A.  So I know an interview was done after.  I don't know if

24   it was the same -- the evening of January 6th or the 7th.

25   Q.  Right.  It's beyond your knowledge?  You don't know?

```
 1    A.  I don't know.  Correct.
 2              MR. JAUREGUI:  Okay.  Thank you very much, Agent.
 3              THE WITNESS:  Do you want this back?
 4              MR. JAUREGUI:  May I approach, Your Honor?
 5              THE COURT:  You may, sir.
 6              THE WITNESS:  (Indicating.)
 7              MR. JAUREGUI:  Thank you.
 8              MR. METCALF:  Your Honor, if I may?
 9              THE COURT:  Yes, you may proceed, sir.
10              MR. METCALF:  Thank you.
11                         CROSS-EXAMINATION
12    BY MR. METCALF:
13    Q.  Good morning, Special Agent Miller.
14    A.  Good morning.
15    Q.  How are you today?
16    A.  I'm sorry?
17    Q.  How are you today?
18    A.  I'm good.  How are you?
19    Q.  I'm doing well.  I'm going to do everything I can to try
20    to get you off the stand today.  All right?  How about that?
21    A.  I like that.
22    Q.  Sound good?
23    A.  Yes, it does.
24    Q.  All right.  So let's get into it.  You know that I
25    represent Dominic Pezzola; correct?
```

1    A.   I do.

2    Q.   And you've been investigating Mr. Pezzola basically

3    since the beginning; is that fair to say?

4    A.   Fair to say, yes.

5    Q.   So you started investigating this case on January 6th;

6    right?

7    A.   Not the Proud Boys-specific piece.  I was involved in

8    the initial January 6th investigation as far as the, like,

9    administrative things, kind of, as information came in,

10   getting it, kind of, out to the people it needed to go to so

11   they could follow up on it.  I became specifically involved

12   in this particular investigation in, I want to say, March --

13   Q.   When did you --

14   A.   -- of 2021.

15   Q.   Okay.  And that -- so that's when your investigation

16   with regards to Mr. Pezzola began, as well?

17   A.   That's when I joined this investigation.

18   Q.   When did you first start knowing and investigating

19   Mr. Pezzola?

20   A.   So the field -- a field office is the one who initially

21   had Mr. Pezzola's case which would have been, I think,

22   Buffalo or Albany -- one of the -- an office in New York.

23   As our investigation, we obtained information; we figured

24   out what was going on; Mr. Pezzola, his case became aware to

25   us; and we got caught up on the details of his case,

1    basically.  That may have been -- I can't give you a

2    specific time frame, but sometime after March of 2021.

3    Q.  So a good aspect of your investigation included the New

4    York chapters; is that fair to say?

5    A.  The New York chapters -- some individuals from those

6    chapters played into this investigation, yes.

7    Q.  Okay.  So was one of those individuals Matthew Greene?

8    A.  It was.

9    Q.  Okay.  So you became familiar with Matthew Greene; is

10   that fair to say?

11   A.  Yes.

12   Q.  And you conducted -- or your investigation included

13   investigating Matthew Greene individually, as well?

14   A.  Again, not me specifically.  So Matthew Greene's case

15   was out of -- that one was out of Albany.  So there was an

16   agent assigned to his case, and I would just work with that

17   agent in finding out whatever information it was that agent

18   obtained.

19   Q.  Same thing, then, with Mr. Pezzola?

20   A.  Yes.

21   Q.  Okay.  Do you remember the agent that you worked with

22   with regards to Mr. Pezzola and the agent for Mr. Greene?

23   So, kind of, a two-pound question.  If you want me to break

24   it up, I will.

25   A.  No, that's fine.  Matthew Greene would have been -- case

1    agent was -- last name was Wren [ph]; and then Pezzola, name

2    was Butter -- started with a B.

3    Q.   Butter?

4    A.   Kevin.   Kevin was the first name.

5    Q.   Kevin Butter?

6    A.   Well, it's, like, Butter -- it's a long last name.

7    Q.   Butterscotch?

8    A.   No --

9    Q.   No, that was --

10   A.   -- but --

11   Q.   -- a joke.

12   A.   -- but yeah, something.

13   Q.   Okay.   So the five other agents that you spoke about

14   that worked on this case with you, that does not include the

15   case agents for individuals such as Mr. Greene or

16   Mr. Pezzola; is that correct?

17   A.   Correct.

18   Q.   All right.   So the five other agents that you

19   specifically worked with, each of you would have other

20   people and other agents in different areas that you would

21   communicate with as well; right?

22   A.   Yes.

23   Q.   So how -- during this time -- so I'm just trying to get

24   an understanding.   March of 2021 -- let's just say

25   throughout the year of 2021, were you investigating anything

1    else other than the Proud Boys or was your role and

2    responsibilities Proud Boy-related?

3    A.  So our investigation, again, to clarify, is not into the

4    Proud Boys.  Our investigation is into the activity that

5    occurred on January 6th and some of the Proud Boys just

6    happened to have been involved in that activity.

7    Q.  Okay.  So let me ask you this, then, Agent.  Who did you

8    look into that was not a Proud Boy?

9    A.  So some of the individuals on the ground from

10   January 6th, such as Shannon Rusch, Trevor McDonald, those

11   individuals are not Proud Boys, but they were with them the

12   day of.

13   Q.  With who?  Mr. Pezzola?

14   A.  With the group on the day of.  They were in -- they

15   ended up on the Capitol grounds with the group.

16   Q.  Okay.  But there -- were they on Capitol grounds or part

17   of the marching group?

18   A.  So they were not part of the marching group.  They ended

19   up meeting them at the food trucks and then they went to

20   Capitol grounds.  Trevor McDonald was one we saw

21   pepper-spraying officers.

22   Q.  Okay.  So let's -- let's think about this.  You're

23   investigating specific people, and there's a big difference

24   between a witness -- there's a big difference between a

25   target of that investigation; correct?

1    A.  Sure.  Yes.

2    Q.  Okay.  How many -- just approximately, how many targets

3    did you have that were not Proud Boys during the entire year

4    of 2021?

5    A.  Explain to me what you mean by target again.

6    Q.  Okay.  So you -- when you conduct an investigation, you

7    break down an individual and what they are to that

8    investigation; is that correct?

9    A.  So I would investigate as to what crime was committed

10   and see the individuals associated with that crime.

11   Correct.

12   Q.  Okay.  And you would label -- or you could label people

13   as a witness, as someone who has information, or someone who

14   was a target of that investigation or someone who's a target

15   of committing that crime; correct?

16   A.  I don't use the word "target."

17   Q.  But that's a commonly-used name or word or phrase in the

18   FBI; is that fair to say?

19   A.  Not that I've come across.  Granted, I've only been

20   there a little over three years, but not something I've come

21   across.

22   Q.  So you never had anybody ask you, "Who's the target of

23   the investigation?"

24   A.  No.

25   Q.  Or if someone is a target of an investigation?

1    A.  Not that I can think of, no.

2    Q.  Okay.  All right.  So in your investigations, you're

3    working with five specific people out of the Washington

4    Field Office?  Are they all in your office or no?  Actually,

5    withdrawn.

6               Dubrowski's from New York; correct?

7    A.  Yes.

8    Q.  So these agents would come to D.C. or would you just

9    work with them more closely because they were part of your

10   team, so to speak?

11   A.  So all of the agents assigned, with the exception of

12   Dubrowski, are Washington Field Office agents.

13   Q.  Okay.  And you guys would communicate with various -- by

14   various different means; fair to say?

15   A.  Yes.

16   Q.  You'd have meetings in person?

17   A.  So with the case agents?

18   Q.  Yeah.

19   A.  Yes.

20   Q.  And then you guys would send emails back and forth to

21   each other?

22   A.  Yes.

23   Q.  And I was reading some of the emails, and in the emails

24   they would have a designation of classification in the

25   email.  Are -- do you know what I'm referring to?

```
 1    A.  Yes.
 2    Q.  Okay.  So that would mean that that would be on a
 3    classified email system if it has a classification in the
 4    email; is that fair to say?
 5    A.  Yes, it is.
 6              MR. KENERSON:  Object to the relevance of this
 7    line.
 8              THE COURT:  Overruled for now.
 9    BY MR. METCALF:
10    Q.  And in those emails, you would -- there's three -- in
11    those emails, you would classify if it's classified or
12    unclassified when the email gets sent out; is that fair to
13    say?
14    A.  Yes.
15    Q.  And the -- from my understanding, there's three
16    different types of classifications; correct?
17    A.  There's more than three, but for the emails, yes,
18    there's three.
19    Q.  Okay.  What would those three be?
20    A.  So it's classified, unclassified, and then I think it's
21    FOUO.
22    Q.  And that's for -- what -- police purposes?  Or what's
23    F- -- can you say that to me one more time?
24    A.  I think it's FOUO, and it might be foreign -- I don't
25    know the exact terminology.
```

1    Q.   For official use only?

2    A.   Yes.

3    Q.   Okay.  And then what about secret?  Is -- secret doesn't

4    come in there?

5    A.   So again, there's different classifications.  You can

6    add it to your email if it's a secret email.

7    Q.   Okay.  Interesting.  All right.  So now -- then you have

8    the Lync system.  Was that on your phone or was that on your

9    email?

10   A.   Neither.  It's on our, like, secret side, basically.

11   It's, kind of, like, an IMing -- if you remember AOL Instant

12   Messenger back in the day, something similar to that.

13   Q.   So like an instant messaging system?

14   A.   Yes.

15   Q.   But where would you have access to that?

16   A.   When I'm in the office.

17   Q.   Okay.  2021, COVID's going on.  How often were you in

18   the office?

19   A.   A lot, actually.  I don't think I left very much,

20   especially in the beginning phases of January 6th.

21   Q.   Okay.  And there's an unclassified side and a classified

22   side to this Lync system.  Is that fair to say?

23   A.   So there's only one -- the Lync system only exists on

24   our, basically, classified network, so what we call our red

25   side.  The green side, it does not exist there.

```
 1    Q.  You just answered a beautiful question for me, because I
 2    was trying to figure out when you were on the -- when you
 3    were spending a lot of time on the green side what that
 4    meant.  So that's the unclassified side?
 5    A.  Correct.
 6    Q.  And then if you're spending a lot of time on the red
 7    side, you're in the classified side?
 8    A.  Yes.
 9    Q.  All right.  There's a lot of different -- other acronyms
10    that you use.  I mean, I think you use more acronyms than
11    attorneys these days.  What's SOS?
12    A.  It could be staff operation --
13              MR. KENERSON:  Objection to relevance --
14              THE WITNESS:  -- specialist.
15              MR. KENERSON:  -- and scope --
16              THE COURT:  All right.  Let me --
17              MR. KENERSON:  -- and this entire line.
18              THE COURT:  Let me have you -- let me have counsel
19    at sidebar.
20              (Bench conference:)
21              THE COURT:  Mr. Metcalf, what are we doing here?
22              MR. METCALF:  I'm just talking to her about the
23    messages that she sent with regards to Mr. Pezzola
24    specifically.  I'm not going to spend much more time on
25    this.  I just wanted to get into her investigation into
```

1    Mr. Pezzola and how it lasted and then how it ultimately led

2    to Mr. Pezzola, from a separate indictment, getting involved

3    in this indictment.  So it's just more of, like, a time

4    frame that I'm going to go through, and then I'm going to go

5    straight to January 6th.

6          THE COURT:  What does the fact -- okay, then.

7    I -- what does the fact that he was -- the question of

8    whether he was indicted and enjoined with Person A or Person

9    B, what -- how is that relevant?

10         MR. METCALF:  So it's extremely relevant, Your

11   Honor.  One thing that I have to do now specifically is I

12   have to separate Mr. Pezzola from these other individuals.

13   This is part of my way of doing so.

14         THE COURT:  Right.  You can do that through facts,

15   right, through the facts of the case, the facts that she's

16   testified to one way or the other.  But the fact that

17   somebody was arrested and -- at this time or arrested

18   with -- that time or joined with this person or joined with

19   that person, how is that relevant to what the jury has to

20   decide here?

21         MR. METCALF:  I'm going to go into specifically --

22   just an overall question about how long she was

23   investigating him which is relevant if it's from March -- I

24   didn't know it was from March; I thought it was from

25   January -- and then I'm going to go into how in 2022 is when

1      people like Tarrio and everybody else actually started

2      getting their phones seized and getting arrested, and that

3      should be relevant to show that Mr. Pezzola was initially

4      part of a different investigation and then ultimately joined

5      here and then it's going to go towards messages, what

6      Mr. Pezzola was not a part of.  So it's all about separation

7      with regards to Mr. Pezzola in setting that up.  And I'm

8      going to bring it back with a time frame, as I always do.

9               THE COURT:  Let me hear from the Government in --

10              I mean, that has nothing to do with all this high

11     side -- I mean, green and red email.

12              But, Mr. Kenerson?

13              MR. KENERSON:  Right.  Number one, it has nothing

14     to do with that which is -- I mean, there's no relevance and

15     that's way beyond the scope as, frankly, no relevance to --

16     we litigated pretrial that the Government's charging

17     decisions are not relevant.  The Court sided with the

18     Government on that, and I think the Court rightly sided with

19     the Government on that.  There is absolutely no relevance to

20     when or how Mr. Pezzola was joined in this particular

21     indictment which, in any event, is a separate question from

22     investigation, number one.

23              Number two, even if there was some sort of minimal

24     relevance -- which we think it's not even close -- it's

25     massively outweighed under 403 by the risk of jury

```
 1    confusion.  It has -- it really has nothing to do -- the
 2    question before the jury is factually, based on the facts
 3    and the evidence, did the Government prove that Mr. Pezzola
 4    joined this conspiracy and/or committed the crimes, that
 5    he's been charged with, on January 6th?  That's it.  When
 6    the Government decided to charge him or when it decided to
 7    charge anyone else has absolutely no bearing on that.
 8                MR. METCALF:  Your Honor, this jury is completely
 9    confused with timelines, 100 percent.  They're confused with
10    January 6th, what happened, and they're confused with the
11    time of events of everything that this witness has done.  If
12    I didn't know -- okay.  Your Honor is looking a little odd.
13    They've heard evidence about Tarrio's phone getting taken --
14                THE COURT:  You didn't mean I -- Mr. Metcalf, let
15    me just say, you didn't mean I look odd.  You just meant I
16    looked a little confused at what you were saying; right?
17                MR. METCALF:  Absolutely, Your Honor.
18                THE COURT:  I'm trying to bail you out here.
19                MR. METCALF:  Yes.  Okay.
20                THE COURT:  All right.
21                MR. METCALF:  So --
22                (Laughter.)
23                I apologize.  You were looking at me in a way of
24    disbelief and concern.  Yes.  Absolutely.
25                So if I didn't know the time of events the way I
```

```
 1    do, then I never would be able to figure out some of this
 2    stuff.  It's literally -- what I'm going to do is just go
 3    through the most basic facts for a timeline.  It's -- and
 4    I'm talking, like, three points here.  Like, I'm going to
 5    move on --
 6              THE COURT:  Mr. Metcalf, you can do timeline about
 7    the relevant facts of the case and, maybe, within some --
 8    maybe, I could be convinced that -- some pieces of the
 9    investigation, but not charging decisions and things like
10    that that --
11              MR. METCALF:  And --
12              THE COURT:  Well, that's what you just said you
13    were going to do.  So let's just stick to what the witness
14    testified to on direct and the scope of that and things that
15    are relevant.  You may proceed.
16              MR. METCALF:  Your Honor, just so --
17              THE COURT:  Yes.
18              MR. METCALF:  -- we're clear, I never wanted to
19    get into charging facts.  I wanted to just go through a
20    timeline --
21              THE COURT:  Right.
22              MR. METCALF:  -- as to when she was investigating
23    him and to somewhat show that it was a different time frame
24    than when everyone else was involved.
25              THE COURT:  But it doesn't matter.  The question
```

13681

1    is, what is the evidence?  What is the evidence?  The

2    time -- the relevant timeline is whatever happened before

3    and after January 6th.  I don't -- I just don't see the

4    relevant of -- the relevance of this -- of these other

5    things.  So I'm just warning you, if we're going to go into

6    when was one person charged or when was another person

7    charged, I'm going to sustain objections to that.

8                MR. METCALF:  That's fine.

9                THE COURT:  All right.

10               MS. HERNANDEZ:  I'm sorry.  Your Honor --

11               THE COURT:  No, I'm sorry, Ms. Hernandez.  I

12   haven't recognized you, because it's Mr. Metcalf that is

13   proceeding with his cross-examination.

14               MS. HERNANDEZ:  Correct, but the issue is relevant

15   to my client.

16               THE COURT:  Ms. Hernandez, you had the opportunity

17   to conduct a cross-examination.  I'm not going to hear from

18   every other attorney on this.

19               MS. HERNANDEZ:  So I'd just cite Kyles v.

20   Whitley --

21               THE COURT:  All right.  Mr. --

22               MS. HERNANDEZ:  -- Supreme Court case.

23               THE COURT:  All right.  Mr. Metcalf, you may

24   proceed, and I'm going to, you know -- as I said, I'm going

25   to just -- I'm going to police the bounds of relevance and

1    the bounds of scope.

2              MR. METCALF:  Understood.  Thank you.

3              (Return from bench conference.)

4    BY MR. METCALF:

5    Q.  Okay.  Sorry about that.

6              So throughout the course of this time, 2021 into

7    2022, you testified that you were constantly finding out new

8    information, or the investigation would lead to new

9    information at times; is that correct?

10   A.  Correct.

11   Q.  And then you became associated or familiarized yourself

12   with some of these group chats; right?

13   A.  Yes.

14   Q.  And you'd send out emails to the other members of the

15   team for there to be discussions about these group chats;

16   right?

17   A.  I don't know about "because there was discussions," but

18   I would send the information in emails, yes.

19   Q.  And you would talk about the MOSD chats with everyone in

20   your team; right?

21   A.  Yes.

22   Q.  Okay.  So now, going through that with your team, you

23   knew that Mr. Pezzola was not a part of a lot of these

24   chats; is that fair to say?

25   A.  Yes.

1    Q.  So for example, the Ministry of Self-Defense, the one

2    that says "Main" after it, Mr. Pezzola was not a part of

3    that chat; is that correct?

4    A.  I'd have to double-check.  I know Mr. Pezzola was in the

5    MOSD and the Boots on Ground, but I'm not sure which

6    specific -- it may have been MOSD Main -- or the New MOSD he

7    was part of.

8    Q.  Okay.  That's fair to say.

9            MR. METCALF:  Can we go to -- Ms. Rohde, can you

10   help me out here for one second, please?  Can we go to

11   Government Exhibit-509-32.

12           (Brief pause.)

13           Ms. Harris, this should already be in evidence.

14           THE DEPUTY CLERK:  It is.

15   BY MR. METCALF:

16   Q.  This is the New MOSD chat; correct?

17   A.  Correct, and Mr. --

18   Q.  And Mr. --

19   A.  -- Pezzola is not there.

20   Q.  Exactly.

21   A.  Correct.

22   Q.  Why did you choose green for Mr. Pezzola?

23           MR. KENERSON:  Objection.  Relevance.

24           THE COURT:  Sustained.

25           MR. METCALF:  All right.  Can we go to

1    Exhibit 501-1?

2    BY MR. METCALF:

3    Q.  And while we're pulling that up, there's leadership

4    chats as well; correct?

5    A.  Correct.

6    Q.  And Mr. Pezzola was not in any leadership chat; is that

7    correct?

8    A.  Correct.

9    Q.  Now, I have in front of you 501-1.  That's the

10   original -- or that's a leadership chat of MOSD; is that

11   correct?

12   A.  Correct.

13   Q.  Do you see Greene in there?

14   A.  I do not.

15   Q.  Not Mr. Greene or Pezzola surrounded in green; correct?

16   A.  Correct.

17   Q.  Thank you.

18            MR. METCALF:  Can we go to -- we went to 509.  Can

19   we go to 503-1, please.

20   BY MR. METCALF:

21   Q.  Now, this is the MOSD Main chat.  Mr. Pezzola is not in

22   the MOSD Main chat either; is that correct?

23   A.  Correct.

24   Q.  So if I told you that Mr. Pezzola did not join any of

25   these chats, or the earliest that he joined these chats was

1    January 4th, would you agree or disagree with that

2    statement?

3    A.  So I can't comment, because I don't know, but that could

4    make sense.

5    Q.  It sounds accurate; right?

6    A.  It sounds accurate.

7              MR. METCALF:  Okay.  At this time, I ask to be

8    able to show Agent Miller what I would like to have

9    premarked for identification as Pezzola's Exhibit-264.  I'm

10   going to skip over to 264.  And I ask for permission to be

11   able to approach the witness, Your Honor.

12             THE COURT:  All right.  Does the Government have a

13   copy of that?

14             MR. METCALF:  Yes, they do, Your Honor.

15             THE COURT:  All right.  Permission's granted.

16             MR. KENERSON:  Yeah, we do.  Just if I may have a

17   moment to confer with Mr. Metcalf?

18             THE COURT:  Yes.

19             THE DEPUTY CLERK:  Mr. Metcalf --

20             MR. METCALF:  Yes?

21             THE DEPUTY CLERK:  -- 264 or 254?  Because 254 was

22   your next number.  2 -- yeah, 254 was your next number.  So

23   that's why I'm just double-checking.

24             MR. METCALF:  Yeah, 254 --

25             THE DEPUTY CLERK:  That's fine.

```
 1                 MR. METCALF:  -- then.

 2                 THE DEPUTY CLERK:  Thank you.

 3                 MR. METCALF:  Thank you.  So that means the other

 4       one that we spoke about yesterday is going to be 253.  I

 5       wrote that down wrong.

 6                 THE DEPUTY CLERK:  So 253 was the Greene photo?

 7                 MR. METCALF:  Yes.  Thank you.

 8                 THE DEPUTY CLERK:  253.

 9                 (Brief pause.)

10                 MR. METCALF:  Your Honor, may I approach?

11                 THE COURT:  Yes, you may.

12                 MR. METCALF:  Thank you.

13       BY MR. METCALF:

14       Q.  Special Agent Miller, I'm showing you what has been

15       marked for identification as Pezzola's Exhibit-254.  Are --

16       is that your handwriting?

17       A.  It is.

18       Q.  Okay.  And that -- the documents that I gave you consist

19       of four pages; is that accurate?

20       A.  Yes.

21       Q.  And these are your notes, basically, about your -- what

22       you have testified to in front of this jury; is that fair to

23       say?

24       A.  Yes.

25                 MR. METCALF:  Your Honor, at this time, I ask that
```

```
1        Pezzola's Exhibit-254 be admitted into evidence.
2                    MR. KENERSON:  I object to that.
3                    THE COURT:  Overruled -- I mean, sustained.
4        BY MR. METCALF:
5        Q.  Okay.  So can you describe what's on the first page.
6                    MR. KENERSON:  Can we be heard?
7                    THE COURT:  Yes.
8                    THE WITNESS:  Describe it?
9                    THE COURT:  Yes.
10                   MR. KENERSON:  Can we --
11                   THE WITNESS:  Oh, yeah.  Sure.
12                   THE COURT:  Yes, let's go to sidebar.
13                   (Bench conference:)
14                   THE COURT:  So I gave you all time to confer.  I
15       didn't expect to have things veer off in this direction.
16       What -- Mr. Metcalf, what are we doing here?
17                   MR. METCALF:  It's a timeline --
18                   THE COURT:  All right.
19                   MR. METCALF:  -- and I want to be able to put it
20       on the screen over here for the jury to see -- I think it
21       would actually help them out -- and, at the same time, be
22       able to discuss Exhibit-1000 which is the video montage of
23       the entire walk.  So I think it's a --
24                   THE COURT:  Why can't she -- what I don't
25       understand is why can't you just -- she hasn't said anything
```

1    inconsistent with what's in these notes; correct?

2         MR. METCALF:  No, not at all.

3         THE COURT:  Okay.

4         MR. METCALF:  I'm not --

5         THE COURT:  So -- but that's the -- all right.

6    But that's the point.  If it is inconsistent, then you have

7    a basis to admit this.  This is a prior statement of the

8    witness.  So it's actually, at this point, hearsay of the

9    witness.  So you can elicit -- I mean, unless the Government

10   doesn't object and we're just, kind of -- I don't have -- I

11   don't -- can't see what the document looks like in front of

12   me, but the point is how -- if we're not talking about a

13   demonstrative, why don't you just ask her the questions and

14   she'll give you the answers you want on the timeline?

15        MR. KENERSON:  And --

16        THE COURT:  Go ahead, Mr. Kenerson --

17        MR. KENERSON:  I just want to --

18        THE COURT:  -- because we don't have Mr. Metcalf.

19        MR. KENERSON:  He's -- it sounds like --

20        THE COURT:  Go ahead --

21        MR. KENERSON:  -- he's listening.

22        THE COURT:  -- Mr. Kenerson.

23        MR. KENERSON:  So he's -- what the Government has

24   no objection to -- and this is what I told Mr. Metcalf -- is

25   the agent being permitted to refer to her notes during the

1       course of her testimony.  So --

2                THE COURT:  Right.

3                MR. KENERSON:  -- we have no problem with that.

4       That's why we didn't object to them --

5                THE COURT:  And --

6                MR. KENERSON:  -- being up there.

7                THE COURT:  All right.  And that's what I'm

8       saying.  She can just testify to -- whatever you want her to

9       testify to, she'll testify to.  Let's just -- you can

10      have -- you could even have the other exhibit -- you can't

11      have both exhibits up anyway at the same time.  It would be

12      hard.  But we could put up the video you were talking about

13      and she can just testify, relying on her notes.

14               MR. METCALF:  Understood.  But I think that this

15      could be admitted because, again, it can help the jury.  It

16      can help visually break down what she has testified to thus

17      far.  And it can be admitted as a past recollection recorded

18      and not being something that's used for impeachment purposes

19      and just to be able to aid in everything that -- all the

20      testimony that's now about to take place, because I'm going

21      to go through step by step with her each one of those points

22      from a different side than what the Government did.

23               THE COURT:  I guess I just don't have the document

24      in front of me and I can't tell whether it's a past -- I

25      mean, a past recollection recorded has to be recorded close

1    in time -- are these -- I don't even know -- what is this

2    document?

3              MR. METCALF:  It's her handwritten notes where she

4    literally goes through piece by piece -- she goes

5    "10:00 a.m., meeting at the at the Monument; 10" -- what's

6    the next one -- can I see this real quick -- next one,

7    "10:39; 10:48."  She goes through specific detailed points

8    as to certain things that describe that entire montage.

9              THE COURT:  Right.

10             MR. METCALF:  And the -- and then Pezzola's

11   mentioned at 12:57.  I'm literally going to stop there

12   because that's the time frame that I want to speak about, is

13   10:00 a.m. to literally 12:57.

14             THE COURT:  But literally, it's still hearsay.

15   It's not past recollection recorded.  I don't have the --

16   tell me why you think it's -- I mean, I don't have that

17   provision in front of me.  I'm actually looking for it as we

18   sit here, but --

19             MR. KENERSON:  If I can, my understanding of past

20   recollection recorded is that there needs to be a foundation

21   from the witness that they once knew this information; no

22   longer can recall it; recorded it, you know -- recorded it

23   close in time; and that, therefore, they believe it's

24   accurate, and then even at that point, it's not displayed;

25   they can read from it which, again, we're not referring to

1    her -- we're not objecting to her being able to reference

2    it.

3              THE COURT:   Right.  And so it's not past

4    recollection, because it has to be close in time and we're

5    not talking about that.  So it's not a past recollection

6    recorded.  You can -- she's -- she'll testify as she's -- if

7    you'd like to ask her questions and she will answer your

8    questions directly without referring to it and you could

9    even have the exhibit you want up at the same time, but -- I

10    don't know what to say.  It's not admissible right now, but

11    you're getting the benefit of being able to -- her testify

12    with the aid of it in front of her because the Government's

13    not objecting.  You may proceed along those lines.  I don't

14    know of any other way you can proceed.

15              MR. METCALF:   Thank you, Your Honor.

16              (Return from bench conference.)

17    BY MR. METCALF:

18    Q.   Okay.  So Agent Miller, each one of these pages that I

19    just showed you, those are all your handwriting.  Is that

20    fair to say.

21    A.   Yes.

22    Q.   And they're all your notes?

23    A.   Yes.

24    Q.   And when did you create this document?

25    A.   As I started studying for my testimony.

1    Q.   Say again?

2    A.   So as I started going through all of the videos and

3    figuring out the timeline, that's when I started creating

4    these.

5    Q.   Okay.  And so is that something -- is that -- fair to

6    say that this is something that you worked on for quite some

7    time?

8    A.   The timeline?

9    Q.   That --

10   A.   So I've watched videos through the investigation and

11   done a bunch of things, yes, but as far as actually putting

12   pen to paper in note format, this is the --

13   Q.   Yes.

14   A.   -- this is the only time I've done this.

15   Q.   Okay.  And when did you do this?  A couple of months --

16   A.   Yes.

17   Q.   -- ago?

18   A.   Well, this would have been over a series of probably a

19   few months, yes.

20   Q.   Okay.  And do you remember when you've completed this

21   document?

22   A.   I don't remember when I completed it.

23   Q.   Okay.  But it's fair to say that you completed this

24   document at least a couple of months ago or just a couple of

25   months ago?

1    A.  Fairly recent.

2    Q.  Okay.  So look at the first page.  First page has -- it

3    starts with a note at 10:00 a.m.  Do you see what I'm

4    referring to?

5    A.  I do.

6    Q.  Okay.  And then you go down through a series of events

7    or a series of different times.  And I want you to look at

8    what is noted in there at 12:57.  Do you see that note that

9    I'm referring to?

10   A.  Yes.

11   Q.  And that's the first time on that page that you refer to

12   Pezzola specifically; is that accurate?

13           MR. KENERSON:  Objection.  Relevance to when she

14   first mentions it.  Also, hearsay.

15           THE COURT:  Sustained.

16   BY MR. METCALF:

17   Q.  Okay.  Your first line.  This -- well, withdrawn.

18           What I just described to you, that's your --

19   that's a timeline that you put together from 10:00 a.m.

20   until 12:57 p.m. on the morning of January 6th; is that

21   correct?

22   A.  It's a general timeline, yes.

23   Q.  Okay.  But it's a timeline from that morning; right?

24   A.  Yes.

25   Q.  And each one of these points were significant enough for

```
1    you to mention that; is that correct?

2    A.  Yes, because it's based off the montage that we watched.

3    Q.  Exactly.

4              MR. METCALF:  Can we show the witness Government's

5    Exhibit-1000, please.

6              (Brief pause.)

7              Just one second.  Can we start at 10:06 and go to

8    10:21.  I ask that 10:06 to 10:21 be played for the witness.

9              (Video played.)

10             MR. METCALF:  And if we could pause right there.

11   That actually went to 10:28.

12   BY MR. METCALF:

13   Q.  Now, what we just -- what was just shown, that was at

14   11:15 to 11:21 approximately; correct?

15   A.  Correct.

16   Q.  And you have it done on the screen exactly where, along

17   this walk, everybody was; is that correct?

18   A.  Correct.

19   Q.  And those two clips in particular, 11:15, 11:21, you do

20   not see Mr. Pezzola in those clips; is that correct?

21   A.  Correct.

22   Q.  And in all the other videos that you watched,

23   investigated, reviewed, around this specific time frame,

24   11:15 to 11:21, did you ever see Mr. Pezzola still in the

25   march at that point in time?
```

1    A.  I'm not sure.  Not that I can recall.

2    Q.  Okay.  So this is what I've been trying to figure out.

3    When did Mr. Pezzola leave the march?  You're aware that

4    Mr. Pezzola left the march that morning; is that correct?

5    A.  At some point, yes.

6    Q.  Okay.  But do you know which point that he actually

7    left?

8    A.  I do not.

9    Q.  Is it fair to say that he could have left -- actually,

10   let's go back, then.  So I want to go back to --

11              MR. METCALF:  Can we go to 9 minutes in this video

12   and play from 9 minutes to 9:10.

13              (Video played.)

14   BY MR. METCALF:

15   Q.  Okay.  You see where we are right now; correct?

16   A.  I do.

17   Q.  I'm going to have 9 minutes to 9:10 played.

18              (Video played.)

19              MR. METCALF:  You can actually even stop right

20   there.  So that was 9 minutes and 9:04.

21   BY MR. METCALF:

22   Q.  You see Mr. Pezzola still right there; correct?

23   A.  I do.

24   Q.  All right.  Is this the last video that you know of

25   where Mr. Pezzola is seen in the march?

1    A.  So I can't answer that 100 percent, but I'm going to say

2    I believe so.

3              MR. METCALF:  Okay.  Can we go back to 10:06.

4    10:06 -- how do I clear?

5              THE DEPUTY CLERK:  Hit the green arrow up top.

6              MR. KENERSON:  That, (indicating.)

7              MR. METCALF:  This has to be open.  There we go.

8    Thank you.

9              THE DEPUTY CLERK:  Mm-hmm.

10   BY MR. METCALF:

11   Q.  10:06 in this montage reflects 11:15 a.m.; correct?

12   A.  Correct.

13   Q.  And at this time, there's no other videos that show that

14   Mr. Pezzola is there at that time; is that fair to say?

15   A.  Not that I'm aware of.

16              MR. METCALF:  Okay.  And then can we go to 10:15,

17   please.  Can we just play it for a couple of seconds

18   starting at 10:15.

19              (Video played.)

20              MR. METCALF:  Can we stop right there.  Let the

21   record reflect I just stopped at 10:19.

22   BY MR. METCALF:

23   Q.  Do you see 10:19 of this montage reflects 11:21 a.m.; is

24   that correct?

25   A.  Correct.

1    Q.  And you see exactly where the arrow is as to where they

2    were traveling at this point in time; is that correct?

3    A.  Correct.

4    Q.  And there's nothing -- or there's no other videos that

5    exist out there that you know of that show Mr. Pezzola still

6    marching with the crowd at this point in time; is that fair

7    to say?

8    A.  Yes.

9    Q.  Now, you're -- throughout the course of your

10   investigation, did you find out that Mr. Greene and

11   Mr. Pezzola, among other people, actually left the march?

12   A.  Yes.

13   Q.  Now, remember there was a picture of everyone by the

14   reflecting pool?

15   A.  I do.

16   Q.  You don't remember Mr. Pezzola in that picture; correct?

17   A.  I do not.

18   Q.  Okay.  So now we're establishing somewhat of a timeline

19   or a time frame as to when Mr. Pezzola left; correct?

20   A.  Correct.

21   Q.  Now, I want you to look at your notes.  12:57.  Correct?

22   A.  Correct.

23   Q.  It has a reference to Pezzola?

24   A.  It does.

25   Q.  That's right after the first breach where Ryan Samsel

1    basically took down the first barrier; is that fair to say?

2    A.  Yes.

3    Q.  That's when Mr. Pezzola comes back into the equation; is

4    that correct?

5    A.  I believe he marches over from the food trucks with them

6    to --

7    Q.  Okay.  So let's go through that.

8            MR. METCALF:  Can we pull up -- actually, wait.

9    Before we do that, can we go to 16:03 on this video, and I'd

10   ask that 16:03 to 16:33 be played.

11           (Video played.)

12   BY MR. METCALF:

13   Q.  You remember this part of the montage; correct?

14   A.  I do, and Mr. Pezzola's not here --

15   Q.  He's not in that entire scenario?

16   A.  Correct.

17           MR. METCALF:  Just ask that this be played until

18   6:33.

19           (Brief pause.)

20           THE COURT:  16:33, for the record.

21           MR. METCALF:  Thank you, Your Honor.  Sorry about

22   that.

23           (Video played.)

24   BY MR. METCALF:

25   Q.  So no Pezzola; no Matthew Greene; right?

1    A.  Correct.

2    Q.  Okay.  Just stopped at 6:33 [sic].

3            So follow me here.  Pezzola is not seen here,

4    (indicating); he's not seen here, (indicating); he's not

5    seen here, (indicating.)  Correct me at any point if I'm

6    off.  Here, (indicating); here, (indicating); here,

7    (indicating); here, (indicating.)  And this is where we are

8    right now; right?  (Indicating.)

9    A.  Correct.

10           MR. METCALF:  Can we show the witness Exhibit-176,

11   please.  Government-176.  And can we show the -- can we

12   start at 2:01 of 176.

13           (Video played.)

14   BY MR. METCALF:

15   Q.  Okay.  So -- same video that we just watched; correct?

16   A.  Yes.

17   Q.  Except this is from the actual camera and it's the

18   entire -- it -- the entire video; is that fair to say?

19   A.  Yes.

20   Q.  And the time that we're talking about right now, we're

21   talking about 11:54 a.m., is that correct?

22   A.  Correct.

23   Q.  Now, the march continues on at least until 3:30, from my

24   notes.  No Mr. Pezzola, no Mr. Greene in this video; is that

25   correct?

1    A.  Correct.

2    Q.  And now, you see a group over here with the orange hats;

3    correct?  (Indicating.)

4    A.  Yes.

5    Q.  Where are they from?  Are they from Arizona?  Is that

6    the Arizona group?

7    A.  I believe so.

8    Q.  So you have the orange hats.  It's fair to say that the

9    orange hats -- or those wearing the orange hats are more at

10   the end of the march?  Is that accurate?

11   A.  Yes.

12   Q.  All right.  So --

13   A.  In this video, yes.

14   Q.  Well, on that -- on January 6th in particular as well;

15   right?

16   A.  When they're marching up the National Mall, I believe

17   some of them are, kind of, more towards the front, but as

18   the march continues, they -- they diffuse out.

19   Q.  I understand what you are saying.  So in this video,

20   they're in the back, not -- and they're all from -- or

21   they're mostly from Arizona; right?

22   A.  Yes.

23   Q.  But at other parts in the morning, they were at

24   different parts of the march?

25   A.  Yes.

1    Q.   Okay.  So now, the video is at -- we could stop it here.

2    The video is at 3:52.  And we're talking what time?

3    A.   11:55 a.m.

4    Q.   All right.  So how much later from here is the march?

5            MR. METCALF:  Can we go back to Exhibit-1002 --

6    1000 is -- can we go back to that exhibit.

7    BY MR. METCALF:

8    Q.   How much later from here is the food trucks?

9    A.   So they get to the food trucks around 12:07 p.m.

10   Q.   Okay.

11   A.   So 12 minutes or 14 minutes.

12   Q.   So that would be around -- so they come up here; right?

13   Would the food trucks be around this area that I'm circling

14   now?  (Indicating.)

15   A.   No, keep going.  This is the food trucks, (indicating.)

16   Q.   Okay.  Can we go to -- I don't have a specific time

17   frame for it.  But let's go to 18 minutes on this video.  So

18   this is 12:07.

19   A.   It is.

20   Q.   Mr. Pezzola is not in this video in this montage, is he?

21   A.   No.

22           MR. METCALF:  Let's go to 18:30 on this video,

23   please.

24   BY MR. METCALF:

25   Q.   Now we're at 12:23.  Mr. Pezzola is not in this video

1    either, is he?

2    A.  Correct.

3    Q.  Okay.  Do you remember -- okay.  I'm going to go back

4    now.

5            MR. METCALF:  You could actually take this off the

6    screen.

7    BY MR. METCALF:

8    Q.  During your investigation, you looked into -- we'll just

9    talk about Mr. Pezzola and Mr. Greene.  You went through

10   bank accounts -- or your team went through bank accounts?

11   A.  The case agent likely who had the case went through bank

12   accounts.

13   Q.  Phone records?

14   A.  The case agent likely, yes.

15   Q.  Mm-hmm.  And in going -- well, I'll keep going.  You

16   found receipts that Mr. Pezzola had in -- staying at hotels;

17   right?

18           MR KENERSON:  Objection.  Scope.

19           THE COURT:  Sustained.

20   BY MR. METCALF:

21   Q.  Okay.  The case agent, if they had phone records, they

22   would put them into a program that you use called

23   Cellebrite; is that correct?

24   A.  So I can't speak for the case agent, but there's

25   different programs you can put the cell phone records into,

1    and I don't know that Cellebrite is one of those programs.

2    Q.   Okay.  Do you ever -- do you recall reviewing any

3    details in Mr. Greene's phone?

4    A.   What do you mean by details?

5    Q.   Pictures would help out with your investigation; right?

6    A.   Yes.

7    Q.   A lot of people had pictures this day; right?

8    A.   Yes.

9    Q.   And if you got access to someone's phone who ultimately

10   was with Mr. Pezzola that day, you'd want to see what

11   pictures were on that phone; right?

12   A.   Correct.

13   Q.   All right.  So what I'm going to ask is that I'm able to

14   show you a picture from Mr. Greene's phone to see if you

15   actually saw this picture.

16        MR. METCALF:  Your Honor, can I step back for one

17   second and just grab my computer?

18        THE COURT:  Yes.

19        MR. METCALF:  Thank you.

20   BY MR. METCALF:

21   Q.   This is the only computer I'm able to open this up on,

22   and I'm not able to print it.  So I apologize about having

23   to show it to you this way.

24        MR. METCALF:  I'm going to ask that this just be

25   published just for the witness.

1    BY MR. METCALF:

2    Q.  Ms. Miller, do you see what's in front of you?

3    A.  I do.

4    Q.  Based on your knowledge, based on how much extensive

5    work you've put into knowing what Mr. Pezzola looked like

6    that day, is this Mr. Pezzola right here?

7    A.  It is.

8    Q.  Okay.  Is this someone who you have come to have known

9    who was with Mr. Pezzola that day?

10   A.  It is.

11   Q.  Do you know this area that's in -- that they're walking

12   towards?

13   A.  I do.

14   Q.  Okay.  And that's right by essentially where the first

15   breach happened; is that correct?

16   A.  Yes.

17   Q.  Okay.  Now, take a look at this time scenario.  Do you

18   see the time right there?

19   A.  I do.

20   Q.  And what is that time?

21   A.  It says "12:50 p.m."

22   Q.  Okay.  And it would appear that they were heading

23   towards that scenario where the first breach just happened;

24   is that fair to say in looking at this photo?

25        MR. KENERSON:  Objection to "just happened."

1          MR. METCALF:  I could rephrase.

2          THE COURT:  All right.

3     BY MR. METCALF:

4     Q.  Is it fair to say that it looks like Pezzola's traveling

5     right -- towards where the first breach happened?

6     A.  He's traveling towards the direction of the Peace

7     Monument.

8     Q.  And that's where the first breach happened; right?

9     A.  Yes.

10    Q.  And the time frame matches up with when the first breach

11    happened; correct?

12    A.  No, the first breach is after this.

13    Q.  How much later --

14    A.  12:53.

15    Q.  Okay.  So this is three minutes before?

16    A.  Yes.

17    Q.  And then your notes indicate Pezzola at 12:57?

18    A.  Yes.

19    Q.  Have you ever seen this photograph?

20    A.  I believe I have, but it's been some time.

21          MR. METCALF:  Your Honor, at this time, I ask that

22    this be marked as Pezzola's Exhibit-253 into evidence.

23          MR. KENERSON:  We have no objection to the

24    photograph.  I just note that what's on the screen is not

25    just this photograph.

```
1                    THE COURT:  All right, then.  The photograph will
2       be admitted.
3                    MR. METCALF:  Okay.
4                    THE COURT:  The photograph will be admitted, but
5       the --
6                    MR. METCALF:  So then I'd ask for permission to
7       publish, and I don't know how to do so under these
8       circumstances.
9                    THE COURT:  If you can manipulate this so that we
10      only have the photograph on the screen.
11                   MR. KENERSON:  And for the record, we don't object
12      to the metadata either on the right side.
13                   MR. METCALF:  So then, Your Honor, I ask that the
14      photograph and the right-side column be admitted as the --
15      as a piece of evidence.
16                   THE COURT:  Well, I -- that -- very well.  It's
17      just, how do we display this for the jury?  Again, I don't
18      know how to --
19                   MR. METCALF:  I could bring --
20                   THE COURT:  You'll just have to bring it up on
21      your computer with --
22                   MR. METCALF:  I could bring it down --
23                   (Brief pause.)
24                   MR. MCCULLOUGH:  Court's indulgence.
25                   THE COURT:  Yep.  Yep.
```

```
 1                    (Brief pause.)
 2              It appears to have gallery view and then thumbnail
 3     view.  I bet if you change the view at the top -- do you see
 4     the -- Mr. Metcalf, do you see gallery view?  If you change
 5     that to thumbnail view or -- maybe that will -- yeah.  And
 6     then just click on what you're -- click on the photo we're
 7     talking about.  Yep.
 8                    MR. METCALF:  So this is it right here.
 9                    THE WITNESS:  Try double-clicking on --
10                    THE COURT:  Double-clicking on that.
11                    MR. METCALF:  It's the -- it still shows
12     everything at the bottom.  And it's not allowing me to bring
13     it down to -- does Your Honor see that?
14                    MR. MCCULLOUGH:  Can I just try it?
15                    MR. METCALF:  Please.
16                    (Brief pause.)
17              Usually, my staff helps me on computer stuff.
18                    MR. MCCULLOUGH:  I'm your staff today.
19                    MR. METCALF:  There we go.
20                    (Brief pause.)
21                    THE COURT:  All right.  Thank you, Mr. McCullough.
22              This is -- what exhibit number?  This is --
23                    MR. METCALF:  It still doesn't have the metadata,
24     though.  Pezzola-253.  Is that accurate, Ms. Harris?
25                    THE DEPUTY CLERK:  Yes.
```

1        THE COURT:  All right.  Permission to publish is

2    granted.

3        MR. METCALF:  Thank you.

4    BY MR. METCALF:

5    Q.  Just -- sorry, Agent Miller.  Got to go through this one

6    more time.  This individual with the hat, Mr. Pezzola?

7    A.  Yes.

8    Q.  This individual right here, (indicating) you've come to

9    know him as someone who was with Mr. Pezzola that day?

10   A.  Yes.

11   Q.  Do you know his name?

12   A.  I do.

13   Q.  What's his name?

14   A.  Art Lashome [ph].

15   Q.  Was he ever arrested?

16        MR. KENERSON:  Objection.

17        THE COURT:  Sustained.

18   BY MR. METCALF:

19   Q.  Now, which direction does Mr. Pezzola look to be

20   heading?

21   A.  Towards the Peace Circle which is here.  (Indicating.)

22   Q.  Okay.  And when we went over the megadata [sic], it

23   reflected that this picture was taken at 12:50; is that fair

24   to say?

25   A.  Yes.

13709

```
1    Q.  And the first breach -- can you draw where the first
2    breached barriers happened.
3    A.  It's going to be this way, (indicating.)  You can't see
4    it on this photo.
5    Q.  But it's in that vicinity right there?  (Indicating.)
6    A.  Yes.
7    Q.  And your first notes have mention of Pezzola at 12:57;
8    is that correct?
9    A.  Technically, 12:56, but yes.
10   Q.  Okay.  Can you read that for me, then.
11   A.  It says -- well, it's in parentheses next to it.  It
12   says "12:57:30, see Rehl and Pezzola, same shot, 12:42."
13   Q.  So just to recap, in that montage -- well, actually,
14   before I get to the montage, in your -- during the course of
15   your investigation, you learned that Mr. Pezzola did leave
16   the march that day?
17   A.  I did.
18   Q.  And you learned that he left the march for over an hour?
19   A.  I learned from another individual that they had left.  I
20   don't know how long they were gone, but that they had left,
21   yes.
22   Q.  Okay.  Matthew Greene indicated that it was least an
23   hour, hour-and-a-half; is that right?
24              MR. KENERSON:  Objection.  Hearsay.
25              THE COURT:  Sustained.
```

```
1    BY MR. METCALF:
2    Q.  Did you -- who's the other individual that you learned
3    that they left from?
4    A.  Matthew Greene.
5    Q.  Okay.  And in saying -- in learning that from Matthew
6    Greene, you learned that he was -- both of them were gone
7    from the march for anywhere from an hour to an hour- --
8               MR. KENERSON:  Same objection.
9               MR. METCALF:  -- -and-a-half?
10              THE COURT:  Sustained again.
11   BY MR. METCALF:
12   Q.  Okay.  And going back to the montage, there's no videos
13   that show Mr. Pezzola or Mr. Greene from 11:15 until at
14   least 12:55; is that accurate?
15   A.  Not that I can think of.  Yes.
16   Q.  Okay.  Thank you.
17              (Brief pause.)
18              Now, in those notes that you have in front of you,
19   you also give -- you also break down each defendant; is that
20   correct?
21   A.  I do.
22   Q.  And in breaking down Mr. Pezzola, there's a specific
23   section for him; is that correct?
24   A.  Yes.
25   Q.  And how long was Mr. Pezzola in the building for?
```

1    A.  24 minutes.

2    Q.  So do you have him entering at 2:12 or 2:13?

3    A.  2:13.

4    Q.  Which would mean that he was leaving -- or he left at

5    2:37; right?

6    A.  2:36:56.  Yes.  2:37, if we round up.

7    Q.  Okay.  So wouldn't that be 23 minutes?  Or is it more

8    closer to 24 minutes?

9    A.  It's closer to 24.

10              MR. METCALF:  All right.  Can we go to Exhibit --

11   Government's Exhibit-115, please.  I ask that this be played

12   from the beginning.

13              (Video played.)

14   BY MR. METCALF:

15   Q.  You're familiar with this exhibit; correct?

16   A.  Yes.

17   Q.  In fact, you testified about this exhibit --

18   A.  Yes.

19   Q.  -- correct?

20              And this is the --

21              MR. METCALF:  Actually, can we just stop it there.

22   Let the record reflect I stopped at 15 seconds into

23   Government Exhibit-115.

24   BY MR. METCALF:

25   Q.  This is where Mr. Pezzola left from; is that correct?

1    A.  It is.

2    Q.  And he left at 2:37?

3    A.  Yes.

4    Q.  Okay.  And this video now is at 2:53; is that correct?

5    A.  Correct.

6    Q.  So Mr. Pezzola had nothing to do and no interaction with

7    all of these people at this time; is that correct?

8    A.  He had already exited the building.

9    Q.  And there's nothing to show that, in his exit, he

10   communicated with any of these people; is that fair to say?

11   A.  So he has conversations or talks to people while he's

12   inside.  I don't know if those people are still remaining in

13   or if they've left, but I can say Pezzola has already exited

14   the building at this point in this clip.

15   Q.  And when Mr. Pezzola exits, he exits with a group of

16   other individuals.  Is that correct?

17   A.  I'd have to look at the footage again, but I know he

18   exits through the same window he came in through.

19   Q.  Okay.  We'll go back to that.

20           MR. METCALF:  Can we go to Government's

21   Exhibit-113X, please.

22           (Video played.)

23   BY MR. METCALF:

24   Q.  Now, that circle, Mr. Pezzola, no hat?

25   A.  Correct.

1    Q.  He's not talking to anybody during this time; right?

2    Look at him.  Kind of looks like a little lost puppy; right?

3    A.  He appears to be talking to this individual briefly.

4    Q.  When is that?  Look at him here.

5    A.  You can back it up a little bit.  Not, like, a long

6    conversation, but --

7    Q.  All right.  Let's start it from the beginning again,

8    actually.  This is Government's Exhibit-113X.

9                 (Video played.)

10   BY MR. METCALF:

11   Q.  Pezzola over here.  Not talking to anybody; right?

12   A.  Correct.

13   Q.  He doesn't actually even look like he knows where he's

14   going; is that correct?

15               MR. KENERSON:  Objection to speculation as to

16   whether he knows where he's going.

17               MR. METCALF:  I'll rephrase.

18   BY MR. METCALF:

19   Q.  Does Mr. Pezzola look like he's going to a specific

20   place at this point in time?

21   A.  He does not.

22   Q.  He actually looks like he's lost, right, or looking for

23   somebody, maybe?

24   A.  Potentially.

25   Q.  But he's not talking to anybody; right?

1    A.  Well, he did speak with this man.  (Indicating.)

2    Q.  When was that, though?

3    A.  You just missed it.  Back it up.

4    Q.  Right here?

5    A.  No, keep going.  Right here.

6    Q.  Okay.  So this guy right here, (indicating)?  They

7    exchange what?  A hello?

8    A.  I don't know what they exchange.  I'm not privy to this

9    conversation, but they stop.  It appears as if they're

10   potentially exchanging a conversation.

11   Q.  All right.  So then let's look at this.  There's nothing

12   to show that Mr. Pezzola knew any of these people, right, or

13   interacted with these people?

14   A.  Not based on this video footage, correct.

15   Q.  Nothing to show that he interacted with any of these

16   people over here?  (Indicating.)

17   A.  Not in this video footage.  Correct.

18   Q.  Nothing to show him -- or any video footage that you've

19   seen -- you've spent how many hours, would you say,

20   approximately you have reviewed video footage for this case?

21   If you had to approximate, what would you say?  Hundreds?

22   A.  Yes.

23   Q.  If not thousands?

24   A.  I don't -- I've had a team with me, because that's a lot

25   of video --

```
 1    Q.  All right.  Well --

 2    A.  -- but yes.

 3    Q.  -- you.  Specifically you.

 4    A.  Hundreds.  Yes.

 5    Q.  Okay.  You've never seen him talk to any of these

 6    people; right?  (Indicating.)

 7    A.  Again, he talks with people.  I can't be -- I'm not

 8    comfortable testifying to those exact individuals.

 9    Q.  Okay.  Nothing to show him communicating with any of

10    these people?  (Indicating.)

11    A.  On this video, correct.

12              MR. METCALF:  Keep playing.

13              (Video played.)

14    BY MR. METCALF:

15    Q.  And this is right after he got in, right?

16    A.  No.  This is, like, 13 minutes or 12 minutes after he

17    entered.

18    Q.  Okay.  And he's still in the same spot.  He entered

19    right here, (indicating.)  Right?

20    A.  He did, but he left this spot and he's coming back to it

21    now.

22    Q.  So he's like a hermit crab.  He's going right back to

23    where he started; right?

24    A.  I don't know what he's doing, if he -- I don't know what

25    he's doing.
```

13716

1    Q.  Exactly.  He's not really planned anything out here; is

2    that fair to say?

3              MR. KENERSON:  Objection to characterization of

4    whether he's planned anything.

5              THE COURT:  Sustained.

6              MR. KENERSON:  Speculation.

7              THE COURT:  Sustained.

8    BY MR. METCALF:

9    Q.  Has he -- is he maneuvering around at this point in time

10   as if he knows where he's going or has any sort of idea of

11   what he's going to do next?

12   A.  He's maneuvering around as if he's looking for somebody

13   and he appears to, moments before, have been talking on --

14   or doing something with his ear, which -- I know there's an

15   earpiece there, so potentially, maybe, seeing where the rest

16   of the group is.  I don't know what Pezzola's doing.

17   Q.  Okay.  But there's no one else in the rest of the group

18   that's in the building at that point in time; is that fair

19   to say?

20   A.  Yes.  The male he was just talking to was in the

21   marching group.  That's William Chrestman, Kansas City Proud

22   Boy.

23   Q.  Okay.  But that -- the guy with the backpack and the

24   Army scenario?

25   A.  Correct.

13717

1    Q.  Okay.  But you have no video or no information that he

2    dealt with Mr. Chrestman before that interaction, do you?

3    A.  Outside of the marching group, correct.

4    Q.  Yeah, but he wasn't -- Mr. Pezzola and Mr. Chrestman

5    were communicating with each other during the marching

6    group?

7    A.  No, they were both in the marching group, though.

8    Q.  Okay.  But there was a whole bunch of other people in

9    the marching group; right?

10   A.  That's correct.

11   Q.  And Mr. Pezzola wasn't communicating with Mr. Chrestman

12   during the -- that marching group; right?

13   A.  So there's different angles of different video footage.

14   I don't have every specific angle of that march.  So I don't

15   know if, at any point, they communicated or not.

16   Q.  Okay.  But the angles that you do have and that you have

17   seen, you have not seen Mr. Pezzola and Mr. Chrestman

18   communicating with each other during the march; is that fair

19   to say?

20   A.  That is.

21           MR. METCALF:  Can we go to Government Exhibit-114,

22   please.

23   BY MR. METCALF:

24   Q.  So after we got the lost puppy dog wandering around the

25   hallways -- you're familiar with this video?

```
1    A.   Yes.

2    Q.   What time is this?

3    A.   This is 2:35:50 p.m.

4    Q.   Same window; right?

5    A.   Correct.

6    Q.   All right.  Let's play this video.

7              (Video played.)

8    BY MR. METCALF:

9    Q.   Is this Mr. Pezzola over here?

10             MR. METCALF:  Can we pause.

11             THE WITNESS:  He's here, (indicating) but yes.

12             MR. METCALF:  There we go.  Actually, you know

13   what?  114 also has a -- let's do this.  Let's go to 114X,

14   please.  Government Exhibit-114X.

15   BY MR. METCALF:

16   Q.   And this one has -- we've got excellent technology;

17   right?  Boom.  We get the circle of Pezzola; right?

18   A.   Correct.

19             MR. METCALF:  Let's keep going.

20             (Video played.)

21   BY MR. METCALF:

22   Q.   Now, he has a communication with the officers here,

23   (indicating); right?

24             MR. METCALF:  Can we pause.

25   BY MR. METCALF:
```

1   Q.  All Capitol Police; correct?

2   A.  Yes.

3   Q.  Mr. Pezzola gives the shield back to the police and then

4   exits just where he came out of; is that correct?

5   A.  I wouldn't characterize it that way, but the shield --

6   Q.  Okay.

7   A.  -- the shield --

8   Q.  Let's --

9   A.  -- does go back to the --

10  Q.  Okay.

11  A.  -- police officers.

12          MR. METCALF:  Your Honor, I ask that -- that's

13  non-responsive and that the answer be stricken.

14          THE COURT:  I'm going to overrule that objection,

15  but for the moment -- but -- well, I'll sustain the

16  objection and strike --

17          MR. METCALF:  Thank you, Your Honor.

18          THE COURT:  -- and strike the answer.

19          But let me just also say this.  Can I just have

20  both the attorney and witness wait for the other to complete

21  their sentence before answering.

22          MR. METCALF:  I'm trying really hard this time,

23  Your Honor.

24          THE COURT:  Well, let's -- I -- here's what I'm --

25  I'm asking for not just trying but success.

1     MR. METCALF:  I'm going to aim just for that and

2  achieve it.

3              THE COURT:  All right.

4              MR. METCALF:  All right.  Can we play the video

5  starting at 12 seconds, please.

6              (Video played.)

7  BY MR. METCALF:

8  Q.  Circle's still on Pezzola; correct?

9  A.  It is.

10              (Brief pause.)

11              MR. METCALF:  Now, let's pause it right there.

12  BY MR. METCALF:

13  Q.  At that point in time, Pezzola does not have the shield

14  in his hands; right?

15  A.  Correct.

16              MR. METCALF:  Can we go back to the beginning of

17  this video at one second, please.

18              (Brief pause.)

19              Let's go frame by frame.

20              (Video played.)

21  BY MR. METCALF:

22  Q.  There's Pezzola when we first see him in the video;

23  right?

24  A.  Yes.

25              MR. METCALF:  Let's keep going.

13721

```
 1                    (Brief pause.)

 2                    Excellent work, must say.

 3                    (Brief pause.)

 4    BY MR. METCALF:

 5    Q.  All right.  At this time, are you disputing that he has

 6    the shield in his hand?

 7    A.  No.

 8    Q.  Okay.  So let's find it.

 9                    (Brief pause.)

10                    There's a little reflection.

11                    (Brief pause.)

12                    I didn't mean for it to be this slow.  We're going

13    to get there and then we're going to have lunch.

14                    (Brief pause.)

15                    Any second now.

16                    (Brief pause.)

17                    That's the 14 -- keep playing.

18                    (Brief pause.)

19                    Okay.  So let's just play it, then, instead of

20    going frame by frame.

21                    (Video played.)

22                    MR. METCALF:  Okay.  Right there -- let's pause

23    it.

24    BY MR. METCALF:

25    Q.  Did you just see the shield?
```

13722

1    A.  I did.

2              MR. METCALF:  All right.  Let's keep playing.

3              (Video played.)

4    BY MR. METCALF:

5    Q.  Now, there's still Mr. Pezzola.  And it looks like he's

6    giving the shield right to the police officers -- or the

7    Capitol Police; correct?  Because now, he doesn't have it in

8    his hand anymore.  Is that accurate?

9    A.  The shield is now in the possession of Capitol Police,

10   yes.

11   Q.  And it was handed over from Mr. Pezzola to them because

12   it was in his hands before it was in the officers' hands; is

13   that fair to say?

14   A.  The shield was provided back to the Capitol Police, yes.

15   Q.  By Mr. Pezzola?

16   A.  By Mr. Pezzola.

17   Q.  Thank you.

18              All right.  And then he exits the same way that he

19   entered from; is that fair to say?

20   A.  Yes.

21   Q.  And this is 24 minutes, according to your calculation,

22   from when he entered from the same exact spot; is that fair

23   to say?

24   A.  Yes.

25              (Brief pause.)

1          MR. METCALF:  Can we go back to Government

2     Exhibit-113X, please, unless, Your Honor, you think that

3     this is a good time to break.

4          THE COURT:  I think it is a good time to break.

5          Ladies and gentlemen, we'll see you after the

6     lunch hour.

7          (Jury returned to jury room.)

8          THE COURT:  All right.  Everyone may be seated.

9          Agent, you may step down.

10         (Witness steps down.)

11         THE COURT:  And we'll see everyone at 1:30.

12         THE DEPUTY CLERK:  All rise.  This Honorable Court

13    stands in recess until the return of Court at 1:30.

14         (Luncheon recess taken at 12:31 p.m.)

15              *  *  *  *  *  *  *  *  *  *  *

16         <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

17    I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify

18    that the above and foregoing constitutes a true and accurate

19    transcript of my stenographic notes and is a full, true and

20    complete transcript of the proceedings to the best of my

21    ability, dated this 15th day of March 2023.

22                              <u>/s/Timothy R. Miller, RPR, CRR, NJ-CCR</u>
                              Official Court Reporter
23                              United States Courthouse
                              Room 6722
24                              333 Constitution Avenue, NW
                              Washington, DC 20001

25

**'**

**'The** [1] - 13630:6

**/**

**/s/Timothy** [1] - 13723:22

**0**

**06511** [1] - 13572:22

**1**

**1** [3] - 13575:3, 13575:9, 13575:13
**1-ETHAN** [1] - 13572:4
**10** [5] - 13592:14, 13638:8, 13644:1, 13644:6, 13690:5
**100** [2] - 13679:9, 13696:1
**1000** [1] - 13701:6
**10003** [1] - 13572:18
**10016** [1] - 13573:13
**1014** [1] - 13573:9
**106** [29] - 13575:20, 13575:23, 13576:2, 13577:6, 13578:7, 13578:8, 13580:18, 13582:11, 13582:20, 13583:22, 13583:24, 13584:1, 13586:25, 13587:3, 13587:8, 13587:12, 13587:15, 13587:19, 13588:4, 13589:3, 13590:13, 13591:2, 13592:16, 13593:2, 13593:12, 13593:23, 13594:1, 13622:7, 13626:19
**10:00** [4] - 13690:5, 13690:13, 13693:3, 13693:19
**10:06** [5] - 13694:7, 13694:8, 13696:3, 13696:4, 13696:11
**10:15** [2] - 13696:16, 13696:18
**10:19** [2] - 13696:21, 13696:23
**10:21** [2] - 13694:8
**10:28** [1] - 13694:11
**10:37** [1] - 13581:23
**10:39** [1] - 13690:7
**10:48** [1] - 13690:7
**113** [1] - 13573:15
**114** [1] - 13718:13
**114X** [1] - 13718:13

**11:13** [1] - 13581:24
**11:15** [5] - 13694:14, 13694:19, 13694:24, 13696:11, 13710:13
**11:17** [1] - 13591:15
**11:21** [4] - 13694:14, 13694:19, 13694:24, 13696:23
**11:39:03** [1] - 13591:13
**11:54** [1] - 13699:21
**11:55** [1] - 13701:3
**12** [3] - 13701:11, 13715:16, 13720:5
**12:01:55** [1] - 13645:6
**12:07** [2] - 13701:9, 13701:18
**12:23** [1] - 13701:25
**12:31** [1] - 13723:14
**12:42** [1] - 13709:12
**12:50** [2] - 13704:21, 13708:23
**12:53** [1] - 13705:14
**12:55** [1] - 13710:14
**12:56** [5] - 13594:10, 13594:11, 13594:22, 13595:2, 13709:9
**12:57** [7] - 13690:11, 13690:13, 13693:8, 13693:20, 13697:21, 13705:17, 13709:7
**12:57:30** [1] - 13709:12
**12th** [4] - 13615:13, 13615:25, 13616:1, 13616:3
**13** [1] - 13715:16
**14** [2] - 13701:11, 13721:17
**1420** [1] - 13572:24
**15** [2] - 13572:6, 13711:22
**153** [1] - 13573:5
**15th** [3] - 13581:9, 13581:10, 13723:21
**16:03** [2] - 13698:9, 13698:10
**16:33** [2] - 13698:10, 13698:20
**176** [1] - 13699:12
**1776** [7] - 13618:22, 13622:2, 13649:5, 13651:17, 13651:18, 13651:24, 13652:2
**17th** [1] - 13581:10
**18** [1] - 13701:17
**18:30** [1] - 13701:22
**1:21-cr-00175-TJK-1** [1] - 13572:2
**1:21-cr-00175-TJK-2**

[1] - 13572:3
**1:21-cr-00175-TJK-3** [1] - 13572:3
**1:21-cr-00175-TJK-5** [1] - 13572:4
**1:21-cr-00175-TJK-6** [1] - 13572:4
**1:30** [2] - 13723:11, 13723:13
**1st** [5] - 13572:21, 13649:15, 13649:16, 13649:18, 13651:14

**2**

**2** [6] - 13575:4, 13575:9, 13575:14, 13578:6, 13594:22, 13685:22
**2-JOSEPH** [1] - 13572:5
**20001** [2] - 13573:19, 13723:24
**20005** [1] - 13572:25
**202** [3] - 13572:15, 13572:25, 13573:20
**2021** [9] - 13591:12, 13591:14, 13668:14, 13669:2, 13670:24, 13670:25, 13672:4, 13675:17, 13682:6
**2022** [4] - 13653:8, 13653:12, 13677:25, 13682:7
**2023** [2] - 13572:6, 13723:21
**203** [1] - 13572:22
**20530** [1] - 13572:15
**20777** [1] - 13573:3
**209** [1] - 13573:6
**20th** [6] - 13572:17, 13581:23, 13589:12, 13591:12, 13591:14, 13615:13
**21-175** [2] - 13575:2, 13644:14
**23** [1] - 13711:7
**24** [4] - 13711:1, 13711:8, 13711:9, 13722:21
**240** [1] - 13573:3
**252-7233** [1] - 13572:15
**253** [3] - 13686:4, 13686:6, 13686:8
**253-0514** [1] - 13573:13
**254** [4] - 13685:21, 13685:22, 13685:24
**264** [2] - 13685:10,

13685:21
**2:00** [1] - 13594:11
**2:01** [1] - 13699:12
**2:12** [3] - 13594:24, 13595:10, 13711:2
**2:13** [3] - 13661:11, 13711:2, 13711:3
**2:14:02** [1] - 13578:18
**2:35:50** [1] - 13718:3
**2:36:56** [1] - 13711:6
**2:37** [3] - 13711:5, 13711:6, 13711:2
**2:39** [1] - 13591:6
**2:53** [1] - 13712:4

**3**

**3** [3] - 13575:4, 13575:10, 13575:14
**3-ZACHARY** [1] - 13572:5
**305** [2] - 13573:7, 13573:10
**33012** [1] - 13573:9
**33014** [1] - 13573:6
**333** [2] - 13573:19, 13723:24
**354-3111** [1] - 13573:20
**383** [1] - 13572:21
**393-3017** [1] - 13572:22
**3:13** [1] - 13661:20
**3:30** [1] - 13699:23
**3:52** [1] - 13701:2

**4**

**401** [1] - 13623:25
**403** [15] - 13584:2, 13584:21, 13593:25, 13599:4, 13606:5, 13606:13, 13606:15, 13611:8, 13618:18, 13622:2, 13623:25, 13642:10, 13642:11, 13642:12, 13678:25
**403-7323** [1] - 13573:7
**404(b** [1] - 13624:25
**407A** [1] - 13619:8
**407B** [2] - 13621:4, 13621:15
**407D** [2] - 13624:9, 13624:11
**41A** [1] - 13599:13
**41B** [1] - 13599:14
**42** [1] - 13627:18
**429-6520** [1] - 13572:25
**472-3391** [1] - 13573:3

**5**

**5** [3] - 13575:5, 13575:11, 13575:15
**5-ENRIQUE** [1] - 13572:6
**50** [1] - 13627:18
**500-35** [1] - 13627:7
**500-92** [1] - 13613:20
**500-97** [1] - 13611:14
**501-1** [2] - 13684:1, 13684:9
**503-1** [1] - 13684:19
**509** [1] - 13684:18
**509-25** [1] - 13645:2
**509-26** [1] - 13646:5
**510** [1] - 13632:7
**510-48** [1] - 13632:7
**512-19** [1] - 13594:4
**514** [1] - 13615:7
**514-61** [1] - 13636:21
**515-6** [2] - 13591:1, 13593:17
**516-1** [4] - 13578:12, 13578:23, 13581:15, 13581:17
**555** [1] - 13572:14
**59047** [1] - 13573:16
**5th** [5] - 13664:19, 13665:2, 13665:6, 13665:13, 13665:23

**6**

**6** [3] - 13575:5, 13575:12, 13575:15
**6-DOMINIC** [1] - 13572:6
**601-41** [1] - 13602:19
**601-41A** [1] - 13599:8
**601-41B** [1] - 13599:8
**6175** [1] - 13573:5
**646** [1] - 13573:13
**6722** [2] - 13573:18, 13723:23
**6:33** [2] - 13698:18, 13699:2
**6th** [55] - 13573:12, 13589:6, 13589:15, 13589:24, 13590:1, 13596:13, 13597:15, 13597:16, 13598:15, 13607:12, 13608:24,

13608:25, 13612:4,
13612:8, 13614:17,
13614:22, 13615:4,
13621:3, 13621:12,
13624:19, 13625:23,
13627:21, 13627:23,
13629:9, 13629:22,
13634:20, 13634:21,
13636:24, 13652:6,
13652:8, 13652:11,
13660:10, 13660:11,
13663:4, 13663:10,
13663:15, 13664:10,
13665:19, 13665:20,
13666:1, 13666:4,
13666:19, 13666:22,
13666:24, 13668:5,
13668:8, 13671:5,
13671:10, 13675:20,
13677:5, 13679:5,
13679:10, 13681:3,
13693:20, 13700:14

**7**

**7** [1] - 13572:17
**7166** [1] - 13573:2
**764-9347** [1] -
13573:16
**775** [1] - 13573:16
**7:18:03** [1] - 13646:7
**7th** [4] - 13594:7,
13597:13, 13627:10,
13666:24

**8**

**822-2901** [1] -
13573:10
**8:00** [2] - 13594:10,
13594:17
**8:30** [1] - 13645:23
**8:44** [2] - 13595:2,
13596:12
**8th** [1] - 13599:17

**9**

**9** [4] - 13695:11,
13695:12, 13695:17,
13695:20
**902-3869** [1] -
13572:19
**917** [1] - 13572:19
**99** [1] - 13573:12
**9:00** [1] - 13572:6
**9:04** [1] - 13695:20
**9:10** [2] - 13695:12,
13695:17
**9:30** [1] - 13645:24

**9th** [2] - 13578:16,
13629:12

**A**

**a.m** [13] - 13572:6,
13591:13, 13591:15,
13594:10, 13594:17,
13690:5, 13690:13,
13693:3, 13693:19,
13696:11, 13696:23,
13699:21, 13701:3
**abandoned** [1] -
13625:6
**ability** [4] - 13586:5,
13615:10, 13617:23,
13723:21
**able** [26] - 13575:24,
13575:25, 13577:7,
13586:14, 13588:12,
13588:13, 13589:23,
13590:5, 13600:14,
13617:21, 13630:16,
13647:12, 13656:24,
13660:1, 13663:23,
13680:1, 13685:8,
13685:11, 13687:19,
13687:22, 13689:19,
13691:1, 13691:11,
13703:13, 13703:21,
13703:22
**absolutely** [4] -
13678:19, 13679:7,
13679:17, 13679:24
**academic** [1] -
13580:8
**access** [5] - 13650:2,
13653:6, 13653:9,
13675:15, 13703:9
**accessed** [4] -
13653:7, 13653:12,
13653:13, 13653:14
**accident** [1] -
13600:19
**accordance** [1] -
13624:23
**according** [1] -
13722:21
**account** [1] -
13599:17
**accounts** [3] -
13702:10, 13702:12
**accurate** [3] -
13601:11, 13606:23,
13657:19, 13685:5,
13685:6, 13686:19,
13690:24, 13693:12,
13700:10, 13707:24,
13710:14, 13722:8,
13723:18

**accusation** [1] -
13659:4
**accused** [1] -
13661:17
**achieve** [1] - 13720:2
**acquire** [2] -
13649:17, 13660:1
**acronyms** [2] -
13676:9, 13676:10
**act** [1] - 13624:22
**acting** [1] - 13612:11
**actions** [1] - 13612:21
**activities** [1] -
13585:21
**activity** [2] - 13671:4,
13671:6
**actual** [4] - 13582:22,
13650:21, 13650:23,
13699:17
**add** [2] - 13587:9,
13675:6
**added** [1] - 13645:12
**addition** [1] - 13598:6
**additional** [3] -
13620:18, 13638:20,
13658:9
**address** [3] -
13593:10, 13638:16,
13643:24
**addressing** [2] -
13583:17, 13596:4
**adds** [3] - 13580:10,
13634:12, 13638:20
**administrative** [1] -
13668:9
**admissible** [5] -
13587:3, 13597:18,
13619:20, 13625:3,
13691:10
**admissions** [1] -
13586:4
**admit** [5] - 13598:19,
13598:20, 13626:12,
13628:14, 13688:7
**admitted** [11] -
13618:4, 13618:12,
13638:24, 13639:21,
13640:19, 13687:1,
13689:15, 13689:17,
13706:2, 13706:4,
13706:14
**admitting** [3] -
13596:24, 13620:13,
13640:17
**admonished** [1] -
13623:9
**adoption** [2] -
13635:6, 13635:8
**advisement** [4] -
13630:23, 13632:4,

13635:10
**affidavit** [12] -
13579:20, 13583:8,
13583:9, 13583:10,
13583:20, 13584:10,
13584:11, 13585:9,
13585:14, 13587:2,
13591:15, 13593:7
**Agent** [21] - 13582:25,
13588:10, 13590:15,
13628:18, 13628:24,
13630:11, 13644:20,
13645:4, 13653:5,
13656:5, 13661:10,
13661:21, 13664:3,
13667:2, 13667:13,
13671:7, 13685:8,
13686:14, 13691:18,
13708:5, 13723:9
**agent** [17] - 13600:14,
13600:16, 13602:4,
13636:3, 13658:17,
13669:16, 13669:17,
13669:21, 13669:22,
13670:1, 13688:25,
13702:11, 13702:14,
13702:21, 13702:24
**agents** [8] - 13670:13,
13670:15, 13670:18,
13670:20, 13673:8,
13673:11, 13673:12,
13673:17
**agnostic** [1] - 13588:7
**ago** [3] - 13692:17,
13692:24, 13692:25
**agree** [9] - 13578:10,
13581:15, 13590:20,
13606:13, 13615:2,
13632:16, 13641:6,
13641:7, 13685:1
**agreed** [1] - 13590:3
**agrees** [1] - 13614:25
**ahead** [2] - 13688:16,
13688:20
**aid** [2] - 13689:19,
13691:12
**aided** [1] - 13573:21
**aim** [1] - 13720:1
**airplane** [1] -
13648:19
**AJ** [1] - 13592:18
**al** [2] - 13580:14,
13644:15
**Albany** [2] - 13668:22,
13669:15
**allegation** [1] -
13608:18
**allege** [1] - 13629:17
**allegedly** [1] -
13660:21

**allow** [4] - 13609:24,
13609:25, 13611:7,
13637:2
**allowed** [4] - 13586:2,
13589:14, 13659:2,
13659:10
**allowing** [1] -
13707:12
**alluding** [1] -
13624:18
**almost** [2] - 13632:9,
13636:14
**alongside** [1] -
13582:24
**altered** [16] -
13599:22, 13600:3,
13600:4, 13600:10,
13600:12, 13600:13,
13600:16, 13601:7,
13601:14, 13603:11,
13603:13, 13603:16,
13608:24, 13641:12,
13641:13, 13641:22
**alternative** [1] -
13585:24
**Amendment** [1] -
13576:9
**AMERICA** [1] -
13572:2
**America** [2] - 13575:3,
13644:14
**ammunition** [2] -
13658:6, 13660:4
**ample** [1] - 13612:10
**Amy** [1] - 13666:17
**analysis** [5] - 13593:2,
13597:16, 13609:19,
13658:20, 13659:16
**and-a-half** [1] -
13710:9
**Anderson** [9] -
13637:12, 13637:14,
13637:16, 13637:19,
13638:5, 13638:12,
13638:13, 13638:15
**angle** [2] - 13639:4,
13717:14
**angles** [2] - 13717:13,
13717:16
**answer** [5] - 13584:18,
13691:7, 13696:1,
13719:13, 13719:18
**answered** [2] -
13625:2, 13676:1
**answering** [1] -
13719:21
**answers** [1] -
13688:14
**antecedent** [1] -
13580:4

**anti** [1] - 13630:9
**anti-murder** [1] -
13630:9
**anyway** [1] - 13689:11
**AOL** [1] - 13675:11
**apart** [3] - 13596:23,
13607:6, 13608:5
**apologize** [2] -
13679:23, 13703:22
**appear** [2] - 13633:10,
13704:22
**APPEARANCES** [2] -
13572:11, 13573:1
**appeared** [1] -
13598:12
**apple** [1] - 13628:9
**application** [2] -
13587:13, 13641:16
**apply** [1] - 13599:1
**appreciate** [1] -
13659:12
**approach** [5] -
13650:9, 13662:10,
13667:4, 13685:11,
13686:10
**appropriate** [4] -
13582:18, 13586:6,
13636:18, 13643:19
**approximate** [1] -
13714:21
**area** [2] - 13701:13,
13704:11
**areas** [1] - 13670:20
**arguably** [2] -
13599:2, 13618:18
**argue** [7] - 13584:2,
13586:2, 13595:8,
13598:20, 13603:5,
13622:2, 13626:1
**argued** [3] - 13583:6,
13592:19, 13615:24
**arguing** [7] -
13584:11, 13595:14,
13597:2, 13626:11,
13628:21, 13640:25,
13641:8
**argument** [29] -
13580:19, 13582:17,
13583:22, 13583:24,
13583:25, 13590:12,
13594:1, 13595:16,
13598:2, 13599:3,
13599:4, 13599:6,
13599:22, 13606:4,
13606:7, 13611:7,
13611:11, 13613:3,
13617:4, 13617:5,
13619:11, 13619:15,
13623:23, 13628:15,
13631:7, 13631:14,

13631:17, 13641:10
**arguments** [5] -
13578:10, 13581:4,
13589:14, 13615:16,
13635:23
**Arizona** [3] - 13700:5,
13700:6, 13700:21
**Army** [1] - 13716:24
**arose** [1] - 13627:22
**arrested** [9] - 13614:8,
13629:14, 13654:21,
13655:15, 13656:16,
13677:17, 13678:2,
13708:15
**arrests** [1] - 13583:14
**arrow** [2] - 13696:5,
13697:1
**art** [1] - 13708:14
**articulate** [1] -
13599:12
**articulated** [3] -
13606:20, 13612:2,
13638:5
**articulating** [1] -
13597:12
**aside** [3] - 13581:21,
13607:9, 13631:2
**aspect** [1] - 13669:3
**assaulting** [1] -
13601:5
**asserted** [7] -
13639:16, 13639:19,
13639:23, 13640:9,
13640:14, 13641:2,
13641:3
**assertion** [1] -
13609:11
**assigned** [2] -
13669:16, 13673:11
**assist** [1] - 13629:17
**associated** [2] -
13672:10, 13682:11
**assumed** [1] - 13590:1
**AT** [1] - 13573:15
**attack** [4] - 13580:8,
13580:14, 13580:24,
13596:10
**attempt** [2] -
13590:15, 13623:6
**attempted** [1] -
13589:5
**attention** [2] -
13627:6, 13627:7
**attorney** [2] -
13681:18, 13719:20
**ATTORNEY** [1] -
13573:15
**ATTORNEY'S** [1] -
13572:14
**attorneys** [2] -

13663:2, 13676:11
**authentic** [1] -
13600:15
**authoritative** [1] -
13633:3
**authority** [1] - 13633:1
**Avenue** [3] -
13573:12, 13573:19,
13723:24
**avoid** [1] - 13602:25
**aware** [9] - 13627:9,
13627:22, 13652:9,
13660:10, 13660:17,
13665:12, 13668:24,
13695:3, 13696:15

---

# B

**B.A** [1] - 13572:12
**back-to-back** [1] -
13620:19
**backpack** [1] -
13716:23
**bad** [4] - 13600:1,
13603:23, 13608:24,
13626:9
**badly** [3] - 13654:11,
13654:19, 13656:14
**bail** [1] - 13679:18
**bald** [1] - 13609:11
**ball** [1] - 13601:4
**bank** [4] - 13631:8,
13702:10, 13702:11
**bar** [4] - 13606:15,
13611:6, 13622:19,
13623:12
**barrier** [1] - 13698:1
**barriers** [1] - 13709:2
**based** [5] - 13679:2,
13694:2, 13704:4,
13714:14
**basic** [1] - 13680:3
**basis** [9] - 13590:13,
13596:24, 13609:15,
13618:21, 13618:22,
13642:21, 13643:4,
13643:6, 13688:7
**Beard** [1] - 13579:8
**bearing** [1] - 13679:7
**bears** [1] - 13583:11
**beautiful** [1] - 13676:1
**became** [4] -
13668:11, 13668:24,
13669:9, 13682:11
**BEFORE** [1] - 13572:9
**beforehand** [1] -
13577:9
**began** [1] - 13668:16
**begin** [1] - 13595:10
**beginning** [6] -

13592:17, 13668:3,
13675:20, 13711:12,
13713:7, 13720:16
**begins** [2] - 13613:23,
13622:20
**behalf** [7] - 13612:11,
13612:22, 13615:8,
13623:25, 13627:6,
13635:3
**belied** [1] - 13621:14
**below** [2] - 13581:1,
13585:2
**Bench** [3] - 13659:1,
13676:20, 13687:13
**bench** [3] - 13659:24,
13682:3, 13691:16
**benefit** [2] - 13639:6,
13691:11
**Bertino** [24] -
13582:10, 13582:13,
13589:18, 13590:20,
13632:10, 13633:4,
13634:6, 13634:21,
13640:3, 13652:18,
13652:23, 13653:6,
13653:10, 13653:11,
13653:16, 13654:11,
13654:14, 13656:8,
13657:13, 13657:25,
13658:18, 13658:23,
13659:3, 13660:1
**Bertino's** [2] -
13633:11, 13656:23
**best** [3] - 13648:20,
13723:20
**bet** [1] - 13707:3
**better** [3] - 13610:7,
13610:9, 13610:17
**between** [12] -
13586:24, 13588:3,
13592:14, 13592:18,
13593:5, 13595:1,
13598:8, 13623:5,
13623:16, 13631:6,
13671:24
**beyond** [5] - 13659:6,
13659:20, 13659:21,
13666:25, 13678:15
**beyond-the-scope** [1]
- 13659:21
**Biden** [2] - 13591:8,
13612:16
**big** [3] - 13640:8,
13671:23, 13671:24
**BIGGS** [1] - 13572:5
**Biggs** [7] - 13575:4,
13575:14, 13579:20,
13585:9, 13585:14,
13591:16, 13636:22
**billions** [1] - 13609:17

**bills** [1] - 13629:11
**bit** [5] - 13581:25,
13590:10, 13622:9,
13650:18, 13713:5
**bitch** [2] - 13618:22,
13622:3
**bites** [1] - 13628:9
**blah** [2] - 13606:18,
13624:18, 13636:3
**blank** [4] - 13645:6,
13646:14, 13646:21,
13646:25
**Block** [2] - 13592:20,
13592:21
**blow** [1] - 13630:8
**blowing** [1] - 13586:4
**blue** [1] - 13585:3
**boils** [1] - 13631:16
**bona** [1] - 13629:20
**Bones** [3] - 13613:23,
13615:9, 13630:19
**boom** [1] - 13718:17
**Boots** [6] - 13594:7,
13595:22, 13595:23,
13596:7, 13662:4,
13683:5
**bottom** [2] - 13596:25,
13707:12
**bouncing** [1] -
13627:20
**bounds** [2] -
13681:25, 13682:1
**box** [4] - 13603:4,
13620:7, 13644:3,
13644:11
**Boy** [9] - 13609:4,
13629:19, 13647:17,
13661:12, 13661:14,
13661:15, 13671:2,
13671:8, 13716:22
**Boy-related** [1] -
13671:2
**Boys** [15] - 13612:20,
13614:9, 13614:10,
13623:3, 13628:21,
13630:13, 13630:14,
13634:14, 13647:9,
13668:7, 13671:1,
13671:4, 13671:5,
13671:11, 13672:3
**Boys-specific** [1] -
13668:7
**breach** [8] - 13697:25,
13704:15, 13704:23,
13705:5, 13705:8,
13705:10, 13705:12,
13709:1
**breached** [1] -
13709:2
**break** [12] - 13576:18,

13577:9, 13588:3,
13627:1, 13635:13,
13643:21, 13669:23,
13672:7, 13689:16,
13710:19, 13723:3,
13723:4
**breakers** [2] -
13600:1, 13603:23
**breaking** [1] -
13710:22
**brief** [6] - 13611:15,
13720:10, 13720:18,
13721:1, 13721:9,
13721:11
**Brief** [20] - 13594:14,
13644:7, 13644:9,
13644:12, 13656:3,
13660:7, 13683:12,
13686:9, 13694:6,
13698:19, 13706:23,
13707:1, 13707:16,
13707:20, 13710:17,
13721:3, 13721:14,
13721:16, 13721:18,
13722:25
**briefly** [3] - 13575:22,
13653:13, 13713:3
**bring** [10] - 13627:5,
13636:2, 13639:11,
13643:25, 13644:2,
13678:8, 13706:19,
13706:20, 13706:22,
13707:12
**broadcasting** [1] -
13638:19
**Buffalo** [1] - 13668:22
**building** [5] -
13661:20, 13710:25,
13712:8, 13712:14,
13716:18
**bunch** [3] - 13612:19,
13692:11, 13717:8
**burn** [1] - 13643:14
**Butter** [3] - 13670:2,
13670:5, 13670:6
**butter** [1] - 13670:3
**butterscotch** [1] -
13670:7
**buzzkill** [1] - 13630:9
**BY** [69] - 13644:19,
13645:3, 13646:20,
13650:13, 13651:23,
13654:2, 13654:17,
13656:4, 13656:22,
13657:18, 13657:24,
13659:25, 13660:8,
13661:8, 13662:13,
13663:8, 13663:13,
13664:2, 13664:12,
13665:11, 13665:17,

13666:16, 13667:12,
13674:9, 13682:4,
13683:15, 13684:2,
13684:20, 13686:13,
13687:4, 13691:17,
13693:16, 13694:12,
13695:14, 13695:21,
13696:10, 13696:22,
13698:12, 13698:24,
13699:14, 13701:7,
13701:24, 13702:7,
13702:20, 13703:20,
13704:1, 13705:3,
13708:4, 13708:18,
13710:1, 13710:11,
13711:14, 13711:24,
13712:23, 13713:10,
13713:18, 13715:14,
13716:8, 13717:23,
13718:8, 13718:15,
13718:21, 13718:25,
13720:7, 13720:12,
13720:21, 13721:4,
13721:24, 13722:4

# C

**C-word** [2] - 13592:21,
13611:23
**Cain** [1] - 13648:21
**calculation** [1] -
13722:21
**camera** [1] - 13699:17
**cannot** [3] - 13586:17,
13606:6, 13609:17
**Capitol** [37] -
13579:21, 13580:8,
13580:14, 13580:24,
13581:8, 13581:13,
13591:17, 13592:1,
13592:8, 13595:12,
13595:14, 13596:9,
13601:3, 13618:20,
13618:24, 13621:21,
13622:23, 13625:8,
13633:17, 13651:19,
13651:25, 13652:3,
13659:17, 13660:21,
13660:25, 13661:10,
13661:13, 13661:14,
13661:15, 13661:18,
13671:15, 13671:16,
13671:20, 13719:1,
13722:7, 13722:9,
13722:14
**Captain** [15] -
13578:20, 13579:5,
13579:13, 13579:14,
13579:18, 13579:19,
13580:6, 13580:21,
13581:5, 13581:11,

13581:23, 13585:2,
13585:9, 13595:13
**caption** [1] - 13599:25
**care** [2] - 13632:13,
13646:19
**Carmen** [2] - 13573:2,
13575:11
**carried** [1] - 13608:25
**carrying** [1] - 13596:9
**case** [48] - 13584:6,
13584:12, 13586:18,
13595:3, 13598:10,
13598:12, 13605:8,
13606:2, 13608:12,
13608:18, 13611:24,
13613:4, 13613:21,
13614:10, 13615:15,
13623:17, 13625:23,
13634:12, 13638:10,
13639:16, 13643:10,
13647:4, 13658:14,
13658:15, 13658:18,
13659:17, 13660:20,
13661:9, 13661:17,
13668:5, 13668:21,
13668:24, 13668:25,
13669:14, 13669:16,
13669:25, 13670:14,
13670:15, 13673:17,
13677:15, 13680:7,
13681:22, 13702:11,
13702:14, 13702:21,
13702:24, 13714:20
**caught** [1] - 13668:25
**CCR** [3] - 13573:17,
13723:17, 13723:22
**celebrated** [1] -
13630:13
**celebrating** [1] -
13629:1
**celebration** [1] -
13612:5
**cell** [3] - 13649:19,
13649:20, 13702:25
**Cellebrite** [6] -
13649:24, 13650:21,
13651:1, 13651:12,
13702:23, 13703:1
**central** [1] - 13608:18
**certain** [6] - 13598:20,
13606:5, 13648:1,
13648:4, 13665:21,
13690:8
**certainly** [1] -
13585:20
**CERTIFICATE** [1] -
13723:16
**certification** [1] -
13629:25
**certify** [1] - 13723:17

**cetera** [2] - 13603:23,
13606:18
**challenges** [1] -
13630:5
**chambers** [1] -
13642:1
**change** [5] -
13606:20, 13607:6,
13656:9, 13707:3,
13707:4
**chant** [1] - 13651:20
**chanting** [1] -
13651:18
**chapters** [3] -
13669:4, 13669:5,
13669:6
**character** [3] -
13624:20, 13624:24,
13625:20
**characterization** [2] -
13598:5, 13716:9
**characterize** [1] -
13719:5
**charge** [2] - 13679:6,
13679:7
**charged** [5] -
13610:13, 13664:10,
13679:5, 13681:6,
13681:7
**charges** [10] -
13583:15, 13613:22,
13625:22, 13625:23,
13652:18, 13653:2,
13655:11, 13655:13,
13655:17, 13657:15
**charging** [4] -
13657:13, 13678:16,
13680:9, 13680:19
**Charlotte** [2] -
13658:14, 13658:15
**chart** [2] - 13639:7,
13662:7
**chase** [1] - 13628:7
**chat** [31] - 13576:12,
13578:16, 13578:17,
13579:17, 13581:10,
13582:14, 13585:3,
13585:9, 13585:19,
13586:6, 13591:6,
13594:6, 13595:22,
13595:23, 13611:21,
13630:19, 13635:7,
13645:12, 13645:15,
13646:11, 13662:1,
13662:5, 13662:17,
13662:19, 13662:21,
13683:3, 13683:16,
13684:6, 13684:10,
13684:21, 13684:22
**chat's** [1] - 13594:17

**chats** [17] - 13579:12,
13587:21, 13590:1,
13597:15, 13611:19,
13611:20, 13648:6,
13657:1, 13657:3,
13682:12, 13682:15,
13682:19, 13682:24,
13684:4, 13684:25
**chatter** [1] - 13608:19
**check** [1] - 13683:4
**checking** [1] -
13685:23
**choose** [3] -
13587:24, 13623:18,
13683:22
**chooses** [1] -
13587:10
**Chrestman** [5] -
13716:21, 13717:2,
13717:4, 13717:11,
13717:17
**chronological** [1] -
13627:19
**CHS** [1] - 13661:23
**Circle** [1] - 13708:21
**circle** [2] - 13712:24,
13718:17
**circle's** [1] - 13720:8
**circling** [1] - 13701:13
**circumstances** [1] -
13706:8
**circumstantially** [1] -
13632:25
**cite** [1] - 13681:19
**City** [1] - 13716:21
**civil** [1] - 13632:3
**claim** [1] - 13613:22
**clarify** [2] - 13588:9,
13671:3
**classification** [2] -
13673:24, 13674:3
**classifications** [2] -
13674:16, 13675:5
**classified** [6] -
13674:3, 13674:11,
13674:20, 13675:21,
13675:24, 13676:7
**classify** [1] - 13674:11
**clear** [10] - 13583:11,
13583:15, 13585:6,
13597:13, 13606:13,
13614:4, 13614:5,
13620:11, 13680:18,
13696:4
**clearly** [8] - 13576:8,
13583:17, 13585:16,
13592:23, 13597:11,
13607:12, 13610:21,
13633:23
**CLERK** [15] - 13575:2,

13728

13644:5, 13644:10, 13644:13, 13683:14, 13685:19, 13685:21, 13685:25, 13686:2, 13686:6, 13686:8, 13696:5, 13696:9, 13707:25, 13723:12
**click** [2] - 13707:6
**clicking** [2] - 13707:9, 13707:10
**client** [9] - 13576:12, 13581:20, 13605:20, 13606:13, 13635:1, 13636:8, 13643:15, 13664:4, 13681:15
**client's** [1] - 13586:13
**clip** [1] - 13712:14
**clips** [3] - 13623:20, 13694:19, 13694:20
**close** [4] - 13678:24, 13689:25, 13690:23, 13691:4
**closely** [1] - 13673:9
**closer** [3] - 13638:25, 13711:8, 13711:9
**closing** [2] - 13640:7, 13640:21
**club** [4] - 13613:24, 13614:7, 13616:24, 13617:2
**co** [9] - 13615:14, 13628:22, 13629:3, 13629:18, 13631:1, 13636:5, 13636:7, 13637:7, 13647:4
**co-conspirator** [6] - 13615:14, 13628:22, 13629:3, 13631:1, 13636:5, 13636:7
**co-conspirators** [1] - 13629:18
**co-defendants** [1] - 13647:4
**co-defendants'** [1] - 13637:7
**cognizable** [1] - 13576:23
**colleagues** [1] - 13609:14
**collected** [1] - 13664:11
**COLUMBIA** [1] - 13572:1
**column** [1] - 13706:14
**comfortable** [1] - 13715:8
**coming** [5] - 13639:14, 13640:4, 13641:1, 13715:20
**comment** [12] -

13580:14, 13580:19, 13581:1, 13585:5, 13585:12, 13585:14, 13591:18, 13592:7, 13597:20, 13613:3, 13613:9, 13685:3
**commenting** [1] - 13631:24
**comments** [6] - 13581:14, 13586:13, 13590:4, 13595:5, 13611:24, 13617:2
**commit** [1] - 13629:25
**committed** [2] - 13672:9, 13679:4
**committing** [1] - 13672:15
**common** [1] - 13652:10
**commonly** [1] - 13672:17
**commonly-used** [1] - 13672:17
**communicate** [3] - 13604:1, 13670:21, 13673:13
**communicated** [2] - 13712:10, 13717:15
**communicating** [4] - 13715:9, 13717:5, 13717:11, 13717:18
**communication** [1] - 13718:22
**communications** [1] - 13582:22
**complaining** [1] - 13592:20
**complete** [3] - 13647:19, 13719:20, 13723:20
**completed** [3] - 13692:20, 13692:22, 13692:23
**completely** [1] - 13679:8
**complicated** [3] - 13631:13, 13640:16, 13641:4
**compound** [4] - 13651:21, 13651:22, 13661:4, 13661:7
**computer** [8] - 13573:21, 13604:7, 13604:9, 13642:24, 13703:17, 13703:21, 13706:21, 13707:17
**computer-aided** [1] - 13573:21
**concede** [1] - 13608:3
**concept** [2] - 13641:3,

13641:4
**conceptually** [1] - 13606:14
**concern** [4] - 13634:19, 13635:5, 13640:1, 13679:24
**concerned** [2] - 13601:18, 13608:1
**condemn** [1] - 13625:7
**conduct** [3] - 13630:1, 13672:6, 13681:17
**conducted** [13] - 13593:3, 13601:9, 13601:10, 13604:5, 13641:16, 13649:6, 13649:14, 13649:21, 13653:22, 13654:3, 13665:5, 13665:8, 13669:12
**confer** [2] - 13685:17, 13687:14
**conference** [6] - 13659:1, 13659:24, 13676:20, 13682:3, 13687:13, 13691:16
**confronting** [1] - 13622:20
**confused** [4] - 13679:9, 13679:10, 13679:16
**confusing** [3] - 13584:3, 13584:9, 13606:17
**confusion** [4] - 13598:2, 13601:15, 13605:18, 13679:1
**connection** [1] - 13631:6
**Conor** [3] - 13572:13, 13575:8
**consciousness** [4] - 13591:23, 13592:3, 13592:23, 13596:14
**consider** [3] - 13631:12, 13638:22, 13641:4
**considered** [7] - 13582:24, 13584:19, 13586:14, 13587:15, 13592:2, 13592:8, 13593:8
**consist** [1] - 13686:18
**conspiracy** [10] - 13595:21, 13595:24, 13595:25, 13615:9, 13616:2, 13625:12, 13625:23, 13625:25, 13637:18, 13679:4
**conspiracy's** [1] -

13615:13
**conspirator** [6] - 13615:14, 13628:22, 13629:3, 13631:1, 13636:5, 13636:7
**conspirators** [1] - 13629:18
**constantly** [1] - 13682:7
**constitutes** [1] - 13723:18
**Constitution** [2] - 13573:19, 13723:24
**contemplates** [1] - 13582:20
**content** [4] - 13583:9, 13584:9, 13593:21, 13633:19
**context** [23] - 13580:1, 13580:10, 13580:25, 13583:2, 13584:20, 13597:5, 13597:6, 13603:20, 13607:10, 13612:14, 13619:3, 13619:13, 13619:23, 13620:18, 13620:22, 13621:13, 13621:18, 13622:14, 13623:17, 13623:19, 13624:5, 13629:5
**CONTINUED** [1] - 13573:1
**continues** [2] - 13699:23, 13700:18
**control** [2] - 13614:16, 13614:23
**conversation** [8] - 13579:14, 13596:12, 13597:5, 13621:11, 13622:19, 13713:6, 13714:9, 13714:10
**conversational** [2] - 13593:5, 13597:6
**conversations** [2] - 13665:1, 13712:11
**conveying** [1] - 13633:2
**conveys** [1] - 13633:7
**convinced** [2] - 13610:3, 13680:8
**cooperate** [13] - 13652:20, 13652:24, 13653:2, 13653:20, 13653:23, 13654:3, 13654:5, 13654:6, 13654:9, 13654:14, 13654:16, 13655:2, 13655:18
**copied** [1] - 13615:10
**copy** [1] - 13685:13

**correct** [144] - 13583:1, 13585:20, 13588:16, 13617:14, 13624:10, 13639:23, 13645:7, 13645:8, 13646:8, 13646:9, 13646:11, 13646:14, 13646:22, 13646:25, 13647:2, 13647:4, 13647:7, 13647:18, 13647:19, 13648:11, 13648:14, 13649:1, 13649:7, 13649:9, 13649:11, 13649:22, 13650:24, 13651:2, 13651:5, 13651:7, 13651:12, 13651:19, 13652:19, 13652:25, 13653:3, 13653:23, 13658:7, 13658:12, 13661:24, 13661:25, 13662:2, 13662:5, 13662:24, 13663:2, 13663:21, 13664:14, 13664:20, 13664:23, 13665:1, 13665:7, 13667:1, 13667:25, 13670:16, 13670:17, 13671:25, 13672:8, 13672:11, 13672:15, 13673:6, 13674:16, 13676:5, 13681:14, 13682:9, 13682:10, 13683:3, 13683:16, 13683:17, 13683:21, 13684:4, 13684:5, 13684:7, 13684:8, 13684:11, 13684:12, 13684:15, 13684:16, 13684:22, 13684:23, 13688:1, 13693:21, 13694:1, 13694:14, 13694:15, 13694:17, 13694:18, 13694:20, 13694:21, 13695:4, 13695:15, 13695:22, 13696:11, 13696:12, 13696:24, 13696:25, 13697:2, 13697:3, 13697:16, 13697:19, 13697:20, 13697:21, 13697:22, 13698:4, 13698:13, 13698:16, 13699:1, 13699:5, 13699:9, 13699:15, 13699:21, 13699:22, 13699:25, 13700:1, 13700:3, 13702:2, 13702:23, 13703:12, 13704:15, 13705:11, 13709:8, 13710:20,

13710:23, 13711:15, 13711:19, 13711:25, 13712:4, 13712:5, 13712:7, 13712:16, 13712:25, 13713:12, 13713:14, 13714:14, 13714:17, 13715:11, 13716:25, 13717:3, 13717:10, 13718:5, 13718:18, 13719:1, 13719:4, 13720:8, 13720:15, 13722:7

**counsel** [3] - 13596:4, 13644:16, 13676:18

**counterpoint** [1] - 13598:19

**country** [1] - 13622:24

**counts** [1] - 13626:1

**couple** [8] - 13578:9, 13581:3, 13581:6, 13616:23, 13692:15, 13692:24, 13696:17

**course** [8] - 13579:20, 13591:16, 13606:15, 13622:13, 13682:6, 13689:1, 13697:9, 13709:14

**COURT** [282] - 13572:1, 13575:16, 13577:3, 13577:8, 13577:15, 13577:17, 13578:2, 13578:7, 13578:13, 13578:22, 13578:24, 13579:2, 13579:6, 13579:10, 13581:19, 13582:4, 13584:24, 13586:9, 13586:11, 13586:22, 13587:24, 13588:13, 13588:16, 13588:20, 13588:25, 13589:2, 13589:8, 13589:17, 13590:7, 13590:18, 13590:20, 13591:2, 13591:5, 13591:9, 13592:10, 13593:11, 13594:2, 13594:5, 13594:12, 13594:15, 13594:18, 13594:21, 13594:25, 13595:16, 13596:3, 13597:2, 13597:8, 13597:22, 13598:16, 13598:18, 13599:9, 13599:19, 13599:21, 13599:24, 13600:9, 13602:2, 13602:6, 13602:12, 13602:16, 13602:18, 13602:22, 13603:2, 13603:9, 13603:14,

13603:19, 13604:14, 13604:16, 13605:2, 13605:5, 13605:11, 13605:14, 13605:17, 13605:19, 13605:22, 13605:24, 13606:12, 13607:8, 13607:18, 13608:6, 13608:8, 13609:23, 13610:2, 13610:8, 13610:12, 13610:14, 13610:16, 13610:20, 13610:23, 13611:1, 13611:13, 13611:16, 13611:25, 13612:24, 13613:7, 13614:11, 13615:2, 13615:17, 13615:19, 13615:22, 13616:2, 13616:7, 13616:9, 13616:11, 13616:14, 13616:17, 13617:4, 13617:7, 13617:9, 13617:12, 13617:16, 13617:19, 13618:2, 13618:8, 13618:10, 13618:12, 13618:15, 13619:1, 13619:9, 13619:25, 13620:10, 13620:12, 13620:25, 13621:6, 13621:9, 13622:5, 13622:15, 13623:8, 13623:21, 13623:23, 13624:2, 13624:10, 13624:14, 13625:2, 13625:11, 13625:13, 13625:16, 13626:11, 13626:18, 13627:13, 13627:25, 13628:6, 13628:11, 13630:17, 13630:22, 13631:21, 13632:21, 13633:13, 13634:3, 13634:7, 13634:10, 13634:23, 13635:9, 13635:20, 13636:11, 13636:14, 13636:25, 13637:4, 13637:8, 13637:11, 13637:13, 13637:21, 13637:23, 13637:25, 13638:2, 13638:4, 13638:8, 13638:10, 13638:14, 13639:6, 13639:17, 13639:21, 13639:25, 13640:11, 13640:17, 13641:6, 13642:8, 13642:21, 13642:25, 13643:4, 13643:10, 13643:13, 13644:16, 13646:16, 13646:18, 13651:22, 13654:1,

13654:13, 13656:1, 13656:18, 13656:20, 13657:17, 13657:21, 13658:25, 13659:7, 13659:10, 13659:14, 13659:19, 13659:23, 13660:6, 13661:5, 13661:7, 13662:11, 13663:7, 13663:12, 13664:1, 13664:6, 13665:16, 13666:14, 13667:5, 13667:9, 13674:8, 13676:16, 13676:18, 13676:21, 13677:6, 13677:14, 13678:9, 13679:14, 13679:18, 13679:20, 13680:6, 13680:12, 13680:17, 13680:21, 13680:25, 13681:9, 13681:11, 13681:16, 13681:21, 13681:23, 13683:24, 13685:12, 13685:15, 13685:18, 13686:11, 13687:3, 13687:7, 13687:9, 13687:12, 13687:14, 13687:18, 13687:24, 13688:3, 13688:5, 13688:16, 13688:18, 13688:20, 13688:22, 13689:2, 13689:5, 13689:7, 13689:23, 13690:9, 13690:14, 13691:3, 13693:15, 13698:20, 13702:19, 13703:18, 13705:2, 13706:1, 13706:4, 13706:9, 13706:16, 13706:20, 13706:25, 13707:10, 13707:21, 13708:1, 13708:17, 13709:25, 13710:10, 13716:5, 13716:7, 13719:14, 13719:18, 13719:24, 13720:3, 13723:4, 13723:8, 13723:11, 13723:16

**court** [25] - 13577:4, 13577:13, 13587:19, 13589:25, 13590:3, 13601:25, 13604:4, 13607:25, 13610:25, 13615:11, 13615:15, 13616:12, 13618:6, 13637:5, 13637:24, 13638:1, 13638:24, 13640:24, 13641:2, 13642:6, 13643:22, 13647:7, 13659:2, 13678:17, 13678:18

**Court** [10] - 13573:17, 13573:18, 13595:19, 13630:7, 13635:2, 13644:5, 13681:22, 13723:12, 13723:13, 13723:22

**Court's** [3] - 13627:22, 13639:13, 13706:24

**court's** [2] - 13577:14, 13637:9

**Courthouse** [2] - 13573:18, 13723:23

**cover** [1] - 13629:21

**covered** [1] - 13624:4

**covering** [1] - 13629:14

**COVID's** [1] - 13675:17

**Cowabunga** [1] - 13646:7

**CR** [1] - 13572:2

**crab** [1] - 13715:22

**crazy** [1] - 13623:1

**create** [1] - 13691:24

**created** [6] - 13595:23, 13609:5, 13641:22, 13642:2, 13643:2

**creating** [1] - 13692:3

**creation** [1] - 13649:5

**credibility** [2] - 13659:4, 13659:20

**Crew** [1] - 13591:4

**crew** [3] - 13664:14, 13664:20, 13665:13

**crime** [3] - 13672:9, 13672:10, 13672:15

**crimes** [2] - 13629:25, 13679:4

**Criminal** [2] - 13575:2, 13644:14

**criminal** [1] - 13626:8

**Cross** [2] - 13574:3, 13574:4

**CROSS** [2] - 13644:18, 13667:11

**cross** [15] - 13582:15, 13587:18, 13587:23, 13588:6, 13588:12, 13588:14, 13589:5, 13589:23, 13590:9, 13606:3, 13606:10, 13642:19, 13643:20, 13681:13, 13681:17

**Cross-Examination** [2] - 13574:3, 13574:4

**CROSS-EXAMINATION** [2] - 13644:18, 13667:11

**cross-examination** [4] - 13582:15, 13643:20, 13681:13, 13681:17

**cross-examine** [1] - 13642:19

**crossed** [1] - 13656:13

**crossing** [1] - 13589:10, 13589:12

**crowd** [1] - 13697:6

**CRR** [3] - 13573:17, 13723:17, 13723:22

**CT** [1] - 13572:22

**cutting** [1] - 13628:6

## D

**D.C** [3] - 13572:5, 13596:1, 13673:8

**date** [2] - 13612:14, 13650:20

**dated** [1] - 13723:21

**DAVID** [1] - 13572:17

**DAY** [1] - 13572:8

**days** [4] - 13581:6, 13581:15, 13615:4, 13676:11

**DC** [4] - 13572:15, 13572:25, 13573:19, 13723:24

**deal** [1] - 13578:1

**dealings** [1] - 13659:3

**dealt** [2] - 13577:23, 13717:2

**December** [1] - 13663:17

**deceptive** [1] - 13629:23

**decide** [2] - 13637:17, 13677:20

**decided** [4] - 13624:7, 13652:23, 13676:9

**decides** [1] - 13656:9

**decisions** [2] - 13678:17, 13680:9

**declared** [1] - 13632:1

**deemed** [1] - 13589:15

**defendant** [10] - 13582:11, 13584:11, 13587:8, 13618:19, 13620:14, 13621:22, 13633:24, 13661:2, 13661:9, 13710:19

**Defendant** [15] - 13575:3, 13575:4, 13575:5, 13575:9, 13575:10, 13575:11, 13575:12, 13575:13, 13575:14, 13575:15

**defendant's** [1] -
13580:9
**Defendants** [3] -
13572:7, 13572:16,
13573:2
**defendants** [7] -
13576:9, 13584:5,
13595:2, 13598:9,
13611:3, 13647:4,
13660:20
**defendants'** [1] -
13637:7
**defense** [3] - 13580:9,
13602:10, 13633:18
**Defense** [1] - 13683:1
**defensive** [1] -
13626:7
**deferred** [1] -
13633:11
**definition** [1] -
13636:1
**degenerates** [1] -
13612:19
**deleted** [1] - 13648:13
**deletes** [2] - 13648:17
**demanding** [2] -
13587:20, 13587:22
**demands** [1] -
13590:1
**demonstrate** [1] -
13609:3
**demonstrative** [1] -
13688:13
**depth** [1] - 13648:15
**DEPUTY** [15] -
13575:2, 13644:5,
13644:10, 13644:13,
13683:14, 13685:19,
13685:21, 13685:25,
13686:2, 13686:6,
13686:8, 13696:5,
13696:9, 13707:25,
13723:12
**derogatory** [1] -
13622:3
**describe** [3] -
13687:5, 13687:8,
13690:8
**described** [2] -
13583:8, 13693:18
**describing** [1] -
13603:22
**designation** [2] -
13597:24, 13673:24
**designed** [1] -
13621:22
**destroyed** [1] -
13614:16
**detailed** [1] - 13690:7
**details** [3] - 13668:25,

13703:3, 13703:4
**determination** [1] -
13615:23
**determined** [1] -
13600:2
**devices** [2] -
13601:23, 13604:5
**difference** [2] -
13671:23, 13671:24
**different** [22] -
13580:16, 13593:2,
13601:22, 13605:7,
13611:5, 13638:20,
13647:4, 13648:8,
13652:20, 13670:20,
13673:14, 13674:16,
13675:5, 13676:9,
13678:4, 13680:23,
13689:22, 13693:7,
13700:24, 13702:25,
13717:13
**difficult** [1] - 13610:24
**difficulty** [1] -
13603:24
**diffuse** [1] - 13700:18
**digital** [1] - 13595:11
**digitally** [1] - 13650:10
**direct** [7] - 13585:18,
13586:7, 13587:23,
13595:24, 13607:17,
13662:23, 13680:14
**direction** [3] -
13687:15, 13705:6,
13708:19
**directly** [4] -
13596:25, 13619:13,
13630:3, 13691:8
**disagree** [1] - 13685:1
**disbelief** [1] -
13679:24
**disconnect** [1] -
13638:23
**disconnected** [1] -
13613:21
**discover** [1] -
13652:14
**discuss** [6] - 13588:3,
13590:21, 13615:10,
13619:24, 13627:3,
13687:22
**discussions** [3] -
13583:18, 13682:15,
13682:17
**disgusting** [1] -
13611:21
**display** [1] - 13706:17
**displayed** [1] -
13690:24
**disputing** [1] -
13721:5

**disrupt** [1] - 13626:2
**distinction** [2] -
13623:4, 13623:16
**DISTRICT** [3] -
13572:1, 13572:1,
13572:10
**DNA** [2] - 13658:11,
13658:13
**doctored** [3] -
13600:23, 13602:25,
13609:21
**doctoring** [1] -
13601:13
**document** [10] -
13635:18, 13649:5,
13649:23, 13649:25,
13688:11, 13689:23,
13690:2, 13691:24,
13692:21, 13692:24
**documents** [1] -
13686:18
**dog** [7] - 13579:20,
13584:7, 13585:3,
13591:16, 13592:1,
13593:7, 13717:24
**domestic** [7] -
13595:6, 13596:22,
13597:21, 13597:25,
13598:3, 13598:5,
13598:14
**Dominic** [2] - 13575:5,
13667:25
**Donald** [3] - 13593:6,
13612:10, 13612:18
**done** [10] - 13602:11,
13607:4, 13611:18,
13612:5, 13640:2,
13666:23, 13679:11,
13692:11, 13692:14,
13694:16
**door** [2] - 13613:5,
13615:1
**double** [7] - 13632:12,
13632:16, 13635:4,
13683:4, 13685:23,
13707:9, 13707:10
**double-check** [1] -
13683:4
**double-checking** [1] -
13685:23
**double-clicking** [2] -
13707:9, 13707:10
**doubt** [1] - 13613:23
**down** [15] - 13594:9,
13594:20, 13595:12,
13631:16, 13672:7,
13686:5, 13689:16,
13693:6, 13698:1,
13706:22, 13707:13,
13710:19, 13710:22,

13723:9, 13723:10
**draw** [2] - 13609:2,
13709:1
**drawing** [2] - 13623:4,
13623:15
**Drive** [1] - 13573:15
**driving** [1] - 13664:19
**drugs** [1] - 13634:22
**drunk** [1] - 13618:4
**dry** [1] - 13612:9
**Dubrowski** [10] -
13578:5, 13589:5,
13589:11, 13589:12,
13589:21, 13590:15,
13627:10, 13627:16,
13627:22, 13673:12
**Dubrowski's** [6] -
13582:25, 13588:11,
13590:9, 13628:18,
13673:6
**due** [2] - 13575:25,
13614:16
**duped** [1] - 13604:17
**during** [13] -
13582:10, 13582:25,
13587:23, 13628:18,
13670:23, 13672:3,
13688:25, 13702:8,
13709:14, 13713:1,
13717:5, 13717:12,
13717:18

## E

**ear** [1] - 13716:14
**earliest** [1] - 13684:25
**early** [1] - 13632:3
**earpiece** [1] -
13716:15
**Earth** [1] - 13622:24
**easier** [2] - 13620:1,
13646:7
**easily** [1] - 13600:15
**East** [2] - 13572:17,
13573:15
**easy** [2] - 13577:25,
13601:21
**Eddie** [2] - 13592:20
**editing** [1] - 13649:4
**Eff** [7] - 13591:7,
13591:18, 13591:21,
13592:2, 13592:5,
13593:6, 13611:23
**eff** [13] - 13579:2,
13581:24, 13582:1,
13583:4, 13583:12,
13585:12, 13585:13,
13585:16, 13585:18,
13586:23, 13587:1,
13591:7, 13611:23

**effect** [3] - 13631:16,
13631:17, 13631:23
**effectively** [3] -
13585:8, 13613:2,
13613:12
**effectuate** [1] -
13623:6
**effing** [1] - 13592:21
**ego** [1] - 13638:19
**eight** [2] - 13619:17,
13621:21
**either** [12] - 13585:5,
13586:1, 13587:22,
13607:24, 13623:18,
13632:23, 13638:19,
13649:4, 13650:6,
13684:22, 13702:1,
13706:12
**elders** [2] - 13628:21,
13629:19
**elect** [2] - 13588:9,
13588:10
**election** [3] - 13613:4,
13630:1, 13630:4
**elements** [1] -
13610:11
**elicit** [2] - 13640:24,
13688:9
**eliciting** [1] - 13641:7
**eliminate** [2] -
13585:24, 13586:5
**eliminates** [1] -
13608:3
**eliminating** [1] -
13586:20
**elliptical** [1] - 13614:3
**email** [8] - 13673:25,
13674:3, 13674:4,
13674:12, 13675:6,
13675:9, 13678:11
**emails** [8] - 13673:20,
13673:23, 13674:10,
13674:11, 13674:17,
13682:14, 13682:18
**embarrassed** [1] -
13596:17
**embedded** [1] -
13632:12
**emphasize** [1] -
13638:17
**employee** [1] -
13629:13
**end** [5] - 13579:8,
13592:17, 13616:22,
13617:24, 13700:10
**ended** [2] - 13671:15,
13671:18
**ends** [2] - 13608:21,
13644:22
**enemies** [1] - 13614:2

**enforced** [1] -
13596:19
**enforcement** [2] -
13583:13, 13585:21
**enjoined** [1] - 13677:8
**enjoying** [5] -
13600:5, 13606:22,
13607:1, 13607:4,
13607:15
**enormous** [1] -
13601:15
**Enrique** [17] -
13575:5, 13632:15,
13633:16, 13645:7,
13646:14, 13646:22,
13647:6, 13649:4,
13660:9, 13662:24,
13663:24, 13664:13,
13664:17, 13664:19,
13665:12, 13665:18,
13665:25
**Enrique's** [2] -
13646:10, 13649:24
**enter** [3] - 13660:20,
13660:25, 13661:9
**entered** [4] -
13715:17, 13715:18,
13722:19, 13722:22
**entering** [1] - 13711:2
**entire** [10] - 13592:16,
13596:24, 13621:18,
13672:3, 13676:17,
13687:23, 13690:8,
13698:15, 13699:18
**entirely** [1] - 13580:15
**entitled** [4] -
13600:24, 13601:2,
13609:2, 13629:22
**entry** [2] - 13595:6,
13645:20
**equation** [1] - 13698:3
**Erik** [2] - 13572:12,
13575:8
**especially** [2] -
13584:9, 13675:20
**Esq** [12] - 13572:12,
13572:12, 13572:13,
13572:13, 13572:16,
13572:20, 13572:23,
13573:2, 13573:4,
13573:8, 13573:11,
13573:14
**essential** [1] - 13580:1
**essentially** [3] -
13582:2, 13592:20,
13704:14
**established** [1] -
13661:23
**establishing** [1] -
13697:18

**et** [4] - 13580:14,
13603:23, 13606:18,
13644:15
**Ethan** [3] - 13575:3,
13599:16, 13644:14
**evening** [1] - 13666:24
**event** [4] - 13616:23,
13623:4, 13639:4,
13678:21
**events** [7] - 13629:21,
13636:24, 13652:17,
13665:25, 13679:11,
13679:25, 13693:6
**everywhere** [1] -
13596:16
**evidence** [54] -
13582:9, 13583:18,
13585:23, 13586:6,
13587:5, 13588:19,
13588:21, 13595:5,
13595:23, 13601:6,
13601:13, 13601:14,
13601:20, 13604:4,
13604:6, 13604:22,
13605:20, 13606:16,
13612:10, 13613:11,
13613:13, 13621:20,
13624:20, 13624:24,
13625:20, 13626:13,
13626:14, 13628:24,
13629:7, 13630:11,
13634:15, 13636:1,
13637:17, 13640:24,
13642:1, 13642:6,
13642:19, 13643:11,
13645:2, 13646:6,
13658:9, 13658:10,
13660:14, 13663:23,
13664:8, 13664:11,
13679:3, 13679:13,
13681:1, 13683:13,
13687:1, 13705:22,
13706:15
**evident** [1] - 13620:22
**exact** [5] - 13655:19,
13655:21, 13674:25,
13715:8, 13722:22
**exactly** [12] -
13578:21, 13578:25,
13579:4, 13591:20,
13597:16, 13649:25,
13659:10, 13683:20,
13694:3, 13694:16,
13697:1, 13716:1
**examination** [4] -
13582:15, 13643:20,
13681:13, 13681:17
**EXAMINATION** [2] -
13644:18, 13667:11
**Examination** [2] -

13574:3, 13574:4
**examine** [1] -
13642:19
**example** [3] -
13576:13, 13647:6,
13683:1
**excellent** [2] -
13718:16, 13721:2
**except** [4] - 13604:11,
13604:25, 13618:9,
13699:17
**exception** [1] -
13673:11
**exceptions** [2] -
13624:25, 13636:8
**exchange** [6] -
13582:14, 13592:16,
13630:3, 13630:14,
13714:7, 13714:8
**exchanging** [1] -
13714:10
**exclamation** [4] -
13654:19, 13654:21,
13656:14, 13656:16
**exclude** [2] -
13618:18, 13621:19
**excluded** [4] -
13584:21, 13628:2,
13628:16, 13642:11
**excuse** [2] - 13594:22,
13648:1
**execution** [1] -
13656:6
**executions** [1] -
13664:9
**Exhibit** [4] - 13627:7,
13627:18, 13684:1,
13711:10
**exhibit** [28] -
13578:11, 13580:2,
13582:9, 13582:19,
13585:5, 13590:15,
13592:13, 13593:3,
13594:3, 13595:21,
13596:24, 13601:21,
13602:12, 13602:18,
13612:12, 13621:22,
13627:10, 13627:21,
13628:3, 13633:22,
13645:4, 13646:5,
13689:10, 13691:9,
13701:6, 13707:22,
13711:15, 13711:17
**Exhibit-1000** [2] -
13687:22, 13694:5
**Exhibit-1002** [1] -
13701:5
**Exhibit-113X** [3] -
13712:21, 13713:8,
13723:2

**Exhibit-114** [1] -
13717:21
**Exhibit-114X** [1] -
13718:14
**Exhibit-115** [2] -
13711:11, 13711:23
**Exhibit-176** [1] -
13699:10
**Exhibit-253** [1] -
13705:22
**Exhibit-254** [2] -
13686:15, 13687:1
**exhibit-264** [1] -
13685:9
**Exhibit-407A** [1] -
13618:3
**Exhibit-509-32** [1] -
13683:11
**Exhibit-512-19** [1] -
13593:25
**Exhibit-516-1** [1] -
13578:4
**exhibits** [11] -
13584:10, 13612:12,
13612:17, 13617:13,
13621:21, 13627:9,
13627:11, 13636:20,
13646:13, 13646:21,
13689:11
**exist** [2] - 13675:25,
13697:5
**existed** [1] - 13637:18
**exists** [3] - 13606:5,
13606:13, 13675:23
**exit** [1] - 13712:9
**exited** [4] - 13661:19,
13661:20, 13712:8,
13712:13
**exits** [5] - 13712:15,
13712:18, 13719:4,
13722:18
**expansive** [2] -
13578:10, 13581:16
**expect** [3] - 13600:14,
13633:9, 13687:15
**expected** [1] -
13589:22
**explain** [5] - 13577:2,
13589:4, 13622:22,
13632:19, 13672:5
**explained** [1] -
13625:3
**explaining** [1] -
13602:10
**explicitly** [1] -
13640:25
**expressed** [2] -
13598:22, 13598:23
**expressing** [2] -
13612:13, 13639:1

**extensive** [1] -
13704:4
**extent** [3] - 13591:19,
13591:22, 13592:5
**extracted** [4] -
13647:2, 13648:11,
13650:1, 13651:2
**extraction** [6] -
13647:23, 13649:19,
13649:20, 13649:21,
13650:14, 13651:12
**extremely** [3] -
13618:17, 13656:23,
13677:10
**extremism** [1] -
13579:18

### F

**fabrication** [1] -
13601:16
**face** [11] - 13583:10,
13593:4, 13603:4,
13607:6, 13607:9,
13607:12, 13607:14,
13607:17, 13607:19,
13608:1, 13608:3
**faces** [1] - 13633:6
**facilitated** [1] -
13658:18
**facing** [2] - 13593:19,
13612:21
**fact** [21] - 13582:12,
13593:21, 13595:21,
13600:22, 13608:22,
13610:6, 13610:19,
13610:21, 13613:13,
13613:16, 13621:9,
13622:22, 13625:5,
13631:18, 13633:10,
13652:13, 13677:6,
13677:7, 13677:16,
13711:17
**facts** [11] - 13583:8,
13609:11, 13638:13,
13638:15, 13677:14,
13677:15, 13679:2,
13680:3, 13680:7,
13680:19
**factual** [3] - 13585:1,
13609:15, 13642:3
**factually** [1] - 13679:2
**fair** [50] - 13578:2,
13586:4, 13590:2,
13590:5, 13606:23,
13606:24, 13643:15,
13647:10, 13647:13,
13648:7, 13648:21,
13649:12, 13649:21,
13651:16, 13652:4,

13653:19, 13655:1,
13663:15, 13664:3,
13668:3, 13668:4,
13669:4, 13669:10,
13672:18, 13673:14,
13674:4, 13674:12,
13675:22, 13682:24,
13683:8, 13686:22,
13691:20, 13692:5,
13692:23, 13695:9,
13696:14, 13697:6,
13698:1, 13699:18,
13700:8, 13704:24,
13705:4, 13708:23,
13712:10, 13716:2,
13716:18, 13717:18,
13722:13, 13722:19,
13722:22
**fairly** [2] - 13601:2,
13693:1
**fairness** [11] -
13580:25, 13581:18,
13582:23, 13584:20,
13585:23, 13585:25,
13587:15, 13591:24,
13593:9, 13593:13,
13602:2
**faith** [3] - 13642:21,
13643:4, 13643:5
**fall** [2] - 13606:9,
13619:15
**false** [3] - 13580:17,
13642:20, 13659:5
**familiar** [3] - 13669:9,
13711:15, 13717:25
**familiarized** [1] -
13682:11
**far** [5] - 13612:8,
13614:24, 13668:8,
13689:17, 13692:11
**far-right** [1] -
13614:24
**fashion** [1] - 13580:16
**FBI** [15] - 13579:19,
13583:8, 13593:7,
13645:11, 13647:1,
13647:2, 13647:3,
13647:14, 13647:25,
13650:2, 13650:16,
13658:16, 13663:14,
13663:21, 13672:18
**FBI's** [1] - 13595:11
**fears** [1] - 13614:23
**feds** [1] - 13596:15
**feelings** [1] -
13654:24
**fellow** [3] - 13600:6,
13609:4, 13629:19
**felt** [2] - 13612:11,
13613:16

**few** [7] - 13576:4,
13591:13, 13591:25,
13592:7, 13611:18,
13628:1, 13692:19
**fide** [1] - 13629:20
**Field** [2] - 13673:4,
13673:12
**field** [2] - 13668:20
**figure** [3] - 13676:2,
13680:1, 13695:2
**figured** [1] - 13668:23
**figuring** [1] - 13692:3
**file** [3] - 13604:8,
13604:9, 13604:10
**filed** [1] - 13583:15
**files** [1] - 13620:19
**filing** [1] - 13640:6
**film** [3] - 13664:14,
13664:20, 13665:13
**filming** [1] - 13592:21
**financial** [1] -
13638:20
**fine** [5] - 13576:24,
13616:10, 13669:25,
13681:8, 13685:25
**fingers** [1] - 13656:13
**finish** [2] - 13576:17,
13623:10
**first** [51] - 13578:17,
13582:8, 13585:12,
13592:15, 13594:6,
13594:7, 13594:17,
13595:19, 13596:16,
13596:23, 13612:4,
13612:7, 13618:23,
13620:23, 13622:7,
13622:8, 13622:10,
13622:13, 13622:17,
13622:18, 13622:25,
13623:24, 13625:4,
13628:19, 13628:22,
13631:25, 13651:1,
13653:19, 13655:2,
13658:3, 13661:9,
13668:18, 13670:4,
13687:5, 13693:2,
13693:11, 13693:14,
13693:17, 13697:25,
13698:1, 13704:14,
13704:23, 13705:5,
13705:8, 13705:10,
13705:12, 13709:1,
13709:7, 13720:22
**First** [1] - 13576:9
**Fischer** [1] - 13592:19
**fit** [1] - 13636:6
**fits** [1] - 13637:1
**five** [4] - 13618:5,
13670:13, 13670:18,
13673:3

**FL** [2] - 13573:6,
13573:9
**flag** [1] - 13628:4
**flaws** [1] - 13606:3
**flip** [6] - 13652:18,
13653:2, 13655:10,
13655:18, 13658:6,
13660:4
**flipped** [1] - 13658:23
**floating** [3] -
13625:13, 13625:14,
13625:20
**Floor** [2] - 13572:21,
13573:12
**focus** [1] - 13634:7
**focused** [1] -
13583:19
**folded** [1] - 13616:17
**follow** [3] - 13597:1,
13668:11, 13699:3
**followers** [1] -
13629:24
**following** [2] -
13629:12, 13630:3
**follows** [1] - 13594:20
**Fonticoba** [1] -
13632:11
**food** [6] - 13671:19,
13698:5, 13701:8,
13701:9, 13701:13,
13701:15
**fooling** [1] - 13614:2
**footage** [6] -
13712:17, 13714:14,
13714:17, 13714:18,
13714:20, 13717:13
**FOR** [1] - 13572:1
**foregoing** [1] -
13723:18
**foreign** [1] - 13674:24
**form** [2] - 13612:13,
13638:16
**format** [1] - 13587:21,
13692:12
**former** [4] - 13624:19,
13625:6, 13625:17,
13629:13
**forms** [1] - 13612:4
**forth** [1] - 13673:20
**forward** [1] - 13657:13
**forwarded** [2] -
13604:18, 13643:16
**foundation** [5] -
13600:7, 13601:8,
13603:16, 13642:17,
13690:20
**FOUO** [2] - 13674:21,
13674:24
**four** [2] - 13653:18,
13686:19

**Fox** [1] - 13629:13
**frame** [14] - 13584:1,
13669:2, 13677:4,
13678:8, 13680:23,
13690:12, 13694:23,
13697:19, 13701:17,
13705:10, 13720:19,
13721:20
**frankly** [3] - 13633:18,
13635:21, 13678:15
**fraud** [1] - 13601:17
**free** [5] - 13605:17,
13605:19, 13625:13,
13625:14, 13625:20
**free-floating** [3] -
13625:13, 13625:14,
13625:20
**freedom** [2] -
13651:17, 13652:4
**FreeNick** [1] -
13629:16
**friend** [1] - 13629:13
**friends** [1] - 13593:19
**front** [11] - 13592:15,
13621:22, 13684:9,
13686:22, 13688:11,
13689:24, 13690:17,
13691:12, 13700:17,
13704:2, 13710:18
**fuck** [10] - 13578:19,
13579:23, 13580:3,
13580:10, 13580:12,
13580:17, 13585:4,
13590:3, 13596:17
**fucked** [1] - 13630:10
**Fucking** [1] -
13611:21
**full** [3] - 13624:5,
13657:1, 13723:19
**fun** [2] - 13624:21,
13626:4
**fundraiser** [1] -
13629:10
**furtherance** [1] -
13608:21
**future** [1] - 13614:9

## G

**gain** [1] - 13638:20
**gallery** [2] - 13707:2,
13707:4
**game** [1] - 13643:15
**gap** [1] - 13581:25
**gathering** [1] -
13595:25
**gear** [1] - 13614:14
**general** [5] -
13583:13, 13614:3,
13616:24, 13617:1,

13693:22
**generally** [7] -
13585:22, 13586:17,
13614:24, 13624:22,
13624:24, 13626:4,
13636:9
**gentlemen** [2] -
13647:7, 13723:5
**Gilbert** [2] - 13633:2,
13633:7
**given** [3] - 13582:13,
13630:24, 13637:14
**GiveSendGo.com/
freeNick** [1] -
13629:11
**glad** [1] - 13593:10
**good-faith** [3] -
13642:21, 13643:4,
13643:5
**Google** [10] -
13600:17, 13601:9,
13602:1, 13602:10,
13604:11, 13641:13,
13643:7, 13649:6,
13649:14, 13649:18
**GOP** [1] - 13581:11
**government** [73] -
13575:7, 13576:4,
13577:10, 13578:11,
13580:21, 13582:5,
13584:4, 13584:11,
13584:12, 13584:14,
13584:16, 13585:7,
13586:2, 13586:16,
13586:19, 13587:4,
13587:7, 13587:10,
13587:24, 13591:19,
13591:20, 13592:4,
13592:10, 13595:17,
13598:10, 13600:24,
13601:10, 13601:17,
13603:1, 13603:5,
13604:1, 13607:2,
13607:25, 13608:9,
13608:10, 13608:11,
13609:24, 13611:18,
13612:1, 13613:11,
13614:9, 13614:16,
13614:23, 13615:11,
13615:24, 13617:20,
13617:21, 13617:22,
13618:6, 13619:2,
13626:14, 13627:8,
13627:11, 13628:10,
13628:13, 13640:2,
13640:10, 13641:8,
13641:10, 13642:1,
13642:16, 13645:19,
13662:7, 13678:9,
13678:18, 13678:19,

13733

13679:3, 13679:6,
13685:12, 13688:9,
13688:23, 13689:22
**Government** [1] -
13578:4, 13587:20,
13593:25, 13607:23,
13610:2, 13663:2,
13683:11, 13711:23,
13717:21, 13718:14,
13723:1
**Government's** [6] -
13618:3, 13678:16,
13694:4, 13711:11,
13712:20, 13713:8
**government's** [16] -
13580:2, 13581:14,
13584:6, 13585:5,
13595:3, 13598:9,
13599:11, 13599:13,
13601:25, 13606:3,
13608:4, 13608:9,
13619:10, 13619:11,
13660:14, 13691:12
**government-176** [1] -
13699:11
**grab** [1] - 13703:17
**granted** [3] -
13672:19, 13685:15,
13708:2
**Great** [2] - 13595:13,
13656:12
**great** [3] - 13593:16,
13593:18, 13649:16
**green** [6] - 13675:25,
13676:3, 13678:11,
13683:22, 13684:15,
13696:5
**Greene** [17] - 13669:7,
13669:9, 13669:13,
13669:22, 13669:25,
13670:15, 13684:13,
13684:15, 13686:6,
13697:10, 13698:25,
13699:24, 13702:9,
13709:22, 13710:4,
13710:6, 13710:13
**Greene's** [3] -
13669:14, 13703:3,
13703:14
**grind** [1] - 13576:21
**grinning** [1] -
13600:25
**Ground** [6] - 13594:7,
13595:22, 13595:23,
13596:7, 13662:5,
13683:5
**ground** [5] - 13633:6,
13633:10, 13636:4,
13666:19, 13671:9
**grounding** [1] -

13639:5
**grounds** [6] -
13593:23, 13618:18,
13661:15, 13671:15,
13671:16, 13671:20
**group** [31] - 13582:14,
13583:13, 13583:18,
13595:22, 13595:23,
13596:7, 13598:22,
13608:21, 13608:23,
13608:25, 13610:10,
13612:7, 13633:1,
13633:11, 13671:14,
13671:15, 13671:17,
13671:18, 13682:12,
13682:15, 13700:2,
13700:6, 13712:15,
13716:16, 13716:17,
13716:21, 13717:3,
13717:6, 13717:7,
13717:9, 13717:12
**group's** [1] - 13612:3
**groups** [2] - 13608:19,
13651:18
**guess** [15] - 13587:6,
13598:19, 13606:1,
13608:8, 13614:9,
13615:22, 13616:7,
13616:25, 13618:22,
13625:21, 13626:1,
13631:1, 13646:10,
13661:7, 13689:23
**guilt** [5] - 13591:23,
13591:24, 13592:3,
13592:23, 13596:14
**gun** [8] - 13652:17,
13653:2, 13655:10,
13655:13, 13655:17,
13657:15, 13658:19,
13660:2
**guns** [3] - 13658:12,
13658:14, 13658:16
**guy** [4] - 13656:14,
13666:13, 13714:6,
13716:23
**guys** [4] - 13633:5,
13656:7, 13673:13,
13673:20
**GW** [1] - 13579:19

# H

**half** [3] - 13660:22,
13709:23, 13710:9
**hallways** [1] -
13717:25
**hand** [5] - 13598:21,
13627:2, 13633:2,
13721:6, 13722:8
**hand-picked** [1] -

13598:21
**handed** [2] -
13649:23, 13722:11
**handful** [1] - 13576:15
**hands** [3] - 13720:14,
13722:12
**handwriting** [2] -
13686:16, 13691:19
**handwritten** [1] -
13690:3
**hanging** [2] -
13612:20, 13636:16
**happy** [5] - 13576:20,
13584:17, 13608:2,
13641:19, 13641:24
**hard** [7] - 13581:21,
13603:21, 13655:3,
13655:7, 13657:12,
13689:12, 13719:22
**harmed** [1] - 13601:21
**Harris** [5] - 13644:2,
13645:1, 13666:17,
13683:13, 13707:24
**Hassan** [6] - 13573:4,
13575:11, 13627:2,
13627:6, 13628:7,
13635:3
**HASSAN** [5] -
13573:5, 13627:5,
13627:15, 13628:8,
13635:2
**hat** [2] - 13708:6,
13712:24
**hate** [1] - 13625:16
**hats** [4] - 13700:2,
13700:8, 13709:14
**Haven** [1] - 13572:22
**Hawaii** [3] - 13647:17,
13648:1, 13648:3
**headed** [1] - 13599:14
**heading** [2] -
13704:22, 13708:20
**heads** [1] - 13656:13
**heads-up** [1] -
13656:13
**hear** [18] - 13575:22,
13576:4, 13576:13,
13582:5, 13605:14,
13611:25, 13612:1,
13613:2, 13616:18,
13627:4, 13631:11,
13631:22, 13632:4,
13642:9, 13658:25,
13659:7, 13678:9,
13681:17
**heard** [1] - 13576:19,
13592:4, 13603:5,
13607:5, 13612:17,
13626:24, 13631:14,
13634:21, 13635:15,

13643:14, 13679:13,
13687:6
**hearsay** [14] -
13576:8, 13615:10,
13632:12, 13632:23,
13635:1, 13635:4,
13636:4, 13636:7,
13636:23, 13688:8,
13690:14, 13693:14,
13709:24
**Heath** [2] - 13613:23,
13613:24
**height** [1] - 13586:15
**held** [1] - 13595:14
**HELD** [1] - 13572:9
**hello** [1] - 13714:7
**help** [8] - 13597:5,
13622:16, 13629:15,
13683:10, 13687:21,
13689:15, 13689:16,
13703:5
**helped** [1] - 13659:17
**helpful** [2] - 13583:2,
13656:23
**helps** [1] - 13707:17
**hereby** [1] - 13723:17
**hermit** [1] - 13715:22
**HERNANDEZ** [58] -
13576:24, 13577:4,
13577:11, 13577:16,
13586:10, 13586:13,
13610:1, 13610:4,
13610:9, 13610:13,
13610:15, 13610:19,
13610:22, 13610:24,
13611:10, 13615:8,
13615:18, 13615:20,
13616:1, 13616:5,
13616:8, 13616:10,
13616:12, 13616:15,
13623:25, 13628:9,
13634:1, 13634:5,
13634:8, 13634:11,
13634:24, 13635:19,
13635:23, 13636:12,
13636:19, 13637:3,
13637:5, 13637:9,
13637:12, 13637:19,
13637:22, 13637:24,
13638:1, 13638:3,
13638:7, 13638:9,
13638:11, 13638:15,
13639:12, 13639:18,
13639:24, 13640:1,
13640:16, 13640:22,
13681:10, 13681:14,
13681:19, 13681:22
**Hernandez** [13] -
13573:2, 13575:11,
13575:20, 13576:5,

13576:6, 13586:22,
13626:20, 13628:2,
13632:7, 13635:12,
13638:4, 13681:11,
13681:16
**Hernandez's** [2] -
13576:3, 13627:4
**Hialeah** [1] - 13573:9
**hide** [1] - 13633:6
**hierarchy** [1] -
13629:19
**high** [4] - 13606:15,
13611:12, 13634:24,
13678:10
**Highland** [1] - 13573:3
**highly** [2] - 13619:7,
13634:25
**himself** [4] -
13606:22, 13607:4,
13607:16, 13608:15
**hit** [4] - 13576:18,
13577:8, 13590:23,
13696:5
**hmm** [5] - 13594:2,
13594:18, 13594:25,
13696:9, 13702:15
**hold** [1] - 13660:19
**holding** [2] -
13601:18, 13629:20
**Hollow** [1] - 13573:2
**home** [4] - 13577:5,
13604:5, 13653:23,
13654:4
**Honor** [162] -
13576:24, 13577:21,
13577:22, 13578:3,
13578:4, 13578:15,
13578:16, 13578:21,
13579:7, 13579:11,
13580:1, 13580:20,
13580:23, 13581:2,
13581:3, 13582:7,
13584:18, 13584:22,
13585:2, 13585:10,
13585:14, 13586:8,
13586:10, 13587:17,
13587:18, 13588:8,
13588:18, 13589:4,
13589:11, 13589:19,
13590:2, 13590:11,
13590:24, 13591:3,
13591:8, 13591:13,
13592:11, 13593:2,
13593:9, 13593:24,
13594:4, 13594:8,
13594:10, 13594:16,
13594:19, 13595:1,
13595:9, 13595:18,
13597:4, 13597:20,
13597:24, 13598:6,

13598:7, 13598:13, 13599:7, 13599:15, 13601:6, 13601:22, 13601:24, 13602:5, 13602:20, 13603:15, 13604:3, 13604:22, 13605:6, 13606:1, 13606:19, 13607:11, 13607:20, 13607:23, 13609:10, 13609:13, 13609:18, 13610:4, 13611:14, 13611:23, 13612:3, 13613:1, 13613:19, 13614:20, 13614:25, 13615:6, 13615:9, 13616:21, 13617:6, 13617:15, 13617:25, 13618:4, 13618:13, 13618:23, 13619:5, 13619:6, 13619:14, 13619:16, 13619:18, 13619:22, 13620:16, 13620:17, 13620:21, 13620:24, 13621:4, 13621:14, 13621:17, 13621:23, 13622:1, 13623:14, 13623:20, 13624:8, 13624:12, 13624:20, 13624:25, 13625:10, 13625:21, 13626:5, 13626:16, 13628:4, 13628:17, 13631:15, 13632:24, 13634:8, 13638:13, 13639:12, 13641:9, 13641:20, 13642:3, 13642:14, 13642:23, 13643:3, 13643:8, 13643:12, 13644:17, 13650:11, 13656:2, 13658:21, 13659:2, 13659:9, 13659:12, 13659:22, 13662:10, 13662:12, 13667:4, 13667:8, 13677:11, 13679:8, 13679:12, 13679:17, 13680:16, 13681:10, 13685:11, 13685:14, 13686:10, 13686:25, 13691:15, 13698:21, 13703:16, 13705:21, 13706:13, 13707:13, 13719:12, 13719:17, 13719:23, 13723:2
**Honor's** [2] - 13622:12, 13642:23
**Honorable** [2] - 13644:5, 13723:12
**honorable** [2] - 13600:1, 13603:22

**HONORABLE** [1] - 13572:9
**hooked** [1] - 13651:2
**hope** [4] - 13626:25, 13653:25, 13654:3, 13657:13
**hoped** [3] - 13653:22, 13654:5, 13654:6
**hopefully** [2] - 13654:23, 13656:19
**hoping** [2] - 13656:5, 13656:8
**hostile** [1] - 13609:7
**hotel** [3] - 13665:6, 13665:19, 13666:20
**hotels** [1] - 13702:16
**hour** [7] - 13594:23, 13709:18, 13709:23, 13710:7, 13723:6
**hour-and-a-half** [1] - 13709:23
**hours** [1] - 13714:19
**Hull** [2] - 13572:23, 13575:10
**HULL** [1] - 13572:24
**humiliate** [2] - 13618:19, 13621:22
**hundreds** [2] - 13714:21, 13715:4
**hung** [1] - 13612:9
**hunting** [1] - 13595:12

**I**

**idea** [9] - 13590:14, 13611:20, 13632:16, 13633:9, 13633:17, 13634:16, 13634:18, 13646:24, 13716:10
**ideas** [1] - 13606:6
**identification** [2] - 13685:9, 13686:15
**identified** [3] - 13577:19, 13619:19, 13632:24
**identify** [1] - 13596:16
**identities** [1] - 13607:21
**II** [1] - 13573:11
**image** [9] - 13600:18, 13603:11, 13603:13, 13604:12, 13606:7, 13606:11, 13609:20, 13641:14, 13641:23
**images** [5] - 13598:13, 13604:7, 13606:5, 13641:11, 13641:12
**IMing** [1] - 13675:11
**immediately** [6] - 13579:12, 13579:13,

13579:17, 13580:15, 13585:19, 13592:7
**impeach** [1] - 13655:25
**impeachment** [1] - 13689:18
**implicitly** [1] - 13640:25
**imply** [1] - 13604:12
**implying** [1] - 13601:16
**import** [1] - 13633:3
**importance** [2] - 13622:19, 13622:21
**important** [2] - 13622:22, 13629:7
**impound** [1] - 13647:13
**IN** [1] - 13572:1
**in-depth** [1] - 13648:15
**inaction** [1] - 13614:16
**Inauguration** [1] - 13612:15
**include** [3] - 13592:18, 13619:19, 13629:10, 13670:14
**included** [4] - 13581:17, 13628:25, 13669:3, 13669:12
**including** [1] - 13576:2
**inconsistent** [3] - 13656:17, 13688:1, 13688:6
**incorrect** [1] - 13637:13
**incredibly** [1] - 13601:12
**incurred** [1] - 13603:1
**independent** [3] - 13596:22, 13608:11, 13609:9
**indicate** [2] - 13609:15, 13705:17
**indicated** [3] - 13598:23, 13637:5, 13709:22
**indicating** [26] - 13662:14, 13667:6, 13696:6, 13699:4, 13699:5, 13699:6, 13699:7, 13699:8, 13700:3, 13701:14, 13701:15, 13708:8, 13708:21, 13709:3, 13709:5, 13714:1, 13714:6, 13714:16, 13715:6, 13715:10,

13715:19, 13718:11, 13718:23
**indicted** [1] - 13677:8
**indictment** [3] - 13677:2, 13677:3, 13678:21
**individual** [7] - 13657:4, 13672:7, 13708:6, 13708:8, 13709:19, 13710:2, 13713:3
**individual's** [1] - 13637:15
**individually** [1] - 13669:13
**individuals** [9] - 13669:5, 13669:7, 13670:15, 13671:9, 13671:11, 13672:10, 13677:12, 13712:16, 13715:8
**indulgence** [1] - 13706:24
**infer** [3] - 13580:13, 13585:20, 13585:22
**inference** [12] - 13586:1, 13586:5, 13600:22, 13602:6, 13604:23, 13609:2, 13609:4, 13609:12, 13609:14, 13609:18, 13623:2, 13641:14
**inferences** [1] - 13586:20
**inflammatory** [5] - 13595:9, 13601:3, 13601:12, 13619:7, 13631:19
**influence** [1] - 13633:1
**informant** [1] - 13663:14
**information** [14] - 13639:3, 13648:11, 13649:17, 13659:5, 13663:21, 13668:9, 13668:23, 13669:17, 13672:13, 13682:8, 13682:9, 13682:18, 13690:21, 13717:1
**initial** [1] - 13668:8
**innuendo** [3] - 13604:22, 13606:10, 13606:12
**inquiry** [1] - 13659:3
**inside** [1] - 13712:12
**insinuation** [1] - 13642:20
**insofar** [1] - 13607:15
**Instant** [1] - 13675:11

**instant** [1] - 13675:13
**instead** [1] - 13721:19
**instruction** [5] - 13583:6, 13616:18, 13636:9, 13636:17, 13640:20
**insulting** [1] - 13614:4
**intend** [2] - 13632:17, 13632:19
**intent** [10] - 13598:20, 13598:23, 13599:1, 13626:2, 13626:8, 13637:1, 13637:15, 13638:22, 13639:1, 13639:22
**interacted** [2] - 13714:13, 13714:15
**interaction** [2] - 13712:6, 13717:2
**interest** [1] - 13577:24
**interesting** [1] - 13675:7
**internally** [1] - 13588:4
**international** [1] - 13597:25
**Internet** [4] - 13600:17, 13609:16, 13609:17, 13609:20
**interpret** [2] - 13580:15, 13586:20
**interpretation** [2] - 13581:1, 13585:25
**interpreted** [1] - 13586:17
**interpreting** [1] - 13586:19
**interrelated** [1] - 13618:7
**interstices** [1] - 13604:23
**intertwined** [1] - 13613:8
**intervening** [4] - 13592:14, 13593:14, 13593:15, 13593:22
**interview** [2] - 13656:10, 13666:23
**interviewed** [3] - 13653:5, 13653:10, 13653:11, 13666:21
**interviewing** [1] - 13658:2
**interviews** [4] - 13664:25, 13665:6, 13665:12, 13665:25
**intoxicated** [2] - 13618:17, 13618:24
**introduce** [2] - 13592:12, 13592:25

13735

**introduced** [3] - 13635:25, 13640:6, 13645:18
**invading** [2] - 13581:11, 13581:13
**investigate** [1] - 13672:9
**investigated** [1] - 13694:23
**investigating** [8] - 13668:2, 13668:5, 13668:18, 13669:13, 13670:25, 13671:23, 13677:23, 13680:22
**investigation** [32] - 13648:9, 13652:13, 13654:15, 13658:9, 13664:7, 13664:8, 13668:8, 13668:12, 13668:15, 13668:17, 13668:23, 13669:3, 13669:6, 13669:12, 13671:3, 13671:4, 13671:25, 13672:6, 13672:8, 13672:14, 13672:23, 13672:25, 13676:25, 13678:4, 13678:22, 13680:9, 13682:8, 13692:10, 13697:10, 13702:8, 13703:5, 13709:15
**investigations** [1] - 13673:2
**involve** [1] - 13575:24
**involved** [6] - 13576:12, 13668:7, 13668:11, 13671:6, 13677:2, 13680:24
**involves** [1] - 13586:18
**irony** [1] - 13586:15
**irrelevant** [1] - 13595:9
**isolate** [2] - 13592:17, 13611:19
**isolation** [1] - 13580:12
**issue** [17] - 13578:7, 13578:8, 13584:1, 13590:8, 13591:2, 13607:9, 13607:24, 13608:4, 13610:5, 13616:18, 13620:8, 13632:14, 13633:23, 13635:11, 13642:17, 13659:19, 13681:14
**issues** [5] - 13575:20, 13584:3, 13606:17, 13627:21, 13634:12
**iteration** [1] -

13613:20
**itself** [2] - 13606:11, 13635:7
**IV** [1] - 13572:23

**J**

**J.D** [1] - 13594:9
**J6** [1] - 13657:14
**jail** [4] - 13593:19, 13612:21, 13664:14, 13664:17
**January** [78] - 13578:16, 13581:9, 13581:10, 13589:6, 13589:12, 13589:15, 13589:24, 13590:1, 13591:12, 13591:14, 13594:7, 13596:13, 13597:13, 13597:15, 13597:16, 13598:15, 13599:17, 13607:12, 13608:24, 13608:25, 13612:4, 13612:8, 13614:17, 13614:22, 13615:4, 13615:13, 13615:24, 13615:25, 13616:3, 13616:23, 13621:3, 13621:12, 13624:19, 13625:23, 13627:21, 13627:23, 13629:9, 13629:12, 13629:22, 13634:20, 13634:21, 13636:24, 13649:15, 13649:16, 13649:18, 13651:14, 13652:6, 13652:8, 13652:11, 13653:8, 13653:13, 13660:10, 13660:11, 13663:4, 13663:10, 13663:15, 13664:10, 13664:19, 13666:1, 13666:19, 13666:22, 13666:24, 13668:5, 13668:8, 13671:5, 13671:10, 13675:20, 13677:5, 13677:25, 13679:5, 13679:10, 13681:3, 13685:1, 13693:20, 13700:14
**Jason** [2] - 13572:12, 13575:7
**Jauregui** [2] - 13573:8, 13575:12
**JAUREGUI** [47] - 13573:8, 13644:17, 13644:19, 13645:1, 13645:3, 13646:17, 13646:19, 13646:20,

13650:9, 13650:13, 13651:23, 13654:2, 13654:17, 13655:25, 13656:2, 13656:4, 13656:19, 13656:21, 13656:22, 13657:18, 13657:23, 13657:24, 13658:23, 13659:9, 13659:12, 13659:15, 13659:22, 13659:25, 13660:8, 13661:3, 13661:6, 13661:8, 13662:10, 13662:12, 13662:13, 13663:8, 13663:13, 13664:2, 13664:12, 13665:10, 13665:11, 13665:17, 13666:15, 13666:16, 13667:2, 13667:4, 13667:7
**Jauregui.................** **13644** [1] - 13574:3
**Jencks** [1] - 13602:10
**Jeremy** [2] - 13579:8, 13582:10
**Jersey** [7] - 13594:8, 13594:9, 13594:17, 13595:7, 13596:21, 13598:11, 13598:13
**job** [4] - 13641:19, 13641:20, 13641:23
**jobs** [1] - 13611:4
**John** [2] - 13572:23, 13575:10
**join** [3] - 13586:10, 13633:6, 13684:24
**join/participate** [1] - 13656:6
**joined** [7] - 13668:17, 13677:18, 13678:4, 13678:20, 13679:4, 13684:25
**joke** [1] - 13670:11
**Joseph** [1] - 13575:4
**journalism** [1] - 13630:2
**journalist** [4] - 13629:14, 13629:20, 13630:15, 13631:8
**journalists** [1] - 13666:18
**judge** [3] - 13627:5, 13635:2, 13650:9
**Judge** [8] - 13601:17, 13627:6, 13627:8, 13628:8, 13635:3, 13635:4, 13658:24, 13659:13
**JUDGE** [1] - 13572:10
**jump** [3] - 13577:24,

13594:11, 13594:23
**juror** [4] - 13585:7, 13585:11, 13586:1, 13606:22
**Jury** [2] - 13644:11, 13723:7
**JURY** [1] - 13572:8
**jury** [41] - 13584:3, 13584:8, 13585:20, 13590:5, 13597:6, 13598:2, 13600:21, 13601:15, 13601:18, 13604:24, 13605:16, 13606:18, 13607:21, 13608:1, 13608:19, 13619:8, 13621:23, 13622:16, 13637:16, 13637:17, 13639:11, 13640:25, 13641:4, 13643:2, 13643:9, 13643:16, 13643:23, 13643:25, 13644:2, 13644:10, 13644:11, 13677:19, 13678:25, 13679:2, 13679:8, 13686:22, 13687:20, 13689:15, 13706:17, 13723:7
**jury's** [6] - 13584:13, 13584:14, 13586:5, 13588:23, 13590:2, 13609:2
**jury-confusion** [1] - 13598:2
**justice** [1] - 13593:18

**K**

**Kansas** [1] - 13716:21
**Kate** [1] - 13648:21
**keep** [9] - 13583:23, 13701:15, 13702:15, 13714:5, 13715:12, 13718:19, 13720:25, 13721:17, 13722:2
**KELLY** [1] - 13572:9
**KENERSON** [49] - 13646:15, 13651:21, 13653:24, 13654:12, 13655:23, 13656:17, 13657:16, 13657:20, 13658:21, 13659:2, 13660:5, 13661:1, 13661:4, 13663:6, 13663:11, 13663:25, 13664:5, 13665:9, 13665:15, 13674:6, 13676:13, 13676:15, 13676:17, 13678:13, 13683:23, 13685:16,

13687:2, 13687:6, 13687:10, 13688:15, 13688:17, 13688:19, 13688:21, 13688:23, 13689:3, 13689:6, 13690:19, 13693:13, 13696:6, 13702:18, 13704:25, 13705:23, 13706:11, 13708:16, 13709:24, 13710:8, 13713:3, 13716:3, 13716:6
**Kenerson** [5] - 13572:12, 13575:8, 13678:12, 13688:16, 13688:22
**Kenny** [10] - 13661:23, 13662:1, 13662:4, 13662:16, 13662:23, 13663:1, 13663:4, 13663:13, 13663:23, 13664:16
**Kevin** [3] - 13670:4, 13670:5
**kind** [29] - 13580:7, 13589:21, 13595:24, 13598:1, 13599:4, 13601:15, 13606:1, 13613:20, 13614:2, 13614:24, 13616:17, 13616:25, 13617:2, 13620:19, 13625:20, 13626:13, 13630:1, 13631:2, 13631:3, 13631:16, 13649:6, 13649:25, 13668:9, 13668:10, 13669:23, 13675:11, 13688:13, 13700:17, 13713:2
**kinds** [1] - 13589:25
**knock** [1] - 13626:18
**knowing** [2] - 13668:18, 13704:5
**knowledge** [6] - 13645:14, 13648:15, 13648:22, 13648:24, 13666:25, 13704:4
**known** [1] - 13704:8
**knows** [7] - 13597:24, 13630:14, 13630:15, 13641:20, 13713:13, 13713:16, 13716:10
**Kyles** [1] - 13681:19

**L**

**lab** [1] - 13659:16
**label** [2] - 13672:12
**ladies** [1] - 13723:5
**laid** [2] - 13601:8,

13736

13605:9
**Lake** [1] - 13573:15
**Lakes** [1] - 13573:6
**Lashome** [1] -
13708:14
**last** [24] - 13577:6,
13586:15, 13595:10,
13597:10, 13619:15,
13624:8, 13627:9,
13632:11, 13632:14,
13633:24, 13634:8,
13635:10, 13657:8,
13661:12, 13661:14,
13661:15, 13661:17,
13661:19, 13670:1,
13670:6, 13695:24
**lasted** [1] - 13677:1
**latter** [1] - 13587:15
**laughter** [1] -
13679:22
**LAW** [3] - 13573:5,
13573:8, 13573:15
**law** [10] - 13583:13,
13585:21, 13597:25,
13615:15, 13624:21,
13624:23, 13624:24,
13625:16, 13625:24,
13639:16
**laws** [5] - 13624:18,
13625:7, 13626:3,
13626:4, 13626:6
**lawyer** [3] - 13641:5,
13655:5, 13658:15
**layer** [2] - 13635:4,
13638:21
**layers** [1] - 13632:23
**layman's** [1] -
13648:12
**lays** [1] - 13639:9
**lead** [2] - 13614:22,
13682:8
**leaders** [3] - 13595:24,
13608:23, 13609:5
**Leaders** [1] -
13578:16
**leadership** [3] -
13684:3, 13684:6,
13684:10
**leading** [2] -
13597:15, 13652:10
**learned** [5] -
13709:15, 13709:18,
13709:19, 13710:2,
13710:6
**learning** [1] - 13710:5
**least** [14] - 13581:16,
13585:11, 13587:13,
13588:22, 13629:18,
13633:8, 13639:8,
13640:22, 13641:25,

13642:5, 13692:24,
13699:23, 13709:22,
13710:14
**leave** [4] - 13597:23,
13604:23, 13695:3,
13709:15
**leaving** [1] - 13711:4
**led** [3] - 13581:7,
13593:17, 13677:1
**left** [17] - 13592:22,
13612:20, 13675:19,
13695:4, 13695:7,
13695:9, 13697:11,
13697:19, 13709:18,
13709:19, 13709:20,
13710:3, 13711:4,
13711:25, 13712:2,
13712:13, 13715:20
**legal** [3] - 13598:4,
13629:11, 13630:5
**legitimate** [2] -
13630:1, 13631:8
**lends** [1] - 13583:1
**less** [2] - 13582:2,
13585:15
**letting** [1] - 13583:22
**leverage** [1] -
13652:18
**life** [2] - 13622:6,
13656:15
**light** [1] - 13626:2
**likelihood** [1] -
13584:3
**likely** [4] - 13584:8,
13662:25, 13702:11,
13702:14
**likeness** [1] -
13606:24
**limited** [3] - 13638:12,
13639:20, 13640:4
**limiting** [2] - 13636:9,
13636:17
**line** [5] - 13593:19,
13635:10, 13674:7,
13676:17, 13693:17
**lines** [4] - 13597:10,
13622:24, 13633:21,
13691:13
**link** [1] - 13583:5
**linkage** [6] - 13586:24,
13593:5, 13593:16,
13593:20, 13598:8,
13598:17
**linking** [1] - 13579:18
**links** [3] - 13590:4,
13625:5, 13626:13
**list** [1] - 13627:18
**listen** [1] - 13640:17
**listened** [2] -
13664:25, 13665:1

**listener** [3] -
13631:17, 13631:18,
13631:23
**listening** [1] -
13688:21
**literally** [6] - 13638:5,
13680:2, 13690:4,
13690:11, 13690:13,
13690:14
**litigated** [5] -
13619:15, 13619:21,
13620:9, 13622:6,
13678:16
**live** [1] - 13587:11
**lives** [1] - 13614:15
**Livingston** [1] -
13573:16
**Lizardo** [9] -
13661:23, 13662:1,
13662:4, 13662:16,
13663:1, 13663:4,
13663:14, 13663:23,
13664:16
**LLC** [1] - 13572:20
**load** [2] - 13611:22,
13630:8
**lodge** [1] - 13639:8
**logical** [1] - 13639:5
**longest** [1] - 13656:15
**Look** [1] - 13607:13
**look** [42] - 13580:2,
13586:3, 13586:23,
13587:22, 13590:20,
13597:8, 13597:10,
13597:17, 13599:24,
13600:5, 13603:19,
13604:16, 13608:24,
13610:17, 13610:18,
13610:20, 13611:2,
13611:5, 13613:7,
13616:18, 13628:15,
13630:17, 13630:22,
13631:23, 13633:19,
13639:6, 13640:15,
13643:13, 13653:17,
13671:8, 13679:15,
13693:2, 13693:7,
13697:21, 13704:17,
13708:19, 13712:17,
13713:2, 13713:4,
13713:13, 13713:19,
13714:11
**looked** [7] - 13650:17,
13650:21, 13651:8,
13651:13, 13679:16,
13702:8, 13704:5
**looking** [9] -
13596:16, 13603:19,
13627:18, 13679:12,
13679:23, 13690:17,

13704:24, 13713:22,
13716:12
**looks** [8] - 13594:8,
13599:20, 13599:21,
13688:11, 13705:4,
13713:2, 13713:22,
13722:5
**loose** [1] - 13644:22
**loses** [1] - 13639:4
**lost** [3] - 13713:2,
13713:22, 13717:24
**low** [2] - 13611:6,
13611:11
**lunch** [3] - 13576:18,
13721:13, 13723:6
**Luncheon** [1] -
13723:14
**Lync** [4] - 13659:13,
13675:8, 13675:22,
13675:23

## M

**machine** [2] -
13573:21, 13651:2
**madam** [1] - 13646:16
**Main** [5] - 13662:1,
13683:2, 13683:6,
13684:21, 13684:22
**mainstream** [1] -
13600:20
**male** [1] - 13716:20
**Mall** [1] - 13700:16
**man** [3] - 13589:21,
13599:20, 13714:1
**maneuvering** [2] -
13716:9, 13716:12
**manipulate** [4] -
13604:7, 13605:1,
13605:10, 13706:9
**manipulated** [9] -
13604:10, 13604:19,
13604:25, 13605:8,
13605:20, 13605:25,
13608:12, 13608:14,
13609:16
**manipulating** [3] -
13603:6, 13608:16,
13610:6
**March** [8] - 13572:6,
13653:12, 13668:12,
13669:2, 13670:24,
13677:23, 13677:24,
13723:21
**march** [15] - 13694:25,
13695:3, 13695:4,
13695:25, 13697:11,
13699:23, 13700:10,
13700:18, 13700:24,
13701:4, 13709:16,

13709:18, 13710:7,
13717:14, 13717:18
**marches** [1] - 13698:5
**marching** [12] -
13596:9, 13598:11,
13671:17, 13671:18,
13697:6, 13700:16,
13716:21, 13717:3,
13717:5, 13717:7,
13717:9, 13717:12
**marked** [2] -
13686:15, 13705:22
**massively** [1] -
13678:25
**matches** [1] -
13705:10
**material** [1] -
13602:10
**matter** [10] - 13591:12,
13600:11, 13639:15,
13639:19, 13639:23,
13640:9, 13640:14,
13641:1, 13641:3,
13680:25
**Matter** [2] - 13575:2,
13644:14
**matters** [1] - 13576:2
**Matthew** [9] - 13669:7,
13669:9, 13669:13,
13669:14, 13669:25,
13698:25, 13709:22,
13710:4, 13710:5
**MCCULLOUGH** [3] -
13706:24, 13707:14,
13707:18
**McCullough** [3] -
13572:12, 13575:7,
13707:21
**McDonald** [2] -
13671:10, 13671:20
**MCGUIRE** [1] -
13572:24
**MD** [1] - 13573:3
**mean** [64] - 13576:16,
13579:12, 13580:7,
13581:5, 13582:4,
13584:14, 13586:11,
13586:13, 13586:18,
13587:4, 13587:7,
13587:8, 13587:11,
13588:9, 13593:14,
13593:16, 13597:3,
13603:14, 13603:25,
13605:12, 13608:9,
13608:17, 13613:7,
13614:4, 13615:4,
13615:11, 13617:22,
13617:23, 13619:14,
13622:8, 13622:10,
13624:3, 13625:17,

13737

13627:17, 13630:24, 13631:3, 13631:4, 13631:8, 13633:13, 13633:14, 13633:19, 13633:21, 13635:5, 13635:16, 13638:3, 13638:16, 13645:16, 13654:18, 13658:1, 13672:5, 13674:2, 13676:10, 13678:10, 13678:11, 13678:14, 13679:14, 13679:15, 13687:3, 13688:9, 13689:25, 13690:16, 13703:4, 13711:4, 13721:12
**means** [4] - 13639:15, 13654:8, 13673:14, 13686:3
**meant** [2] - 13676:4, 13679:15
**media** [11] - 13580:7, 13580:16, 13581:4, 13581:11, 13583:9, 13595:11, 13596:15, 13639:2, 13665:13, 13665:18
**meet** [2] - 13613:10, 13653:15
**meeting** [2] - 13671:19, 13690:5
**meetings** [1] - 13673:16
**meets** [1] - 13614:18
**megadata** [1] - 13708:22
**member** [1] - 13582:13
**members** [2] - 13623:3, 13682:14
**meme** [3] - 13641:19, 13641:20, 13641:23
**mental** [5] - 13595:20, 13596:10, 13596:20, 13614:13, 13628:20
**mention** [2] - 13694:1, 13709:7
**mentioned** [1] - 13690:11
**mentions** [1] - 13693:14
**message** [16] - 13579:11, 13582:23, 13583:22, 13586:23, 13592:12, 13592:15, 13593:17, 13596:21, 13632:25, 13633:2, 13633:8, 13645:6, 13645:9, 13645:11, 13648:13, 13648:14

**messages** [34] - 13582:24, 13583:11, 13583:12, 13589:6, 13589:13, 13589:15, 13589:23, 13589:24, 13592:13, 13592:14, 13592:18, 13592:24, 13593:4, 13593:5, 13593:14, 13593:15, 13593:22, 13596:13, 13596:25, 13629:9, 13635:25, 13645:18, 13646:14, 13646:22, 13646:25, 13648:24, 13657:4, 13659:13, 13662:23, 13664:4, 13676:23, 13678:5
**messaging** [1] - 13675:13
**Messenger** [1] - 13675:12
**met** [2] - 13653:20, 13663:1
**metadata** [2] - 13706:12, 13707:23
**Metcalf** [13] - 13573:11, 13575:13, 13676:21, 13679:14, 13680:6, 13681:12, 13681:23, 13685:17, 13685:19, 13687:16, 13688:18, 13688:24, 13707:4
**METCALF** [138] - 13573:11, 13667:8, 13667:10, 13667:12, 13674:9, 13676:22, 13677:10, 13677:21, 13679:8, 13679:17, 13679:19, 13679:21, 13680:11, 13680:16, 13680:18, 13680:22, 13681:8, 13682:2, 13682:4, 13683:9, 13683:15, 13683:25, 13684:2, 13684:18, 13684:20, 13685:7, 13685:14, 13685:20, 13685:24, 13686:1, 13686:3, 13686:7, 13686:10, 13686:12, 13686:13, 13686:25, 13687:4, 13687:17, 13687:19, 13688:2, 13688:4, 13689:14, 13690:3, 13690:10, 13691:15, 13691:17, 13693:16, 13694:4, 13694:10, 13694:12, 13695:11, 13695:14,

13695:19, 13695:21, 13696:3, 13696:7, 13696:10, 13696:16, 13696:20, 13696:22, 13698:8, 13698:12, 13698:17, 13698:21, 13698:24, 13699:10, 13699:14, 13701:5, 13701:7, 13701:22, 13701:24, 13702:5, 13702:7, 13702:20, 13703:16, 13703:19, 13703:20, 13703:24, 13704:1, 13705:1, 13705:3, 13705:21, 13706:3, 13706:6, 13706:13, 13706:19, 13706:22, 13707:8, 13707:11, 13707:15, 13707:19, 13707:23, 13708:3, 13708:4, 13708:18, 13710:1, 13710:9, 13710:11, 13711:10, 13711:14, 13711:21, 13711:24, 13712:20, 13712:23, 13713:10, 13713:17, 13713:18, 13715:12, 13715:14, 13716:8, 13717:21, 13717:23, 13718:8, 13718:10, 13718:12, 13718:15, 13718:19, 13718:21, 13718:24, 13718:25, 13719:12, 13719:17, 13719:22, 13720:1, 13720:4, 13720:7, 13720:11, 13720:12, 13720:16, 13720:21, 13720:25, 13721:4, 13721:22, 13721:24, 13722:2, 13722:4, 13723:1
**Metcalf.................**
**13667** [1] - 13574:4
**Miami** [3] - 13573:6, 13647:25, 13648:1
**midnight** [1] - 13577:6
**might** [12] - 13577:22, 13580:21, 13584:18, 13601:1, 13602:20, 13606:3, 13616:18, 13617:1, 13626:1, 13626:9, 13631:15, 13674:24
**militia** [1] - 13630:21
**Miller** [11] - 13573:17, 13630:11, 13630:12, 13644:8, 13667:13, 13685:8, 13686:14,

13691:18, 13704:2, 13708:5, 13723:22
**MILLER** [2] - 13574:3, 13723:17
**Miller's** [1] - 13628:25
**mind** [8] - 13598:4, 13606:6, 13606:11, 13614:18, 13626:14, 13637:15, 13639:22, 13656:9
**minimal** [1] - 13678:23
**Ministry** [1] - 13683:1
**Mink** [1] - 13573:2
**minute** [3] - 13582:2, 13585:15
**minutes** [21] - 13591:11, 13591:14, 13591:25, 13592:7, 13644:1, 13644:6, 13660:19, 13695:11, 13695:12, 13695:17, 13695:20, 13701:11, 13701:17, 13705:15, 13711:1, 13711:7, 13711:8, 13715:16, 13722:21
**misinformation** [1] - 13608:20
**misleading** [2] - 13584:3, 13606:18
**missed** [2] - 13660:22, 13714:3
**missing** [1] - 13584:20
**mistake** [1] - 13630:20
**mistaken** [1] - 13582:9
**misused** [1] - 13640:21
**mode** [1] - 13648:19
**moment** [8] - 13581:22, 13619:10, 13629:3, 13631:2, 13660:12, 13666:5, 13685:17, 13719:15
**moments** [2] - 13585:17, 13716:13
**monologue** [1] - 13620:20
**montage** [10] - 13687:22, 13690:8, 13694:2, 13696:11, 13696:23, 13698:13, 13701:20, 13709:13, 13709:14, 13710:12
**month** [2] - 13616:22, 13656:15
**months** [5] - 13639:3, 13692:15, 13692:19, 13692:24, 13692:25

**Monument** [4] - 13596:2, 13596:8, 13690:5, 13705:7
**Moore** [2] - 13572:13, 13575:8
**morning** [14] - 13575:16, 13582:7, 13590:23, 13596:13, 13627:8, 13644:20, 13644:21, 13646:1, 13667:13, 13667:14, 13693:20, 13693:23, 13695:4, 13700:23
**MORNING** [1] - 13572:9
**MOSD** [14] - 13578:16, 13645:15, 13662:1, 13662:6, 13662:16, 13662:19, 13682:19, 13683:5, 13683:6, 13683:16, 13684:10, 13684:21, 13684:22
**most** [9] - 13577:25, 13578:9, 13586:18, 13595:24, 13622:23, 13636:4, 13636:23, 13680:3
**mostly** [2] - 13635:21, 13700:21
**motion** [2] - 13589:3, 13640:6
**motivated** [1] - 13613:14
**motivation** [1] - 13613:15
**motive** [11] - 13612:10, 13613:11, 13613:12, 13626:13, 13637:6, 13637:15, 13638:24, 13639:14, 13639:22
**motives** [1] - 13637:7
**move** [5] - 13616:15, 13618:17, 13621:19, 13657:13, 13680:5
**MR** [383] - 13577:21, 13578:3, 13578:8, 13578:15, 13578:23, 13579:1, 13579:5, 13579:7, 13579:11, 13582:3, 13582:7, 13584:22, 13584:25, 13587:17, 13588:8, 13588:15, 13588:17, 13588:18, 13588:23, 13589:1, 13589:4, 13589:9, 13589:19, 13590:11, 13590:19, 13590:24, 13591:3, 13591:6, 13591:10,

13592:11, 13593:24,
13594:4, 13594:6,
13594:13, 13594:16,
13594:19, 13594:22,
13595:1, 13595:18,
13596:7, 13597:4,
13597:20, 13597:23,
13598:17, 13599:7,
13599:15, 13599:20,
13599:23, 13599:25,
13600:10, 13601:6,
13602:5, 13602:9,
13602:15, 13602:17,
13602:19, 13602:20,
13602:24, 13603:3,
13603:10, 13603:15,
13604:3, 13604:15,
13604:21, 13605:4,
13605:6, 13605:13,
13605:16, 13605:18,
13605:21, 13605:23,
13606:1, 13606:19,
13607:11, 13607:20,
13608:7, 13608:17,
13609:7, 13609:8,
13609:10, 13611:14,
13611:17, 13612:3,
13613:1, 13613:19,
13614:20, 13615:6,
13616:21, 13617:6,
13617:8, 13617:11,
13617:15, 13617:17,
13617:25, 13618:3,
13618:9, 13618:11,
13618:13, 13618:16,
13619:2, 13619:14,
13620:1, 13620:3,
13620:4, 13620:5,
13620:6, 13620:7,
13620:8, 13620:11,
13620:16, 13620:17,
13620:21, 13621:2,
13621:4, 13621:8,
13621:11, 13621:17,
13622:1, 13622:12,
13622:16, 13623:14,
13623:22, 13624:8,
13624:11, 13624:15,
13624:17, 13625:10,
13625:12, 13625:15,
13625:21, 13626:16,
13627:5, 13627:15,
13628:4, 13628:8,
13628:17, 13630:18,
13631:15, 13632:19,
13632:22, 13635:2,
13637:22, 13637:24,
13641:9, 13642:14,
13642:23, 13643:1,
13643:8, 13643:12,
13644:17, 13644:19,

13645:1, 13645:3,
13646:15, 13646:17,
13646:19, 13646:20,
13650:9, 13650:13,
13651:21, 13651:23,
13653:24, 13654:2,
13654:12, 13654:17,
13655:23, 13655:25,
13656:2, 13656:4,
13656:17, 13656:19,
13656:21, 13656:22,
13657:16, 13657:18,
13657:20, 13657:23,
13657:24, 13658:21,
13658:23, 13659:2,
13659:9, 13659:12,
13659:15, 13659:22,
13659:25, 13660:5,
13660:8, 13661:1,
13661:3, 13661:4,
13661:6, 13661:8,
13662:10, 13662:12,
13662:13, 13663:6,
13663:8, 13663:11,
13663:13, 13663:25,
13664:2, 13664:5,
13664:12, 13665:9,
13665:10, 13665:11,
13665:15, 13665:17,
13666:15, 13666:16,
13667:2, 13667:4,
13667:7, 13667:8,
13667:10, 13667:12,
13674:6, 13674:9,
13676:13, 13676:15,
13676:17, 13676:22,
13677:10, 13677:21,
13678:13, 13679:8,
13679:17, 13679:19,
13679:21, 13680:11,
13680:16, 13680:18,
13680:22, 13681:8,
13682:2, 13682:4,
13683:9, 13683:15,
13683:23, 13683:25,
13684:2, 13684:18,
13684:20, 13685:7,
13685:14, 13685:16,
13685:20, 13685:24,
13686:1, 13686:3,
13686:7, 13686:10,
13686:12, 13686:13,
13686:25, 13687:2,
13687:4, 13687:6,
13687:10, 13687:17,
13687:19, 13688:2,
13688:4, 13688:15,
13688:17, 13688:19,
13688:21, 13688:23,
13689:3, 13689:6,
13689:14, 13690:3,

13690:10, 13690:19,
13691:15, 13691:17,
13693:13, 13693:16,
13694:4, 13694:10,
13694:12, 13695:11,
13695:14, 13695:19,
13695:21, 13696:3,
13696:6, 13696:7,
13696:10, 13696:16,
13696:20, 13696:22,
13698:8, 13698:12,
13698:17, 13698:21,
13698:24, 13699:10,
13699:14, 13701:5,
13701:7, 13701:22,
13701:24, 13702:5,
13702:7, 13702:18,
13702:20, 13703:16,
13703:19, 13703:20,
13703:24, 13704:1,
13704:25, 13705:1,
13705:3, 13705:21,
13705:23, 13706:3,
13706:6, 13706:11,
13706:13, 13706:19,
13706:22, 13706:24,
13707:8, 13707:11,
13707:14, 13707:15,
13707:18, 13707:19,
13707:23, 13708:3,
13708:4, 13708:16,
13708:18, 13709:24,
13710:1, 13710:8,
13710:9, 13710:11,
13711:10, 13711:14,
13711:21, 13711:24,
13712:20, 13712:23,
13713:10, 13713:15,
13713:17, 13713:18,
13715:12, 13715:14,
13716:3, 13716:6,
13716:8, 13717:21,
13717:23, 13718:8,
13718:10, 13718:12,
13718:15, 13718:19,
13718:21, 13718:24,
13718:25, 13719:12,
13719:17, 13719:22,
13720:1, 13720:4,
13720:7, 13720:11,
13720:12, 13720:16,
13720:21, 13720:25,
13721:4, 13721:22,
13721:24, 13722:2,
13722:4, 13723:1

**MS** [56] - 13576:24,
13577:4, 13577:11,
13577:16, 13586:10,
13586:13, 13610:1,
13610:4, 13610:9,
13610:13, 13610:15,

13610:19, 13610:22,
13610:24, 13611:10,
13615:8, 13615:18,
13615:20, 13616:1,
13616:5, 13616:8,
13616:10, 13616:12,
13616:15, 13623:25,
13628:9, 13634:1,
13634:5, 13634:8,
13634:11, 13634:24,
13635:19, 13635:23,
13636:12, 13636:19,
13637:3, 13637:5,
13637:9, 13637:12,
13637:19, 13638:1,
13638:3, 13638:7,
13638:9, 13638:11,
13638:15, 13639:12,
13639:18, 13639:24,
13640:1, 13640:16,
13640:22, 13681:10,
13681:14, 13681:19,
13681:22
**MT** [1] - 13573:16
**mud** [1] - 13592:23
**Mulroe** [14] -
13572:13, 13575:8,
13578:5, 13585:6,
13585:19, 13588:1,
13588:19, 13596:6,
13602:8, 13609:10,
13621:6, 13622:10,
13623:9
**MULROE** [41] -
13582:7, 13588:8,
13588:17, 13590:11,
13590:19, 13592:11,
13595:18, 13596:7,
13597:4, 13599:15,
13599:20, 13599:23,
13599:25, 13600:10,
13602:5, 13602:9,
13602:15, 13602:17,
13602:19, 13603:10,
13608:17, 13609:8,
13612:3, 13619:14,
13620:1, 13620:4,
13620:6, 13620:8,
13620:11, 13620:17,
13621:4, 13622:12,
13622:16, 13623:14,
13623:22, 13628:4,
13628:17, 13630:18,
13631:15, 13632:19,
13632:22
**multiple** [4] -
13646:13, 13664:8,
13665:5, 13665:12
**murder** [1] - 13630:9
**must** [2] - 13609:21,

13721:2

# N

**Nadia** [2] - 13572:13,
13575:8
**nakedly** [1] - 13584:4
**name** [7] - 13670:1,
13670:4, 13670:6,
13672:17, 13708:11,
13708:13
**named** [2] - 13594:9,
13595:7
**names** [1] - 13633:7
**narrowed** [1] -
13619:18
**narrowly** [1] -
13583:19
**nation** [2] - 13624:17,
13625:7
**National** [1] -
13700:16
**national** [1] -
13608:23
**nature** [2] - 13631:19,
13638:18
**Nayib** [2] - 13573:4,
13575:11
**NAYIB** [1] - 13573:5
**nearly** [1] - 13593:20
**necessarily** [5] -
13582:17, 13584:12,
13599:1, 13655:15,
13657:3
**necessary** [3] -
13583:2, 13598:8,
13619:3
**need** [16] - 13576:13,
13580:17, 13586:11,
13590:21, 13596:7,
13602:24, 13608:4,
13613:25, 13614:14,
13615:3, 13619:3,
13621:13, 13623:8,
13631:4, 13643:24
**needed** [1] - 13668:10
**needs** [17] - 13578:18,
13579:2, 13579:23,
13580:3, 13580:9,
13580:12, 13582:1,
13583:3, 13583:7,
13584:19, 13585:16,
13585:18, 13596:19,
13610:5, 13620:5,
13623:11, 13690:20
**network** [1] -
13675:24
**never** [6] - 13593:18,
13645:11, 13672:22,
13680:1, 13680:18,

13739

13715:5
**new** [2] - 13682:7, 13682:8
**New** [10] - 13572:18, 13572:22, 13573:13, 13645:15, 13668:22, 13669:3, 13669:5, 13673:6, 13683:6, 13683:16
**newest** [1] - 13577:25
**news** [3] - 13580:7, 13595:13, 13600:20
**next** [28] - 13581:25, 13590:22, 13590:23, 13590:25, 13593:24, 13594:23, 13596:21, 13599:8, 13611:14, 13613:19, 13615:6, 13616:21, 13619:4, 13621:13, 13626:25, 13635:13, 13635:15, 13641:21, 13646:5, 13656:6, 13657:8, 13685:22, 13690:6, 13709:11, 13716:11
**Nicholas** [3] - 13572:16, 13575:9, 13666:17
**Nick** [11] - 13628:20, 13629:8, 13629:11, 13629:13, 13630:14, 13630:15, 13630:25, 13647:13, 13647:23, 13666:13
**NICOLE** [1] - 13574:3
**Nicole** [1] - 13644:8
**night** [3] - 13577:6, 13586:15, 13627:9
**NJ** [3] - 13573:17, 13723:17, 13723:22
**NJ-CCR** [3] - 13573:17, 13723:17, 13723:22
**Noble** [2] - 13579:8, 13662:19
**nobody** [2] - 13633:10, 13633:14
**non** [2] - 13601:5, 13719:13
**non-responsive** [1] - 13719:13
**non-violent** [1] - 13601:5
**none** [3] - 13634:19, 13640:21, 13651:6
**NORDEAN** [1] - 13572:4
**Nordean** [47] - 13575:3, 13575:14, 13578:18, 13579:22,

13585:4, 13585:8, 13585:15, 13585:17, 13590:4, 13591:15, 13591:21, 13592:19, 13593:5, 13599:16, 13599:18, 13600:8, 13600:19, 13601:1, 13601:7, 13601:12, 13603:6, 13603:11, 13604:13, 13604:25, 13606:25, 13607:3, 13608:12, 13612:13, 13612:17, 13613:3, 13613:23, 13614:2, 13616:4, 13616:25, 13617:1, 13618:5, 13618:17, 13620:20, 13620:22, 13621:20, 13624:12, 13626:17, 13629:1, 13636:22, 13641:15, 13642:2, 13644:15
**Nordean's** [15] - 13580:13, 13581:1, 13581:17, 13583:3, 13583:6, 13585:21, 13586:7, 13591:24, 13592:6, 13601:23, 13605:8, 13608:2, 13611:19, 13612:19, 13622:17
**Norman** [2] - 13572:20, 13575:10
**Nos** [1] - 13572:2
**note** [11] - 13582:8, 13590:11, 13592:11, 13596:16, 13602:9, 13612:14, 13630:18, 13692:12, 13693:3, 13693:8, 13705:24
**noted** [1] - 13693:8
**notes** [13] - 13660:9, 13686:21, 13688:1, 13688:25, 13689:13, 13690:3, 13691:22, 13697:21, 13699:24, 13705:17, 13709:7, 13710:18, 13723:19
**nothing** [20] - 13604:11, 13610:10, 13610:15, 13614:1, 13621:2, 13626:8, 13635:6, 13654:5, 13655:10, 13657:14, 13678:10, 13678:13, 13679:1, 13697:4, 13712:6, 13712:9, 13714:11, 13714:15, 13714:18, 13715:9
**notion** [1] - 13638:25

**November** [3] - 13627:10, 13630:7, 13663:19
**nuanced** [1] - 13641:6
**number** [11] - 13576:10, 13583:14, 13594:3, 13602:18, 13653:18, 13678:13, 13678:22, 13678:23, 13685:22, 13707:22
**NW** [5] - 13572:14, 13572:24, 13573:5, 13573:19, 13723:24
**NY** [2] - 13572:18, 13573:13

## O

**oath** [3] - 13600:1, 13603:23, 13612:16
**oath-breakers** [2] - 13600:1, 13603:23
**object** [15] - 13610:4, 13618:1, 13633:20, 13633:24, 13634:1, 13634:4, 13636:3, 13636:22, 13638:25, 13642:16, 13674:6, 13687:2, 13688:10, 13689:4, 13706:11
**objected** [5] - 13576:6, 13615:20, 13628:2, 13632:7, 13634:2
**objecting** [6] - 13577:1, 13591:22, 13595:10, 13618:14, 13691:1, 13691:13
**objection** [41] - 13576:10, 13576:14, 13577:12, 13589:7, 13600:7, 13615:14, 13616:13, 13629:6, 13632:6, 13639:8, 13651:21, 13653:24, 13654:12, 13656:17, 13657:16, 13657:20, 13657:21, 13658:22, 13659:21, 13660:5, 13661:1, 13663:6, 13663:11, 13663:25, 13664:5, 13665:9, 13665:15, 13676:13, 13683:23, 13688:24, 13693:13, 13702:18, 13704:25, 13705:23, 13708:16, 13709:24, 13710:8, 13713:15, 13716:3, 13719:14, 13719:16

**objections** [16] - 13575:19, 13575:23, 13575:24, 13576:23, 13577:22, 13582:12, 13615:21, 13617:13, 13626:19, 13627:4, 13635:13, 13635:17, 13636:4, 13636:10, 13636:13, 13681:7
**objects** [1] - 13633:18
**obstruct** [1] - 13629:25
**obtained** [3] - 13648:8, 13668:23, 13669:18
**obviously** [3] - 13581:8, 13585:13, 13614:17
**occasion** [1] - 13624:23
**occasions** [1] - 13595:20
**occurred** [3] - 13671:5
**occurs** [1] - 13596:12
**Ochs** [14] - 13628:20, 13628:25, 13629:2, 13629:8, 13629:20, 13629:24, 13630:4, 13630:15, 13630:23, 13630:25, 13631:6, 13631:7, 13647:13
**Ochs's** [4] - 13629:8, 13629:11, 13647:20, 13647:24
**odd** [2] - 13679:12, 13679:15
**odds** [1] - 13630:6
**OF** [5] - 13572:1, 13572:2, 13572:8, 13573:5, 13723:16
**offenses** [1] - 13610:11
**offer** [2] - 13590:15, 13628:18
**offered** [10] - 13580:23, 13582:10, 13582:12, 13582:19, 13590:16, 13598:10, 13626:14, 13629:6, 13631:25, 13633:15
**offering** [7] - 13585:25, 13591:19, 13591:20, 13612:17, 13628:19, 13629:5, 13632:23
**Office** [2] - 13673:4, 13673:12
**office** [6] - 13612:16, 13668:20, 13668:22, 13673:4, 13675:16,

13675:18
**OFFICE** [1] - 13572:14
**officer** [15] - 13599:18, 13600:4, 13600:5, 13600:25, 13601:19, 13603:4, 13603:8, 13606:21, 13606:24, 13607:3, 13607:12, 13607:14, 13607:15, 13641:12, 13641:18
**officers** [5] - 13606:25, 13671:21, 13718:22, 13719:11, 13722:6
**officers'** [1] - 13722:12
**OFFICES** [1] - 13573:5
**official** [2] - 13626:3, 13675:1
**Official** [2] - 13573:18, 13723:22
**OFFICIAL** [1] - 13723:16
**often** [1] - 13675:17
**OG** [1] - 13591:4
**older** [2] - 13599:20, 13600:6
**once** [9] - 13597:12, 13630:10, 13639:1, 13639:3, 13650:1, 13653:22, 13654:3, 13656:23, 13690:21
**one** [112] - 13576:9, 13576:21, 13578:11, 13578:13, 13578:17, 13584:5, 13584:22, 13586:17, 13590:25, 13591:3, 13591:8, 13591:19, 13593:6, 13593:11, 13593:22, 13593:24, 13594:12, 13594:23, 13597:20, 13597:25, 13598:6, 13598:7, 13598:24, 13599:2, 13599:8, 13599:16, 13600:12, 13604:9, 13607:2, 13608:22, 13609:4, 13609:12, 13609:14, 13609:17, 13611:14, 13613:22, 13614:6, 13615:6, 13616:21, 13617:25, 13618:13, 13618:16, 13618:20, 13618:21, 13618:23, 13619:20, 13620:23, 13621:13, 13621:17, 13621:18, 13621:24, 13622:1, 13622:13,

13624:3, 13624:8, 13624:9, 13627:5, 13627:13, 13628:1, 13628:5, 13628:20, 13629:18, 13630:25, 13632:1, 13633:2, 13634:20, 13635:23, 13636:15, 13639:12, 13641:8, 13641:9, 13645:23, 13646:4, 13647:12, 13649:8, 13649:10, 13651:14, 13662:6, 13666:12, 13668:20, 13668:22, 13669:7, 13669:15, 13671:20, 13674:23, 13675:23, 13677:11, 13677:16, 13678:13, 13678:22, 13681:6, 13683:1, 13683:10, 13686:4, 13689:21, 13690:6, 13691:18, 13693:25, 13694:7, 13703:1, 13703:16, 13708:5, 13716:17, 13718:16, 13720:17

**one's** [2] - 13594:7, 13613:19

**ones** [5] - 13577:25, 13591:22, 13618:7, 13618:12, 13627:13

**ongoing** [2] - 13615:13, 13616:3

**online** [4] - 13641:14, 13641:21, 13642:4, 13642:15

**open** [6] - 13582:15, 13586:15, 13588:11, 13588:22, 13696:7, 13703:21

**opening** [1] - 13613:5

**Operation** [1] - 13662:21

**operation** [1] - 13676:12

**opinion** [1] - 13624:24

**opponent** [1] - 13640:13

**opportunity** [4] - 13623:10, 13641:25, 13642:6, 13681:16

**opposite** [1] - 13626:12

**Ops** [1] - 13662:16

**orange** [4] - 13700:2, 13700:8, 13700:9

**Orange** [1] - 13572:21

**order** [1] - 13627:19

**original** [4] - 13600:3, 13600:15, 13604:10,

13684:10

**originally** [2] - 13618:5, 13619:17

**ought** [2] - 13584:21, 13593:8

**ounce** [1] - 13630:25

**ourselves** [1] - 13614:2

**outlined** [1] - 13619:20

**outside** [4] - 13589:7, 13589:10, 13589:15, 13717:3

**outstanding** [1] - 13629:14

**outweighed** [2] - 13606:17, 13678:25

**overall** [1] - 13677:22

**overflow** [1] - 13634:18

**overrule** [2] - 13617:9, 13719:14

**overruled** [5] - 13654:1, 13654:13, 13664:6, 13674:8, 13687:3

**overview** [1] - 13636:1

**overwhelming** [1] - 13634:14

**own** [2] - 13601:21, 13659:18

## P

**P.A** [2] - 13573:5, 13573:8

**P.C** [1] - 13573:11

**p.m** [12] - 13578:18, 13591:6, 13594:10, 13594:11, 13595:11, 13613:22, 13693:20, 13701:9, 13704:21, 13718:3, 13723:14

**PAGE** [1] - 13574:2

**page** [4] - 13687:5, 13693:2, 13693:11

**pages** [2] - 13686:19, 13691:18

**Palace** [4] - 13651:14, 13651:16, 13652:9, 13652:15

**pan** [1] - 13590:4

**panel** [1] - 13644:10

**Panman** [5] - 13579:15, 13580:3, 13585:12, 13591:7, 13611:18

**Panman's** [2] - 13579:13, 13579:16

**paper** [1] - 13692:12

**pardon** [1] - 13612:18

**pardoned** [1] - 13612:19

**parentheses** [1] - 13709:11

**Park** [1] - 13573:12

**Parler** [6] - 13599:17, 13602:14, 13602:17, 13629:10, 13629:23, 13664:4

**Part** [1] - 13578:6

**part** [28] - 13575:23, 13600:2, 13602:14, 13602:15, 13606:4, 13622:23, 13623:3, 13623:6, 13625:4, 13630:14, 13632:3, 13649:4, 13655:9, 13662:1, 13662:4, 13662:16, 13662:19, 13662:21, 13671:16, 13671:18, 13673:9, 13677:13, 13678:4, 13678:6, 13682:23, 13683:2, 13683:7, 13698:13

**participating** [1] - 13645:17

**particular** [10] - 13576:12, 13576:19, 13626:24, 13628:24, 13637:6, 13640:19, 13668:12, 13678:20, 13694:19, 13700:14

**particularly** [5] - 13595:8, 13596:11, 13623:16, 13640:2, 13640:7

**parts** [2] - 13700:23, 13700:24

**party** [1] - 13640:13

**passage** [1] - 13603:21

**passes** [2] - 13615:4, 13615:5

**past** [8] - 13597:13, 13689:17, 13689:24, 13689:25, 13690:15, 13690:19, 13691:3, 13691:5

**patently** [1] - 13621:19

**Pattis** [2] - 13572:20, 13575:10

**PATTIS** [1] - 13572:20

**Paul** [1] - 13592:22

**pause** [30] - 13594:14, 13611:15, 13644:9, 13644:12, 13656:3, 13660:7, 13683:12,

13686:9, 13694:6, 13694:10, 13698:19, 13706:23, 13707:1, 13707:16, 13707:20, 13710:17, 13718:10, 13718:24, 13720:10, 13720:11, 13720:18, 13721:1, 13721:3, 13721:9, 13721:11, 13721:14, 13721:16, 13721:18, 13721:22, 13722:25

**pay** [1] - 13629:11

**PC** [1] - 13572:24

**PDF** [1] - 13578:5

**Peace** [2] - 13705:6, 13708:21

**pen** [1] - 13692:12

**people** [37] - 13580:17, 13583:7, 13583:12, 13586:16, 13596:10, 13597:14, 13609:17, 13610:9, 13623:3, 13623:5, 13634:19, 13634:20, 13650:2, 13652:20, 13654:15, 13661:16, 13664:9, 13664:10, 13668:10, 13670:20, 13671:23, 13672:12, 13673:3, 13678:1, 13697:11, 13703:7, 13712:7, 13712:10, 13712:11, 13712:12, 13714:12, 13714:13, 13714:16, 13715:6, 13715:7, 13715:10, 13717:8

**pepper** [1] - 13671:21

**pepper-spraying** [1] - 13671:21

**perceive** [1] - 13612:22

**percent** [2] - 13679:9, 13696:1

**perfectly** [2] - 13585:6, 13620:22

**perhaps** [2] - 13576:18, 13636:8

**permission** [3] - 13685:10, 13706:6, 13708:1

**permission's** [1] - 13685:15

**permitted** [2] - 13587:19, 13688:25

**Person** [2] - 13677:8

**person** [9] - 13596:17, 13641:22, 13648:20, 13661:19, 13673:16,

13677:18, 13677:19, 13681:6

**person's** [3] - 13598:3, 13637:6, 13638:22

**personal** [3] - 13638:19, 13645:14, 13648:23

**personally** [5] - 13600:8, 13603:12, 13609:3, 13653:15, 13663:1

**perspective** [2] - 13582:15, 13582:16

**persuaded** [1] - 13599:4

**persuasive** [2] - 13599:5, 13599:6

**pertains** [1] - 13583:7

**pestering** [1] - 13589:25

**Pezzola** [86] - 13575:6, 13575:15, 13667:25, 13668:2, 13668:16, 13668:19, 13668:24, 13669:19, 13669:22, 13670:1, 13670:16, 13671:13, 13676:23, 13677:1, 13677:2, 13677:12, 13678:3, 13678:6, 13678:7, 13678:20, 13679:3, 13682:23, 13683:2, 13683:4, 13683:19, 13683:22, 13684:6, 13684:15, 13684:21, 13684:24, 13693:12, 13694:20, 13694:24, 13695:3, 13695:4, 13695:22, 13695:25, 13696:14, 13697:5, 13697:11, 13697:16, 13697:19, 13697:23, 13698:3, 13698:25, 13699:3, 13699:24, 13701:20, 13701:25, 13702:9, 13702:16, 13703:10, 13704:5, 13704:6, 13704:9, 13705:17, 13708:6, 13708:9, 13708:19, 13709:7, 13709:12, 13709:15, 13710:13, 13710:22, 13710:25, 13711:25, 13712:6, 13712:13, 13712:15, 13712:24, 13713:11, 13713:19, 13714:12, 13717:4, 13717:11, 13717:17,

13741

13718:9, 13718:17,
13719:3, 13720:8,
13720:13, 13720:22,
13722:5, 13722:11,
13722:15, 13722:16
**PEZZOLA** [1] -
13572:6
**Pezzola's** [9] -
13668:21, 13685:9,
13686:15, 13687:1,
13690:10, 13698:14,
13705:4, 13705:22,
13716:16
**Pezzola-253** [1] -
13707:24
**ph** [1] - 13670:1
**ph]** [1] - 13708:14
**phases** [1] - 13675:20
**phone** [28] - 13647:1,
13647:6, 13647:13,
13647:19, 13647:20,
13647:24, 13648:8,
13648:13, 13648:18,
13649:19, 13649:20,
13649:24, 13651:2,
13653:6, 13653:10,
13653:12, 13656:23,
13675:8, 13679:13,
13702:13, 13702:21,
13702:25, 13703:3,
13703:9, 13703:11,
13703:14
**phone's** [1] - 13650:1
**phones** [5] -
13645:11, 13647:3,
13647:12, 13648:5,
13678:2
**photo** [25] - 13600:6,
13600:10, 13600:13,
13600:15, 13600:23,
13603:21, 13603:22,
13603:25, 13604:17,
13605:2, 13605:4,
13605:7, 13605:22,
13607:8, 13607:9,
13607:11, 13608:13,
13608:14, 13608:23,
13609:16, 13643:16,
13686:6, 13704:24,
13707:6, 13709:4
**photograph** [11] -
13599:17, 13600:3,
13601:7, 13641:21,
13705:19, 13705:24,
13705:25, 13706:1,
13706:4, 13706:10,
13706:14
**photographs** [4] -
13599:16, 13601:13,
13602:25, 13657:6

**phrase** [2] - 13598:2,
13672:17
**picked** [7] - 13576:3,
13598:21, 13609:20,
13626:20, 13628:1,
13664:13, 13664:16
**Pickleback** [1] -
13591:4
**picture** [5] - 13697:13,
13697:16, 13703:14,
13703:15, 13708:23
**pictures** [9] -
13578:20, 13579:17,
13579:24, 13583:4,
13583:16, 13603:6,
13703:5, 13703:7,
13703:11
**piece** [8] - 13599:1,
13601:20, 13620:18,
13648:6, 13668:7,
13690:4, 13706:15
**pieced** [1] - 13664:3
**pieces** [3] - 13621:21,
13640:11, 13680:8
**piggy** [1] - 13635:2
**piggy-back** [1] -
13635:2
**pile** [5] - 13579:20,
13584:7, 13585:3,
13591:16, 13593:7
**pissed** [1] - 13611:21
**place** [3] - 13595:25,
13689:20, 13713:20
**placed** [1] - 13641:21
**plan** [1] - 13663:4
**planned** [11] -
13579:22, 13580:8,
13580:24, 13589:9,
13589:10, 13589:12,
13591:17, 13592:1,
13592:8, 13716:1,
13716:4
**planning** [1] -
13581:12
**play** [15] - 13617:25,
13618:6, 13618:13,
13619:6, 13619:7,
13619:23, 13620:23,
13621:14, 13624:12,
13695:12, 13696:17,
13718:6, 13720:4,
13721:19
**played** [30] - 13620:6,
13621:1, 13621:5,
13621:16, 13621:25,
13624:16, 13637:4,
13669:6, 13694:8,
13694:9, 13695:13,
13695:17, 13695:18,
13696:19, 13698:10,

13698:11, 13698:17,
13698:23, 13699:13,
13711:11, 13711:13,
13712:22, 13713:9,
13715:13, 13718:7,
13718:20, 13720:20,
13720:20, 13721:21,
13722:3
**playing** [3] - 13715:12,
13721:17, 13722:2
**PLLC** [1] - 13572:17
**plug** [1] - 13642:24
**plural** [1] - 13596:17
**podcast** [9] - 13633:5,
13633:7, 13633:11,
13634:22, 13636:21,
13638:16, 13638:17,
13638:22, 13639:2
**podcasts** [2] -
13638:18, 13652:14
**podium** [1] - 13621:6
**point** [43] - 13577:22,
13580:23, 13582:6,
13584:25, 13590:22,
13596:23, 13597:5,
13597:21, 13598:6,
13598:18, 13604:18,
13606:10, 13614:10,
13626:23, 13628:22,
13632:2, 13633:12,
13648:8, 13654:7,
13654:19, 13654:21,
13655:6, 13656:14,
13656:16, 13658:11,
13658:22, 13659:6,
13688:6, 13688:8,
13688:12, 13690:24,
13694:25, 13695:5,
13695:6, 13697:2,
13697:6, 13699:5,
13712:14, 13713:20,
13716:9, 13716:18,
13717:15, 13720:13
**pointed** [3] -
13585:14, 13586:24,
13588:19
**points** [4] - 13680:4,
13689:21, 13690:7,
13693:25
**police** [22] - 13600:1,
13601:18, 13603:4,
13603:7, 13603:23,
13606:21, 13606:24,
13606:25, 13607:12,
13607:13, 13608:24,
13609:1, 13610:18,
13611:4, 13641:12,
13641:18, 13674:22,
13681:25, 13719:3,
13719:11, 13722:6

**Police** [5] - 13601:4,
13719:1, 13722:7,
13722:9, 13722:14
**political** [3] -
13608:21, 13613:6,
13614:25
**politics** [2] - 13615:1,
13626:9
**pool** [1] - 13697:14
**popular** [1] - 13610:10
**pores** [1] - 13589:22
**position** [2] -
13600:11, 13632:25
**positively** [1] -
13603:5
**possession** [1] -
13722:9
**possibilities** [1] -
13585:24
**possibility** [1] -
13627:17
**possible** [3] -
13657:10, 13657:12,
13666:5
**possibly** [7] -
13654:20, 13654:22,
13654:25, 13655:8,
13655:12, 13655:20,
13666:2
**post** [12] - 13581:23,
13581:24, 13581:25,
13596:15, 13597:16,
13602:14, 13606:25,
13608:2, 13615:9,
13624:1, 13625:23,
13629:12
**post-January** [1] -
13625:23
**posted** [10] -
13599:16, 13600:3,
13600:13, 13603:11,
13603:13, 13605:4,
13607:3, 13608:12,
13608:14, 13643:16
**posting** [3] -
13600:22, 13608:22,
13608:23
**posts** [7] - 13580:6,
13581:22, 13581:23,
13599:18, 13599:25,
13629:10, 13638:23
**potentially** [3] -
13713:24, 13714:10,
13716:15
**pound** [1] - 13669:23
**power** [4] - 13577:5,
13577:6, 13608:20,
13612:18
**powerful** [1] -
13622:24

**pre** [1] - 13598:15
**pre-January** [1] -
13598:15
**precede** [1] - 13629:9
**preceding** [1] -
13597:5
**precisely** [1] -
13631:20
**predate** [1] - 13627:11
**predates** [1] -
13627:21
**predicate** [3] -
13598:10, 13605:9,
13642:3
**preemptive** [1] -
13607:6
**preemptively** [3] -
13603:7, 13606:21,
13608:4
**prejudice** [3] -
13603:1, 13606:17,
13611:11
**prejudicial** [3] -
13601:3, 13631:11,
13634:25
**prejudicing** [1] -
13584:4
**preliminary** [3] -
13603:17, 13609:19,
13642:17
**premarked** [1] -
13685:9
**present** [12] - 13575:7,
13575:8, 13575:9,
13575:10, 13575:11,
13575:12, 13575:13,
13596:1, 13604:22,
13613:11, 13642:1,
13642:6
**presentation** [1] -
13587:23
**presented** [3] -
13604:4, 13612:10,
13640:5
**presenting** [3] -
13604:6, 13604:8,
13627:12
**president** [6] -
13624:19, 13625:6,
13625:18, 13634:13,
13634:17
**President** [2] -
13612:16, 13613:14
**pressure** [1] - 13653:1
**pretrial** [4] - 13577:23,
13618:4, 13620:9,
13678:16
**pretty** [6] - 13578:11,
13601:15, 13627:11,
13627:21, 13631:11,

13742

13655:4
**previewed** [1] - 13619:11
**previous** [3] - 13593:3, 13615:21, 13640:23
**primarily** [3] - 13619:22, 13628:20, 13634:19
**print** [1] - 13703:22
**priority** [2] - 13658:19, 13659:16
**privy** [1] - 13714:8
**pro** [3] - 13630:8, 13631:10, 13631:19
**pro-violence** [3] - 13630:8, 13631:10, 13631:19
**probative** [4] - 13583:2, 13596:22, 13606:15, 13606:16
**problem** [8] - 13600:2, 13601:22, 13602:21, 13606:4, 13617:24, 13640:8, 13656:7, 13689:3
**problems** [1] - 13575:25
**proceed** [11] - 13575:18, 13588:5, 13596:6, 13623:13, 13644:16, 13656:1, 13667:9, 13680:15, 13681:24, 13691:13, 13691:14
**proceeding** [2] - 13626:3, 13681:13
**Proceedings** [1] - 13573:21
**proceedings** [1] - 13723:20
**process** [1] - 13651:5
**processed** [1] - 13658:16
**produce** [1] - 13602:9
**produced** [1] - 13573:21
**proffer** [2] - 13600:13, 13641:15
**proffered** [1] - 13601:11
**proffers** [1] - 13643:19
**program** [3] - 13650:22, 13650:23, 13702:22
**programs** [2] - 13702:25, 13703:1
**projecting** [1] - 13639:3
**proof** [1] - 13598:10

**properly** [1] - 13611:5
**proponent** [1] - 13585:23
**proposals** [1] - 13577:7
**propose** [1] - 13582:25
**prosecuted** [1] - 13629:21
**protesters** [2] - 13595:12, 13601:5
**protests** [1] - 13652:3
**Proud** [24] - 13609:4, 13612:20, 13614:9, 13614:10, 13623:3, 13628:21, 13629:19, 13630:13, 13634:14, 13647:9, 13647:17, 13661:12, 13661:14, 13661:15, 13668:7, 13671:1, 13671:2, 13671:4, 13671:5, 13671:8, 13671:11, 13672:3, 13716:21
**prove** [3] - 13604:18, 13608:15, 13625:25, 13631:4, 13631:5, 13679:3
**provide** [4] - 13607:9, 13622:14, 13623:19, 13629:7
**provided** [5] - 13578:5, 13627:9, 13650:1, 13659:5, 13722:14
**providing** [1] - 13663:21
**provision** [1] - 13690:17
**public** [1] - 13600:17
**publish** [2] - 13706:7, 13708:1
**published** [1] - 13703:25
**pull** [4] - 13575:25, 13619:16, 13643:1, 13698:8
**pulled** [2] - 13576:15, 13664:9
**pulling** [1] - 13684:3
**puppy** [2] - 13713:2, 13717:24
**purportedly** [2] - 13607:15, 13633:8
**purpose** [5] - 13596:9, 13609:6, 13621:23, 13628:19, 13640:19
**purposes** [6] - 13598:20, 13640:4, 13640:8, 13650:11,

13674:22, 13689:18
**push** [2] - 13655:3, 13655:7
**pushing** [3] - 13657:7, 13658:11, 13658:13
**put** [31] - 13576:13, 13587:6, 13587:8, 13588:2, 13588:21, 13590:7, 13592:16, 13596:19, 13599:2, 13600:23, 13603:3, 13608:14, 13612:15, 13613:9, 13624:9, 13629:3, 13631:1, 13631:2, 13643:11, 13644:2, 13645:1, 13650:1, 13658:19, 13659:15, 13659:16, 13687:19, 13689:12, 13693:19, 13702:22, 13702:25, 13704:5
**puts** [2] - 13622:19, 13622:21
**putting** [6] - 13581:21, 13582:21, 13584:13, 13607:8, 13635:18, 13692:11

## Q

**quarrel** [1] - 13632:9
**Quested** [1] - 13666:17
**questions** [7] - 13584:18, 13593:9, 13626:22, 13661:22, 13688:13, 13691:7, 13691:8
**quick** [1] - 13690:6
**quickly** [1] - 13597:9
**quiet** [1] - 13623:8
**quite** [2] - 13576:7, 13692:6
**quote** [1] - 13591:11

## R

**radar** [1] - 13614:1
**Rae** [1] - 13592:22
**raise** [5] - 13606:2, 13608:8, 13609:12, 13609:18, 13626:20
**raised** [4] - 13576:20, 13582:11, 13607:1, 13626:21
**raises** [1] - 13623:2
**raising** [1] - 13628:11
**rallies** [2] - 13652:3, 13652:5
**rally** [4] - 13581:7,

13629:15, 13663:17, 13663:19
**rational** [2] - 13606:7, 13606:9
**reach** [1] - 13655:6
**reaching** [1] - 13630:3
**reacting** [1] - 13625:8
**reactions** [1] - 13612:3
**read** [5] - 13593:17, 13646:7, 13655:21, 13690:25, 13709:10
**reading** [2] - 13645:17, 13673:23
**ready** [1] - 13639:10
**real** [4] - 13631:8, 13654:11, 13665:25, 13690:6
**reality** [5] - 13623:1, 13623:5, 13623:7, 13623:15
**realize** [1] - 13624:5
**really** [14] - 13576:23, 13589:22, 13591:21, 13593:8, 13600:5, 13619:12, 13630:9, 13632:12, 13633:20, 13646:11, 13654:21, 13656:16, 13657:13, 13679:1, 13716:1, 13719:22
**reason** [14] - 13583:21, 13589:24, 13603:20, 13606:5, 13606:14, 13611:2, 13613:18, 13629:4, 13631:18, 13633:25, 13638:17, 13642:13, 13648:5, 13649:3
**reasonable** [5] - 13585:7, 13585:11, 13586:1, 13589:14, 13600:21
**reasonably** [1] - 13585:22
**reasoning** [2] - 13598:25, 13619:20
**reasons** [5] - 13583:23, 13584:17, 13605:3, 13607:22, 13652:20
**rebuked** [1] - 13598:24
**rebut** [5] - 13601:2, 13603:7, 13606:21, 13608:4, 13629:22
**rebuttal** [1] - 13607:7
**recap** [1] - 13709:13
**receipts** [1] - 13702:16

**receive** [1] - 13575:19
**receiving** [1] - 13583:14
**recent** [1] - 13693:1
**recently** [1] - 13653:7
**recess** [4] - 13644:6, 13644:7, 13723:13, 13723:14
**reciprocally** [1] - 13613:17
**recognized** [1] - 13681:12
**recollection** [10] - 13650:6, 13650:12, 13660:14, 13662:8, 13689:17, 13689:25, 13690:15, 13690:20, 13691:4, 13691:5
**record** [7] - 13577:1, 13620:13, 13644:13, 13696:21, 13698:20, 13706:11, 13711:22
**recorded** [11] - 13573:21, 13665:6, 13665:25, 13689:17, 13689:25, 13690:15, 13690:20, 13690:22, 13691:6
**recording** [1] - 13664:20
**records** [3] - 13702:13, 13702:21, 13702:25
**recover** [1] - 13656:24
**recovered** [2] - 13645:11, 13647:1
**recurring** [1] - 13606:2
**red** [3] - 13675:24, 13676:6, 13678:11
**redact** [1] - 13607:18
**redacted** [1] - 13607:22
**redacting** [1] - 13603:24
**redaction** [3] - 13603:4, 13607:25, 13608:3
**refer** [2] - 13688:25, 13693:11
**reference** [8] - 13585:18, 13586:7, 13612:18, 13614:21, 13618:24, 13620:2, 13691:1, 13697:23
**referring** [16] - 13580:5, 13580:11, 13580:13, 13585:8, 13590:6, 13598:4, 13611:20, 13614:5,

13743

13614:8, 13646:12, 13673:25, 13690:25, 13691:8, 13693:4, 13693:9
**refers** [1] - 13618:20
**reflect** [2] - 13696:21, 13711:22
**reflected** [1] - 13708:23
**reflecting** [2] - 13635:7, 13697:14
**reflection** [1] - 13721:10
**reflects** [4] - 13613:13, 13614:12, 13696:11, 13696:23
**refresh** [3] - 13650:5, 13660:14, 13662:8
**refreshing** [2] - 13650:11, 13655:23
**regard** [3] - 13576:3, 13627:3, 13635:12
**regarding** [1] - 13635:5
**regardless** [2] - 13606:8, 13608:13
**regards** [4] - 13668:16, 13669:22, 13676:23, 13678:7
**regret** [4] - 13612:6, 13612:7, 13612:9, 13612:13
**regretted** [1] - 13612:7
**regular** [1] - 13598:3
**Rehl** [13] - 13575:4, 13575:14, 13584:15, 13586:4, 13596:25, 13597:7, 13611:10, 13615:8, 13616:6, 13623:25, 13634:18, 13653:7, 13709:12
**REHL** [1] - 13572:5
**Rehl's** [2] - 13653:6, 13653:13
**rejected** [1] - 13615:15
**rejecting** [1] - 13611:8
**related** [2] - 13637:14, 13671:2
**relevance** [32] - 13591:23, 13592:5, 13593:25, 13603:17, 13606:20, 13607:5, 13607:17, 13608:5, 13609:9, 13610:4, 13611:6, 13611:10, 13611:24, 13612:23, 13615:5, 13622:2, 13631:9, 13632:20, 13639:20, 13653:24,

13654:12, 13674:6, 13676:13, 13678:14, 13678:15, 13678:19, 13678:24, 13681:4, 13681:25, 13683:23, 13693:13
**relevant** [40] - 13595:15, 13595:21, 13596:11, 13596:20, 13600:12, 13603:12, 13605:1, 13605:2, 13605:8, 13607:8, 13607:9, 13607:14, 13611:6, 13611:8, 13613:4, 13613:18, 13614:13, 13614:18, 13619:13, 13620:15, 13622:21, 13623:19, 13629:4, 13631:20, 13632:24, 13634:12, 13634:25, 13637:1, 13677:9, 13677:10, 13677:19, 13677:23, 13678:3, 13678:17, 13680:7, 13680:15, 13681:2, 13681:4, 13681:14
**reliance** [1] - 13590:12
**relitigate** [2] - 13622:5, 13624:6
**relying** [1] - 13689:13
**remaining** [1] - 13712:12
**remark** [2] - 13590:4, 13622:25
**remarks** [1] - 13598:14
**remember** [12] - 13606:8, 13631:24, 13666:11, 13666:17, 13669:21, 13675:11, 13692:20, 13692:22, 13697:13, 13697:16, 13698:13, 13702:3
**reminiscent** [1] - 13601:17
**removed** [1] - 13606:6
**reopen** [1] - 13577:12
**reopening** [1] - 13620:8
**repeat** [2] - 13594:2, 13635:25
**rephrase** [3] - 13661:6, 13705:1, 13713:17
**report** [12] - 13579:18, 13580:5, 13580:7, 13580:8, 13649:24, 13650:5, 13650:14, 13650:16, 13651:8,

13651:10, 13651:11, 13651:13
**reported** [1] - 13630:19
**reporter** [1] - 13643:22
**REPORTER** [2] - 13666:14, 13723:16
**Reporter** [3] - 13573:17, 13573:18, 13723:22
**reporting** [3] - 13580:16, 13580:18, 13583:9
**reports** [2] - 13653:17, 13658:12
**represent** [1] - 13667:25
**representation** [2] - 13609:13, 13642:4
**represented** [2] - 13641:10, 13641:12
**request** [3] - 13582:18, 13587:9, 13622:8
**requests** [1] - 13582:11
**require** [1] - 13585:23
**requires** [4] - 13582:24, 13585:25, 13593:13
**respect** [3] - 13577:12, 13622:12, 13623:11
**respond** [2] - 13612:25, 13619:22
**responded** [1] - 13613:16
**responding** [3] - 13625:5, 13632:2, 13633:4
**responds** [3] - 13579:15, 13581:20, 13595:13
**response** [6] - 13579:22, 13580:9, 13585:13, 13629:6, 13646:3, 13659:8
**responses** [1] - 13595:18
**responsibilities** [1] - 13671:2
**responsive** [1] - 13719:13
**rest** [3] - 13643:22, 13716:15, 13716:17
**restricted** [1] - 13640:5
**resume** [1] - 13639:11
**resumed** [1] - 13644:8

**retroactive** [1] - 13587:12
**retroactively** [1] - 13626:2
**Return** [3] - 13659:24, 13682:3, 13691:16
**return** [1] - 13723:13
**returned** [2] - 13644:11, 13723:7
**reverse** [2] - 13600:17, 13622:7
**review** [1] - 13647:20
**reviewed** [3] - 13664:22, 13694:23, 13714:20
**reviewing** [2] - 13645:17, 13703:2
**revolution** [1] - 13623:7
**right-side** [1] - 13706:14
**right-wing** [1] - 13651:18
**rightly** [1] - 13678:18
**rise** [2] - 13644:5, 13723:12
**risk** [1] - 13678:25
**Road** [1] - 13573:2
**Roger** [2] - 13573:14, 13575:13
**ROGER** [1] - 13573:15
**Rohde** [1] - 13683:9
**role** [4] - 13601:24, 13629:8, 13647:22, 13671:1
**rolling** [1] - 13576:16
**room** [4] - 13665:6, 13665:19, 13666:21, 13723:7
**Room** [2] - 13573:18, 13723:23
**Roots** [1] - 13573:14, 13575:13
**ROOTS** [1] - 13573:15
**Rotunda** [1] - 13629:1
**round** [1] - 13711:6
**roundabout** [1] - 13631:3
**RPR** [3] - 13573:17, 13723:17, 13723:22
**Rufio** [7] - 13579:13, 13579:15, 13579:16, 13580:2, 13585:12, 13591:7, 13611:18
**rule** [9] - 13582:23, 13586:25, 13590:8, 13590:17, 13593:22, 13609:23, 13609:24, 13631:12, 13639:9
**Rule** [17] - 13575:20,

13575:23, 13582:11, 13582:20, 13583:22, 13583:24, 13584:12, 13584:21, 13587:8, 13590:13, 13592:16, 13593:2, 13593:25, 13622:7, 13642:10, 13642:11, 13642:12
**ruled** [7] - 13576:11, 13576:22, 13576:25, 13595:19, 13635:17, 13635:21, 13643:18
**rules** [1] - 13611:9
**ruling** [5] - 13587:7, 13624:4, 13637:10, 13638:1, 13639:13
**rulings** [2] - 13633:23, 13637:2
**run** [2] - 13597:11, 13602:1
**Rusch** [1] - 13671:10
**Ryan** [1] - 13697:25

## S

**SA** [1] - 13578:5
**Sabino** [2] - 13573:8, 13575:12
**salacious** [1] - 13595:4
**Samsel** [1] - 13697:25
**satisfied** [1] - 13603:18
**satisfy** [1] - 13598:14
**saving** [1] - 13577:24
**saw** [8] - 13599:9, 13627:2, 13646:13, 13649:5, 13650:7, 13650:16, 13671:20, 13703:15
**scenario** [4] - 13698:15, 13704:17, 13704:23, 13716:24
**scoffing** [2] - 13625:24, 13626:6
**scofflaw** [1] - 13624:21
**scope** [13] - 13589:7, 13589:10, 13589:16, 13629:6, 13658:22, 13659:20, 13659:21, 13665:15, 13676:15, 13678:15, 13680:14, 13682:1, 13702:18
**screaming** [1] - 13651:24
**screen** [7] - 13624:13, 13643:9, 13687:20, 13694:16, 13702:6, 13705:24, 13706:10

**scroll** [1] - 13650:18
**scrutiny** [1] -
   13583:13
**search** [22] -
   13600:18, 13601:9,
   13602:1, 13602:11,
   13604:5, 13604:11,
   13641:13, 13641:16,
   13643:5, 13643:7,
   13649:6, 13649:14,
   13649:18, 13651:14,
   13653:22, 13654:4,
   13654:6, 13654:8,
   13654:24, 13656:6,
   13656:24, 13664:9
**searched** [1] -
   13642:4
**seated** [1] - 13723:8
**second** [15] -
   13594:12, 13595:5,
   13604:12, 13612:13,
   13618:21, 13619:6,
   13620:23, 13621:17,
   13622:11, 13658:4,
   13683:10, 13694:7,
   13703:17, 13720:17,
   13721:15
**seconds** [4] -
   13660:19, 13696:17,
   13711:22, 13720:5
**secret** [4] - 13675:3,
   13675:6, 13675:10
**section** [1] - 13710:23
**see** [63] - 13578:15,
   13578:17, 13578:21,
   13578:24, 13579:7,
   13579:16, 13580:14,
   13585:2, 13586:5,
   13591:8, 13593:8,
   13594:10, 13594:16,
   13603:20, 13607:12,
   13608:1, 13613:5,
   13617:21, 13617:23,
   13619:3, 13619:5,
   13619:7, 13620:21,
   13621:14, 13621:18,
   13622:6, 13622:8,
   13624:13, 13624:25,
   13634:11, 13634:24,
   13635:14, 13645:4,
   13650:7, 13650:14,
   13672:10, 13681:3,
   13684:13, 13687:20,
   13688:11, 13690:6,
   13693:3, 13693:8,
   13694:20, 13694:24,
   13695:15, 13695:22,
   13696:23, 13697:1,
   13700:2, 13703:10,
   13703:14, 13704:2,

13704:18, 13707:3,
   13707:4, 13707:13,
   13709:3, 13709:12,
   13720:22, 13721:25,
   13723:5, 13723:11
**seeing** [2] - 13580:11,
   13716:15
**seeking** [3] -
   13592:24, 13628:14,
   13629:17
**seeks** [1] - 13592:12
**seem** [2] - 13579:21,
   13591:17
**seized** [1] - 13678:2
**Self** [1] - 13683:1
**self** [3] - 13580:22,
   13584:5, 13586:3
**Self-Defense** [1] -
   13683:1
**self-serving** [3] -
   13580:22, 13584:5,
   13586:3
**send** [3] - 13673:20,
   13682:14, 13682:18
**sends** [3] - 13585:9,
   13591:18, 13593:6
**sense** [7] - 13576:1,
   13576:7, 13576:21,
   13585:20, 13588:7,
   13612:9, 13685:4
**sent** [8] - 13591:10,
   13591:12, 13593:6,
   13604:17, 13623:2,
   13658:17, 13674:12,
   13676:23
**sentence** [1] -
   13719:21
**separate** [5] -
   13607:6, 13620:18,
   13677:2, 13677:12,
   13678:21
**separation** [1] -
   13678:6
**series** [4] - 13632:8,
   13692:18, 13693:6,
   13693:7
**serious** [1] - 13583:25
**serving** [3] -
   13580:22, 13584:5,
   13586:3
**SESSION** [1] -
   13572:9
**set** [2] - 13599:9,
   13615:21
**setting** [2] - 13631:7,
   13678:7
**settled** [1] - 13619:21
**sever** [1] - 13616:16
**several** [5] - 13579:12,
   13581:15, 13595:20,

13612:4, 13635:24
**sewing** [1] - 13613:23
**shameless** [1] -
   13621:20
**Shannon** [1] -
   13671:10
**shape** [1] - 13638:16
**share** [1] - 13623:22
**shared** [5] - 13578:20,
   13579:17, 13579:25,
   13583:5, 13583:17
**sharing** [2] -
   13583:18, 13629:10
**shed** [1] - 13626:2
**shield** [9] - 13719:3,
   13719:5, 13719:7,
   13720:13, 13721:6,
   13721:25, 13722:6,
   13722:9, 13722:14
**shit** [11] - 13579:21,
   13584:7, 13585:3,
   13591:16, 13591:17,
   13592:1, 13592:8,
   13593:7, 13611:22
**shooting** [1] - 13660:1
**short** [1] - 13661:22
**shortcut** [1] -
   13627:25
**shorthand** [2] -
   13573:21, 13577:2
**shortly** [1] - 13612:15
**shot** [8] - 13631:9,
   13655:13, 13655:15,
   13655:18, 13657:25,
   13658:1, 13658:2,
   13709:12
**show** [39] - 13580:23,
   13582:25, 13588:10,
   13590:5, 13596:14,
   13600:25, 13602:25,
   13603:6, 13603:10,
   13606:7, 13612:12,
   13619:8, 13621:13,
   13625:22, 13628:20,
   13629:23, 13630:2,
   13630:3, 13630:16,
   13643:2, 13643:8,
   13648:24, 13657:9,
   13678:3, 13680:23,
   13685:8, 13694:4,
   13696:13, 13697:5,
   13699:10, 13699:11,
   13703:14, 13703:23,
   13710:13, 13712:9,
   13714:12, 13714:15,
   13714:18, 13715:9
**showed** [3] - 13650:5,
   13662:7, 13691:19
**showing** [9] -
   13591:23, 13601:11,

13601:23, 13603:17,
   13605:7, 13629:2,
   13629:24, 13642:19,
   13686:14
**shown** [2] - 13630:12,
   13694:13
**shows** [7] - 13580:24,
   13607:15, 13613:15,
   13613:16, 13632:25,
   13633:11, 13707:11
**shut** [14] - 13578:18,
   13579:2, 13579:23,
   13580:3, 13580:10,
   13580:12, 13580:17,
   13582:1, 13583:3,
   13583:7, 13583:12,
   13585:16, 13585:18
**shutting** [1] - 13583:7
**shying** [1] - 13608:9
**sic** [1] - 13708:22
**sic]** [2] - 13614:2,
   13699:2
**side** [19] - 13582:21,
   13593:12, 13600:24,
   13623:12, 13629:3,
   13633:18, 13675:10,
   13675:21, 13675:22,
   13675:25, 13676:3,
   13676:4, 13676:7,
   13678:11, 13689:22,
   13706:12, 13706:14
**sidebar** [3] -
   13658:25, 13676:19,
   13687:12
**sided** [2] - 13678:17,
   13678:18
**sides** [1] - 13623:18
**significant** [1] -
   13693:25
**similar** [6] - 13590:25,
   13599:16, 13613:12,
   13617:4, 13622:24,
   13675:12
**sit** [4] - 13610:25,
   13646:24, 13648:23,
   13690:18
**situation** [2] -
   13593:2, 13633:16
**six** [1] - 13615:4
**skip** [1] - 13685:10
**Skull** [3] - 13613:22,
   13615:9, 13630:19
**slow** [1] - 13721:12
**smart** [5] - 13595:6,
   13596:18, 13596:21,
   13613:25, 13615:3
**smile** [1] - 13607:24
**smiling** [7] -
   13599:24, 13600:4,
   13601:19, 13603:8,

13607:4, 13608:1,
   13641:18
**Smith** [23] - 13572:16,
   13575:9, 13575:20,
   13575:21, 13575:22,
   13577:19, 13583:1,
   13583:5, 13586:23,
   13588:6, 13590:14,
   13590:22, 13592:12,
   13592:19, 13600:6,
   13612:24, 13616:20,
   13619:11, 13619:23,
   13626:1, 13623:10,
   13626:19, 13643:13
**SMITH** [104] -
   13572:17, 13572:20,
   13577:21, 13578:3,
   13578:8, 13578:15,
   13578:23, 13579:1,
   13579:5, 13579:7,
   13579:11, 13582:3,
   13584:22, 13584:25,
   13587:17, 13588:15,
   13588:18, 13588:23,
   13589:1, 13589:4,
   13589:9, 13589:19,
   13590:24, 13591:3,
   13591:6, 13591:10,
   13593:24, 13594:4,
   13594:6, 13594:13,
   13594:16, 13594:19,
   13594:22, 13595:1,
   13597:20, 13597:23,
   13598:17, 13599:7,
   13601:6, 13602:20,
   13602:24, 13603:3,
   13603:15, 13604:3,
   13604:15, 13604:21,
   13605:4, 13605:6,
   13605:13, 13605:16,
   13605:18, 13605:21,
   13605:23, 13606:1,
   13606:19, 13607:11,
   13607:20, 13608:7,
   13609:7, 13609:10,
   13611:14, 13611:17,
   13613:1, 13613:19,
   13614:20, 13615:6,
   13616:21, 13617:6,
   13617:8, 13617:11,
   13617:15, 13617:17,
   13617:25, 13618:3,
   13618:9, 13618:11,
   13618:13, 13618:16,
   13619:2, 13620:3,
   13620:5, 13620:7,
   13620:16, 13620:21,
   13621:2, 13621:8,
   13621:11, 13621:17,
   13622:1, 13624:8,
   13624:11, 13624:15,

13745

13624:17, 13625:10,
13625:12, 13625:15,
13625:21, 13626:16,
13641:9, 13642:14,
13642:23, 13643:1,
13643:8, 13643:12
**Smith's** [4] -
13575:24, 13576:14,
13577:18, 13586:10
**SMS** [1] - 13657:4
**social** [1] - 13596:15
**solely** [1] - 13631:5
**solution** [4] -
13601:21, 13602:21,
13602:22, 13602:23
**someone** [19] -
13594:9, 13595:7,
13595:11, 13598:2,
13604:17, 13606:7,
13607:13, 13607:14,
13609:20, 13624:21,
13641:19, 13643:2,
13672:13, 13672:14,
13672:25, 13704:8,
13708:9
**something's** [1] -
13636:18
**sometime** [1] -
13669:2
**sometimes** [1] -
13613:8
**somewhat** [3] -
13631:19, 13680:23,
13697:18
**soon** [1] - 13630:8
**sorry** [14] - 13596:3,
13610:22, 13615:8,
13617:16, 13639:12,
13660:22, 13666:14,
13666:15, 13667:16,
13681:10, 13681:11,
13682:5, 13698:21,
13708:5
**sort** [15] - 13589:25,
13593:17, 13598:4,
13599:4, 13603:20,
13607:5, 13616:24,
13617:1, 13620:20,
13625:2, 13625:3,
13631:5, 13632:10,
13678:23, 13716:10
**sorts** [2] - 13642:11,
13643:7
**SOS** [1] - 13676:11
**sought** [2] - 13628:17,
13655:5
**sound** [2] - 13620:3,
13667:22
**sounds** [5] -
13590:12, 13656:13,

13685:5, 13685:6,
13688:19
**speaking** [2] -
13596:4, 13623:9
**special** [1] - 13587:21
**Special** [2] -
13667:13, 13686:14
**specialist** [1] -
13676:14
**specific** [18] -
13585:9, 13609:5,
13624:23, 13628:19,
13653:17, 13661:16,
13666:12, 13668:7,
13669:2, 13671:23,
13673:3, 13683:6,
13690:7, 13694:23,
13701:16, 13710:22,
13713:19, 13717:14
**specifically** [15] -
13583:7, 13619:16,
13619:18, 13629:4,
13652:23, 13658:19,
13660:11, 13668:11,
13669:14, 13670:19,
13676:24, 13677:11,
13677:21, 13693:12,
13715:3
**specifics** [1] - 13620:4
**speculation** [2] -
13713:15, 13716:6
**speech** [2] - 13617:1,
13618:25
**spend** [1] - 13676:24
**spending** [2] -
13676:3, 13676:6
**spent** [1] - 13714:19
**spill** [1] - 13637:7
**spoken** [1] - 13656:8
**spot** [3] - 13715:18,
13715:20, 13722:22
**spraying** [5] -
13599:18, 13600:5,
13607:13, 13607:14,
13671:21
**staff** [3] - 13676:12,
13707:17, 13707:18
**stage** [1] - 13628:23
**stand** [4] - 13627:16,
13642:16, 13644:8,
13667:20
**stands** [2] - 13644:6,
13723:13
**staple** [1] - 13614:23
**stark** [1] - 13623:16
**start** [5] - 13577:19,
13668:18, 13694:7,
13699:12, 13713:7
**started** [8] - 13576:16,
13668:5, 13670:2,

13678:1, 13691:25,
13692:2, 13692:3,
13715:23
**starting** [3] -
13596:12, 13696:18,
13720:5
**starts** [3] - 13579:14,
13693:3
**state** [9] - 13595:20,
13596:10, 13596:20,
13614:13, 13614:18,
13626:14, 13628:20,
13637:15, 13639:22
**state-of-mind** [1] -
13626:14
**statement** [34] -
13576:9, 13580:21,
13580:22, 13584:5,
13586:3, 13591:25,
13592:2, 13593:13,
13613:6, 13614:7,
13614:25, 13615:14,
13616:4, 13622:17,
13624:18, 13625:24,
13626:4, 13626:6,
13631:10, 13632:11,
13632:13, 13632:18,
13633:24, 13634:9,
13634:15, 13635:7,
13640:12, 13640:13,
13641:22, 13652:2,
13656:11, 13685:2,
13688:7
**statements** [22] -
13577:2, 13583:3,
13586:16, 13586:18,
13587:1, 13587:14,
13587:19, 13591:21,
13597:7, 13597:18,
13598:21, 13614:3,
13616:24, 13632:9,
13633:22, 13636:6,
13636:7, 13636:15,
13640:18, 13640:21,
13641:7, 13659:18
**STATES** [3] - 13572:1,
13572:2, 13572:10
**states** [1] - 13647:9
**States** [4] - 13572:12,
13575:3, 13644:14,
13723:23
**staying** [1] - 13702:16
**Steal** [1] - 13629:15
**steam** [1] - 13586:4
**steaming** [4] -
13579:20, 13584:7,
13585:3, 13591:16
**stenographic** [1] -
13723:19
**step** [4] - 13689:21,

13703:16, 13723:9
**steps** [1] - 13723:10
**Steven** [2] - 13573:11,
13575:12
**Stewart** [2] -
13632:10, 13657:14
**stick** [1] - 13680:13
**sticks** [1] - 13606:11
**still** [19] - 13600:24,
13602:6, 13603:25,
13615:12, 13615:13,
13616:3, 13617:12,
13621:19, 13638:24,
13690:14, 13694:24,
13695:22, 13697:5,
13707:11, 13707:23,
13712:12, 13715:18,
13720:8, 13722:5
**Stockton** [1] - 13594:9
**Stop** [1] - 13629:15
**stop** [6] - 13690:11,
13695:19, 13696:20,
13701:1, 13711:21,
13714:9
**stopped** [4] -
13589:13, 13696:21,
13699:2, 13711:22
**storm** [1] - 13633:17
**stormed** [1] -
13621:20
**storming** [2] -
13618:20, 13622:23
**story** [1] - 13600:20
**straight** [2] - 13638:5,
13677:5
**straightforward** [1] -
13578:9
**strange** [1] - 13607:21
**strategy** [1] - 13655:9
**Street** [7] - 13572:14,
13572:17, 13572:21,
13572:24, 13573:5,
13573:9, 13662:21
**stretch** [2] - 13580:18,
13623:24
**stricken** [1] -
13719:13
**strike** [2] - 13719:16,
13719:18
**strong** [4] - 13593:20,
13609:4, 13613:25,
13615:3
**stronger** [1] - 13629:2
**stuck** [1] - 13592:23
**studying** [1] -
13691:25
**stuff** [11] - 13576:15,
13577:16, 13592:5,
13626:19, 13638:24,
13641:5, 13651:6,

13656:15, 13657:14,
13680:2, 13707:17
**subjective** [1] -
13653:25
**submitted** [1] -
13619:17
**subordinates** [1] -
13596:8
**substance** [1] -
13582:22
**substantial** [1] -
13584:2
**substantially** [1] -
13606:16
**substantive** [1] -
13626:1
**success** [1] -
13719:25
**sufficient** [2] -
13605:9, 13609:18
**suggest** [6] -
13575:18, 13604:20,
13606:25, 13607:18,
13624:22, 13635:14
**suggested** [1] -
13611:3
**suggesting** [7] -
13580:6, 13586:16,
13596:18, 13601:20,
13604:24, 13631:5,
13643:11
**suggestion** [11] -
13591:25, 13601:3,
13601:8, 13602:24,
13603:7, 13604:11,
13606:21, 13607:13,
13621:12, 13642:2,
13642:7
**suggests** [4] -
13593:4, 13600:18,
13601:12, 13612:18
**Suite** [2] - 13572:18,
13573:6
**summarizing** [1] -
13630:5
**summary** [2] -
13636:1, 13636:12
**summoned** [2] -
13596:1, 13596:8
**supported** [1] -
13613:17
**supporting** [1] -
13609:11
**suppose** [1] - 13582:4
**supposed** [1] -
13663:9
**supposedly** [1] -
13602:25
**Supreme** [2] -
13630:7, 13681:22

**surrounded** [1] -
13684:15
**surrounding** [1] -
13611:20
**suspect** [1] - 13602:23
**sustain** [3] -
13659:21, 13681:7,
13719:15
**sustained** [20] -
13651:22, 13656:20,
13657:17, 13657:22,
13660:6, 13661:7,
13663:7, 13663:12,
13664:1, 13665:16,
13683:24, 13687:3,
13693:15, 13702:19,
13708:17, 13709:25,
13710:10, 13716:5,
13716:7
**Sweepers** [1] -
13662:21
**sympathize** [1] -
13608:2
**system** [8] - 13650:2,
13650:4, 13650:16,
13674:3, 13675:8,
13675:13, 13675:22,
13675:23

# T

**table** [1] - 13596:4
**talks** [6] - 13610:25,
13614:12, 13614:15,
13622:9, 13712:11,
13715:7
**target** [7] - 13671:25,
13672:5, 13672:14,
13672:16, 13672:22,
13672:25
**targets** [1] - 13672:2
**TARRIO** [1] - 13572:6
**Tarrio** [24] - 13575:5,
13575:15, 13627:6,
13629:10, 13629:17,
13629:23, 13629:24,
13630:14, 13630:15,
13630:19, 13631:6,
13631:17, 13632:1,
13633:1, 13633:8,
13634:13, 13635:3,
13635:5, 13635:6,
13635:8, 13646:1,
13653:6, 13678:1
**Tarrio's** [6] - 13629:7,
13633:12, 13653:7,
13653:10, 13653:12,
13679:13
**taste** [1] - 13626:9
**tasteful** [1] - 13626:5

**team** [7] - 13595:11,
13673:10, 13682:15,
13682:20, 13682:22,
13702:10, 13714:24
**technical** [3] -
13575:25, 13617:23,
13617:24
**technically** [2] -
13624:4, 13709:9
**technology** [1] -
13718:16
**tee** [1] - 13617:21
**teeing** [1] - 13619:9
**Telegram** [7] -
13589:21, 13608:19,
13628:24, 13636:20,
13648:12, 13648:15,
13664:4
**Telegrams** [1] -
13589:22
**Templar** [6] - 13594:8,
13594:9, 13594:17,
13595:7, 13596:21,
13598:11
**Templar's** [1] -
13598:13
**term** [2] - 13652:10,
13652:12
**terminology** [1] -
13674:25
**terms** [4] - 13593:20,
13593:21, 13612:13,
13614:18
**territory** [1] -
13642:12
**terrorism** [1] -
13597:21
**terrorists** [5] -
13595:6, 13596:22,
13597:25, 13598:3,
13598:14
**testified** [11] -
13582:13, 13582:14,
13627:23, 13649:3,
13653:1, 13677:16,
13680:14, 13682:7,
13686:22, 13689:16,
13711:17
**testify** [10] - 13600:14,
13602:4, 13627:17,
13648:20, 13689:8,
13689:9, 13689:13,
13691:6, 13691:11
**testifying** [2] -
13589:20, 13715:8
**testimony** [11] -
13582:10, 13582:25,
13588:11, 13595:22,
13628:19, 13628:25,
13633:9, 13659:11,

13689:1, 13689:20,
13691:25
**tethered** [1] -
13625:17
**text** [8] - 13580:19,
13581:16, 13589:6,
13589:15, 13591:22,
13603:25, 13604:2,
13662:23
**THE** [307] - 13572:1,
13572:1, 13572:9,
13575:2, 13575:16,
13577:3, 13577:8,
13577:15, 13577:17,
13578:2, 13578:7,
13578:13, 13578:22,
13578:24, 13579:2,
13579:6, 13579:10,
13581:19, 13582:4,
13584:24, 13586:9,
13586:11, 13586:22,
13587:24, 13588:13,
13588:16, 13588:20,
13588:25, 13589:2,
13589:8, 13589:17,
13590:7, 13590:18,
13590:20, 13591:2,
13591:5, 13591:9,
13592:10, 13593:11,
13594:2, 13594:5,
13594:12, 13594:15,
13594:18, 13594:21,
13594:25, 13595:16,
13596:3, 13597:2,
13597:8, 13597:22,
13598:16, 13598:18,
13599:9, 13599:19,
13599:21, 13599:24,
13600:9, 13602:2,
13602:6, 13602:12,
13602:16, 13602:18,
13602:22, 13603:2,
13603:9, 13603:14,
13603:19, 13604:14,
13604:16, 13605:2,
13605:5, 13605:11,
13605:14, 13605:17,
13605:19, 13605:22,
13605:24, 13606:12,
13607:8, 13607:18,
13608:6, 13608:8,
13609:23, 13610:2,
13610:8, 13610:12,
13610:14, 13610:16,
13610:20, 13610:23,
13611:1, 13611:13,
13611:16, 13611:25,
13612:24, 13613:7,
13614:11, 13615:2,
13615:17, 13615:19,
13615:22, 13616:2,

13616:7, 13616:9,
13616:11, 13616:14,
13616:17, 13617:4,
13617:7, 13617:9,
13617:12, 13617:16,
13617:19, 13618:2,
13618:8, 13618:10,
13618:12, 13618:15,
13619:1, 13619:9,
13619:25, 13620:10,
13620:12, 13620:25,
13621:6, 13621:9,
13622:5, 13622:15,
13623:8, 13623:21,
13623:23, 13624:2,
13624:10, 13624:14,
13625:2, 13625:11,
13625:13, 13625:16,
13626:11, 13626:18,
13627:13, 13627:25,
13628:6, 13628:11,
13630:17, 13630:22,
13631:21, 13632:21,
13633:13, 13634:3,
13634:7, 13634:10,
13634:23, 13635:9,
13635:20, 13636:11,
13636:14, 13636:25,
13637:4, 13637:8,
13637:11, 13637:13,
13637:21, 13637:23,
13637:25, 13638:2,
13638:4, 13638:8,
13638:10, 13638:14,
13639:6, 13639:17,
13639:21, 13639:25,
13640:11, 13640:17,
13641:6, 13642:8,
13642:21, 13642:25,
13643:4, 13643:10,
13643:13, 13644:5,
13644:10, 13644:13,
13644:16, 13646:16,
13646:18, 13651:22,
13654:1, 13654:13,
13654:14, 13656:1,
13656:18, 13656:20,
13657:17, 13657:21,
13658:25, 13659:7,
13659:10, 13659:14,
13659:19, 13659:23,
13660:6, 13661:5,
13661:7, 13662:11,
13663:7, 13663:12,
13664:1, 13664:6,
13664:7, 13665:16,
13666:14, 13667:3,
13667:5, 13667:6,
13667:9, 13674:8,
13676:14, 13676:16,
13676:18, 13676:21,

13677:6, 13677:14,
13678:9, 13679:14,
13679:18, 13679:20,
13680:6, 13680:12,
13680:17, 13680:21,
13680:25, 13681:9,
13681:11, 13681:16,
13681:21, 13681:23,
13683:14, 13683:24,
13685:12, 13685:15,
13685:18, 13685:19,
13685:21, 13685:25,
13686:2, 13686:6,
13686:8, 13686:11,
13687:3, 13687:7,
13687:8, 13687:9,
13687:11, 13687:12,
13687:14, 13687:18,
13687:24, 13688:3,
13688:5, 13688:16,
13688:18, 13688:20,
13688:22, 13689:2,
13689:5, 13689:7,
13689:23, 13690:9,
13690:14, 13691:3,
13693:15, 13696:5,
13696:9, 13698:20,
13702:19, 13703:18,
13705:2, 13706:1,
13706:4, 13706:9,
13706:16, 13706:20,
13706:25, 13707:9,
13707:10, 13707:21,
13707:25, 13708:1,
13708:17, 13709:25,
13710:10, 13716:5,
13716:7, 13718:11,
13719:14, 13719:18,
13719:24, 13720:3,
13723:4, 13723:8,
13723:11, 13723:12
**theirs** [1] - 13623:15
**theme** [2] - 13606:2,
13613:20
**themselves** [5] -
13609:21, 13610:6,
13610:7, 13610:17,
13612:22
**theory** [6] - 13584:6,
13598:21, 13598:25,
13599:13, 13630:23,
13659:3
**therefore** [1] -
13690:23
**they've** [6] - 13598:12,
13606:20, 13610:2,
13640:7, 13679:13,
13712:13
**thinks** [1] - 13613:25
**third** [10] - 13618:21,

13747

13618:23, 13620:23, 13621:24, 13657:25, 13658:1, 13658:2, 13658:4, 13658:7

**thoughts** [1] - 13666:21

**thousands** [1] - 13714:23

**thread** [3] - 13581:6, 13581:10, 13594:20

**three** [18] - 13595:10, 13597:10, 13618:4, 13618:7, 13618:9, 13619:18, 13619:19, 13620:18, 13653:18, 13672:20, 13674:10, 13674:15, 13674:17, 13674:18, 13674:19, 13680:4, 13705:15

**threshold** [2] - 13613:10, 13614:19

**thrilled** [1] - 13612:5

**throughout** [6] - 13598:9, 13640:2, 13648:18, 13670:25, 13682:6, 13697:9

**thumbnail** [2] - 13707:2, 13707:5

**tie** [1] - 13644:22

**tight** [1] - 13578:11

**timeline** [12] - 13680:3, 13680:6, 13680:20, 13681:2, 13687:17, 13688:14, 13692:3, 13692:8, 13693:19, 13693:22, 13693:23, 13697:18

**timelines** [1] - 13679:9

**timing** [1] - 13577:16

**Timothy** [1] - 13573:17

**TIMOTHY** [2] - 13572:9, 13723:17

**TinEye** [2] - 13641:17, 13641:24

**TinEye's** [1] - 13643:1

**title** [1] - 13634:14

**today** [7] - 13646:24, 13647:7, 13648:23, 13667:15, 13667:17, 13667:20, 13707:18

**together** [5] - 13593:9, 13648:6, 13664:4, 13693:19

**tons** [2] - 13613:23, 13664:9

**took** [8] - 13581:12, 13612:4, 13612:16, 13622:23, 13623:3,

13623:6, 13646:19, 13698:1

**tools** [9] - 13595:4, 13595:20, 13595:25, 13596:14, 13596:20, 13597:14, 13598:6, 13598:8, 13604:7

**top** [4] - 13608:22, 13629:19, 13696:5, 13707:3

**topics** [1] - 13593:15

**total** [1] - 13589:24

**totality** [2] - 13583:17, 13628:23

**towards** [7] - 13678:5, 13700:17, 13704:12, 13704:23, 13705:5, 13705:6, 13708:21

**transcript** [4] - 13573:21, 13619:17, 13723:19, 13723:20

**TRANSCRIPT** [1] - 13572:8

**transcription** [1] - 13573:21

**transpired** [2] - 13627:23, 13629:9

**traveling** [3] - 13697:2, 13705:4, 13705:6

**Trevor** [2] - 13671:10, 13671:20

**TRIAL** [1] - 13572:8

**trial** [3] - 13584:6, 13628:23, 13642:11

**tries** [2] - 13579:21, 13591:17

**trucks** [5] - 13671:19, 13698:5, 13701:8, 13701:9, 13701:13, 13701:15

**true** [9] - 13585:10, 13598:5, 13607:3, 13619:4, 13639:21, 13643:6, 13653:5, 13723:18, 13723:19

**Trump** [25] - 13578:21, 13579:5, 13579:13, 13579:14, 13579:18, 13579:19, 13580:6, 13580:21, 13581:5, 13581:6, 13581:7, 13581:11, 13581:23, 13585:9, 13591:7, 13591:18, 13591:21, 13592:2, 13592:5, 13593:6, 13595:13, 13611:23, 13612:10, 13612:19, 13613:14

**Trump's** [2] - 13585:3, 13612:18

**truth** [10] - 13580:23, 13581:9, 13584:8, 13639:15, 13639:19, 13639:23, 13640:9, 13640:13, 13641:1, 13641:3

**try** [6] - 13575:18, 13583:5, 13657:25, 13667:19, 13707:9, 13707:14

**trying** [15] - 13581:7, 13584:1, 13627:3, 13628:10, 13629:21, 13636:2, 13638:21, 13640:14, 13646:10, 13670:23, 13676:2, 13679:18, 13695:2, 13719:22, 13719:25

**turn** [2] - 13604:12, 13658:7

**turned** [2] - 13620:5, 13641:18

**turtles** [1] - 13594:24

**twisted** [1] - 13581:12

**two** [25] - 13576:10, 13581:14, 13581:22, 13586:24, 13587:1, 13587:14, 13587:16, 13589:20, 13595:18, 13596:24, 13612:7, 13618:16, 13618:19, 13619:4, 13619:6, 13622:13, 13624:6, 13628:9, 13664:8, 13666:18, 13669:23, 13678:23, 13694:19

**two-pound** [1] - 13669:23

**two-year-long** [1] - 13664:8

**type** [3] - 13582:12, 13582:23, 13613:12

**types** [2] - 13612:7, 13674:16

**U**

**U.S** [3] - 13572:14, 13573:18, 13595:12

**ultimately** [4] - 13658:14, 13677:1, 13678:4, 13703:9

**unclassified** [4] - 13674:12, 13674:20, 13675:21, 13676:4

**under** [19] - 13582:23, 13584:1, 13584:20, 13587:3, 13587:15,

13590:13, 13592:16, 13615:15, 13630:22, 13632:4, 13633:23, 13635:9, 13637:12, 13637:14, 13637:16, 13642:11, 13678:25, 13706:7

**underneath** [1] - 13603:22

**understood** [9] - 13588:17, 13645:12, 13647:3, 13653:15, 13657:23, 13659:22, 13664:13, 13682:2, 13689:14

**unfair** [1] - 13606:17

**unfairly** [2] - 13584:4, 13629:21

**unfortunately** [1] - 13660:16

**UNITED** [3] - 13572:1, 13572:2, 13572:10

**United** [4] - 13572:12, 13575:3, 13644:14, 13723:23

**universe** [1] - 13660:13

**University** [1] - 13579:19

**unless** [5] - 13582:8, 13605:9, 13648:18, 13688:9, 13723:2

**unnecessary** [1] - 13622:4

**unrecoverable** [1] - 13648:14

**unsure** [2] - 13662:6, 13662:25

**up** [67] - 13576:1, 13576:17, 13577:9, 13577:17, 13578:19, 13579:3, 13579:23, 13580:3, 13580:10, 13580:12, 13580:18, 13582:1, 13583:4, 13583:7, 13583:12, 13585:16, 13585:18, 13588:3, 13597:11, 13597:15, 13599:10, 13604:12, 13610:22, 13614:14, 13617:21, 13619:9, 13624:9, 13627:2, 13627:16, 13628:13, 13631:7, 13636:16, 13642:16, 13643:1, 13643:9, 13644:22, 13645:2, 13648:24, 13650:18, 13651:2, 13652:10, 13655:5, 13656:13,

13664:13, 13664:16, 13668:11, 13668:25, 13669:24, 13671:15, 13671:19, 13678:7, 13684:3, 13689:6, 13689:11, 13689:12, 13691:9, 13696:5, 13698:8, 13700:16, 13701:12, 13703:21, 13705:10, 13706:20, 13711:6, 13713:5, 13714:3

**update** [1] - 13641:9

**upset** [1] - 13613:4

**user** [1] - 13648:17

**uses** [2] - 13587:21, 13598:2

**UTC-8** [3] - 13591:11, 13591:13, 13591:15

**V**

**vague** [3] - 13614:7, 13661:1, 13665:9

**valid** [1] - 13583:22

**value** [4] - 13596:23, 13606:15, 13606:16, 13608:12

**variety** [1] - 13649:8

**various** [5] - 13597:15, 13607:22, 13611:3, 13673:13, 13673:14

**veer** [1] - 13687:15

**version** [7] - 13600:15, 13600:16, 13605:7, 13641:17, 13642:5

**versus** [3] - 13623:1, 13623:7, 13623:15

**veteran** [1] - 13629:13

**Vetting** [1] - 13662:19

**vicinity** [1] - 13709:5

**viciously** [1] - 13609:1

**video** [55] - 13596:15, 13604:7, 13617:16, 13618:17, 13619:23, 13620:6, 13620:18, 13621:13, 13622:7, 13622:10, 13622:11, 13622:18, 13622:25, 13623:24, 13624:3, 13624:10, 13624:11, 13624:12, 13628:25, 13630:11, 13641:22, 13660:1, 13666:8, 13687:22, 13689:12, 13695:18, 13695:24, 13698:9, 13699:15, 13699:18, 13699:24,

13748

13700:13, 13700:19, 13701:1, 13701:2, 13701:17, 13701:20, 13701:22, 13701:25, 13712:4, 13714:14, 13714:17, 13714:18, 13714:20, 13714:25, 13715:11, 13717:1, 13717:13, 13717:25, 13718:6, 13720:4, 13720:17, 13720:20, 13720:22

**Video** [20] - 13621:1, 13621:16, 13621:25, 13624:16, 13694:9, 13695:13, 13695:18, 13696:19, 13698:11, 13698:23, 13699:13, 13711:13, 13712:22, 13713:9, 13715:13, 13718:7, 13718:20, 13720:6, 13721:21, 13722:3

**videos** [27] - 13575:24, 13578:20, 13579:3, 13579:17, 13579:24, 13583:4, 13583:16, 13617:17, 13617:18, 13617:22, 13618:4, 13618:16, 13618:20, 13619:17, 13620:19, 13623:2, 13626:19, 13636:21, 13664:22, 13665:2, 13666:4, 13692:2, 13692:10, 13694:22, 13696:13, 13697:4, 13710:12

**view** [8] - 13622:12, 13623:22, 13650:4, 13707:2, 13707:3, 13707:4, 13707:5

**violence** [4] - 13630:6, 13630:8, 13631:10, 13631:19

**violent** [2] - 13601:5, 13623:6

**virtue** [1] - 13615:1

**visually** [1] - 13689:16

**voice** [1] - 13660:9

**voiced** [1] - 13600:7

## W

**wait** [2] - 13698:8, 13719:20

**waiver** [1] - 13582:17

**walk** [2] - 13687:23, 13694:17

**walking** [1] - 13704:11

**wandering** [1] - 13717:24

**wants** [5] - 13583:12, 13586:19, 13587:4, 13603:6, 13656:9

**war** [2] - 13614:14, 13632:3

**warning** [1] - 13681:5

**warrant** [7] - 13653:23, 13654:4, 13654:8, 13654:24, 13656:6, 13656:24, 13664:9

**Washington** [10] - 13572:5, 13572:15, 13572:25, 13573:19, 13596:1, 13596:2, 13596:8, 13673:3, 13673:12, 13723:24

**watched** [5] - 13666:8, 13692:10, 13694:2, 13694:22, 13699:15

**watching** [1] - 13666:3

**ways** [1] - 13611:5

**weak** [2] - 13602:6, 13626:7

**weapon** [1] - 13608:20

**wearing** [1] - 13700:9

**webpage** [1] - 13642:15

**website** [2] - 13641:25, 13643:1

**websites** [1] - 13652:15

**Wednesday** [1] - 13572:6

**week** [1] - 13656:6

**weeks** [3] - 13616:23, 13638:16, 13639:3

**weight** [1] - 13633:3

**weird** [1] - 13587:5

**West** [1] - 13573:9

**whatnot** [1] - 13632:3

**whatsoever** [4] - 13609:15, 13621:3, 13635:6, 13663:24

**Whitley** [1] - 13681:20

**whole** [8] - 13607:24, 13630:23, 13634:1, 13634:2, 13634:5, 13641:2, 13717:8

**wild** [1] - 13630:10

**William** [1] - 13716:21

**window** [3] - 13578:17, 13712:18, 13718:4

**wing** [1] - 13651:18

**winner** [1] - 13632:1

**Winter** [4] - 13651:14,

13651:16, 13652:9, 13652:15

**wish** [1] - 13632:22

**wishes** [1] - 13633:12

**withdrawn** [2] - 13673:5, 13693:17

**WITNESS** [10] - 13574:2, 13654:14, 13664:7, 13667:3, 13667:6, 13676:14, 13687:8, 13687:11, 13707:9, 13718:11

**Witness** [1] - 13723:10

**witness** [28] - 13576:17, 13577:13, 13587:11, 13587:14, 13606:23, 13635:15, 13639:11, 13640:17, 13642:15, 13642:19, 13643:25, 13644:3, 13644:8, 13650:11, 13671:24, 13672:13, 13679:11, 13680:13, 13685:11, 13688:8, 13688:9, 13690:21, 13694:4, 13694:8, 13699:10, 13703:25, 13719:20

**witnesses** [2] - 13589:20, 13640:23

**Wolkind** [1] - 13657:14

**woman** [3] - 13622:3, 13622:18, 13622:20

**word** [8] - 13584:22, 13592:21, 13601:25, 13602:3, 13611:23, 13622:3, 13672:16, 13672:17

**words** [10] - 13579:24, 13583:5, 13583:16, 13597:14, 13603:21, 13612:20, 13612:21, 13654:18, 13655:19, 13655:21

**works** [1] - 13651:1

**worth** [1] - 13636:16

**Wren** [1] - 13670:1

**write** [1] - 13655:7

**wrongly** [1] - 13601:19

**wrote** [2] - 13641:19, 13886:5

## Y

**year** [4] - 13656:15, 13664:8, 13670:25, 13672:3

**years** [1] - 13672:20

**yesterday** [8] - 13577:12, 13644:22, 13649:3, 13649:13, 13652:17, 13659:11, 13661:23, 13686:4

**York** [6] - 13572:18, 13573:13, 13668:22, 13669:4, 13669:5, 13673:6

**yourself** [1] - 13682:11

**YutYut** [1] - 13646:7

## Z

**Zach** [1] - 13586:3

**Zachary** [4] - 13575:4, 13584:15, 13596:25, 13597:7

**zoom** [1] - 13646:6