**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

UNITED STATES OF AMERICA

v.

ETHAN NORDEAN et al.,

*Defendants.*

</td><td>

Criminal Action No. 21-175 (TJK)

</td></tr>
</table>

## <u>MEMORANDUM</u>

After hearing the evidence for several months, the jury in this case convicted Ethan Nordean, Joseph Biggs, Zachary Rehl, and Dominic Pezzola of serious crimes in connection with the attack on the U.S. Capitol on January 6, 2021.  ECF No. 804.  The counts of conviction for Nordean, Biggs, and Rehl included Seditious Conspiracy, in violation of 18 U.S.C. § 2384, Conspiracy to Prevent an Officer from Discharging Any Duties, in violation of 18 U.S.C. § 372, Obstruction of Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), and Destruction of Government Property, in violation of 18 U.S.C. § 1361.  ECF No. 804 at 1, 3–5. The counts of conviction for Pezzola included all the above except Seditious Conspiracy, and also included Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), Robbery of Personal Property of the United States, in violation of 18 U.S.C. § 2112, and a second conviction for Destruction of Government Property—for breaking a Capitol window, thereby helping to create the first entry point through which hundreds of rioters streamed into the building.[1]

---

[1] The jury also acquitted Nordean, Biggs, Rehl and Pezzola of other offenses and failed to reach a verdict on a few more.  ECF No. 804.  In addition, the counts of conviction for Nordean, Biggs, and Rehl included Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), and, for Nordean, Biggs, Rehl, and Pezzola, Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), *id.* at 2–3, convictions unlikely to be affirmed on appeal after the Supreme Court's decision in *Fischer v. United States*, 603 U.S. 480 (2024).

*Id.* at 3–8.  A few months later, the Court imposed substantial sentences on all of them, in part to deter them (and others) from committing similar crimes again.  *See* ECF Nos. 902, 905, 912, and 915; *see also* 18 U.S.C. § 3553(a)(2)(B) (instructing courts to consider the need for the sentence "to afford adequate deterrence to criminal conduct").

On January 20, 2025, upon taking office, President Trump signed an executive order that both commuted the sentences of Nordean, Biggs, Rehl, and Pezzola and granted "a full, complete and unconditional pardon" to their co-defendant Enrique Tarrio and the hundreds of "other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021."  Proclamation No. 10887, 90 Fed. Reg. 8331, 8331 (Jan. 20, 2025) (the "Executive Order").

On April 14, 2026, the Government moved in the Court of Appeals to vacate the convictions of Nordean, Biggs, Rehl, and Pezzola, and to remand the case for consideration of a motion to dismiss the case with prejudice.  *See United States v. Nordean*, No. 23-3159 (D.C. Cir. Apr. 14, 2026), Dkt. No. 2168667.  Although briefing of the appeal had not yet begun, the Government represented that in its view, this course of action was in the interests of justice.  *Id.* at 2, 3.  And in doing so, it cited the Executive Order.  The motion was unopposed.  The Court of Appeals granted it and vacated the judgments reflecting the crimes for which Nordean, Biggs, Rehl, and Pezzola were convicted, concluding that doing so was "just under the circumstances."  *See Nordean*, No. 23-3159 (D.C. Cir. May 21, 2026), Dkt. No. 2174532; *see also* ECF Nos. 1091–94.

The Government now moves, again unopposed, to dismiss this case against Nordean, Biggs, Rehl, and Pezzola with prejudice under Federal Rule of Criminal Procedure 48(a).  It reiterates that it has determined "in its prosecutorial discretion that dismissal . . . is in the interests of justice."  ECF No. 1090 at 1.  Under that Rule, "[t]he government may, with leave of court, dismiss

an indictment." Fed. R. Crim. P. 48(a); *see also United States v. Poindexter*, 719 F. Supp. 6, 10–12 (D.D.C. 1989). For the below reasons, the Court will grant the motion and dismiss the case with prejudice.

The "Executive's primacy in criminal charging decisions is long settled." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016). That authority stems from the Constitution's "delegation of 'take Care' duties, U.S. Const. art. II, § 3, and the pardon power, *id*. § 2, to the Executive." *Id*. "Decisions to initiate charges, or to dismiss charges once brought, 'lie[ ] at the core of the Executive's duty to see to the faithful execution of the laws.'" *Id*. (quoting *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986)). Thus, "[t]he Supreme Court . . . has repeatedly emphasized that '[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.'" *Id*. (quoting *United States v. Batchelder*, 442 U.S. 114, 124 (1979)).

Against this backdrop, although Rule 48(a) requires "leave of court" before dismissing charges, "decisions to dismiss pending criminal charges—no less than decisions to initiate charges and to identify which charges to bring—lie squarely within the ken of prosecutorial discretion." *Fokker Servs. B.V.*, 818 F.3d at 742. "To that end, the Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges." *Id*.; *see also Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to . . . dismiss a proceeding once brought."). Instead, the "principal object of the leave of court requirement has been understood to be a narrow one—to protect a defendant against prosecutorial harassment . . . when the [g]overnment moves to dismiss an indictment over the defendant's objection." *Fokker Servs. B.V.*, 818 F.3d at 742

(citation modified) (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)). "A court thus reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant through repeated efforts to bring—and then dismiss—charges." *Id*. (citation omitted). "So understood, the 'leave of court' authority gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority. For instance, a court cannot deny leave of court because of a view that the defendant should stand trial notwithstanding the prosecution's desire to dismiss the charges . . . The authority to make such determinations remains with the Executive." *Id*.

The Court will grant the motion because there are no grounds for it to withhold leave for the Government to dismiss the case with prejudice. The motion requests dismissal *with* prejudice and is unopposed, so there is no cause for the Court to be concerned about prosecutorial harassment. And whatever else Rule 48(a)'s leave of court provision might demand in different circumstances, in light of fundamental separation of powers principles and the instructions of the Court of Appeals referenced above, the proper course here is for the Court simply to grant the motion in full.

To be sure, in *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973), the Court of Appeals gestured at a seemingly broader role for a court—at least in some circumstances in which the government seeks to dismiss a criminal case under Rule 48(a) without opposition from a defendant—to demand a detailed statement of reasons for the dismissal and to satisfy itself that the government's reasons are "substantial." *See Ammidown*, 497 F.2d at 620. But, for several reasons, that passage does not mean that the Court has a further role here or suggest that there are potential grounds for it to deny the motion.

4

First, there is little mystery about why the Government is moving to dismiss this case, or whether dismissal is in fact what the Executive seeks. President Trump's views about the prosecution of those who attacked the U.S. Capitol on January 6—whether those views are based on fact or fiction—are well known, as is his intention to extend clemency to them through the Executive Order. The Government's request to dismiss this case is consistent with that general approach. More than that, the Government's motion to dismiss is mandated by the Executive Order, which—in addition to its pardon and commutation provisions—also directs the Attorney General to "pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331, 8331 (Jan. 20, 2025). And that is the posture of this case—even though Nordean, Biggs, Rehl, and Pezzola were convicted of serious offenses—after the Court of Appeals vacated their convictions. Thus, the Government's motion is at this point a request to treat this case essentially the same way it has all January 6 cases, without regard for the seriousness of the conduct at issue or even whether the case was initiated after President Biden took office or, like this one, while President Trump was still in power. *See* ECF No. 1. Under these circumstances, while it might be appropriate to request more information about the Government's reasons for seeking to dismiss a prosecution in other cases, the Court sees no need to do so here.

Second, and in any event, it is unclear what the Court would do with more detailed information about the Government's reasons for seeking to dismiss. To begin, to the extent *Ammidown* suggests some greater role for the Court, its applicability to the circumstances here is far from clear. In that case, the Court of Appeals was not considering a Rule 48(a) motion but weighing a court's ability to reject a plea under Federal Rule of Criminal Procedure 11, where a district court's

authority is "rooted in the Judiciary's traditional power over criminal *sentencing*." *Fokker Servs. B.V.*, 818 F.3d at 745. But whatever the passage from *Ammidown* means, under these circumstances it cannot mean that the Court may exercise its discretion to deny the Government's motion. The Court of Appeals in *Fokker Services* clearly instructed that, consistent with separation of powers principles, the Court has "no power . . . to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority." *Id.* at 742. And in that case, it cited *Ammidown* for the proposition that "courts generally lack authority to second-guess the prosecution's constitutionally rooted exercise of charging discretion." *Id*. at 750. In the end, the Court is "unaware of . . . any appellate decision that actually upholds a denial of [an uncontested] motion to dismiss a charge" on the grounds that, for example, "the prosecutor was acting in bad faith or contrary to the public interest," as some courts have speculated might be appropriate. *In re United States*, 345 F.3d 450, 453 (7th Cir. 2003). And all this underscores why the Court need not request more information about the Government's reasons for requesting dismissal.

Indeed, it is hard to see how any course other than granting the motion in full could make practical sense. Denying the motion would not somehow revive the convictions that the Court of Appeals vacated. Nor would denying it mean a retrial would follow, because the Court lacks the authority to compel the Executive to pursue a prosecution, full stop—but especially when an executive order explicitly requires that the Government seek dismissal with prejudice. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."). Moreover, dismissing the case *without* prejudice, raising the possibility that a new president could try to rebring it in several years—especially when it seems questionable whether any further punishment could be imposed—would

6

hardly be consistent with the main reason for Rule 48(a): to guard against prosecutorial harassment.

All that said, because the decisions to issue the Executive Order and to abandon this prosecution—even after the Government secured convictions for serious crimes relating to the attack on the Capitol on January 6—are solely the Executive's, no one should mistake the Court's granting of the Government's motion for its agreement with those decisions.

As the Court has said many times, the attack on the Capitol on January 6, 2021 was a perilous event.  It was an attack on people, including police officers, many of whom were injured.  It was an attack on a coordinate branch of government—Congress—that th+e Founders saw fit to give a place of primacy in Article I of the Constitution.  And it was an attack on the Constitution's mechanism to facilitate the peaceful transfer of power from one president to the next, what President Reagan called "nothing less than a miracle."  President Ronald W. Reagan, Inaugural Address (Jan. 20, 1981).  Moving forward, if this Nation's experiment in self-government is to last another 250 years, the American people—no matter their partisan preferences—will have to act together to preserve, protect and defend that miracle through our constitutional framework.

Because the Constitution and Rule 48(a) require it, the Court will grant the Government's motion and dismiss this case with prejudice.  A separate order will issue.

s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 10, 2026